**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 3:19-CV-00054-NKM-JCH |
| | ) | |
| **RECTOR AND VISITORS OF THE** | ) | |
| **UNIVERSITY OF VIRGINIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**RULE 12(B)(1) AND (6) MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL ALLEGATIONS AND CLAIMS .................................................................2

LEGAL STANDARDS .....................................................................................................6

    I.      RULE 12(B)(1) ...............................................................................................6

    II.     RULE 12(B)(6) ...............................................................................................7

ARGUMENT .....................................................................................................................7

    III.    THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT. ......................9

    IV.    THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...............................................................................10

        A.     Plaintiff Fails To State A Procedural Due Process Claim Under the Fourteenth Amendment. ...........................................................................11

            1.     Plaintiff Has Not Established A Protected Liberty or Property Interest. ......................................................................................11

            2.     Plaintiff Received The Process Owed To Him Under the Fourteenth Amendment. .............................................................13

        B.     Plaintiff Fails To State A Claim Under The First Amendment ...................18

            1.     Plaintiff's speech was not protected. .............................................19

            2.     Plaintiff has not established a causal connection between the alleged retaliatory action and Plaintiff's speech ..............................22

CONCLUSION ................................................................................................................24

CERTIFICATE OF SERVICE .....................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) ................................................................................6

*Alden v. Maine*,
   527 U.S. 706 (1999)................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................7

*Aziz v. Alcolac, Inc.*,
   658 F.3d 388 (4th Cir. 2011) .................................................................................7

*Bd. of Curators of Univ. of Missouri v. Horowitz*,
   435 U.S. 78 (1978)................................................................................13, 14, 15

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972)..............................................................................................11

*Bethel Sch. Dist. No. 403 v. Fraser*,
   478 U.S. 675 (1986)..............................................................................19, 20, 21, 22

*Betts v. Rector & Visitors of the Univ. of Va.*,
   No. 97-1850, 1999 U.S. App. LEXIS 23105 (4th Cir. Sept. 22, 1999)..................14

*Burbach Broad. Co. of Del. v. Elkins Radio Corp.*,
   278 F.3d 401 (4th Cir. 2002) .................................................................................7

*Byerly v. Va. Polytechnic Inst. & State Univ.*,
   Civ. Action No. 7:18-cv-16, 2019 U.S. Dist. LEXIS 49952
   (W.D. Va. Mar. 21, 2019) (Ballou, J.) .................................................................12

*Cobb v. Rector & Visitors of the Univ. of Va.*,
   69 F. Supp. 2d 815 (W.D. Va. 1999) (Moon, J.) ...............................................9, 15

*Collin v. Rector & Bd. of Visitors of the Univ. of Va.*,
   873 F. Supp. 1008 (W.D. Va. 1995) (Michael, J.)................................................9

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005) ................................................................................22

ii

*Deegan v. Moore*,
 Case No. 7:16cv00260, 2017 U.S. Dist. LEXIS 47335
 (W.D. Va. Mar. 30, 2017) (Dillon, J.) ..............................................................19, 22

*Demetres v. East West Const. Inc.*,
 776 F.3d. 271, 272 (4th Cir. 2015) .................................................................6, 7

*Doe v. Alger*,
 175 F. Supp. 646 (W.D. Va. 2016) .................................................... *passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
 132 F. Supp. 3d 712 (E.D. Va. 2015) ...........................................................11, 12

*Fayetteville Inv'rs v. Comm. Builders, Inc.*,
 936 F.2d 1462 (4th Cir. 1991) .......................................................................7

*Giarratano v. Johnson*,
 521 F.3d 298 (4th Cir. 2008) .......................................................................24

*Graham v. City of Manassas School Bd.*,
 390 F. Supp. 3d 702 (E.D. Va. 2019) ...............................................................7

*Hardwick v. Heyward*,
 711 F.3d 426, 436, n. 10 (4th Cir. 2013) ...........................................................21

*Hately v. Watts*,
 917 F.3d 770 (4th Cir. 2019) .......................................................................7

*Herron v. Va. Commonwealth Univ.*,
 366 F. Supp. 2d 355 (E.D. Va. 2004) ...........................................................14, 18

*Huang v. Bd. of Governors of the Univ. of N.C.*,
 902 F.2d 1134 (4th Cir. 1990) .......................................................................22

*Kuntze v. Josh Enterprises, Inc.*,
 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) .........................................................6

*Lee-Thomas v. Prince George's Cty. Pub. Sch.*,
 666 F.3d 244 (4th Cir. 2012) .......................................................................9

*Lewin v. Med. College*,
 910 F. Supp. 1161 (E.D. Va. 1996) ...............................................................14

*Newsom v. Albemarle Cty. Sch. Bd.*,
 354 F.3d 249 (4th Cir. 2003) ...................................................................19, 21

iii

*Noffsinger v. Va. Commonwealth Univ.*,
    Civ. Action No. 3:12-cv-236, 2012 U.S. Dist. LEXIS 97857 (E.D. Va. Jul. 13,
    2012), *aff'd*, 2013 U.S. App. LEXIS 6579 (4th Cir. Apr. 2, 2013) ...................................12, 14

*Perkins v. United States*,
    55 F.3d 910 (4th Cir. 1995) .........................................................................................18

*Port Auth. Trans-Hudson Corp. v. Feeney*,
    495 U.S. 299 (1990)......................................................................................................9

*Quern v. Jordan*,
    440 U.S. 332 (1979)....................................................................................................10

*Shirvinksi v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ......................................................................................12

*Sims v. Clarke*,
    Civ. Action No. 7:18-cv-00444, 2019 U.S. Dist. LEXIS 200994 (W.D. Va.
    Nov. 20, 2019) (Dillon, J.)..........................................................................................24

*Siu v. Johnson*,
    748 F.2d 238 (4th Cir. 1984) .........................................................................14, 16, 17

*Suarez Corp. Indus. v. McGraw*,
    202 F.3d 676 (4th Cir. 2000) ......................................................................................19

*Tigrett v. Rector & Visitors of the Univ. of Va.*,
    97 F. Supp. 2d 752 (W.D. Va. 2000) (Moon, J.) ........................................................9

*United States v. Grace*,
    461 U.S. 171 (1983)....................................................................................................19

*Velasco v. Gov't of Indonesia*,
    370 F.3d 392, 398 (4th Cir. 2004) ...............................................................................6

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)...................................................................................................9, 10

*Wood v. Moss*,
    134 S. Ct. 2056 (2014)................................................................................................19

**Statutes**

42 U.S.C. § 1983...................................................................................................... *passim*

**Rules**

Fed. R. Civ. P 12(b)(1)........................................................................................6, 8, 24

iv

Fed. R. Civ. P. 12(b)(6).................................................................................................. *passim*

**Other Authorities**

U.S. Const. amend. I ...................................................................................................... *passim*

U.S. Const. amend. V.....................................................................................................6, 7, 10

U.S. Const. amend. XI ................................................................................................... *passim*

U.S. Const. amend. XIV ................................................................................................ *passim*

## INTRODUCTION

Plaintiff Kieran Bhattacharya ("Plaintiff"), a former student at the University of Virginia School of Medicine ("Medical School" or "School"), has sued the Rector and Visitors of the University of Virginia ("Defendant") because he was suspended for unprofessional behavior. Plaintiff asserts procedural due process and free speech claims under § 1983, but pleads facts showing that Defendant's conduct was constitutional in all respects. More fundamentally, this Court lacks subject matter jurisdiction because the Eleventh Amendment shields Defendant from this entire action.

Aside from the Eleventh Amendment's complete jurisdictional bar, Plaintiff's claims fail because they do not appreciate the limits of Plaintiff's constitutional rights. For one, Plaintiff's in-school comments were offensive, so they were not protected speech to begin with and the School was free to sanction them. Second, because Plaintiff has alleged no constitutionally protected interest in his graduate education, the Fourteenth Amendment imposed no constraints at all on the School.[1] Thus, Plaintiff has not established a single protected interest that would trigger constitutional scrutiny under either the First or Fourteenth Amendment.

Even if Plaintiff had alleged a protected interest in his education, a suspension for lack of professionalism triggers minimal due process requirements that Defendant satisfied. At the Medical School, professionalism is a mandatory program requirement and is evaluated no less rigorously than academic achievement. While the School's professional standards are clear and fixed, their application to Plaintiff was an evaluative process, involving careful deliberation by a committee of

---

[1] Plaintiff brings his procedural due process claim under the Fifth Amendment, which does not apply to state actors. *See* U.S. Const. amend. V. In lieu of the Fifth Amendment, Defendant analyzes this claim under the Fourteenth Amendment, which specifically constrains state action. U.S. Const. amend. XIV.

1

medical experts. For these reasons, due process required no more of Defendant than the exercise of professional judgment. By applying its standards to Plaintiff's behavior, Defendant met this requirement. And because Defendant also gave Plaintiff notice and an opportunity to be heard, Defendant far exceeded its obligations under the Fourteenth Amendment.

Finally, even if Plaintiff's speech were protected, the allegations in the Complaint are insufficient to show a causal connection between Plaintiff's comments and the alleged sanction of mandatory counseling. Plaintiff concludes that one led to the other but does not back up his claim with plausible facts. Instead, Plaintiff asks the Court to assume a connection despite exhibits showing that the School required counseling under materially different circumstances, namely Plaintiff's unexplained absence from the School.

In sum, Plaintiff cannot overcome the Eleventh Amendment bar and has not pleaded facts sufficient to state a claim to relief under the First or Fourteenth Amendment. These deficiencies are fatal to the Complaint and this motion should thus be granted.

## FACTUAL ALLEGATIONS AND CLAIMS

In the fall of 2018, Plaintiff was a medical student at the University of Virginia School of Medicine ("School of Medicine" or "School"). (Compl. ¶ 29.) On October 25, 2018, Plaintiff attended a faculty-led panel discussion on microaggressions that concluded with time for questions from the audience. (*Id.* ¶ 30.) Plaintiff was the first to speak and asked numerous questions. (*Id.*, Ex. 9 at 28:40–34:00.) After posing his first question about the definition of a microaggression, Plaintiff immediately interrupted the responding panelist and criticized the logic of her response, calling it "contradictory." (*Id.*) When the panelist had a chance to explain her response, Plaintiff scarcely acknowledged the explanation and fired off more questions. (*Id.*) In three separate comments, Plaintiff criticized the anecdotal basis for the field of study and challenged the panelists

2

to provide objective evidence. (*Id.*) Despite the panelists' consistent responses to Plaintiff, he pressed on, demanding an objective evidentiary basis. (*Id.*) Plaintiff also spoke over another panelist, quibbled with her response, and ignored her suggestion that they open up the floor to other audience members. (*Id.*) To end the exchange, a panelist had to cut Plaintiff off mid-sentence and call on someone else. (*Id.*) Plaintiff's tone of voice throughout the exchange was argumentative and bordered on contemptuous. (*Id.*)

This incident drew the attention of at least two faculty members. Dr. Peterson, one of the four college deans at the Medical School, sent Plaintiff an email after the panel inviting him to meet with her because of Plaintiff's apparent "discomfort with the speaker's perspective on the topic." (Compl. ¶ 32.) That same day, Dr. Kern issued a 'professionalism concern card' regarding Plaintiff's conduct during the panel, specifically in the areas of "respect for others" and "respect for differences." (*Id.* ¶¶ 34,35; Ex. 11.) In the card, Dr. Kern described Plaintiff's behavior as "antagonistic toward the panel" and noted that Plaintiff called one of the speakers "contradictory." (*Id.* ¶ 36.) Dr. Kern also noted that Plaintiff's "level of frustration/anger seemed to escalate until another faculty member defused the situation" and expressed "shock[ ] that a med [sic] student would show so little respect toward faculty members." (*Id.*) In conclusion, Dr. Kern stated that the incident "worries me how [Plaintiff] will do on wards." (*Id.*) Dr. Kern did not notify Plaintiff of these concerns. (*Id.* ¶ 39.)

As stated in the publicly available Policy on Academic and Professional Advancement, professionalism is one of the core competencies for medical students and the School routinely evaluates students' performance in this area. (Compl., Ex. 7.) To promote this educational aim, faculty are encouraged to use concern cards to document instances of unprofessional attitudes and behaviors, including a lack of respect for others and lack of respect for differences. (*Id.* ¶ 21, Ex. 7.)

The School has codified its standards of professionalism in a list of "Technical Standards" that each student must meet in order to graduate. (Compl., Ex. 51.)

The body charged with reviewing students' academic deficiencies and professionalism violations is the Academic Standards and Achievement Committee ("ASAC" or "committee"). Under the ASAC's official operating procedures, the committee is charged with "review[ing] evidence of unprofessional, unethical, or illegal activities or behaviors by students" and taking remedial action against those who do not meet the School's standards. (Compl. ¶ 97, Ex. 14.) The committee's voting membership is comprised entirely of faculty members who are M.D. medical doctors or Ph.D. clinical researchers, and medical students. (*See* Compl. ¶¶ 49–59, 112–115.)

On November 14, 2018, the committee convened to consider the concern card submitted by Dr. Kern and took remedial action in the form of a letter written by committee chair Dr. Tucker. (Compl. ¶¶ 72, 74, 80, Ex. 35.) On November 15, the committee sent the letter to Plaintiff's email address. (*Id*. ¶ 80, Exs. 35, 35.B.) The letter notified Plaintiff that the committee had received notice about Plaintiff's disrespectful behavior at the panel discussion, and reminded Plaintiff to "show mutual respect to all" and to "express [his opinions] in appropriate ways." (*Id*.) The letter also suggested that Plaintiff "consider getting counseling" to improve his communication skills. (*Id*.) Neither the letter nor the minutes from the November 14 meeting addresses the particular topic that Plaintiff spoke about during the panel discussion. (*See id*., Exs. 13, 35.)

Approximately two weeks later on November 26, 2018, Dr. Densmore, Plaintiff's college Dean, sent Plaintiff an email stating that Plaintiff needed to be evaluated by a counselor before resuming classes after a period of absence from the School that the Complaint does not explain. (Compl. ¶ 85, Ex. 36.) The email also noted that the Dean of Students Office had alerted Dr. Densmore to Plaintiff's imminent return to School. (*Id*.) In multiple emails and phone calls to his

4

Dean, Plaintiff challenged this mandatory counseling requirement. (*Id.* ¶¶ 88, 91, Ex. 40.) The next day on November 27, Plaintiff received a follow-up email from Dr. Canterbury, the Senior Associate Dean for Education at the School. In his email, Dr. Canterbury emphasized that Plaintiff could not resume classes until he had been evaluated by a counselor and received "medical clearance." (*Id.* ¶ 91.)

The following day on November 28, a school administrator sent Plaintiff an email at 1:00 pm stating that the ASAC would be meeting at 5:00 pm to discuss Plaintiff's "enrollment status." (Compl. ¶ 94.) The email also provided the address and room number for the meeting and invited Plaintiff to attend and "share [his] insights with the committee." (*Id.*) At the time, Plaintiff knew that dismissal was a possible consequence of the meeting and learned that the meeting had something to do with Plaintiff's unprofessional comments at the October 25 panel discussion. (*Id.* ¶¶ 95, 108.) Plaintiff also had access to all of the policies and procedures that governed the ASAC's procedures. (*Id.* ¶ 96.)

Plaintiff attended the November 28 meeting, where he was informed of the committee's behavioral concerns and had an opportunity to ask and answer questions. (*See* Compl. ¶46.B.) During the meeting, Dr. Tucker explained that multiple people, including Plaintiff's Dean, had complained about Plaintiff's behavior. (*Id.*, Ex. 46.B) Dr. Tucker also specifically noted that Plaintiff's behavior at the meeting was inappropriate for reasons similar to the other enumerated instances. (*Id.*) Plaintiff's comments and tone of voice at the meeting were aggressive, highly defensive, and accusatory. (*Id.*) In addition, Plaintiff did not communicate any awareness of his inappropriate behavior even after Dr. Tucker pointed it out. (*Id.*)

On November 29, the committee notified Plaintiff by letter that it was suspending him from the School until August, 2019. (Compl., Ex. 51.) The suspension letter stated that Plaintiff's

"aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of Medicine's Technical Standards." (*Id.*) The letter also contained a list of the Technical Standards that Plaintiff had violated, which were all related to professionalism. (*Id.*)

Plaintiff brings this lawsuit under 42 U.S.C. § 1983 and the First and Fifth Amendment. Specifically, Plaintiff alleges that Defendant deprived Plaintiff of procedural due process by suspending him without proper notice or an effective hearing. Plaintiff also alleges that Defendant abridged his right to free speech by mandating psychological counseling because of Plaintiff's comments during the October 25 panel discussion.

## LEGAL STANDARDS

Because Defendant brings this motion under Federal Rule of Civil Procedure 12(b)(1) and (6), two different standards apply.

## I. RULE 12(B)(1).

A motion to dismiss under Rule 12(b)(1) may challenge subject matter jurisdiction in one of two ways: It "may attack a complaint on its face, insofar as the complaint fails to allege facts upon which the court can base jurisdiction, or . . . it may attack the truth of any underlying jurisdictional allegations contained in the complaint." *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 636 (E.D. Va. 2019). "In the former situation, known as a facial challenge, the court is required to accept all of the complaint's factual allegations as true, 'and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration.'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In the latter situation, known as a factual challenge, 'the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings.'" *Id.* (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d

6

392, 398 (4th Cir. 2004)) (footnote and citation omitted).7 In either case, "[t]he burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

## II. RULE 12(B)(6).

A complaint should be dismissed under Rule 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss pursuant to Rule 12(b)(6), [a plaintiff's] factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging [the] claims across the line from conceivable to plausible." *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) (quoting *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding whether the plaintiff has met this plausibility standard, "[t]he Court must 'assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor,' . . . but only to the extent those allegations pertain to facts rather than legal conclusions." *Graham v. City of Manassas School Bd.*, 390 F. Supp. 3d 702, 708–09 (E.D. Va. 2019) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)). "And if there is a conflict between the bare allegations of the complaint and any attached or incorporated document, then the document prevails." *Doe v. Alger*, 175 F. Supp. 646, 656 (W.D. Va. 2016) (citing *Fayetteville Inv'rs v. Comm. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

## ARGUMENT

This § 1983 action should be dismissed because it is barred by sovereign immunity under the Eleventh Amendment and because Plaintiff has failed to state a plausible claim to relief under

the First, Fifth, or Fourteenth Amendment. As an initial matter, Defendant is a state agency entitled to Eleventh Amendment immunity against this action. Accordingly, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

Even if Plaintiff could overcome this jurisdictional defect, the Complaint still could not survive a motion to dismiss. First, the procedural due process claim fails because Plaintiff has not established a constitutionally protected liberty or property interest in continuing enrollment at the School of Medicine. What is more, despite Plaintiff's complaints that he was denied notice or a proper hearing, due process did not require Defendant to provide Plaintiff these particular procedural safeguards. In deciding to suspend Plaintiff, Defendant was only required to exercise professional judgment, which Defendant accomplished by deliberating and evaluating Plaintiff's behavior in light of the Technical Standards. Not only that, Defendant afforded Plaintiff additional procedural safeguards, exceeding its due process obligations.

Second, the First Amendment claim fails because Plaintiff has not established two critical elements of First Amendment retaliation. As an initial matter, Plaintiff's comments were not protected speech because they were offensive and contrary to the School's educational mission. In addition, Plaintiff has not established a plausible connection between his comments and the alleged retaliatory action. While Plaintiff alleges that the School required a psychological evaluation one month after Plaintiff's offensive comments, the Complaint is insufficient to tie the two events together causally. Instead, the exhibits indicate that Plaintiff's unexplained absence from School was the real reason for mandatory counseling. For all of these reasons, this action cannot survive this motion and should be dismissed.

Case 3:19-cv-00054-NKM-JCH   Document 19   Filed 11/25/19   Page 14 of 32   Pageid#: 236

**III.  THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(1)  BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT.**

The Court should dismiss this action in its entirety because the Eleventh Amendment shields Defendant from suits filed pursuant to § 1983.  Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) ); *See Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today").  This immunity extends equally to "arms of the State," including state agencies, instrumentalities, and officials.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that a state police department is an arm of the State entitled to Eleventh Amendment immunity); *See Lee-Thomas*, 666 F.3d at 248.

For purposes of Eleventh Amendment immunity, the Western District of Virginia has consistently held that Defendant is an arm of the State entitled to immunity.  *See Tigrett v. Rector & Visitors of the Univ. of Va.*, 97 F. Supp. 2d 752 (W.D. Va. 2000) (Moon, J.) ("This Court has already held that the Rector and Visitors of the University, as an instrumentality of the state, is immune from suit in federal court." (citing *Cobb v. Rector & Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 824 (W.D. Va. 1999) (Moon, J.)); *Accord Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008, 1013 (W.D. Va. 1995) (Michael, J.) (finding that the Board of Visitors was an arm of the State because it manages UVA's affairs, is under the control of the General Assembly, its members are appointed by the Governor, and it has power to hold and convey property).  As this Court's case authority unequivocally shows, Defendant is entitled to

9

Eleventh Amendment immunity and cannot be sued in federal court by a citizen of any State including Plaintiff.

Although sovereign immunity does not bar suit where a State has given consent to be sued or where Congress waives immunity, neither of those exceptions applies in this case. Plaintiff brings his claims under §1983, which only allows suits against "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage" violates another's statutory or constitutional rights. 42 U.S.C. § 1983 (emphasis added). In no uncertain terms, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will*, 491 U.S. at 71. Thus, Congress did not waive the States' immunity by enacting §1983. *Id*.; *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States"). In sum, as Congress has not waived immunity and Defendant has not consented to the Court's jurisdiction, Plaintiff can identify no basis to overcome Defendant's immunity and the claims must be dismissed.

## IV. THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if Plaintiff could overcome the jurisdictional bar outlined in Part I, Plaintiff's claims still fail. First, Plaintiff fails to state a valid claim to relief for the same reason this Court lacks subject matter jurisdiction: Defendant cannot be sued under § 1983. Second, Plaintiff has failed to state a procedural due process claim because Plaintiff has not demonstrated a protected interest in continued enrollment at the School of Medicine and because Plaintiff received all the process that was constitutionally required. Third, Plaintiff has failed to state a claim under the First Amendment because Plaintiff's speech was not protected by the First Amendment and the Complaint does not establish causation.

10

**A.** **Plaintiff Fails To State A Procedural Due Process Claim Under the Fourteenth Amendment.**

Plaintiff alleges that the School violated his procedural due process rights by imposing a suspension without sufficient notice or a satisfactory hearing. At the outset, the claim must fail because Plaintiff has not alleged a protected liberty or property interest that would trigger the requirements of due process. That aside, the claim also fails because Plaintiff has affirmatively shown that he received the process owed to him. Because Plaintiff's suspension was based on academic rather than disciplinary factors, the only process constitutionally required was the exercise of professional judgment. Defendant satisfied this requirement and in fact provided Plaintiff many additional procedural protections. In short, because the Complaint does not establish a deprivation of liberty or property without due process, the claim should be dismissed.

1.      Plaintiff Has Not Established A Protected Liberty or Property Interest.

Under the Fourteenth Amendment, "no state shall make or enforce any law which shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "On a motion to dismiss and where state action is not in question, the reviewing court must first determine if a property or liberty interest has been sufficiently alleged." *Alger*, 175 F. Supp. 3d at 656. Plaintiff does not specify whether the alleged constitutional deprivation was one of liberty or property, but under either analysis, the claim fails.

Under the Constitution, property interests are finite and do not exist merely because of a person's "unilateral expectation" or "abstract need or desire." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Rather, they are created and their dimensions are defined by an independent source such as state law—rules or understandings that secure certain benefits." *Id.* at 577. "Neither the Supreme Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia

11

law." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015). In any event, a plaintiff must allege specific facts to establish a constitutionally protected interest at the pleading stage. *See, e.g.*, *Byerly v. Va. Polytechnic Inst. & State Univ.*, Civ. Action No. 7:18-cv-16, 2019 U.S. Dist. LEXIS 49952, at *21 (W.D. Va. Mar. 21, 2019) (Ballou, J.) (holding that conclusory allegations were insufficient to establish a protected interest); *Noffsinger v. Va. Commonwealth Univ.*, Civ. Action No. 3:12-cv-236, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. Jul. 13, 2012), *aff'd*, 2013 U.S. App. LEXIS 6579 (4th Cir. Apr. 2, 2013) (same).

In the instant case, Plaintiff has alleged no facts to support the existence of a protected property interest in continuing professional education, and merely assumes that one exists. (*See* Compl., Count II.) Plaintiff also does not cite to controlling precedent that this property interest exists. (*See id.*, ¶¶ 157–168.) Because the Complaint is devoid of allegations identifying a protected property interest in continuing professional enrollment, Plaintiff has not met his burden under Rule 12(b)(6).

The claim similarly fails under a liberty interest analysis. To establish a protected liberty interest in Plaintiff's good name, Plaintiff must allege "a reputational injury (the stigma), accompanied by a state action that distinctly altered or extinguished a legal status or right (the plus)." *Alger*, 175 F. Supp. 3d at 660 (citing *Shirvinksi v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012)).

The Complaint simply does not satisfy this "stigma-plus" test. At best, Plaintiff implies a reputational injury by alleging that his suspension will harm his prospects for a medical residency. (Compl., ¶ 162.) But "injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Byerly*, 2019 U.S. Dist. LEXIS 49952 at *12 (quoting *Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 720–21). And as a matter of law, Plaintiff cannot

12

establish the alteration of a legal status or right because "there is no statutory right to be a public college or university student." *Alger*, 175 F. Supp. 3d at 660.

In sum, plaintiff has failed to state a procedural due process claim because he has not established a constitutionally protected interest that would trigger the requirements of due process.

       2.    <u>Plaintiff Received The Process Owed To Him Under the Fourteenth Amendment.</u>

Even if the Court finds that Plaintiff had a protected interest in continuing professional education, the claim still fails because the procedures used to suspend Plaintiff were constitutionally adequate. Plaintiff alleges that his due process rights were violated because (1) he did not receive advance written notice of the major concerns that the committee planned to address at the meeting as required by the ASAC operating procedures; (2) the four hours' notice Plaintiff received was too short; (3) the committee failed to inform Plaintiff of specific incidents of concern during the meeting; (4) the committee failed to listen to Plaintiff's audio recording during the meeting; and (5) the committee chair, Dr. Tucker, mischaracterized a psychological evaluation that Plaintiff was required to undergo in order to resume classes. (Compl., ¶¶ 163–168). Even interpreted in a light most favorable to Plaintiff, these alleged procedural deficiencies did not offend Plaintiff's guarantee of due process under the Fourteenth Amendment.

In analyzing a procedural due process claim in the context of university dismissals, the Supreme Court has recognized a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978). Deciding whether to dismiss a student for academic reasons is a "subjective and evaluative" process that "requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or

13

administrative decisionmaking." *Horowitz*, 435 U.S. at 90. For these reasons, the only process that is constitutionally required in the context of academic dismissals is "the exercise of professional judgment by those empowered to make the final decision in a way not so manifestly arbitrary and capricious that a reviewing court could confidently say of it that it did not in the end involve the exercise of professional judgment." *Siu v. Johnson*, 748 F.2d 238, 245 (4th Cir. 1984). An academic dismissal satisfies this standard as long as the decision is made "on the basis of factors clearly related to legitimate institutional interests" and if it is "careful and deliberate." *Id*. at 246; *Horowitz*, 435 U.S. at 85.

Courts in the Fourth Circuit have considered a dismissal to be "academic" where a student fails to satisfy a school's mandatory program requirements, including standards of professionalism. *See Horowitz*, 435 U.S. at 90 (medical resident's dismissal based on "the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor" was academic); *Betts v. Rector & Visitors of the Univ. of Va.*, No. 97-1850, 1999 U.S. App. LEXIS 23105, at *23–24 (4th Cir. Sept. 22, 1999) (decision to rescind an offer of admission was academic because it was based on a subjective grade point average standard); *Noffsinger v. Va. Commonwealth Univ.*, CA No. 3:12-CV-236, 2012 U.S. Dist. LEXIS 97857, at *7 (E.D. Va. Jul. 13, 2012), *aff'd*, 2013 U.S. app. LEXIS 6579 (4th Cir., Apr. 2, 2013) (student dismissal from graduate physical therapy program based on "lack of academic progression and professional behavior" was academic); *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 359 (E.D. Va. 2004) (student dismissal from graduate nursing program was academic because it was based on clinical performance including student's "combativeness" and inability to accept criticism); *Lewin v. Med. College*, 910 F. Supp. 1161, 1165–67 (E.D. Va. 1996) (decision to deny

14

student readmission to medical school was academic despite evidence of misconduct because the reasons for dismissal involved academic, clinical, and professional factors).

On the other hand, disciplinary dismissals involve "the violation by a student of valid rules of conduct," *Horowitz*, 436 U.S. at 86, such as lying, cheating, stealing, or sexual misconduct. *See, e.g.*, *Cobb & Rectors & Visitors of the Univ. of Virginia*, 84 F. Supp. 2d 740, 748–49 (W.D. Va. 2000) (Moon, J.) (expulsion for cheating in violation of honor code was disciplinary matter); *Alger*, 175 F. Supp. 3d at 661–62 (sexual misconduct by university student was disciplinary matter).

In the instant case, Plaintiff was suspended for academic reasons relating a lack of professionalism. First, the Complaint and incorporated exhibits establish that professionalism is a key component of the School's medical training program. For example, the Policy on Academic and Professional Advancement, which Plaintiff attached to and relied on in his Complaint, deems "[p]rofessional attitudes and behaviors" to be a "requirement for the successful award of the degree of Doctor of Medicine." (Compl., Ex. 51.) Second, the committee convened the November 28 meeting expressly to discuss Plaintiff's "Professionalism Issues." (*Id.*, Ex. 47; *See id.*, ¶¶ 118–122.) During the meeting, the committee assessed "concerning behaviors" in light of the Technical Standards that every medical student is required to meet, especially the "Emotional, Attitudinal and Behavioral Skills." (*Id.*, ¶¶ 118, 120, Ex. 47.) After determining that Plaintiff could not meet those standards, the committee decided to suspend Plaintiff for one year. (*Id.*, ¶ 121, Ex. 47.) Third, the committee stated in a November 29 letter to Plaintiff that its decision was based on his "aggressive and inappropriate interactions in multiple situations," which violated the school's Technical Standards. (*Id.*, ¶ 125, Ex. 51.) The letter also set forth the numerous Technical Standards that Plaintiff violated, which all had bearing on Plaintiff's ability to conduct himself professionally. (*Id.*, ¶ 125–26, Ex. 51 (discussing breaches of "[d]emonstrating self-awareness and self-analysis of one's

15

emotional state and reactions; [m]odulating affect under adverse and stressful conditions and fatigue" among others).)

In addition, the committee exists solely to assess whether students have met "the required standards of achievement" and to ensure that all current students are able "to practice medicine competently." (Compl., ¶ 97, Ex. 14.) Due to the technical and medicine-specific nature of the ASAC's inquiries, the committee members who voted to suspend Plaintiff were almost all medical professionals with at least one advanced degree in the field. (*See id.*, ¶¶ 49–59, 112–115 (reciting voting members' names and professions).) For all of the above reasons, the well-pleaded facts establish that Plaintiff was suspended because he repeatedly violated standards of professionalism, which are an integral part of the School's academic requirements.

Because Plaintiff was suspended for academic reasons, the process he received was more than adequate. Under *Siu*, the only process owed to Plaintiff was the exercise of professional judgment, which the pleading shows he received on top of additional procedural safeguards. *See* 748 F.2d 245. The Complaint and attached exhibits provide multiple examples of the committee's deliberative process, which involved the application of professionalism standards to Plaintiff's conduct. As stated above, the committee decided to suspend Plaintiff only after considering numerous incidents of Plaintiff's "aggressive and inappropriate interactions." (Compl., Ex. 51.) In one of these incidents, a faculty member perceived Plaintiff to be "antagonistic" and displaying a worrisome "level of frustration/anger [that] seemed to escalate" as he spoke. (Compl., Ex. 11, 34.) This was cause for concern as to how Plaintiff would perform in a clinical setting, which is a key component of medical practice as well as the School's educational objectives. (*Id.*) The committee considered this and other incidents involving similar behavioral concerns that Dr. Tucker referenced during the hearing and in the suspension letter. (*See id.*, Exs. 46.B, 51.) The committtee also

16

considered Plaintiff's behavior during the hearing, which was combative and exceedingly defensive, and of which Plaintiff displayed no appreciative awareness, (*Id.*). As is evident from the ASAC's meeting minutes as well as the suspension letter to Plaintiff, the committee applied the Technical Standards to Plaintiff's behavior and determined that there were multiple violations. (Compl., Ex. 51.) For these reasons, and in keeping with the committee's responsibility to ensure that only qualified students remain in the medical program, Plaintiff was suspended for one year. (*Id.*) As established by these well-pleaded facts, Plaintiff's suspension was supported by professional judgment because it was based on "factors clearly related to [the School's] legitimate institutional interests" in maintaining professional standards. *Siu*, 748 F.2d at 246.

In addition to satisfying the requirements of due process, Defendant afforded Plaintiff substantially *more*. For example, the committee gave Plaintiff time during the meeting to ask and answer questions about his professionalism issues. (*See* Compl., ¶ 109, Ex. 46.B.) Plaintiff also received advance notice that the committee called the meeting to discuss his "enrollment status." (*Id.*, ¶ 94.) At the meeting, Dr. Tucker explained to Plaintiff that the ASAC had received multiple complaints regarding Plaintiff's behavior and noted that Plaintiff's demeanor during the hearing was yet another example of problematic behavior. (*Id.*, Ex. 46.B.) Plaintiff was afforded an opportunity to respond to these charges during the hearing, and Plaintiff did respond. (*See id.*, Ex. 46.B.)

Even before the meeting, Defendant gave Plaintiff plenty of notice that behavioral issues were jeopardizing his enrollment. For one, the professionalism standards that governed the committee's decision are publicly available to all medical students, and Plaintiff was charged with knowing and adhering to them. (*See e.g,.* Compl., ¶ 96 (showing academic polices are publicly available), Exs. 7 ("Evaluation of professional attitudes and behaviors is an integral part of a student's assessment"), 14 (policies set forth "the required standards of achievement" for students).)

In addition, Plaintiff was alerted to one of his behavioral incidents in a November 15 letter from the committee two weeks before the meeting. (*See id.*, ¶ 80; Ex. 35.) The letter specifically reprimanded Plaintiff for unprofessional behavior. (*Id.*) Furthermore, just one day before the committee meeting, Plaintiff was embroiled in a dispute with his academic deans as to the conditions on which Plaintiff could return to classes after an unspecified absence. (Compl., ¶¶ 85, 88, 91; Exs. 36, 40)

In conclusion, because Defendant provided Plaintiff at least as much process as he was due under the Fourteenth Amendment, the procedural due process claim should be dismissed. Moreover, because the Complaint extensively documents both the academic nature of the dismissal and the professional judgment supporting it, the claim should be dismissed without leave to amend because any attempt to amend would be futile. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (articulating futility standard); *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 359–60 (E.D. Va. 2004) *(*denying leave to amend to add a due process claim because school met due process requirements).

### B. Plaintiff Fails To State A Claim Under The First Amendment.

Plaintiff claims that the School violated his right to free speech by requiring him to seek counseling because of comments he made during a panel discussion. As a matter of law, the claim must fail because Plaintiff cannot satisfy the most basic element of a free speech claim: protected speech. Offensive student speech does not enjoy First Amendment protection, so schools may regulate it in order to promote their educational mission. Thus, because Plaintiff's claim is predicated on student speech that was disrespectful and rude, it was not unconstitutional for Defendant to sanction it. In addition, Plaintiff has not alleged a plausible nexus between his speech

and the alleged retaliatory action. In short, because the speech at issue was not protected to begin with and because Plaintiff cannot establish causation, the claim should be dismissed.

    1.    Plaintiff's speech was not protected.

The First Amendment provides that "Congress shall make no law . . . abridging freedom of speech." U.S. Const. amend. I. Through the Fourteenth Amendment, this prohibition also applies to the States. U.S. Const. amend. XIV. The First Amendment "creates both an affirmative right to speak and 'the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). In order to state a claim for retaliation, "Plaintiff must show: (1) that [his] speech was protected, (2) that the alleged retaliatory action adversely affected [his] protected speech, and (3) a causal relationship between [his] speech and the retaliatory action." *Deegan v. Moore*, Case No. 7:16cv00260, 2017 U.S. Dist. LEXIS 47335, at * (W.D. Va. Mar. 30, 2017) (Dillon, J.).

Despite the First Amendment's broad speech protections, "the fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views 'whenever and however and wherever they please.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (quoting *United States v. Grace*, 461 U.S. 171, 177–78 (1983)). In an educational context, schools may penalize offensive speech if it "would undermine the school's basic educational mission" of "inculcat[ing] the habits and manners of civility." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681, 686 (1986) (school was within its rights to penalize sexually explicit political speech because it was "offensive") ; *See Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 256 (4th Cir. 2003) ("[U]nder *Fraser*, there is no First Amendment protection for lewd, vulgar, indecent, and plainly offensive speech in school[.]"). "The undoubted freedom to advocate unpopular and controversial views in schools and classrooms must be balanced against the society's countervailing interest in

19

teaching students the boundaries of socially appropriate behavior." *Fraser*, 478 U.S. at 681. Even outside the classroom, "a democratic society requires consideration for the personal sensibilities of the other participants and audiences." *Id*. at 681–2 (implying that congressional rules "prohibiting the use of expressions offensive to other participants in the debate" were constitutional). Thus, "[n]othing in the Constitution prohibits the states from insisting that certain modes of expression are inappropriate and subject to sanctions." *Id*. at 683. Moreover, "[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board." *Id.*

In the instant case, Plaintiff's comments were offensive student speech. As the audio recording establishes, Plaintiff's words were openly hostile to the panel and their presentation. (Compl., Ex. 46.B.) He was critical of the responses he received, he interrupted the panelists, and he repeated the same question multiple times despite receiving clear answers. (*Id*.) His tone was argumentative, bordering on contemptuous, and most of his questions sounded rhetorical rather curious, as if he had posed them solely to expose the illegitimacy of the subject matter. (*Id*.) Under these circumstances, it is no surprise that Plaintiff's jarring tone and manner of expression drew notice from at least two faculty members, one of whom described Plaintiff as "antagonistic." (*Id.* ¶¶ 32, 34, 36.)

This was the kind of "offensive public discourse" that *Fraser* permits schools to sanction. *Id*. at 683. In *Fraser*, a high school was permitted to sanction a student for sexually explicit speech despite its underlying political content because the form and manner of the speech was offensive and inappropriate for a high school audience. *Fraser*, 478 U.S. at 685 (holding that the "School District acted entirely within its permissible authority in imposing sanctions" despite the fact that it was core political speech). Because Fraser's speech was not "socially appropriate" and did not

20

show "consideration for . . .the sensibilities of fellow students," it was not protected by the First Amendment. *Id*. at 681. As in *Fraser*, Plaintiff's remarks were not socially appropriate and failed to show consideration for the sensibilities of the panel members, the audience, and anyone who might listen to the recorded podcast. Thus, despite any underlying expressive value, the School was within its right to sanction Plaintiff's rude, disrespectful, and altogether unprofessional behavior.

What is more, the School's alleged sanction was unrelated to Plaintiff's viewpoint. In *Fraser*, the school's discipline was permissible because it was "unrelated to any political viewpoint" *Id*. at 685. Here, Plaintiff alleges facts that show the same is true of the School's alleged sanction. For one, the committee's November 15 letter of reprimand specifically acknowledged that Plaintiff was entitled to express his opinions, but counseled him to do so in respectful and "appropriate ways." (Compl. ¶ 80, Ex. 35.) In addition, neither the letter nor the November 14 meeting minutes referenced the substance of Plaintiff's remarks. (*See id*. ¶¶ 73, 80, Exs. 13, 35.) Plaintiff concedes this, alleging that "[t]here is no evidence from minutes by Ms. Yates that there was any amount of deliberation or discussion regarding the topic of microaggressions during the [November 14] meeting[.]" (*Id*. ¶ 73.) Because the committee's concerns evidently arose from the offensiveness of Plaintiff's expression rather than its content, the committee's alleged retaliatory action was permissible under *Fraser*. *See Hardwick v. Heyward*, 711 F.3d 426, 436, n. 10 (4th Cir. 2013) ("*Fraser* limits the form and manner of speech, but does not address the content of the message.") (quoting *Newsom*, 354 F.3d at 256).

Finally, the School's interest in sanctioning offensive speech aligns with the values of a civil society that the Supreme Court extolled in *Fraser*. *See id*., 478 U.S. at 681. Training medical students in professionalism is important because the responsibilities of a practicing physician demand it. (*See* Compl., Ex. 7.) Especially because it is a highly valued profession, respectful

communication in the practice of medicine is no less essential for a civil society than in the halls of Congress or a public high school. *See id.* at 681–85. If medical schools were not permitted to discipline students like Plaintiff for their poor communication skills, the State would be severely handicapped in its effort to train competent physicians, which would in turn jeopardize the high standard of medical care that Virginia residents currently enjoy. Thus, because professionalism is so important to medical training, the School's educational mission compelled it censure Plaintiff for his disrespectful comments. *See id.* at 685 ("[T]o permit a vulgar and lewd speech such as respondent's would undermine the school's basic educational mission.")

In sum, Plaintiff's offensive student speech was not protected by the First Amendment, so Defendant was entitled to sanction it. And because Plaintiff cannot show that his speech was protected, he cannot state a valid claim to relief under the First Amendment.

2. <u>Plaintiff has not established a causal connection between the alleged retaliatory action and Plaintiff's speech.</u>

Even if Plaintiff could establish that his speech was constitutionally protected, his claim still fails because he has not established causation. Plaintiff "'must allege a causal connection between [his] First Amendment activity and the alleged adverse action' in order to survive a motion to dismiss." *Deegan v. Moore*, Case No. 7:16-cv-00260, 2017 U.S. Dist. LEXIS 47335, at *22 (W.D. Va. Mar. 30, 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). This causal requirement is "rigorous." *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990).

Here, Plaintiff's sparse allegations are insufficient to establish a causal connection between the requirement that Plaintiff undergo a psychological evaluation and Plaintiff's comments during the October 25 panel discussion. The only exhibits that mention the mandatory evaluation are the November 26 and 27 emails that Plaintiff received from Dr. Densmore and Dr. Canterbury. (*See*

22

Compl., Exs. 36, 40.)  In the November 26 email, Dr. Densmore noted that Plaintiff was absent from school for some period of time, that the Dean of Students Office knew about Plaintiff's absence, and that Plaintiff could not return to class until he saw a professional counselor.  (*Id.*, Ex. 36.)  In addition, the subject of Dr. Canterbury's November 27 email referenced a "[r]equired process to attend class" and stated that Plaintiff must be medically cleared to attend class in the wake of his absence.  (*Id.*, Ex. 40.)  Neither of these emails made reference to the October 25 panel discussion incident and the context is entirely different.  (*Id.*, Exs. 36, 40.)  Because the emails focus on Plaintiff's unexplained absence from School, it is much more likely that other factors were at play besides Plaintiff's inappropriate comments one month earlier.

In addition, the ASAC had already responded to the October 25 incident and Plaintiff makes no attempt to explain why the School would suddenly change its response two weeks later.  By all appearances, the committee's November 15 letter to Plaintiff was the formal response to Plaintiff's inappropriate behavior during the October 25 panel discussion.  (*See* Compl., Exs. 13, 35.)  The letter merely reminded Plaintiff to express himself respectfully and recommended counseling as a possible tool to improve Plaintiff's communication skills.  (*Id.*, Ex. 35.)  The letter did not mandate counseling as a condition to attend classes, nor did it threaten adverse consequences if Plaintiff did not follow through with counseling.  (*Id.*)  It is unlikely that the ASAC would later amplify its remedial action for no apparent reason, and the Complaint contains no facts to explain this alleged about-face.  Similarly, as the ASAC is responsible for addressing professionalism issues at the School, it is not reasonable to assume that the School would end-run the committee's decision in separate action responding to the same professionalism concern.  (*See* ASAC Operating Procedures, *Id.*, Ex. 14.)  Rather, it is much more likely that Plaintiff has simply omitted facts from the

Complaint that explain why the School required mandatory counseling, and that it was unrelated to Plaintiff's comments one month earlier.

In short, the Complaint does not causally tie the mandatory psychological evaluation to Plaintiff's behavior during the panel discussion. Plaintiff cannot circumvent the pleading standard by strategically omitting relevant facts and then asking the Court to draw unwarranted inferences from the Complaint. *See Sims v. Clarke*, Civ. Action No. 7:18-cv-00444, 2019 U.S. Dist. LEXIS 200994, at *4 (W.D. Va. Nov. 20, 2019) (Dillon, J.) ("A court need not accept as true a complaint's legal conclusions, 'unwarranted inferences, unreasonable conclusions, or arguments.'" (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008))). Thus, even drawing all reasonable inferences in Plaintiff's favor, the pleading is not sufficient to establish a causal connection between Plaintiff's speech and the alleged retaliatory action and this claim should be dismissed. As with the due process claim and based on the existing pleading, it would be futile for Plaintiff to attempt to save his claim through amendment, so the claim should be dismissed without leave to amend.

## CONCLUSION

There are numerous reasons why this action should be dismissed, not least of which because it is jurisdictionally barred by the Eleventh Amendment under Rule 12(b)(1). For that reason alone, this action should be dismissed in its entirety. In addition, Plaintiff has failed to satisfy critical elements of his First and Fourteenth Amendment claims, which are the only two claims in the Complaint. First, Plaintiff has not alleged the deprivation of a constitutionally protected interest, which is a mandatory threshold showing for a § 1983 claim. Second, the Complaint's 168 paragraphs and 56 exhibits affirmatively establish that Defendant's alleged actions did not and could not have violated Plaintiff's constitutional rights. Thus, Plaintiff has failed to state a claim to relief under Rule 12(b)(6). Wherefore, and for all of the above reasons, Defendant respectfully asks

24

the Court to dismiss this action. Defendant also asks the Court to deny leave to amend as amendment would simply be futile.

Respectfully submitted,

**RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA**

_____/s/ Madeline M. Gibson_____
Madeline M. Gibson (VSB No. 87561)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0551
Facsimile: (804) 371-2087
Email: mgibson@oag.state.va.us

MARK R. HERRING
Attorney General of Virginia

SAMUEL T. TOWELL
Deputy Attorney General

MARSHALL H. ROSS
Acting Trial Section Chief

*Counsel for the Rector and Visitors of the University of Virginia*

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and will deliver the foregoing via First Class U.S. Mail, postage prepaid, to the following pro se plaintiff and non-CM/ECF user:

Kieran Ravi Bhattacharya
70 Hale Pili Way
Haiku, HI 96708

*/s/ Madeline M. Gibson*
Madeline M. Gibson (VSB No. 87561)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0551
Facsimile: (804) 371-2087
Email: mgibson@oag.state.va.us

*Counsel for the Rector and Visitors of the University of Virginia*