**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:19-CV-00054-NKM-JCH |
| | ) | |
| | ) | |
| JAMES B. MURRAY, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, by counsel, submit this Answer to Plaintiff's First Amended Complaint as follows:

1.      In response to paragraph 1, Defendants deny any constitutional wrongdoing by Defendants or the University of Virginia ("University"). Defendants admit the remaining factual allegations.

2.      Paragraph 2 contains legal conclusions to which Defendants need not respond. To the extent the paragraph contains factual allegations, they are denied.

3.      In response to paragraph 3, Defendants admit that, in October 2018, Plaintiff was enrolled in the University of Virginia School of Medicine ("Medical School") as a second-year medical student in good academic standing. Defendants also admit that, on October 25, 2018, Plaintiff attended a panel discussion on microaggression ("panel discussion") held by the University's newly formed chapter of the American Medical Women's Association ("AMWA") and that Plaintiff posed questions and made comments during the panel discussion. Defendants further admit to the contents of a website posting by the AMWA. Defendants deny all remaining

allegations and specifically deny that Plaintiff was retaliated against for the content of his questions and comments at the panel discussion. Defendants further aver that if Plaintiff is unable to pursue his chosen career in medicine, which Defendants do not admit, it is due to Plaintiff's own actions and behaviors, and not due to his exercise of his First Amendment rights or the actions of Defendants.

4.      In response to paragraph 4, Defendants admit that Defendants Sara Rasmussen and Nora Kern served as panelists at the panel discussion but deny that they organized it. Defendants also deny the characterization of Drs. Rasmussen and Kern as "co-conspirators." Defendants admit that one of the presenters at the panel discussion was Beverly Colwell Adams, Ph.D., and that Plaintiff posed questions and made comments to Dr. Adams during the presentation. Defendants admit that Dr. Kern described Plaintiff's manner of speaking during the panel discussion as "antagonistic" in a professionalism concern card and deny Plaintiff's contrary characterizations. Defendants deny Plaintiff's characterizations of Dr. Rasmussen's behavior or her manner of speaking during the panel discussion. Defendants need not respond to the remaining allegations because they are legal conclusions. Defendants aver that the audio recording of the panel discussion speaks for itself, and to the extent Plaintiff attempts to characterize the conversation between himself and the panel, those allegations are denied. Defendants further aver that Plaintiff was provided over five minutes of discussion time with the panel during a limited time period for audience questions.

5.      In response to paragraph 5, Defendants categorically deny ever attempting to silence or punish anyone for their views on microaggression and again deny the characterization of Dr. Rasmussen's speech during the panel discussion. Defendants admit that Dr. Kern submitted a professionalism concern card but deny the characterization of Dr. Kern as a co-

conspirator and deny the characterization of her concern card as "surreptitious." Defendants deny

the characterization of Defendant Christine Peterson as a co-conspirator and that school policy or

procedure required Dean Peterson to disclose Dr. Kern's professionalism concern card to

Plaintiff. Defendants admit Dean Peterson arranged a meeting with Plaintiff to discuss the

unintended consequences of conversations but deny Plaintiff's interpretation of what Dean

Peterson meant by "unintended consequences" and deny that Plaintiff ever faced discipline

because of the content of Plaintiff's speech at the panel discussion. Defendants admit that Dean

Peterson attended two meetings of the Academic Standards and Achievement Committee

("Committee" or "ASAC") as a guest but deny that Dean Peterson participated in those

meetings.

      6.      In response to paragraph 6, Defendants admit the Committee held a regularly

scheduled meeting on November 14, 2018 but deny the meeting was "secret." Defendants also

deny that the meeting was called solely to consider Dr. Kern's professionalism concern but admit

the Committee considered the concern card along with other matters. Defendants admit that

Dean Peterson attended the meeting as a guest and that Dr. Kern attended as a member.

Defendants also admit that the Committee did not provide Plaintiff prior notice of the meeting,

which it was not required to do, and that the Committee did not listen to the audio recording of

the panel discussion during the meeting. Defendants further admit that the Committee relied on

Dr. Kern's concern card during the meeting.

      7.      In response to paragraph 7, Defendants admit that the Committee's November 15,

2018 letter contained the quoted language reminding Plaintiff to communicate his opinions in a

respectful manner but deny that the letter's recommendation to consider counseling was

mandatory. Defendants admit a November 26, 2018 email was sent from the Medical School

directing Plaintiff to undergo a psychological evaluation before returning to class but deny that the email was related to or triggered by Plaintiff's speech at the panel discussion. Instead, it was triggered by events including but not limited to: a November 14, 2018 meeting between Plaintiff and John Densmore at which Plaintiff's behavior was erratic and troubling, to the point that Dean Densmore was sufficiently concerned about Plaintiff's health and welfare that he accompanied him to the University's counseling center; Plaintiff's involuntary admission to the hospital thereafter; a later meeting between Dean Densmore and Plaintiff during which Plaintiff's behavior was extremely erratic, aggressive, and concerning, to the point that Dean Densmore had to call the police; another involuntary hospitalization of Plaintiff; and the issuance of a restraining order against Plaintiff with respect to his girlfriend, who was also a Medical School student. The Medical School could not in good conscience permit the return of a student who posed a potential threat to fellow students and faculty without further evaluation and information. Defendants admit Plaintiff received a second email from the Medical School on November 27, 2018, stating that he could not resume classes until he underwent a psychological evaluation and received medical clearance.

8.      In response to paragraph 8, Defendants admit that the ASAC met again on November 28, 2018, that Plaintiff received correspondence dated November 29, 2018, and that the correspondence contained, in part, the quoted information. Defendants further admit that, approximately one month later, upon consideration of all information available to it, the University's Threat Assessment Team made a decision to issue a no trespass warning to Plaintiff for a four-year period, which resulted in an inability for him to appeal his suspension. Defendants categorically deny that the content of Plaintiff's speech at the panel discussion caused Plaintiff's suspension or ban from grounds.

9.      In response to paragraph 9, Defendants admit that Plaintiff was a student at the Medical School before his suspension. Defendants lack sufficient information to admit or deny Plaintiff's current residence.

10.     Defendants admit the allegations in paragraph 10.

11.     Defendants admit the allegations in paragraph 11.

12.     Defendants admit the allegations in paragraph 12.

13.     Defendants admit the allegations in paragraph 13.

14.     Defendants admit the allegations in paragraph 14.

15.     Defendants admit the allegations in paragraph 15.

16.     Defendants admit the allegations in paragraph 16.

17.     Defendants admit the allegations in paragraph 17.

18.     In response to paragraph 18, Defendants admit that Dean Densmore and Dr. Tucker are members of the Medical School faculty. In his capacity as Associate Dean for Admissions and Student Affairs, Dean Densmore serves on the administration of the Medical School and is therefore generally responsible for the adoption and enforcement of policies applicable to medical students. As Chair of the ASAC, Dr. Tucker is responsible for enforcing educational and professional standards, including those contained in the Policy on Academic and Professional Advancement. Defendants deny all remaining allegations.

19.     Defendants admit the allegations in paragraph 19 but deny damages are available to Defendants sued in their official capacity.

20.     Defendants admit the allegations in paragraph 20.

21.     Defendants admit the allegations in paragraph 21.

22.     Defendants deny the allegations in paragraph 22.

23.     Defendants deny the allegations in paragraph 23.

24.     In response to paragraph 24, Defendants deny the characterization of any Defendants as co-conspirators. Defendants admit that the Medical School policies and procedures that apply to faculty members also apply to the faculty Defendants. All other allegations in paragraph 24 are denied.

25.     Defendants deny the allegations in paragraph 25.

26.     Defendants deny the allegations in paragraph 26.

27.     In response to paragraph 27, Defendants deny the characterization of any Defendants as co-conspirators. Defendants admit the official capacity in which Dean Peterson, Dr. Kern, and Dr. Rasmussen are sued but deny that damages are available in an official capacity suit.

28.     In response to paragraph 28, Defendants deny the characterization of Dean Peterson, Dr. Kern, and Dr. Rasmussen as co-conspirators. Defendants admit those Defendants are sued in their individual capacity.

29.     Defendants need not respond to the allegations in paragraph 29 because they are legal conclusions.

30.     Defendants need not respond to the allegations in paragraph 30 because they are legal conclusions.

31.     Defendants need not respond to the allegations in paragraph 31 because they are legal conclusions.

32.     Defendants need not respond to the allegations in paragraph 32 because they are legal conclusions.

33.     Defendants admit the allegations in paragraph 33.

34.     Defendants admit the allegations in paragraph 34.

35.     In response to paragraph 35, Defendants admit the allegations about Plaintiff's student performance evaluations ("SPEs") during his team-based learning ("TBL") exercises but lack sufficient information to admit or deny the number of students on Plaintiff's team.

36.     Defendants admit the allegations in paragraph 36.

37.     In response to paragraph 37, Defendants admit that Plaintiff completed the fall 2016 semester at the Medical School in good academic standing as a member of the Class of 2020.

38.     In response to paragraph 38, Defendants admit that Plaintiff began the spring 2017 semester at the Medical School but lack sufficient information to admit or deny Plaintiff's precise start date.

39.     Defendants admit the allegations in paragraph 39.

40.     Defendants lack sufficient information to form a belief about the truth or falsity of the allegations in paragraph 40.

41.     In response to paragraph 41, Defendants admit that Plaintiff resumed classes at the Medical School in the spring 2018 semester but lack sufficient information to admit or deny Plaintiff's precise start date.

42.     In response to paragraph 42, Defendants admit the allegations about the SPEs that Plaintiff received but lacks sufficient information to admit or deny the number of students on Plaintiff's TBL team.

43.     Defendants admit the allegations in paragraph 43.

44.     In response to paragraph 44, Defendants deny the characterization of a professionalism concern card as a "punitive administrative action" to address "misconduct."

Defendants admit that a professionalism concern card may be issued for an unexcused absence or a breach of professionalism and aver that the language quoted from the Policy on Academic and Professional Advancement speaks for itself.

45.     Defendants admit the allegations in paragraph 45.

46.     Defendants lack sufficient information to admit or deny the allegations in paragraph 46.

47.     Defendants lack sufficient information to admit or deny the allegations in paragraph 47.

48.     Defendants lack sufficient information to admit or deny the allegations in paragraph 48.

49.     Defendants lack sufficient information to admit or deny the allegations in paragraph 49.

50.     Defendants lack sufficient information to admit or deny the allegations in paragraph 50.

51.     In response to paragraph 51, Defendants admit that Plaintiff finished the spring 2018 semester in good standing as a member of the Class of 2021 but lack sufficient information to admit or deny the precise date that Plaintiff completed the semester.

52.     In response to paragraph 52, Defendants admit that Plaintiff began the fall 2018 semester as a member of the Class of 2021 but lack sufficient information to admit or deny the precise date Plaintiff began the semester.

53.     Defendants admit the allegations in paragraph 53.

54.     In response to paragraph 54, Defendants admit to the title of the October 25, 2018 panel discussion and the quoted description of the event. Defendants deny that the description conflates "microaggression" with "gender harassment" and "gender inequity."

55.     In response to paragraph 55, Defendants admit that a panel member called on Plaintiff to pose a question following Professor Adams' remarks. Defendants deny all remaining allegations and characterizations.

56.     In response to paragraph 56, Defendants admit that Plaintiff asked an initial series of four questions at the panel discussion as generally reflected in Plaintiff's transcription but deny that the transcription is accurate and aver that the recording of the event speaks for itself.

57.     In response to paragraph 57, Defendants admit that Professor Adams provided logical and complete answers to Plaintiff's first three questions, that Dr. Rasmussen answered Plaintiff's final question, and that Dr. Rasmussen's answer included anecdotes about microaggressions she encountered when she was growing up. Defendants deny the remaining allegations.

58.     In response to paragraph 58, Defendants admit that Dr. Rasmussen's response to Plaintiff is generally reflected in Plaintiff's transcription but deny that the transcription is complete or accurate and aver that the recording of the event speaks for itself. Defendants deny that Dr. Rasmussen did not answer Plaintiff's question or prevented Dr. Adams from doing so.

59.     Defendants admit the allegations in paragraph 59.

60.     In response to paragraph 60, Defendants admit that Dr. Rasmussen made the quoted statements and that she called on another student to ask a question rather than permit Plaintiff to interrupt and speak over her or monopolize the limited time set aside for questions from the audience. Defendants deny the characterization of Dr. Rasmussen's tone.

9

61.     Defendants deny the allegations in paragraph 61.

62.     In response to paragraph 62, Defendants admit that Dr. Kern submitted a professionalism concern card regarding Plaintiff's behavior during the panel discussion, that Dean Peterson sent Plaintiff emails resulting in an October 31, 2018 meeting, that Dr. Kern participated in the November 14 and 28, 2018 ASAC meetings, and that Dean Peterson attended those meetings as a guest. Defendants deny that any of those acts furthered a conspiracy, that any conspiracy existed, and deny all remaining allegations.

63.     In response to paragraph 63, Defendants admit that Dean Peterson sent Plaintiff an email on October 25, 2018 containing the quoted language. Defendants deny that Dean Peterson sent the email in furtherance of a conspiracy.

64.     In response to paragraph 64, Defendants deny that Dean Peterson's October 25, 2018 email was the first time she had direct contact with Plaintiff. Defendants also deny that Dean Peterson and Dr. Rasmussen ever communicated about Plaintiff or the panel discussion. Defendants admit that Dean Peterson communicated with Dr. Kern about Plaintiff's behavior at the panel discussion but lack sufficient information to admit or deny whether Dean Peterson communicated with anyone else about the subject.

65.     Defendants admit the allegations in paragraph 65.

66.     Defendants admit the allegations in paragraph 66 but deny any implication of conspiracy between Dr. Kern and Dean Peterson.

67.     Defendants admit the allegations in paragraph 67.

68.     Defendants admit the allegations in paragraph 68.

69.     In response to paragraph 69, Defendants admit to the contents of Dr. Kern's professionalism concern card but deny the remaining allegations about the card's disclosure and

use. Defendants lack sufficient information to admit or deny when Plaintiff received a copy of the concern card.

70.     In response to paragraph 70, Defendants lack sufficient information to admit or deny Plaintiff's recollection. Defendants admit the remaining allegations.

71.     Defendants admit the allegations in paragraph 71.

72.     Defendants admit the allegations in paragraph 72.

73.     In response to paragraph 73, Defendants admit to the date and time of the October 31, 2018 meeting between Plaintiff and Dean Peterson and that Dean Peterson did not discuss Dr. Kern's professionalism concern card. Defendants deny the remaining allegations.

74.     In response to paragraph 74, Defendants admit that Dean Densmore met with Plaintiff on November 1, 2018 in Dean Densmore's office buck lack sufficient information to admit or deny the duration or scope of the meeting.

75.     In response to paragraph 75, Defendants admit that Dean Densmore did not discuss Dr. Kern's professionalism concern card with Plaintiff during the November 1, 2018 meeting and that Dean Densmore informed Plaintiff that he was aware of Plaintiff's meeting with Dean Peterson the day before. Defendants lack sufficient information to admit or deny the remaining allegations.

76.     In response to paragraph 76, Defendants admit that Plaintiff had two professionalism concern cards in his medical student file as of November 1, 2018. Defendants also admit that the individuals who submitted the concern cards did not report feeling uncomfortable discussing their concerns with Plaintiff and that neither individual personally reported the concern cards to Plaintiff. Defendants deny all remaining allegations.

77.     In response to paragraph 77, Defendants admit to holding a regularly scheduled ASAC meeting on November 14, 2018, during which the Committee discussed Dr. Kern's professionalism concern card in addition to multiple other Committee matters. Defendants deny that the concern card was the reason the ASAC convened that day. Defendants lack sufficient information to admit or deny Plaintiff's knowledge of the ASAC meeting.

78.     Defendants admit the allegations in paragraph 78.

79.     In response to paragraph 79, Defendants deny the characterization of Dr. Kern as a co-conspirator and deny any implication of wrongdoing by Dr. Kern or the other Defendants. Defendants admit the remaining allegations.

80.     Defendants admit the allegations in paragraph 80.

81.     In response to paragraph 81, Defendants admit that Plaintiff did not have prior contact with Dr. Tucker or Dr. Kern but lack sufficient information to admit or deny whether Plaintiff had prior contact with the other voting members of the ASAC.

82.     Defendants admit the allegations in paragraph 82.

83.     Defendants lack sufficient information to form a belief about the truth or falsity of the allegations in paragraph 83.

84.     In response to paragraph 84, Defendants admit all allegations except the roles of David Charles Lewis, who now serves as "IT Analyst Staff Specialist, BI Developer," and Lynne Fleming, who no longer serves as legal counsel to the University of Virginia.

85.     In response to paragraph 85, Defendants deny that Plaintiff's prior communication with Dean Peterson was limited to communications about and during the October 31, 2018 meeting. Defendants lack sufficient information to admit or deny whether

12

Plaintiff previously communicated with the other guests at the November 14, 2018 ASAC meeting.

86.     Defendants admit the allegations in paragraph 86.

87.     In response to paragraph 87, Defendants admit that the language quoted in paragraph 86 was taken from Dr. Kern's professionalism concern card regarding Plaintiff's behavior at the October 25, 2018 panel discussion.

88.     Defendants deny that Dr. Kern was required to abstain from voting. Defendants admit the allegations in paragraph 88.

89.     Defendants admit the allegations in paragraph 89.

90.     Defendants admit the allegations in paragraph 90.

91.     Defendants admit the allegations in paragraph 91.

92.     In response to paragraph 92, Defendants admit that the ASAC minutes do not reflect a recommendation that Plaintiff consider counseling. All other allegations in paragraph 92 are denied.

93.     In response to paragraph 93, Defendants admit that Dr. Tucker's November 15, 2018 correspondence did not specifically reference Professor Kern.

94.     In response to paragraph 94, Defendants admit that Dr. Tucker's November 15, 2018 correspondence did not specifically reference Professor Kern.

95.     Defendants lack sufficient information to admit or deny the allegations in paragraph 95.

96.     Defendants admit the allegations in paragraph 96.

97.     Defendants admit the allegations in paragraph 97.

98.    In response to paragraph 98, Defendants admit Dean Densmore received an email from Plaintiff containing the quoted language on November 27, 2018. Defendants lack sufficient information to admit or deny the remaining allegations about the Foundation for Individual Rights in Education.

99.    In response to paragraph 99, Defendants admit that Dr. Canterbury sent Plaintiff an email on November 27, 2018 containing the quoted language and admit Dr. Canterbury's role at the University of Virginia. Defendants deny Plaintiff's speculative allegation about the Medical School's views on free speech rights.

100.    Defendants deny the allegations in paragraph 100.

101.    Defendants admit the allegations in paragraph 101.

102.    In response to paragraph 102, Defendants admit the contents of Plaintiff's email reply to Katherine Yates on November 28, 2018. Defendants deny Plaintiff's characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing" and lack sufficient information to admit or deny the remaining allegations.

103.    In response to paragraph 103, Defendants admit the date, time, and content of Ms. Yates' email reply to Plaintiff, which contained links to information about the ASAC. Defendants lack sufficient information to admit or deny the remaining allegations.

104.    Defendants deny the allegations in paragraph 104.

105.    Defendants deny the allegations in paragraph 105.

106.    Defendants deny the allegations in paragraph 106.

107.    Defendants deny the allegations in paragraph 107.

108.    In response to paragraph 108, Defendants deny the characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing" and lack sufficient information to admit or deny the remaining allegations.

109.    In response to paragraph 109, Defendants deny the characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing" and lack sufficient information to admit or deny the remaining allegations.

110.    In response to paragraph 110, Defendants deny the characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing" and admit the remaining allegations.

111.    Defendants deny the allegations in paragraph 111.

112.    Defendants admit the allegations in paragraph 112 but deny the characterization of Dr. Kern as "Individual Co-Conspirator" and deny the characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing."

113.    In response to paragraph 113, Defendants admit the allegations regarding three of the voting members who were present at the November 28, 2018 ASAC meeting, deny the characterization of the meeting as a "disciplinary hearing," and lack sufficient information to admit or deny Plaintiff's prior contact with those voting members.

114.    In response to paragraph 114, Defendants deny the characterizations of Dean Peterson as "Individual Co-Conspirator" and of the November 28, 2018 ASAC meeting as a "disciplinary hearing." Defendants admit the remaining allegations.

115.    In response to paragraph 115, Defendants deny the characterization of the November 28, 2018 ASAC meeting as a "disciplinary hearing" and admit the remaining allegations.

116.    Defendants admit the allegations in paragraph 116.

117.    Defendants admit the allegations in paragraph 117.

118.    In response to paragraph 118, Defendants lack sufficient information to admit or deny what kind of written notice Plaintiff received before November 29, 2018 about his aggressive and inappropriate interactions in public settings. Defendants admit that the November 29, 2018 ASAC letter does not provide detail about those occurrences.

119.    In response to paragraph 119, Defendants admit that Dr. Kern and Dean Peterson were present for the November 14, 2018 ASAC meeting, that Dean Peterson was present for the entire November 28, 2018 meeting, and that Dr. Kern was present for part of the November 28, 2018 meeting. Defendants deny all remaining allegations and affirmatively aver that it was Plaintiff who was focused on his behavior at the panel discussion, refusing to discuss any of the other concerning behavior, of which he was well aware, to include his two hospitalizations, his interactions with John Densmore, and the restraining order that his girlfriend obtained against him.

120.    Defendants deny the allegations in paragraph 120.

121.    Defendants deny the allegations in paragraph 121.

122.    In response to paragraph 122, Defendants admit the option to appeal contained in the November 29, 2018 ASAC letter. Defendants deny the remaining allegations.

123.    Defendants admit the allegations in paragraph 123.

124.    In response to paragraph 124, Defendants deny the allegations about former legal counsel Lynne Fleming and lack sufficient information to admit or deny the allegations about Secure Drop.

125.    Defendants deny the allegations in paragraph 125.

126.     Defendants lack sufficient information to admit or deny the allegations in paragraph 126.

127.     In response to paragraph 127, Defendants admit that now-Deputy Chief of Police Melissa Fielding called Plaintiff on December 30, 2018 to inform him that the University Police Department was issuing him a no trespass warning. Defendants deny the remaining allegations.

128.     In response to paragraph 128, Defendants admit that Deputy Chief Fielding sent a letter to Plaintiff on or around January 2, 2019 attaching a no trespass warning that was issued by the University Police Department and contained the quoted information without further elaboration.

129.     Defendants admit the allegations in paragraph 129.

130.     Defendants deny the allegations in paragraph 130.

131.     In response to paragraph 131, Defendants admit that Deputy Chief Fielding sent Plaintiff an email on January 15, 2019 containing, in part, the quoted information.

132.     Defendants admit the allegations in paragraph 132.

133.     Defendants admit the allegations in paragraph 133.

134.     In response to paragraph 134, Defendants deny that Deputy Chief Fielding spoke with Plaintiff by phone in July 2019 but admit that Plaintiff sent Deputy Chief Fielding an email on July 13, 2019 containing the quoted information.

135.     Defendants admit the contents of Deputy Chief Fielding's July 18, 2019 email to Plaintiff but lack sufficient information to admit or deny whether the University Police Department provided additional details.

136.     Defendants admit the allegations in paragraph 136.

137.    In response to paragraph 137, Defendants lack sufficient information to admit or deny the allegations regarding Plaintiff's appeal and the University's communications with Plaintiff about the basis for the no trespass warning. The remaining allegations are legal conclusions to which Defendants need not respond. To the extent they contain factual allegations, they are denied.

138.    In response to Paragraph 138, Defendants admit the duration of the no trespass warning and the quoted contents of the Policy on Academic and Professional Advancement. Defendants lack sufficient information to admit or deny the remaining allegations regarding Plaintiff's medical education.

139.    In response to paragraph 139, Defendants incorporate by reference their answers to paragraphs 1 through 138.

140.    Defendants need not respond to the allegations in paragraph 140 because they are legal conclusions. To the extent the paragraph contains factual allegations, they are denied.

141.    Defendants need not respond to the allegations in paragraph 141 because they are legal conclusions.

142.    Defendants need not respond to the allegations in paragraph 142 because they are legal conclusions. To the extent the paragraph contains factual allegations, they are denied.

143.    Defendants need not respond to the allegations in paragraph 143 because they are legal conclusions.

144.    Defendants need not respond to the allegations in paragraph 144 because they are legal conclusions. Defendants specifically deny any admission as alleged in the paragraph.

145.    Defendants need not respond to the allegations in paragraph 145 because they are legal conclusions.

146.     Defendants need not respond to the allegations in paragraph 146 because they are legal conclusions.

147.     Defendants need not respond to the allegations in paragraphs 147-165 because the Court dismissed Counts II, III, and IV with prejudice in a March 31, 2021 Order. Dkt. No. 130. To the extent those paragraphs or unnumbered statements contain factual allegations that require a response, the allegations are denied.

148.     Defendants deny the allegations in the "Prayer for Relief" paragraph, and specifically deny Defendants are liable to Plaintiff for any reason, in any amount, or upon any theory of liability or damages.

149.     Defendants deny any and all allegations and legal conclusions in the Complaint that Defendants have not expressly and previously admitted, *supra*, and to the extent any further response may be required.

### **AFFIRMATIVE DEFENSES**

1.     Plaintiff fails to state a First Amendment claim against Defendants in Count I for free speech retaliation under 42 U.S.C. § 1983.

2.     Defendants assert that any and all acts of which Plaintiff complains were at all times constitutional, and lawful.

3.     Defendants assert that Plaintiff has suffered no violation of any constitutional right under the First Amendment to the United States Constitution.

4.     Dr. Rasmussen, Dr. Kern, and Dean Peterson are entitled to qualified immunity.

5.     Defendants' acts were justified based on Plaintiff's conduct and are legally excused.

6.     Defendants acted in good faith.

7.      Defendants deny that Plaintiff has sustained any damages as alleged and demands strict proof of any such damages.

8.      Defendants who are not sued in their individual capacity are entitled to Eleventh Amendment immunity from Plaintiff's damages claims.

Defendants reserve the right to amend the responses in this Answer and to set forth any additional defenses that may come to light or otherwise reveal themselves in the course of litigation, including during discovery and at trial.

WHEREFORE, Defendants request that this Court dismiss this action with prejudice and award him any other relief deemed appropriate under the circumstances, including attorney's fees, costs, and expenses as a prevailing party under 42 U.S.C. § 1988, pursuant to Federal Rule of Civil Procedure 11, and as otherwise deemed or proven appropriate.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

*/s/ Madeline M. Gibson*

| | |
|---|---|
| MARK R. HERRING<br>Attorney General of Virginia | Madeline M. Gibson (VSB No. 87561)<br>Calvin C. Brown (VSB No. 93192)<br>Assistant Attorneys General |
| SAMUEL T. TOWELL<br>Deputy Attorney General | Office of the Virginia Attorney General<br>202 North 9th Street<br>Richmond, Virginia 23219 |
| MARSHALL H. ROSS<br>Senior Assistant Attorney General/<br>Trial Section Chief | Telephone:  (804) 692-0551<br>Facsimile:   (804) 371-2087<br>mgibson@oag.state.va.us<br>cbrown@oag.state.va.us<br>*Counsel for Defendants* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of April, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will deliver a notice of electronic filing to all counsel of record in this case.

*/s/ Madeline M. Gibson*
Madeline M. Gibson (VSB No. 87561)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:  (804) 692-0551
Facsimile:  (804) 371-2087
Email: mgibson@oag.state.va.us

*Counsel for Defendants*
