IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 3:19-CV-00054 |
| JAMES B. MURRAY, JR., et. al., | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT**

Plaintiff Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully states as follows for his reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File the Second Amended Complaint (Dkt. #154)[1] ("Defendants' Opposition").

### I.     PRELIMINARY STATEMENT

When Mr. Bhattacharya dared to question the theories of "microaggression" espoused at an extracurricular panel discussion on October 25, 2018, UVA Med School mobilized to brand him as lacking "professionalism" for exercising his First Amendment rights. Mr. Bhattacharya's questions and comments at the panel discussion were the sole basis for the "Professionalism Concern Card" that was surreptitiously lodged in his medical student file that same day. (FAC ¶¶ 30, 32, 34, 38, 43, 45, 46, 56, 165; SAC ¶¶ 3, 4, 7, 8, 9, 72, 73). Mr. Bhattacharya's expression of opinions with which other UVA Med School students, faculty members, and administrators disagreed was also the only

---

[1] The First Amended Complaint (Dkt. #33) (cited as "FAC") was filed by consent after counsel entered an appearance on behalf of Mr. Bhattacharya, who was previously proceeding pro se. The proposed Second Amended Complaint (Dkt. #149-1) is cited herein as "SAC."

1

stated basis for the November 15, 2018 admonition from the Academics Standards and Achievement Committee ("ASAC") that he needed to "show mutual respect to all," "express [his opinions] in appropriate ways," and "consider getting counseling" to improve his communication skills. (FAC ¶¶ 80, 81, 82, 83; SAC ¶ 11.) When ASAC hauled Mr. Bhattacharya into a meeting on November 28, 2018 on a few hours' notice to discuss his "continued enrollment status," the only specific acts discussed were his questions and comments at the microaggression panel discussion—along with his efforts to defend himself that day. (FAC ¶¶ 94, 96, 104, 105, 109, 163, 164, 165; SAC ¶¶ 140, 141.) The November 29, 2018 suspension of Mr. Bhattacharya from UVA Med School cited only two specific "interactions"—"during a speaker's lecture" and "during the committee meeting yesterday"—that supposedly violated UVA Med School's "Technical Standards." (FAC ¶¶ 124, 125, 127, 128, 130; SAC ¶¶ 150, 152, 153, 154, 156, 172.)

In denying Defendants' Rule 12(b)(6) Motion to Dismiss Count I of the First Amended Complaint, the Court found sufficient factual allegations to establish that Mr. Bhattacharya's "questions and comments at the microaggression panel were protected speech" and that "[h]is expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive." (Dkt. #129) (p. 20 of 39). The Court similarly found that Mr. Bhattacharya's "expressions at the ASAC suspension hearing were protected speech" and that "[h]is expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive." (Dkt. #129) (p. 21 of 39).

Faced with a *prima facie* claim for violation of 42 U.S.C. § 1983, Defendants changed their story—dramatically, to say the least. Defendants now deny that Mr. Bhattacharya's suspension from UVA Medical School, the subsequent "No Trespass Order" that prevented Mr. Bhattacharya from appealing his suspension, and the related conduct at issue were the result of Mr. Bhattacharya's

4835-0787-8384.3

questions and comments at the AMWA Microaggression Panel Discussion. "Instead," according to Defendants' Answer, the conduct of which Mr. Bhattacharya complains "was triggered by events including but not limited to" the following:

> November 14, 2018 meeting between Plaintiff and John Densmore at which Plaintiff's behavior was erratic and troubling, to the point that Dean Densmore was sufficiently concerned about Plaintiff's health and welfare that he accompanied him to the University's counseling center; Plaintiff's involuntary admission to the hospital thereafter; a later meeting between Dean Densmore and Plaintiff during which Plaintiff's behavior was extremely erratic, aggressive, and concerning, to the point that Dean Densmore had to call the police; another involuntary hospitalization of Plaintiff; and the issuance of a restraining order against Plaintiff with respect to his girlfriend, who was also a Medical School student.

(Dkt. #135) (p. 4 of 21.)

This dramatic shift in Defendants' story prompted the need for Mr. Bhattacharya to amend his pleading to show that the events that UVA Med School now claims were the *real* reason for his suspension were contrived by Dean Densmore, Dean Peterson, and Angel Hsu to try to justify the suspension that was soon to occur. For example, the CAPS report of Mr. Bhattacharya's November 14, 2018 "counseling" session cites information that Dean Densmore had provided in advance that "Kieran attended a panel regarding microaggressions and many concerns were raised by the panelists and others in attendance that Kieran was confrontational" and about "his girlfriend." (SAC ¶ 167.) These facts simply cannot be squared with Dean Densmore's narrative that something happened during their meeting that day that prompted him to insist that Mr. Bhattacharya be seen by CAPS immediately. (Answer ¶ 7.) Similarly, the November 19, 2018, 10:19 a.m. email referenced in ¶ 170 of the Second Amended Complaint shows that the arrangements to have Mr. Bhattacharya picked up by the police were made *before* his November 19, 2018 meeting with Dean Densmore— not as a result of anything that happened at that meeting as Defendants now claim. (Answer ¶ 7.)

3

Thirteen minutes *before* Dean Densmore's scheduled meeting with Dean Densmore, Angel Hsu was able to procure the signature of Mr. Bhattacharya's mother on an Emergency Custody Order ("ECO") who—following the communications from Defendants summarized in Exhibit 71 to the Second Amended Complaint—had flown in from Hawaii. (SAC ¶ 170). The two November 19, 2018 emails cited in ¶ 170 of the Second Amended Complaint show that the original plan was to have Dean Peterson see to it that Mr. Bhattacharya was subjected to another "evaluation" by CAPS, a plan that changed once a meeting between Mr. Bhattacharya and Dean Densmore was scheduled for earlier in the day. (SAC ¶ 170).

Between November 14, 2018—when Angel Hsu had been "adamant that there were no safety concerns"—and November 19, 2018, Dean Peterson was able to get Angel Hsu to change her story. According to one of the text messages from Angel Hsu to Dean Peterson on November 19, 2018, "I perceived him as a danger to me when I spoke with you." (SAC ¶¶ 173, 174.) The following morning, November 20, 2018, at 8:57 a.m., Dean Peterson sent the Director of CAPS—with a copy to Dean Densmore—an email forwarding three items: (1) an over-the-top text message from Angel Hsu stating: "I don't [want] my parents to worry and I know they'll be so upset if I get myself killed or hurt because of him;" (2) a link to a podcast of the October 25, 2018 AMWA Microaggression Panel Discussion identifying the portion of the recording where Mr. Bhattacharya's questions began; and (3) a link to ASAC's Technical Standards—the Technical Standards that, according to the November 29, 2018 Suspension Letter from ASAC, Mr. Bhattacharya had violated. The November 20, 2018 email from Dean Peterson also references the *ex parte* preliminary protective order that Angel Hsu was planning to and did in fact obtain while Mr. Bhattacharya was involuntarily hospitalized—which Defendants now cite as a basis both for suspending Mr. Bhattacharya from UVA Med School and denying leave to amend. (SAC ¶ 172.) Further evidence of their collaboration

includes the November 28, 2018 text message from Dean Peterson informing Angel Hsu that ASAC was going to suspend Mr. Bhattacharya before he received notice of the decision. (SAC ¶ 178.)

These and other communications among Dean Densmore, Dean Peterson, and Angel Hsu demonstrate their common purpose in seeing to it that Mr. Bhattacharya was suspended if not expelled from UVA Med School. The linkage between Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion, Mr. Bhattacharya's relationship with Angel Hsu, and the Technical Standards cited as grounds for Mr. Bhattacharya's suspension is clear from Dean Peterson's November 20, 2018 email, among other evidence. (SAC ¶ 172.)

In light of the additional facts cited in the Second Amended Complaint, UVA Med School's November 26, 2018 insistence that Mr. Bhattacharya undergo psychiatric evaluation by CAPS a third time was even more outrageous. (SAC ¶ 175). At this point, two separate teams of psychiatrists had already concluded that Mr. Bhattacharya was no threat to himself and others and found no evidence that he was a threat to himself or others. (SAC ¶ 13.k.) The corruption of UVA Med School's policies and procedures is illustrated dramatically by the fact that ASAC member Pamila Herrington voted to send Mr. Bhattacharya the November 15, 2018 correspondence admonishing him to "consider getting counseling"—correspondence that was sent the very day that Dr. Herrington provided her "diagnosis" in Mr. Bhattacharya's medical records that his questions and comments at the AMWA Microaggression Panel Discussion were "manic" so as to provide evidence for the necessity of Mr. Bhattacharya's involuntary hospitalization at the upcoming involuntary commitment hearing. (SAC ¶ 13.d.) These and other facts alleged in the Second Amended Complaint demonstrate that, if anything. Mr. Bhattacharya's prior pleadings grossly understated the extent of retaliation to which Mr. Bhattacharya was subjected for expressing his opinions about microaggression theory. These additional allegations show that, regardless of whether their

5

individual motives varied, the so-called "UVA Med School Co-Conspirators" (including Dean Densmore and Dean Peterson) and the so-called "Third-Party Co-Conspirator" (Angel Hsu) shared a common commitment to the goal of punishing Mr. Bhattacharya—a goal that they have so far achieved.

Having brought these issues into the litigation, and having smeared Mr. Bhattacharya in the process, Defendants ought not be heard that it would somehow be "prejudicial" to address these facts. To the contrary, Defendants have been aware of these facts all along, and much of the proof of them is in the hands of Defendants. Nor is there any merit to Defendants' contention that it would be "futile" to name two additional UVA Med School faculty members or administrators as defendants or that Angel Hsu—whom the taxpayers of Virginia are presumably not paying to defend—is not properly named as a defendant for common law torts.

## II. ARGUMENT

### A. Defendants Would Not Be Prejudiced By the Proposed Amendment to Add New Factual Allegations, New Parties, and New Causes of Action.

Defendants do not argue, nor can they, that they would be prejudiced by the deletion of allegations that are relevant only to claims that were previously dismissed. Nor is any of the other prejudice that they claim of the nature that constitutes proper grounds for denying leave to amend under the liberal standard of Federal Rule 15. For example, the proposed amendment would not require additional discovery. Defendants are already aware of these additional facts, having raised them in ¶ 7 of their Answer to the *First* Amended Complaint.

Defendants also concede that the witnesses having knowledge of these issues and the documents related to these issues are already addressed in both sides' initial disclosures. Under similar circumstances, courts have found no prejudice. *See, e.g., Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008); *Minter v. Prime Eqip. Co.,* 451 F.3d 1196, 1204-11 (10th Cir. 2006).

6

Nor is there any prejudice that would warrant denial of leave to amend because the First Amended Complaint and Defendants' Answer—including ¶ 7—are clear that Defendants already had notice of both the factual bases for the amendment and the theories of recovery. *See, e.g., Brown v. Chapman*, 814 F.3d 436, 442-43 (6th Cir. 2016).

Finally, changing the capacity in which Dean Densmore is being sued—adding his individual capacity in addition to his official capacity—is not the type of claimed "prejudice" that would make it appropriate for the Court to deny leave to amend. *See, e.g., Brandon v. Holt*, 469 U.S. 464, 471 (1985) (permitting amendment to sue in official rather than individual capacity); *Grace v. Drake*, 832 F. Supp. 1399, 1402 (D. Haw. 1991), *aff'd without published opinion*, 8 F.3d 26 (9th Cir. 1993) (granting motion to amend to sue state officials in individual capacity because defendants had notice and would not be prejudiced).

### B. The Proposed Amendment Adding a Common Law Conspiracy Claim Against the UVA Med School and Third-Party Co-Conspirators Would Not Be Futile.

#### 1. Count II's allegations of a common law civil conspiracy are sufficient to state a claim as a matter of Virginia law.

On its face, the Second Amended Complaint does not seek to add a claim for the "§ 1983 conspiracy" that is the subject of Defendants' Opposition. Count II of the Second Amended Complaint specifically alleges a "civil conspiracy in violation of the common law of the Commonwealth of Virginia." (SAC ¶ 208.) Under Virginia law, Mr. Bhattacharya must prove four elements to state a *prima facie* cause of action for common law conspiracy:

1. A combination of two or more persons;

2. To accomplish, by some concerted action;

3. Some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means; and

4. Resultant damage caused by the defendant's acts committed in furtherance of conspiracy.

7

*Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.,* 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995); *Glass v. Glass,* 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means." *Almy v. Grisham*, 273 Va. 68, 81, 639 S.E.2d 182, 189 (2007) (citation omitted); *Commercial Bus. Sys.,* 249 Va. At 48, 453 S.E.2d at 267 ("The foundation of a civil action of conspiracy is the damage caused by the acts in furtherance of the conspiracy").

Although their objectives of were the same, the co-conspirators had different motives for entering into the conspiracy, as alleged in the Second Amended Complaint. In the case of the UVA Med School Co-Conspirators, the objective "was to punish Mr. Bhattacharya for his questions and comments during the AMWA Microaggression Panel Discussion and to deter him and others from questioning or challenging the ideologies of the organizers, speakers, and those in attendance who agreed with these ideologies." (SAC ¶ 95.) In the case of Third-Party Co-Conspirator, the objective was to "obtain vengeance for his breaking off their relationship"—an objective that Dean Peterson helped accomplish by "inject[ing] herself into the functions of ASAC for the improper purpose of abusing its disciplinary powers." (*Id.*) The Second Amended Complaint provides great detail to support the following summary of the conduct in furtherance of the conspiracy set forth in ¶ 96:

> a. emails from Dean Peterson to Mr. Bhattacharya that resulted in an October 31, 2018 meeting between her and Mr. Bhattacharya;
>
> b. inappropriate and unprofessional communications among Dean Densmore, Dean Peterson, Professor Kern, and Professor Rasmussen with one another, with others at UVA Med School, with the University of Virginia Medical Center, and with third parties (including—at least in the case of Dean Peterson—the Third-Party Co-Conspirator, Angel Hsu) before and after the October 31, 2018 meeting between Mr. Bhattacharya and Dean Peterson, and before and after the November 14, 2018 and November 28, 2018 ASAC meetings

8

    in which Professor Kern participated and which Dean Peterson attended as a "guest" even though she was not a member of the Committee;

    c. the surreptitious submission by Professor Kern of a "Professionalism Concern Card" to Mr. Bhattacharya's UVA Med School student file and the wrongful concealment of that submission by Dean Densmore, Dean Peterson, Professor Kern, and other UVA Med School Defendants who had a duty to disclose it to Mr. Bhattacharya;

    d. orchestrating the November 14, 2018 and November 28, 2018 ASAC meetings described herein and the discipline against Mr. Bhattacharya that resulted from these meetings; and

    e. the involvement of Dean Densmore, Dean Peterson, and Angel Hsu in the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations.

(SAC ¶ 96.).

   This support is not limited to allegations of "parallel conduct." Rather, the Second Amended Complaint provides specific examples of communications between Angel Hsu and Dean Peterson (who often served as a "go-between" with Dean Densmore) involving their common objective. *See, e.g.,* SAC ¶¶ 170, 172, 173, 174.

   Equally unavailing is Defendants' effort to hide behind the intra-enterprise conspiracy doctrine. That doctrine does not help Defendants because Third-Party Co-Conspirator Angel Hsu, was not then and is not now a faculty member, administrator, or employee of UVA. Regardless of whether she is named as a defendant, the allegations of her involvement are sufficient to create the plurality of actors necessary to establish an accountable conspiracy. The fact that Angel Hsu herself cannot be held liable for violation of the 42 U.S.C. § 1983 does not change the fact that she conspired with the UVA Med School Co-Conspirators to help them accomplish an "unlawful purpose" in violation of the common law of the Commonwealth of Virginia.

## 2. Pursuant to Federal Rule 15, the Second Amended Complaint "relates back" to the original September 16, 2019 filing date.

Defendants' Opposition ignores the fact that—with respect to new causes of action and new parties—Federal Rule of Civil Procedure 15(c) expressly provides that amendments relate back for purposes of the statute of limitations, as follows:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) applies when the amended complaint seeks to add new parties. *See Freight Drivers and Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218 (4th Cir. 2015) ("Even with the addition of new parties, the Rule [15] allows the relation back of amendments so long as the parties have notice of the particular conduct, transaction, or occurrence at issue."); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007) ("When that [new] party has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back.").

10

This Court has formulated the test for relation back under Rule 15(c) as involving a three step inquiry requiring that (1) the amendment arises out of the same "conduct, transaction, or occurrence;" (2) the new parties received notice of the action sufficient to avoid prejudice in defending it on the merits; and (3) "the new parties knew or should have known that the action would have been brought against it, but for a mistake concerning the property party's identity." *Wyatt v. Owens*, 317 F.R.D. 535, 539 (W.D. Va. 2016). In analyzing the third requirement, "the word 'mistake' is construed broadly: The limitations of Rule 15(c)(3) thus only apply when the policies underlying limitations rules may be trampled." *Id.* at 540 (internal citation and quotation omitted).

In *Wyatt,* this Court applied that test to hold that claims against new defendants were not barred by the statute of limitations because they related back under Rule 15. *Wyatt*, 317 F.R.D. at 543. There, the plaintiff's original complaint brought a 42 U.S.C. § 1983 action against certain police officers, alleging that they used excessive force in the plaintiff's arrest. A year and a half later, the plaintiff was granted leave to amend his complaint to name two new officers. Those two officers moved for summary judgment on the grounds that the claims were barred by the statute of limitations. This Court disagreed and found that all three elements of Rule 15(c) had been met. First, the amendment arose out of the same transaction because the new defendants were "present at the arrest of the Plaintiff and involved in the use of excessive force." *Id.* at 539. Second, the new defendants received sufficient actual notice of the action, because they were present at and participated in the alleged misconduct and knew of the potential for litigation after the fact. *Id.* at 540. In the alternative, defendants had presumptive notice. Notice is presumed where the "nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *Id.* In *Wyatt*, this Court found that the new defendants had a sufficient identity of interest with the original

11

defendants, because the defendants all worked together. *Id.* Third, this Court held that the plaintiff made a mistake as to the defendants' identity, because he sued other officers who were not involved instead of the two new officers who had been involved.

As in *Wyatt*, the addition of the three new defendants satisfies the Rule 15(c) test for relation back. Two of the "new" defendants—Dean Canterbury and Dean Thomas—were mentioned extensively in the First Amended Complaint as having been involved in Mr. Bhattacharya's suspension from UVA Med School. (FAC ¶¶ 99-100, 160). As in *Wyatt*, these defendants were present during and involved in the misconduct alleged in the First Amended Complaint. With respect to these two defendants, the Second Amended Complaint provides additional details of their involvement in the conduct at issue and names them in their respective official capacities. As a result, the allegations against them clearly arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c). *See Freight Drivers and Helpers Local Union No. 557 Pension Fund*, 784 F.3d at 218 ("Because the substantive allegations in the amended complaint were identical to those contained in the initial complaint, the requirements of relation back under Rule 15(c) clearly apply.").

For similar reasons, Dean Canterbury and Dean Thomas had actual notice of the action and their possible involvement in sufficient to meet the second requirement of Rule 15. They were both mentioned in the First Amended Complaint as participants in Mr. Bhattacharya's suspension. Moreover, even if these two defendants lacked actual notice, they have presumptive notice similar to that provided to the defendants in *Wyatt*. Here, Dean Canterbury and Dean Thomas work for UVA in high-level administrative positions such that they share an identity of interests with the other UVA defendants. Moreover, because Dean Canterbury and Dean Thomas are not named in their individual capacities, they are not properly viewed as "new" parties for purposes of Rule 15(c).

12

Finally, the reason that these three defendants were not initially sued meets the liberal definition of a mistake by plaintiff. Plaintiff seeks to include these defendants to respond to Defendants' Answer, which included information about non-credible claims by Plaintiff's former girlfriend that functioned as a subterfuge for Dean Canterbury and Dean Thomas to participate in UVA Med School's retaliation against Plaintiff for exercising his free speech rights. Tellingly, Dean Canterbury had previously tweeted that medical students who espoused political views with which he disagreed would be "called to task" for unprofessional conduct. (SAC ¶ 23.) When Dean Canterbury learned of a complaint about Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion, he wrote to Dean Densmore—with a copy to Dean Thomas—"I think this is the equivalent of a concern card." (SAC ¶ 94.) Dean Thomas was actively involved in collecting and acting upon complaints about Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion, as detailed in the Second Amended Complaint. (SAC ¶¶ 7, 24, 116, 145.)

Like Dean Canterbury and Dean Thomas, the other new defendant, Angel Hsu, also meets the test for relation back. First, the allegations against Angel Hsu arise from the same transaction or occurrence as those alleged in the First Amended Complaint. As in *Wyatt*, Angel Hsu was present for and participated in the alleged misconduct, making false accusations that contributed to Mr. Bhattacharya's suspension. Second, Angel Hsu was clearly on notice of the action and the potential that she would be made a party. Mr. Bhattacharya specifically discussed its filing in her presence shortly after he filed his *pro se* Complaint in September 2019.[2] More recently, Defendants identified Angel Hsu by name in their initial disclosures while referring to her in ¶ 7 of Defendants' Answer as "his girlfriend." She and the existing Defendants thus contemplated that she would be providing

---

[2] *See* Declaration of Kieran Ravi Bhattacharya (attached as **Exhibit A**).

13

discovery and otherwise participating in this litigation. Finally, Angel Hsu was not previously joined for the same reasons that Dean Thomas and Dean Canterbury were not initially joined. Both Dean Thomas and Dean Canterbury were referenced in the First Amended Complaint but not named as defendants. Angel Hsu was nowhere mentioned in the First Amended Complaint. It was not until Defendants' Answer described Angel Hsu's false accusations and cited them as a basis for Mr. Bhattacharya's banishment from UVA Medical School that Plaintiff sought to name her along with the other new defendants so that he can challenge Defendants' assertions. Under the circumstances, she cannot claim any prejudice in being formally joined (and in fact she herself has not claimed prejudice).

### III. CONCLUSION

The amendments sought by Mr. Bhattacharya are in the interests of justice, would not be prejudicial to Defendants, and would not be futile. There has been no bad faith on the part of Mr. Bhattacharya or his counsel in seeking leave to amend. Accordingly, Mr. Bhattacharya respectfully requests that this motion be granted.

Date: July 1, 2021

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: _____*s/ Michael J. Lockerby*_____
           Counsel

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
Email: mlockerby@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

14

4835-0787-8384.3

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July 2021, I electronically filed the foregoing REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system and will send the foregoing via email to the following counsel of record for Defendants:

>Madeline M. Gibson, Esq.,
>Assistant Attorney General
>Calvin C. Brown, Esq.,
>Assistant Attorney General
>Brittany A. McGill, Esq.,
>Assistant Attorney General
>Office of the Virginia Attorney General
>Commonwealth of Virginia
>202 North Ninth Street
>Richmond, Virginia 23219
>Email: mgibson@oag.state.va.us
>Email: cbrown@oag.state.va.us

>*s/ Michael J. Lockerby*
>Michael J. Lockerby (VSB No. 24003)
>FOLEY & LARDNER LLP
>Washington Harbour
>3000 K Street, N.W., Suite 600
>Washington, D.C. 20007-5109
>Telephone:  (202) 672-5300
>Facsimile:  (202) 672-5399
>
>*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

4835-0787-8384.3