**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **3:19-CV-00054-NRM-JCH** |
| **JAMES B. MURRAY JR.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MR. BHATTACHARYA'S SECOND DISCOVERY REQUESTS

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, Plaintiff Kieran Ravi Bhattacharya hereby requests that Defendants, within thirty (30) days of service or such other time period as ordered by the Court and in accordance with the definitions and instructions below:

1.      respond to the following requests for documents ("Mr. Bhattacharya's Second Document Requests") by producing and permitting Bhattacharya, including his attorneys and agents, to inspect and copy responsive documents at the offices of Foley & Lardner LLP, Washington Harbour, 3000 K Street, N.W., Suite 600, Washington, D.C. 20007;

2.      admit the truth of the following requests for admission ("Mr. Bhattacharya's Second RFAs"); and

3.      answer fully and separately, in writing and under oath, Mr. Bhattacharya's Interrogatory No. 1 with respect to Mr. Bhattacharya's Second RFAs.

4841-9346-5588.1

## **DEFINITIONS**

For the purposes of Defendants' answers to Mr. Bhattacharya's Second Document Requests, Mr. Bhattacharya's Second RFAs, and Mr. Bhattacharya's Interrogatories (collectively, "Mr. Bhattacharya's Second Discovery Requests") the following definitions shall apply:

1.      "Document(s)" means any and all documents, tangible things, and writings of any kind as defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and includes, without limitation, agreements, purchase orders, invoices, receipts, accounting records, contracts, bills of lading, shipping records, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telex, faxes, minutes, contracts, reports, studies, statements, summaries, interoffice and intra-office Communications, notations of any sort of conversations, telephone calls, meetings or other Communications, computer printouts, tape recordings, audiotapes, videotapes, charts, graphs, and electronic, mechanical or electronic records, compact discs, computer discs, computer tapes, computer software, electronically stored media, and any other form of stored information.

2.      "Communication(s)" means any contact or exchange of information between two or more Persons, including, without limitation, by such means as electronic mail, letters, memoranda, reports, computer transmissions, text messages, instant messages, telegrams, telexes, and fax messages including all attachments to or enclosures therewith, and including transcriptions or summaries of conversations, voicemail messages or interviews.

3.      "Relating to" or "relate(s) to" are used in their broadest sense and means referring to, describing, evidencing, containing, supporting, rebutting, reflecting, refuting, negating,

4841-9346-5588.1

pertaining to, comprising, memorializing, identifying, verifying, and/or in any way involving or having a logical connection to the subject matter of the request, in whole or in part.

4.       "Identify" (with respect to Communications).  When referring to Communications, "identify" means to state, to the extent known, the (i) name(s), address(es), and last known place(s) of employment of the parties to the Communication; (ii) the subject matter of the Communication; (iii) the location(s) of the Communication; (iv) the mode of Communication, (e.g., written, by telephone, meeting, etc.); and (v) the date of the Communication.

5.       "Identify" (with respect to Documents).  When referring to Documents, "identify" means to state, to the extent known or reasonably ascertainable, the (i) type of Document; (ii) its general subject matter; (iii) the date of the Document; and (iv) its author(s), addressee(s), and recipient(s).  If the foregoing information is not available, state whether it is (i) missing or lost, (ii) destroyed, (iii) transferred, voluntarily or involuntarily, to others, or (iv) otherwise disposed of and, in each instance, explain the circumstances surrounding the authorization for such disposition thereof and state the date or approximate date thereof.

6.       "Identify" (with respect to Persons).  When referring to a person, "identify" means to state, to the extent known or reasonably ascertainable, the person's full name and current or last known address.  When referring to a natural person, "identify" means, additionally, to provide the individual's present or last known place of employment.  Once a person has been identified in accordance with the foregoing definition, only the name of that person need be listed in response to subsequent discovery requests calling for the identification of such person.

7.       "Person(s)" means any natural person, firm, association, organization, partnership, business, trust, corporation, or entity.

8.      "You" or "Your" refers to each of Defendants—the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators—as those terms are defined herein.

9.      "Mr. Bhattacharya" refers to Plaintiff Kieran Ravi Bhattacharya.

10.     "Rector" refers to James B. Murray Jr., Rector of the Board of Visitors of the University of Virginia.

11.     "Vice Rector" refers to Whittington W. Clement, Vice Rector of the Board of Visitors of the University of Virginia.

12.     "UVA Med School" refers to the University of Virginia School of Medicine.

13.     "Members of the Board of Visitors of the University of Virginia" refers to Robert M. Blue; Mark T. Bowles; L.D. Britt, M.D., M.P.H.; Frank M. Conner III; Elizabeth M. Cranwell; Thomas A. Depasquale; Barbara J. Fried; John A. Griffin; Louis S. Haddad; Robert D. Hardie; Maurice A. Jones; Babur B. Lateef, M.D.; Angela Hucles Mangano; C. Evans Poston Jr.; James V. Reyes; and Peter C. Brunjes.

14.     "Ms. Fielding" refers to Melissa Fielding, Deputy Chief of Police of the University of Virginia.

15.     "Mr. Longo" refers to Timothy Longo, Sr., Interim Chief of Police of the University of Virginia.

16.     "Ms. Graham" means Gloria Graham, Esq., Former Associate Vice President, Safety and Security, of the University of Virginia.

17.     "University Defendants" refers to the Rector, Vice Rector, Members of the Board of Visitors of the University of Virginia, Mr. Longo, and Ms. Fielding.

18.     "Dean Densmore" refers to John J. Densmore, M.D., Ph.D., Associate Dean for Admissions and Student Affairs, University of Virginia School of Medicine.

19.     "Dr. Tucker" refers to Jim B. Tucker, M.D., Chair of the Academic Standards and Achievement Committee, University of Virginia School of Medicine.

20.     "UVA Med School Defendants" refers to Dean Densmore and Dr. Tucker.

21.     "Dean Peterson" refers to Christine Peterson, M.D., Assistant Dean for Medical Education, University of Virginia School of Medicine.

22.     "Professor Kern" refers to Nora Kern, M.D., Assistant Professor of Urology, University of Virginia School of Medicine.

23.     "Professor Rasmussen" refers to Sara K. Rasmussen, M.D., Ph.D., Associate Professor, University of Virginia School of Medicine.

24.     "Individual Co-Conspirators" refers to Dean Peterson, Professor Kern, and Professor Rasmussen collectively.

25.     "Sean Reed" means Sean W. Reed, M.D., Associate Professor of the University of Virginia School of Medicine.

26.     "Dean Canterbury" means Randolph J. Canterbury, M.D., Senior Associate Dean for Education at UVA Med School.

27.     "Panel Discussion" refers to the October 25, 2018 panel discussion on "microaggression" sponsored by the newly formed UVA Med School chapter of the American Medical Women's Association.

28.     "Defendants" refer to the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators collectively.

5

29.     "ASAC" or the "Committee" refers to UVA Med School's Academic Standards and Achievement Committee.

30.     "Policy" means UVA Med School's Policy on Academic and Professional Enhancement.

31.     "Professionalism Concern Card" has the meaning set forth in the Policy.

32.     The "First Professionalism Concern Card" means the May 4, 2018 10:52 a.m. Professionalism Concern Card against Mr. Bhattacharya attached as **Exhibit 10** to the First Amended Complaint.

33.     The "Second Professionalism Concern Card" means the October 25, 2018 9:04 p.m. Professionalism Concern Card against Mr. Bhattacharya attached as **Exhibit 13** to the First Amended Complaint.

34.     "Dr. Hsu" means Angel Hsu, M.D., formerly a student at UVA Med School.

35.     "OSCE" means Objective Structured Clinical Examination.

36.     "PCC" means Professionalism Concern Card.

37.      "Person(s)" means any natural person, firm, association, organization, partnership, business, trust, corporation, or entity.

38.     "UVA Health" means University of Virginia School of Medicine, University of Virginia School of Nursing, University of Virginia Medical Center, Claude Moore Health Sciences Library, and UVA Physicians Group.

39.     "You" or "Your" refers to each of Defendants—the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators—as those terms are defined herein.

6

## <u>INSTRUCTIONS</u>

1.      Mr. Bhattacharya's Second Discovery Requests shall be deemed to seek responses as of the date hereof and shall also be deemed to be continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require further and supplemental responses such that if additional information relating in any way to Mr. Bhattacharya's Second Discovery Requests becomes known to You that in any way modifies your responses to Mr. Bhattacharya's Second Discovery Requests up to and including the time of trial, You shall immediately furnish to Bhattacharya your revised responses incorporating all such modification(s).

2.      If Defendants claim that any one of Mr. Bhattacharya's Second Discovery Requests is overly broad, unduly burdensome, irrelevant, or otherwise objectionable, You must specifically state the nature of your objection and all grounds therefor.  You must respond to that portion of the discovery request which is unobjectionable and specifically identify the respect in which the discovery request is allegedly overly broad, unduly burdensome, irrelevant, or otherwise objectionable.

3.      When any copy of any Document responsive to Mr. Bhattacharya's Second Discovery Requests is not identical to the original or any copy thereof by reason of any notes, comments, markings, alterations, or material contained thereon, deleted therefrom, or attached thereto, or otherwise, all such non-identical copies shall also be produced.

4.      Documents shall be produced in all respects as they are maintained in the ordinary course of business, including file folders or other identifying information, and identified or segregated to correspond to the particular numbered request to which they are considered responsive.

4841-9346-5588.1

5.      If any Document or information is withheld on the basis of a claim of privilege or immunity, within the time required by Rule 26(C), with respect to each such Document, communication, or other information, state (i) the date of the Document or Communication for which privilege or immunity is claimed, (ii) the author(s) and recipient(s) of the Document or the parties to the Communication for which privilege or immunity is claimed, (iii) the nature of the claimed privilege or immunity, (iv) the nature of the information for which privilege or immunity is claimed, and (v) the specific number(s) of Mr. Bhattacharya's Second Discovery Requests to which the document is responsive.

6.      If any Document the production or identification of which is required by Bhattacharya's Second Discovery Requests has been destroyed, discarded, or lost, or is no longer in existence or within Your possession, custody, or control, provide the following information:  (i) the date of the Document (or if the precise date is not known or ascertainable, the best approximation thereof); (ii) its title; (iii) the name and position of each Person who prepared or assisted in preparing the Document; (iv) the name and position of each Person to whom the Document was addressed or who has seen, has had possession or custody of, or has received disclosure of the contents of the Document or any copy thereof; (v) the subject matter of the Document; the (vi) specific number(s) of Mr. Bhattacharya's Second Discovery Requests to which the Document would have been responsive; (vii) the date it was destroyed, discarded, or lost or when it otherwise left Your possession, custody, or control; (viii) the method of and reason for its destruction, discard, or loss, if any; (ix) the identity of the Document's last custodian and of each person responsible for the Document's destruction, discard, or loss, if any; and (x) the identity of any person whom you reasonably believe has, had, or may have present possession, custody, or control of the Document.

8

7.      If you cannot answer an interrogatory in full after exercising due diligence to secure the information, answer to the extent possible and explain Your inability to provide a complete answer and state whatever information or knowledge You have about the unanswered portion of any interrogatory.

8.      For each of Mr. Bhattacharya's Second RFAs that You do not admit in full, You must specifically admit all elements of that request for admission that can be admitted and qualify or deny the remainder.

9.      If You cannot truthfully admit or deny one or more of Mr. Bhattacharya's Second RFAs due to a lack of information or knowledge, You must certify that You have made a reasonable inquiry and that the information both known by and available to You is insufficient to enable You to admit or deny the request for admission.

10.     If You fail to admit any of Mr. Bhattacharya's Second RFAs the truth of which is later proven by Mr. Bhattacharya, pursuant to Federal Rule of Civil Procedure 37(c)(2), Mr. Bhattacharya will be entitled to recover his reasonable expenses, including attorneys' fees, incurred in making such proof.

11.     Unless otherwise specified, the "Relevant Time Period" for Mr. Bhattacharya's Second Discovery Requests is August 4, 2016 through February 3, 2020.

## <u>REQUESTS FOR PRODUCTION</u>

**<u>Document Request No. 65:</u>**

Copies of all PCCs filed at UVA Health during the following academic years:  2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021.

**<u>Document Request No. 66:</u>**

The contents of all emails in the account krb6yg@virginia.edu and its corresponding health system e-mail account.

9

**Document Request No. 67:**

All documents in Defendants' possession concerning or involving Mr. Bhattacharya.

**Document Request No. 68:**

All documents, videos, communications, evaluations, audio, and commentary in Defendants' possession concerning or involving Mr. Bhattacharya's performance during the final OSCE on November 6, 2018.

**Document Request No. 69:**

All documents, videos, communications, evaluations, audio, and commentary in Defendants' possession concerning or involving Mr. Bhattacharya's performance during the first two OSCE subparts in the spring of 2018.

**Document Request No. 70:**

All documents supporting the claim by Dr. Winifred Wolfe on November 19, 2019 that a lack of bed availability necessitated Mr. Bhattacharya's transfer from UVA Medical Center in Charlottesville, Virginia to Poplar Springs Hospital in Petersburg, Virginia.

## REQUESTS FOR ADMISSION

**Request for Admission No. 10:**

During the 2016-2017 academic year, 40 PCCs were filed at UVA Health.

**Request for Admission No. 11:**

During the 2017-2018 academic year, 28 PCCs were filed at UVA Health.

**Request for Admission No. 12:**

During the 2018-2019 academic year, 72 PCCs were filed at UVA Health.

**Request for Admission No. 13:**

During the 2019-2020 academic year, 96 PCCs were filed at UVA Health.

4841-9346-5588.1

**Request for Admission No. 14:**

During the 2020-2021 academic year, 108 PCCs were filed at UVA Health.

**Request for Admission No. 15:**

Of the PCCs filed at UVA Health during the 2017-2018 academic year, one was filed with respect to Angel Hsu.

**Request for Admission No. 16:**

Of the PCCs filed at UVA Health during the 2017-2018 academic year, one was filed with respect to Mr. Bhattacharya.

**Request for Admission No. 17:**

Of the PCCs filed at UVA Health during the 2018-2019 academic year, one was filed with respect to Mr. Bhattacharya.

**Request for Admission No. 18:**

Of the PCCs filed at UVA Health during the 2016-2017 academic year, every PCC was discussed with the individual at whom the PCC was directed.

**Request for Admission No. 19:**

Of the PCCs filed at UVA Health during the 2017-2018 academic year, every PCC but the one directed at Mr. Bhattacharya was discussed with the individual at whom the PCC was directed.

**Request for Admission No. 20:**

Of the PCCs filed at UVA Health during the 2018-2019 academic year, every PCC but the one directed at Mr. Bhattacharya was discussed with the individual at whom the PCC was directed.

11

**Request for Admission No. 21:**

Of the PCCs filed at UVA Health during the 2019-2020 academic year, every PCC was discussed with the individual at whom the PCC was directed.

**Request for Admission No. 22:**

Of the PCCs filed at UVA Health during the 2020-2021 academic year, every PCC was discussed with the individual at whom the PCC was directed.

**Request for Admission No. 23:**

Of the PCCs filed at UVA Health during the 2016-2017 academic year with respect to a student at UVA Med School, not one PCC was the sole subject of e-mail correspondence by way of a unanimous vote from ASAC and without follow-up from one's college dean to the individual at whom the PCC was directed and without providing notification to that individual of the existence of the actual PCC underlying the basis for the correspondence.

**Request for Admission No.24:**

Of the PCCs filed at UVA Health during the 2017-2018 academic year with respect to a student at UVA Med School, not one PCC was the sole subject of e-mail correspondence by way of a unanimous vote from ASAC and without follow-up from one's college dean to the individual at whom the PCC was directed and without providing notification to that individual of the existence of the actual PCC underlying the basis for the correspondence.

**Request for Admission No. 25:**

Of the PCCs filed at UVA Health during the 2018-2019 academic year with respect to a student at UVA Med School, the only PCC that was the sole subject of e-mail correspondence by way of a unanimous vote from ASAC and without follow-up from one's college dean to the individual at whom the PCC was directed and without providing notification to that individual of

12

the existence of the actual PCC underlying the basis for the correspondence was the October 25, 2018 PCC filed by Nora Kern with respect to Mr. Bhattacharya.

**Request for Admission No. 26:**

Of the PCCs filed at UVA Health during the 2019-2020 academic year with respect to a student at UVA Med School, not one PCC was the sole subject of e-mail correspondence by way of a unanimous vote from ASAC and without follow-up from one's college dean to the individual at whom the PCC was directed and without providing notification to that individual of the existence of the actual PCC underlying the basis for the correspondence.

**Request for Admission No. 27:**

Of the PCCs filed at UVA Health during the 2020-2021 academic year with respect to a student at UVA Med School, not one PCC was the sole subject of e-mail correspondence by way of a unanimous vote from ASAC and without follow-up from one's college dean to the individual at whom the PCC was directed and without providing notification to that individual of the existence of the actual PCC underlying the basis for the correspondence.

**Request for Admission No. 28:**

Of the individuals who were the subject of a PCC filed at UVA Health during academic year 2016-2017, not one received an academic suspension.

**Request for Admission No. 29:**

Of the individuals who were the subject of a PCC filed at UVA Health during academic year 2017-2018, the only one who received an academic suspension was Mr. Bhattacharya.

**Request for Admission No. 30:**

Of the individuals who were the subject of a PCC filed at UVA Health during academic year 2018-2019, the only one who received an academic suspension was Mr. Bhattacharya.

13

**Request for Admission No. 31:**

Of the individuals who were the subject of a PCC filed at UVA Health during academic year 2019-2020, not one received an academic suspension.

**Request for Admission No. 32:**

Of the individuals who were the subject of a PCC filed at UVA Health during academic year 2020-2021, not one received an academic suspension.

**Request for Admission No. 33:**

During its November 14, 2018 meeting, ASAC discussed Mr. Bhattacharya's involuntary hospitalization that day.

**Request for Admission No. 34:**

During its November 28, 2018 meeting, ASAC discussed Mr. Bhattacharya's involuntary hospitalization in January 2017 and involuntary hospitalizations in November 2018.

**Request for Admission No. 35:**

During its November 28, 2018 meeting, ASAC discussed the assertion that Mr. Bhattacharya was suffering from bipolar disorder.

**Request for Admission No. 36:**

During its November 28, 2018 meeting, ASAC discussed the assertion that Mr. Bhattacharya was suffering from a manic episode.

**Request for Admission No. 37:**

During its November 28, 2018 meeting, ASAC discussed the preliminary protective order sought or obtained by Angel Hsu.

4841-9346-5588.1

**Request for Admission No. 38:**

Nothing in Mr. Bhattacharya's medical student file discusses any interactions in public settings.

**Request for Admission No. 39:**

Mr. Bhattacharya's student file does not contain all of the information upon which ASAC based its decision to suspend him from UVA Med School.

**Request for Admission No. 40:**

ASAC did not complete Mr. Bhattacharya's appeal within 14 days as required by ASAC's operating procedures.

**Request for Admission No. 41:**

As of the November 28, 2018 ASAC meeting, Dean Peterson was aware of Mr. Bhattacharya's November 18, 2018 telephone call to the UVA Med School Dean on Call.

**Request for Admission No. 42:**

Mr. Bhattacharya did not speak during Dr. Beverly Cowell Adams' lecture during the AMWA Microaggression Panel Discussion as stated by ASAC Chairman Dr. Tucker in the November 29, 2018 Suspension Letter.

**Request for Admission No. 43:**

Although Dr. Tucker was made aware by Mr. Bhattacharya of the existence of an audio recording of the AMWA Microaggression Panel Discussion during the November 28, 2018 ASAC meeting, Dr. Tucker never listened to any part of the audio recording before sending Mr. Bhattacharya the November 29, 2018 ASAC Suspension Letter.

15

**Request for Admission No. 44:**

At the AMWA Microaggression Panel Discussion, Mr. Bhattacharya spoke only during a period specifically designated for questions and answers after the conclusion of Dr. Beverly Cowell Adams' lecture.

**Request for Admission No. 45:**

Dean Densmore did not recommend but instead required that Mr. Bhattacharya be evaluated by CAPS on November 14, 2018.

**Request for Admission No. 46:**

Dean Densmore considered Mr. Bhattacharya's speech at AMWA Microaggression Panel when requiring that Mr. Bhattacharya be evaluated by CAPS on November 14, 2018.

**Request for Admission No. 47:**

Dean Densmore considered statements by Angel Hsu when requiring that Mr. Bhattacharya be evaluated by CAPS on November 14, 2018.

**Request for Admission No. 48:**

Angel Hsu was not Mr. Bhattacharya's girlfriend on November 14, 2018.

**Request for Admission No. 49:**

Angel Hsu was not Mr. Bhattacharya's girlfriend during the period November 16 through November 19, 2018.

**Request for Admission No. 50:**

Angel Hsu was not Mr. Bhattacharya's girlfriend on November 26, 2018.

**Request for Admission No. 51:**

Dean Densmore never discussed the AMWA Microaggression Panel Discussion with Mr. Bhattacharya during the November 14, 2018 meeting.

16

**Request for Admission No. 52:**

Dean Densmore never discussed any of the two PCCs in Mr. Bhattacharya's medical student file during the November 14, 2018 meeting.

**Request for Admission No. 53:**

Dean Densmore never informed Mr. Bhattacharya on November 14, 2018 that Dean Densmore was considering the AMWA Microaggression Panel Discussion when requiring that Mr. Bhattacharya be evaluated by CAPS.

**Request for Admission No. 54:**

Dean Densmore never mentioned Angel Hsu or any communications concerning or involving her to Mr. Bhattacharya during the November 14, 2018 meeting.

**Request for Admission No. 55:**

Dean Densmore never informed Mr. Bhattacharya on November 14, 2018 that Dean Densmore was considering previously unspecified statements from Angel Hsu to unspecified individuals when requiring that Mr. Bhattacharya be evaluated by CAPS.

**Request for Admission No. 56:**

Dean Densmore never informed Mr. Bhattacharya on November 14, 2018 that Dean Densmore would be disseminating false and misleading information about Mr. Bhattacharya's past summative exam scores to Catherine Richard without Mr. Bhattacharya's knowledge or consent when requiring that Mr. Bhattacharya be evaluated by CAPS.

**Request for Admission No. 57:**

Dean Densmore violated FERPA by disseminating false and misleading information about Mr. Bhattacharya's past summative exam scores without Mr. Bhattacharya's knowledge or consent to Catherine Richard on November 14, 2018.

17

**Request for Admission No. 58:**

Dean Densmore was aware that Mr. Bhattacharya had been allocating more time to prepare for the USMLE Step 1 in October and November of 2018 because Mr. Bhattacharya had explicitly informed Dean Densmore of that fact during their November 1, 2018 meeting.

**Request for Admission No. 59:**

Dean Densmore did not disclose to Catherine Richard on November 14, 2018 the contents of Mr. Bhattacharya's statements to Dean Densmore on November 1, 2018 regarding Mr. Bhattacharya's preparation for the USMLE Step 1.

**Request for Admission No. 60:**

Dean Densmore did not discuss Mr. Bhattacharya's January 2017 hospitalization at UVA with Mr. Bhattacharya on November 14, 2018.

**Request for Admission No. 61:**

Dean Densmore did not inform Mr. Bhattacharya on November 14, 2018 that Dean Densmore was considering Mr. Bhattacharya's January 2017 hospitalization when requiring that Mr. Bhattacharya be evaluated by CAPS.

**Request for Admission No. 62:**

Dean Densmore did not inform Mr. Bhattacharya on November 14, 2018 that Dean Densmore had disclosed Mr. Bhattacharya's January 2017 hospitalization to Catherine Richard when requiring that Mr. Bhattacharya be evaluated by CAPS.

**Request for Admission No. 63:**

Dean Densmore did not mention the microaggression panel when he sent an e-mail to Mr. Bhattacharya requesting a meeting on November 14, 2018.

**Request for Admission No. 64:**

Dean Densmore did not mention statements by Angel Hsu when he sent an e-mail to Mr. Bhattacharya requesting a meeting on November 14, 2018.

**Request for Admission No. 65:**

Dean Densmore did not mention Mr. Bhattacharya's January 2017 hospitalization when he sent an e-mail to Mr. Bhattacharya requesting a meeting on November 14, 2018.

**Request for Admission No. 66:**

Mr. Bhattacharya told Dean Densmore multiple times that Mr. Bhattacharya did not want to be evaluated by CAPS on November 14, 2018.

**Request for Admission No. 67:**

Catherine Richard improperly described her job title as a "clinician" on November 14, 2018.

**Request for Admission No. 68:**

Michael Mason improperly described his job title as a "clinician" on November 14, 2018.

**Request for Admission No. 69:**

The Oxford English Dictionary currently defines a clinician as follows: "A doctor having direct contact with and responsibility for patients, rather than one involved with theoretical or laboratory studies."

**Request for Admission No. 70:**

A 1970 *New England Journal of Medicine* article entitled "What Is A Clinician And What Does He Do?" clearly defines a clinician as a physician.

**Request for Admission No. 71:**

Mr. Bhattacharya was not ECO'd by a physician on November 14, 2018 as described in UVA's internal records that were not made available to Mr. Bhattacharya until July 2021—more than 31 months after November 14, 2018.

**Request for Admission No. 72:**

Catherine Richard lacks the proper qualifications to diagnose mania or any other type of symptomatic manifestation of any type of mental or physical illness.

**Request for Admission No. 73:**

Catherine Richard lacks the proper qualifications to prescribe or recommend any psychiatric medications.

**Request for Admission No. 74:**

Catherine Richard understood that Mr. Bhattacharya did not want to speak with her on November 14, 2018.

**Request for Admission No. 75:**

Catherine Richard threatened Mr. Bhattacharya with retaliation by reporting him to Dean Densmore if Mr. Bhattacharya were to voluntarily end the "session."

**Request for Admission No. 76:**

Michael Mason lacks the proper qualifications to diagnose mania or any other type of symptomatic manifestation of any type of mental or physical illness.

**Request for Admission No. 77:**

Michael Mason lacks the proper qualifications to prescribe or recommend any psychiatric medications.

**Request for Admission No. 78:**

Nothing that Mr. Bhattacharya said to Dean Densmore on November 14, 2018 was unprotected speech under the First Amendment.

**Request for Admission No. 79:**

Nothing that Mr. Bhattacharya said to Catherine Richard on November 14, 2018 was unprotected speech under the First Amendment.

**Request for Admission No. 80:**

Nothing that Mr. Bhattacharya said to Michael Mason on November 14, 2018 was unprotected speech under the First Amendment.

**Request for Admission No. 81:**

Nothing that Mr. Bhattacharya said to Dean Dotts on November 14, 2018 was unprotected speech under the First Amendment.

**Request for Admission No. 82:**

Mr. Bhattacharya did not in any way express suicidal ideations to Dean Densmore, Catherine Richard, Michael Mason, or Dean Dotts on November 14, 2018.

**Request for Admission No. 83:**

Nothing Mr. Bhattacharya said or did on November 14, 2018 would lead any reasonable individual to believe that Mr. Bhattacharya was suicidal or otherwise a danger to himself.

**Request for Admission No. 84:**

Mr. Bhattacharya did not in any way express homicidal ideations to Dean Densmore, Catherine Richard, Michael Mason, or Dean Dotts on November 14, 2018.

4841-9346-5588.1

**Request for Admission No. 85:**

Nothing Mr. Bhattacharya said or did on November 14, 2018 would lead any reasonable individual to believe that Mr. Bhattacharya was homicidal or otherwise a danger to anyone else.

**Request for Admission No. 86:**

Nothing Mr. Bhattacharya said or did on November 14, 2018 would lead any reasonable individual to believe that Mr. Bhattacharya was unable to take care of himself or otherwise perform the normal activities of daily living.

**Request for Admission No. 87:**

On November 11, 2018, UVA's AMWA chapter disseminated by e-mail to all UVA Med School Students a one-hour audio recording of the October 25, 2018 AMWA Microaggression Panel Discussion.

**Request for Admission No. 88:**

Dean Densmore was aware that Mr. Bhattacharya was hospitalized when he sent an e-mail to Mr. Bhattacharya on November 15, 2018.

**Request for Admission No. 89:**

Despite his receipt of the November 15, 2018 ASAC letter, Dean Densmore never contacted Mr. Bhattacharya to schedule a meeting with Mr. Bhattacharya to discuss the content of the November 15, 2018 ASAC letter and the October 25, 2018 Kern PCC.

**Request for Admission No. 90:**

Dean Densmore never discussed the AMWA Microaggression Panel Discussion or any purported professionalism concerns raised by or related to the AMWA Microaggression Panel Discussion with Mr. Bhattacharya at any point during Mr. Bhattacharya's enrollment at UVA Med School.

22

**Request for Admission No. 91:**

Dean Densmore never had any written communications with Mr. Bhattacharya regarding the AMWA Microaggression Panel Discussion or any purported professionalism concerns raised by or related to the AMWA Microaggression Panel Discussion at any time during Mr. Bhattacharya's enrollment at UVA Med School.

**Request for Admission No. 92:**

All voting members of ASAC had knowledge of ASAC's Operating Procedures on November 14, 2018.

**Request for Admission No. 93:**

All non-voting members of ASAC had knowledge of ASAC's Operating Procedures on November 14, 2018.

**Request for Admission No. 94:**

Each voting member of ASAC was under a professional obligation to abide by ASAC's operating procedures on November 14, 2018.

**Request for Admission No. 95:**

Any form of non-compliance by any voting member of ASAC of ASAC's Operating Procedures on November 14, 2018 constituted a violation of that voting member's professional obligations.

**Request for Admission No. 96:**

Dean Densmore has never had any physician-patient relationship with Mr. Bhattacharya.

4841-9346-5588.1

**Request for Admission No. 97:**

Dean Densmore's assertion in his anticipated "expert" or "hybrid" disclosure testimony that Mr. Bhattacharya has or had some unspecified "mental illness" at any point in Mr. Bhattacharya's life is not falsifiable.

**Request for Admission No. 98:**

Dean Densmore's assertion in his anticipated "expert" or "hybrid" disclosure testimony that Mr. Bhattacharya has or had some unspecified "mental illness" at any point in Mr. Bhattacharya's life is a non-falsifiable *argumentum ad hominem*.

**Request for Admission No. 99:**

Dean Canterbury has never had any physician-patient relationship with Mr. Bhattacharya.

**Request for Admission No. 100:**

Dean Canterbury's definitive assertion in his anticipated "expert" or "hybrid" disclosure testimony that Mr. Bhattacharya has or had some unspecified "mental illness" at any point in Mr. Bhattacharya's life is not falsifiable.

**Request for Admission No. 101:**

Dean Canterbury's definitive assertion in his anticipated "expert" or "hybrid" disclosure testimony that Mr. Bhattacharya has or had some unspecified "mental illness" at any point in Mr. Bhattacharya's life is a non-falsifiable *argumentum ad hominem*.

**Request for Admission No. 102:**

Claims that are not falsifiable cannot be proven to be false.

**Request for Admission No. 103:**

Defendants' anticipated "expert" and/or "hybrid" witnesses agree with the assertion by Allen J. Frances, Professor and Chairman Emeritus of the Department of Psychiatry and

24

Behavioral Sciences at Duke University School of Medicine and chair of the American Psychiatric Association task force that oversaw the development and revision of the 1994 fourth edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), in his 2013 *Annals of Internal Medicine* article entitled "The New Crisis of Confidence in Psychiatric Diagnosis"  that "psychiatric diagnosis... still relies exclusively on fallible subjective judgments rather than objective biological tests."

**Request for Admission No. 104:**

Dean Densmore's assertion on November 19, 2018 to Mr. Bhattacharya that Dean Densmore had absolutely no involvement with the November 14, 2018 Emergency Custody Order obtained by Catherine Richard was false.

**Request for Admission No. 105:**

Dean Densmore understood that his assertion on November 19, 2018 to Mr. Bhattacharya that Dean Densmore had absolutely no involvement with the November 14, 2018 Emergency Custody Order obtained by Catherine Richard was false.

**Request for Admission No. 106:**

Dean Densmore did not notify Mr. Bhattacharya that he would call the police on Mr. Bhattacharya before, during, or after their November 19, 2018 meeting.

**Request for Admission No. 107:**

Dean Densmore did not notify Mr. Bhattacharya in Mr. Bhattacharya's medical student file that Dean Densmore had called the police on Mr. Bhattacharya on November 19, 2018.

**Request for Admission No. 108:**

On November 19, 2018, Mr. Bhattacharya left Dean Densmore's office before Dean Densmore called the police on Mr. Bhattacharya.

**Request for Admission No. 109:**

On November 19, 2018, Mr. Bhattacharya left Dean Densmore's office almost immediately after Dean Densmore had abruptly told Mr. Bhattacharya that Dean Densmore needed to end the meeting purportedly because Dean Densmore was running late for a patient appointment.

**Request for Admission No. 110:**

The fact that Dean Densmore had  called the police on Mr. Bhattacharya on November 19, 2018 was information made available to ASAC before Mr. Bhattacharya's November 28, 2018 ASAC hearing.

**Request for Admission No. 111:**

The fact that Dean Densmore called the police on Mr. Bhattacharya on November 19, 2018 was information used by ASAC in its decision to suspend Mr. Bhattacharya.

**Request for Admission No. 112:**

Dean Densmore, who facilitated the appeals process for Mr. Bhattacharya's suspension, did not inform Mr. Bhattacharya in Mr. Bhattacharya's medical student file that Dean Densmore had called the police on Mr. Bhattacharya on November 19, 2018.

**Request for Admission No. 113:**

In December 2018, Dean Densmore had an obligation under UVA Med School's academic appeals process at the time to permit Mr. Bhattacharya to inspect "his entire student file, including any material upon which the decision of ASAC was based."

**Request for Admission No. 114:**

Nothing that Mr. Bhattacharya said or did during the agreed upon November 19, 2018 meeting with Dean Densmore was unprotected speech under the First Amendment.

26

**Request for Admission No. 115:**

Mr. Bhattacharya did not commit any crimes or otherwise unlawful actions during the November 19, 2018 meeting with Dean Densmore.

**Request for Admission No. 116:**

Mr. Bhattacharya did not express suicidal ideations to Dean Densmore on November 19, 2018.

**Request for Admission No. 117:**

Mr. Bhattacharya did not express homicidal ideations to Dean Densmore on November 19, 2018.

**Request for Admission No. 118:**

Mr. Bhattacharya's speech itself during the November 19, 2018 meeting did not create a material or substantial disruption of Dean Densmore's normal employment activities on November 19, 2018.

**Request for Admission No. 119:**

Mr. Bhattacharya did not use vulgar, lewd, indecent, or plainly offensive language during the November 19, 2018 meeting with Dean Densmore.

**Request for Admission No. 120:**

Nothing that Mr. Bhattacharya said or did during the November 19, 2018 meeting with Dean Densmore meeting would lead any reasonable person to believe that Mr. Bhattacharya was suicidal or otherwise a danger to himself.

27

**Request for Admission No. 121:**

Nothing that Mr. Bhattacharya said or did during the November 19, 2018 meeting with Dean Densmore meeting would lead any reasonable person to believe that Mr. Bhattacharya was homicidal or otherwise a danger to anyone else.

**Request for Admission No. 122:**

Nothing that Mr. Bhattacharya said or did during the November 19, 2018 meeting with Dean Densmore meeting would lead any reasonable person to believe that Mr. Bhattacharya was unable to care for himself or otherwise perform the normal activities of daily living.

**Request for Admission No. 123:**

Dean Densmore did not have to call the police on Mr. Bhattacharya on November 19, 2018.

**Request for Admission No. 124:**

Dean Densmore had no valid reason to call the police on Mr. Bhattacharya on November 19, 2018.

**Request for Admission No. 125:**

Dean Densmore's decision to call the police on Mr. Bhattacharya on November 19, 2018 was principally motivated by the content of Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion.

**Request for Admission No. 126:**

As of 10:19 a.m. on November 19, 2018, Dean Peterson was aware of Mr. Bhattacharya's November 18, 2018 phone call to the UVA Med School Dean on Call.

**Request for Admission No. 127:**

As of 11:30 a.m. on November 19, 2018, Dean Densmore was aware of Mr. Bhattacharya's November 18, 2018 phone call to the UVA Med School Dean on Call.

4841-9346-5588.1

**Request for Admission No. 128:**

UVA Medical Center had inpatient psychiatric bed availability the evening of November 19, 2019.

**Request for Admission No. 129:**

A nurse employed by UVA Medical Center assured Mr. Bhattacharya that he would be provided an inpatient psychiatric bed at UVA Medical center on November 19, 2018 so as long as he would not be "kicking and screaming."

**Request for Admission No. 130:**

Dr. Winifred Wolfe knew that UVA Medical Center had inpatient psychiatric bed availability the evening of November 19, 2019.

**Request for Admission No. 131:**

UVA Medical Center accepts funding from Medicare and Medicaid.

**Request for Admission No. 132:**

UVA Medical Center is required to abide by EMTALA regulations.

**Request for Admission No. 133:**

UVA Medical Center violated EMTALA by "patient dumping" Mr. Bhattacharya at Poplar Springs Hospital in Petersburg, Virginia.

4841-9346-5588.1

Dated:  August 5, 2021

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: /s/ *Michael J. Lockerby*
      Counsel

Michael J. Lockerby (VSB No. 24003)
Whitney Swart (admitted *pro hac vice*)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  (202) 672-5300
Facsimile:  (202) 672-5399
Email:  mlockerby@foley.com
Email:  wswart@foley.com

*Counsel for Plaintiff,*
*Kieran Ravi Bhattacharya*

4841-9346-5588.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of **MR. BHATTACHARYA'S SECOND**

**DISCOVERY REQUESTS** was served on the following counsel of record, on this 5th day of

August, 2021, via electronic mail:

> Madeline M. Gibson, Esq.,
> Assistant Attorney General
> Calvin C. Brown, Esq.,
> Assistant Attorney General
> Brittany A. McGill, Esq.
> Assistant Attorney General
> Office of the Attorney General
> Commonwealth of Virginia
> 202 North Ninth Street
> Richmond, Virginia 23219
> Email: mgibson@oag.state.va.us
> Email: cbrown@oag.state.va.us
> Email: bmcgill@oag.state.va.us

> /s/ Michael J. Lockerby
> Michael J. Lockerby

1

4841-9346-5588.1