IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | | |
|---|---|---|---|
| KIERAN RAVI BHATTACHARYA, | ) | | |
| Plaintiff, | ) | Civil Action No. 3:19cv00054 | |
| | ) | | |
| v. | ) | REPORT & RECOMMENDATION | |
| | ) | | |
| JAMES B. MURRAY, et al., | ) | By: | Joel C. Hoppe |
| Defendants. | ) | | United States Magistrate Judge |

This matter is before the Court on Plaintiff Kieran Bhattacharya's motion for leave to file a second amended complaint. ECF No. 149; *see* ECF No. 156. The motion has been fully briefed and argued. ECF Nos. 149, 149-1, 154, 155, 173. For the reasons explained below, I respectfully recommend that the motion be granted only to the extent that Bhattacharya proposes to delete the three Counts that have been dismissed with prejudice and to add one new individual-capacity defendant and two new official-capacity defendants to the existing § 1983 claim in Count I. The motion should be denied in all other respects. If this recommendation is accepted, Bhattacharya should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D., and file a Second Amended Complaint containing only Count I, as amended, and the facts relevant thereto. *See* Fed. R. Civ. P. 12(f)(1).

I. The Legal Framework

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading before trial once as a matter of course and then "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)–(2). "This liberal [leave] rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). The Fourth Circuit has held that "such leave should be denied

only when the amendment would be prejudicial to the opposing party, there has been bad faith

on the part of the moving party, or the amendment would be futile." *Franks v. Ross*, 313 F.3d

184, 193 (4th Cir. 2002) (emphasis omitted). "[P]rejudice can result where a proposed

amendment raises a new legal theory that would require the gathering and analysis of facts not

already considered by the opposing party," but the "basis for a finding of prejudice" under such

circumstances "essentially applies [only] where the amendment is offered shortly before or

during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). "Bad faith

includes seeking to amend a complaint for an improper purpose," *Wilkins v. Wells Fargo Bank,

N.A.*, 320 F.R.D. 124, 127 (E.D. Va. 2017) (citing *Peamon v. Verizon Corp.*, 581 F. App'x 291,

292 (4th Cir. 2014) (holding that it was bad faith to seek to amend complaint to "artificially

inflate . . . damages in order to obtain subject matter jurisdiction")), or seeking leave despite

"repeated failure[s] to cure deficiencies by amendments previously allowed," *Foman v. Davis*,

371 U.S. 178, 182 (1962). *See Wilkins*, 320 F.R.D. at 127 (citing *U.S. ex rel. Nathan v. Takeda

Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013)). An amendment to a complaint is futile

if the proposed change "fails to satisfy the requirements of the federal rules" and applicable

standards of review, *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011),

including those governing a motion to dismiss under Rule 12(b)(6), *see Wilkins*, 320 F.R.D. at

127 (E.D. Va. 2017) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

## II. Background

This case relates to Bhattacharya's suspension and dismissal from the University of

Virginia ("UVA") School of Medicine in the fall of 2018. *See generally Bhattacharya v. Murray*,

515 F. Supp. 3d 436, 444–52 (W.D. Va. 2021) (Moon, J). Bhattacharya filed the case pro se in

September 2019. Compl., ECF No. 1. In early February 2020, after counsel entered an

appearance on his behalf, the Court granted Bhattacharya leave to amend his complaint under

Rule 15(a)(2). *See* ECF Nos. 29, 32. The Amended Complaint sought injunctive relief and

damages against UVA, its Medical School, and several UVA employees for "retaliation in

violation of his First Amendment right of free speech (Count I) and for deprivation of his

Fourteenth Amendment right of due process (Count II)," 42 U.S.C. § 1983, as well as damages

against three Medical School faculty (Defendants Nora Kern, Christine Peterson, and Sara K.

Rasmussen) in their official and individual capacities "for conspiracy to interfere with civil rights

in violation of 42 U.S.C. § 1985(3) (Count III) and conspiracy to injure him in his trade,

business, and profession under Virginia Code § 18.2-499 (Count IV)," *Bhattacharya*, 515 F.

Supp. 3d at 444. *See generally* Am. Compl. ¶¶ 139–46 (Count I), 147–52 (Count II), 153–58

(Count III), 159–65 (Count IV), ECF No. 33.

    In March 2021, Judge Moon dismissed with prejudice the § 1983 due process claim

(Count II) and the two claims alleging conspiracy (Counts III & IV). *See Bhattacharya*, 515 F.

Supp. 3d at 466; Order of Mar. 31, 2021, ECF No. 130. As relevant here, Judge Moon held that

the Amended Complaint failed to state a claim for conspiracy because the three faculty members

who allegedly conspired against Bhattacharya were protected from liability by the intracorporate

conspiracy doctrine. *See Bhattacharya*, 515 F. Supp. 3d at 465–66. This "doctrine protects

individual defendants who are employees of a corporation and were acting in their capacities as

employees in connection with the alleged conspiracy" *Id.* at 465 (citing *Buschi v. Kirven*, 775

F.2d 1240, 1252 (4th Cir. 1985)); *see Balt.-Wash. Tele. Co. v. Hot Leads Co.*, 584 F. Supp. 2d

736, 744 (D. Md. 2008) ("[T]he 'intracorporate conspiracy doctrine' holds that acts of corporate

agents are attributed to the corporation itself, thereby negating the multiplicity of actors

necessary for the formation of a conspiracy. In essence, this means that a corporation cannot

3

conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."). "'Simply joining corporate officers as defendants in their individual capacities,'" as Bhattacharya's Amended Complaint purported to do, "'is not enough to make them persons separate from the corporation in legal contemplation.'" *Bhattacharya*, 515 F. Supp. 3d at 465 (quoting *Buschi*, 775 F.2d at 1252). Rather, the complaint must plausibly allege that an employee of the defendant-corporation acted without authorization beyond "'the normal course of their corporate duties,'" *id.* (quoting *Buschi*, 775 F.2d at 1252), or had "'an independent personal stake in achieving the corporation's illegal objective,'" *id.* (quoting *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)). *But see Tomlin v. Int'l Bus. Machs. Corp.*, No. CL-2011-8763, 2012 WL 7850902, at *14 (Va. Cir. Feb. 13, 2012) (concluding that "the independent personal stake exception would not apply to negate the intra-corporate immunity doctrine" because "the Virginia Supreme Court has not recognized an exception" to that doctrine). Plausibly alleging that an employee and someone outside the defendant-corporation conspired to achieve "the same unlawful objective," *Cabbagestalk v. Cartledge*, No. 3:12cv3182, 2013 WL 5409204, at *4 (D.S.C. Sept. 25, 2013) (citing *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("While [civil-rights plaintiffs] need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.")); *see also Ratcliffe v. Walker*, 85 S.E. 575, 580 (Va. 1915) (explaining that "the essence" of a conspiracy claim under Virginia law is that two or more persons shared a "common design" and "pursued by their acts the same object . . . with a view to the attainment of that same object"), would also defeat intracorporate immunity, *see, e.g.*, *Balt.-Wash. Tele. Co.*, 584 F. Supp. 2d at 744. Judge Moon concluded that none of the well-pled factual allegations in

Bhattacharya's Amended Complaint supported a reasonable inference that Kern, Peterson, or Rasmussen

> conspired with anyone outside UVA, or that they were not acting in their capacities as UVA Medical School faculty members in participating in the decision to suspend Bhattacharya. To the contrary, Rasmussen's discussion with Bhattacharya at the microaggression panel discussion, Peterson's meeting with Bhattacharya, Kern's Card, and Kern's attendance at the ASAC's meetings all occurred at UVA Medical School and in relation to the Individual Defendants' responsibilities as faculty members. Moreover, Bhattacharya's conclusory allegations, [Am. Compl.] ¶¶ 161–62, lack factual support and do not support an inference that the Individual Defendants' acts were unauthorized or that they had an independent personal stake in Bhattacharya's suspension.

*Bhattacharya*, 515 F. Supp. 3d at 465.

As the case stands now, Bhattacharya's operative complaint, ECF No. 33, asserts one claim for violating his First Amendment right to free speech, *see* 42 U.S.C. § 1983, against the following individuals and entities: The University of Virginia, the University's Rector, Vice Rector & Members of the Board of Visitors, Interim Chief of University Police Timothy Longo, and Deputy Chief of University Police Melissa Fielding[1]; The University of Virginia School of Medicine, Dr. John Densmore, Associate Dean for Admissions & Student Affairs, and Dr. Jim Tucker, Chair of the Academic Standards & Achievement Committee[2]; and Dr. Christine Peterson, Assistant Dean for Medical Education, Dr. Nora Kerns, Assistant Professor of Urology, and Dr. Sara K. Rasmussen, Associate Professor of Medicine.[3] *See generally* Am. Compl. ¶¶ 9–22, 139–46 (Count I); *Bhattacharya*, 515 F. Supp. 3d at 444, 452–60 & nn. 1–2 (denying Defendants' joint motion to dismiss Count I). Judge Moon denied Defendants' motion

---

[1] The Amended Complaint refers to these entities and individuals collectively as "The University Defendants." They are sued in their official capacities only. Am. Compl. ¶¶ 10–14.

[2] The Amended Complaint refers to these entities and individuals collectively as "The UVA Med School Defendants." They are sued in their official capacities only. *Id.* ¶¶ 15–19.

[3] These Individual Defendants are sued in their individual and official capacities. *Id.* ¶¶ 20–28.

5

to dismiss this claim because the facts alleged in the Amended Complaint supported a reasonable inference that Bhattacharya's statements and questions at the AMWA microaggression panel, as well as his online comments that prompted UVA to issue a no-trespass order, were protected speech; that the named Defendants retaliated against Bhattacharya by suspending him from UVA Medical School, requiring him to undergo counseling and obtain "medical clearance" in order to stay enrolled, and preventing him from appealing his suspension or applying for readmission by issuing and refusing to revoke a no-trespass order after Bhattacharya made those comments; and that there was a causal relationship between his protected speech and Defendants' adverse actions. *Bhattacharya*, 515 F. Supp. 3d at 452–60. The Amended Complaint seeks damages and injunctive relief under 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 14, 18, 27–28, 146; *Bhattacharya*, 515 F. Supp. 3d at 444.

*

Bhattacharya proposes several amendments. First, he would delete the counts that Judge Moon dismissed with prejudice, as well as "all allegations that were relevant only to those three counts." Pl.'s Mot. to Amend 2–3. Second, Bhattacharya finds it necessary to "publicly disclose and allege" additional facts relating to his First Amendment retaliation claim (Count I) and Defendants' Answer thereto. *See id.* at 3 (citing Answer ¶ 7, ECF No. 135). "These facts include a discussion [on] why [his] former girlfriend," Angel Hsu, M.D., "made certain claims [about Bhattacharya] at the time and why those claims were not credible." *Id.* at 4 ("The evidence will show that the former girlfriend collaborated with Dean Densmore and Dean Peterson to obtain revenge for Mr. Bhattacharya's decision to break up with her the night before the AMWA Microaggression Seminar. . . ."); *see, e.g.*, Prop. Second Am. Compl. ¶¶ 59–66, 95–96, 159, 161–76, ECF No. 149-1. Third, he would name Dr. Hsu as a new Defendant, Prop. Second Am.

6

Compl. ¶¶ 40–42, and add a state-law defamation claim (proposed Count III) against her, *see id.*
¶¶ 209–16. Fourth, Bhattacharya would add a new claim for civil conspiracy under Virginia
common law (proposed Count II) against Dr. Hsu and Defendants Densmore, Kern, Peterson,
and Rasmussen. *See id.* ¶¶ 28–42, 205–08. Fifth, Bhattacharya wishes to add Lesley Thomas
("Dean Thomas") and Dr. Randolph Canterbury ("Dean Canterbury"), in their official capacities
as Deans at the School of Medicine, as Defendants in Count I. *See id.* ¶¶ 24, 27, 196–204.
Finally, also in Count I, Bhattacharya wishes to "su[e] Dean Densmore in his induvial capacity
in addition to his official capacity." Pl.'s Mot. to Amend 4–5; *compare* Am. Compl. ¶¶ 15, 19,
*with* Prop. Second Am. Compl. ¶¶ 38–39. If this last amendment is allowed, Defendants
Densmore, Kern, Peterson, and Rasmussen would be sued in both their individual and official
capacities. *See* Prop. Second Am. Compl. ¶¶ 28–39.

"Defendants oppose the [m]otion primarily because the proposed amendments fail to
state a claim" upon which relief can be granted and, as such, allowing leave to amend would be
futile. Defs.' Br. in Opp'n 1, ECF No. 154. They argue that Bhattacharya's proposed conspiracy
claim fails to cure pleading defects that Judge Moon identified in dismissing the prior conspiracy
claims under Rule 12(b)(6), *see id.* at 6–8, and that the proposed claims against Dr. Hsu, Dean
Canterbury, and Dean Thomas are time barred, *see id.* at 4–5 (citing *Harvey v. Landauer*, No.
7:18cv97, 2020 WL 1904458, at *8–9 (W.D. Va. Apr. 17, 2020)). They do not specifically
address Bhattacharya's proposal to add Defendant Densmore as an individual-capacity defendant
to the § 1983 damages claim in Count I. *See generally id.* at 2–8. Defendants also argue that
allowing Bhattacharya "to add a host of new allegations to support" his First Amendment
retaliation claim (Count I) "would serve no apparent purpose" because Judge Moon already held
that the facts alleged in the operative complaint were sufficient to survive under Rule 12(b)(6).

*Id.* at 1–2; *see id.* at 2 ("The new allegations, which span approximately thirty additional pages . . . primarily discuss Plaintiff's three involuntary hospitalizations for psychiatric care in January 2017 and November 2018 and Plaintiff's former relationship with Dr. Hsu from 2016 to 2018.").

III. Discussion

A.    *Proposed Changes to Count I: New Defendants & Allegations*

Bhattacharya seeks to add Defendant Densmore as an individual-capacity defendant and to add Dean Canterbury and Dean Thomas as defendants, in their official capacities only, to the First Amendment retaliation claim in Count I. As currently pled, that Count states a claim for relief under 42 U.S.C. § 1983, against Defendants Board of Visitors, Longo, Fielding, Densmore, and Tucker in their official capacities, and against Defendants Kern, Peterson, and Rasmussen in their individual and official capacities. *Bhattacharya*, 515 F. Supp. 3d at 444 & n.1. Defendants do not address Bhattacharya's request to add Densmore as an individual-capacity defendant to Count I. *See generally* Defs.' Br. in Opp'n 2–8. This change would allow Bhattacharya to hold Densmore personally liable for damages, 42 U.S.C. § 1983, if he can prove that Densmore, "through [his] own individual actions," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), retaliated against Bhattacharya for engaging in constitutionally protected speech, *Bhattacharya*, 515 F. Supp. 3d at 459–60 ("At this stage of the litigation, the Court finds that Peterson, Kern, and Rasmussen are not entitled to qualified immunity on the First Amendment retaliation claim."). *See generally Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).

In his proposed Second Amended Complaint, Bhattacharya alleges that Densmore knew about his comments at the AMWA microaggression panel and his discussions with Peterson, *see* Prop. Second Am. Compl. ¶¶ 6–9, 43, 89–91, 94, 109, before Densmore "coerced" Bhattacharya "to undergo a psychiatric 'evaluation'" at the University's student health center on November 14,

2018, *id.* ¶ 13(a). Bhattacharya acquiesced "out of fear of retaliation if he did not comply" with Densmore's demand. *Id.* ¶ 166. Densmore did not tell Bhattacharya about the Professionalism Concern Card ("PCC") that Kern submitted after the AMWA microaggression panel or indicate that Bhattacharya "had anything to be concerned about." *See id.* ¶¶ 109–10. Kern's PCC was the subject of the November 14, 2018 ASAC meeting that resulted in Dr. Tucker's letter suggesting Bhattacharya "'consider getting counseling in order to work on [his] skills of being able to express [himself] appropriately'" when interacting with patients, families, and other healthcare providers. *Id.* ¶ 125. Densmore and Peterson attended the ASAC meeting as guests. *See id.* ¶ 149. On November 26, 2018, Densmore sent Bhattacharya an email stating, "You will need to be seen by CAPS before you can return to classes." *Id.* ¶ 130. Judge Moon concluded that the Amended Complaint's factual allegations describing Kern's and Peterson's personal involvement in these events stated a First Amendment retaliation claim against those Defendants in their individual capacities. *See generally Bhattacharya*, 515 F. Supp. 3d at 453–60. The allegations in Bhattacharya's proposed Second Amended Complaint describing Densmore's personal involvement are similar enough to those Judge Moon has found sufficient that the amendment would not be futile at this point in the litigation. *See id.*

The Court should also consider whether Densmore would be prejudiced if the amendment is allowed and whether Bhattacharya's amendment is made in bad faith. *See Franks*, 313 F.3d at 193. Bhattacharya explains that he wishes to sue Densmore in his individual capacity, as well as his official capacity, because Defendants' Answer states that Bhattacharya's suspension from UVA Medical School "'was triggered by events including'" his "'erratic,'" "'aggressive,'" and "'troubling'" behavior during two meetings with Densmore. *See* Pl.'s Mot. to Amend 3 (quoting Answer ¶ 7 (filed Apr. 14, 2021)). These circumstances do not suggest that Bhattacharya acted in

bad faith by failing to name Densmore as an individual-capacity defendant in the Amended Complaint, or that allowing the unopposed amendment would be prejudicial to Densmore at this relatively early stage of the case. *See Wilkins*, 320 F.R.D. at 127–28 (discussing bad faith and prejudice); *Bhattacharya*, 515 F. Supp. 3d at 444 n.2 (noting that the Virginia Attorney General's Office represents all Defendants in this case, including those sued in both their individual and official capacities); *cf. Francis v. Woody*, No. 3:09cv235, 2009 WL 2371509, at *8–9 (E.D. Va. July 31, 2009) (concluding that § 1983 plaintiff's "change from suing [sheriff] in his official capacity to suing [him] in his individual capacity relates back to the date of the original complaint" under Rule 15(c)(1) and was not prejudicial). Accordingly, I will recommend allowing Bhattacharya leave to amend to add Densmore in an individual capacity to Count I.

Defendants argue that Bhattacharya's proposed § 1983 claim against Dean Canterbury and Dean Thomas in their official capacities are time-barred by the applicable two-year statute of limitations. *See* Defs.' Br. in Opp'n 4–5 (citing *Harvey*, 2020 WL 1904458, at *9 ("Section 1983 claims brought in this court are governed by Virginia's two-year limitations period for personal injury claims.")). Bhattacharya's cause of action under § 1983 "accrued, and the statute of limitations began to run, when he knew, or through reasonable diligence should have known, of the [constitutional] injury he had suffered," *Harvey*, 2020 WL 1904458, at *9 (citing *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 388–89 (4th Cir. 2014)). *See, e.g.*, *Peirce v. Bryant*, No. 4:14cv2927, 2016 WL 11410276, at *3 (D.S.C. Feb. 1, 2016) (plaintiff's § 1983 "cause of action for retaliation in violation of the First Amendment" accrued on the date she was arrested because "her arrest was, as she alleged, in retaliation for her speech on matters of public concern"). Defendants note that the proposed Second Amended Complaint affirmatively alleges that Bhattacharya knew about his comments and the Defendants' retaliatory conduct—including

the PCC, the mandatory counseling or medical clearance before returning to class, his suspension from school, and the no-trespass order—around the time each event occurred between October 2018 and January 2019. *See* Defs.' Br. in Opp'n 4–5. Thus, his two-year limitations period expired, at the latest, in January 2021. Bhattacharya filed this motion to add Deans Canterbury and Thomas as official-capacity defendants to Count I on June 10, 2021. ECF No. 149.

Bhattacharya responds that the expired limitations period is irrelevant because his proposed amendment "'relates back to the date of the original'" complaint that he filed pro se in September 2019. Pl.'s Reply Br. 10 (quoting Fed. R. Civ. P. 15(c)(1)), ECF No. 155. As relevant here, Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" either when it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), or when it "changes the party or the naming of the party against whom [such] a claim is asserted," "the party to be brought in by amendment received such notice of the action that it will not be prejudiced in defending on the merits," and the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii). *See* Fed. R. Civ. P. 15(c)(1)(C) (allowing relation back only "if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" received adequate notice).

I find that Rule 15(c)(1)(C) allows relation back in this case. To start, Bhattacharya's proposed § 1983 claim against Deans Canterbury and Thomas in their official capacities as administrators for UVA's School of Medicine does not seek to impose personal liability upon the officials for any action that they took under color of state law. *See Graham*, 473 U.S. at 165. The

proposed official-capacity claim is merely "'another way of pleading an action against'" UVA, the government "'entity of which [each] officer is an agent.'" *Id.* at 165–66 (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 5 (1978); *see Weihua Huang v. Rector & Visitors of Univ. of Va.*, No. 3:11cv50, 2011 WL 6329755, at *5 (W.D. Va. Dec. 19, 2011) (Moon, J.). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (internal citation omitted).

Bhattacharya's original complaint named the "Rector and Visitors of the University of Virginia" as the sole Defendant and attempted to set out a claim for damages and injunctive relief arising out of various officials' alleged retaliation against him for engaging in protected speech at a university-sponsored event. *See generally* Compl. 1–48. On September 30, 2019, the Attorney General's Office filed a waiver of service acknowledging receipt of the complaint and agreeing to waive service of summons on UVA's behalf. ECF No. 2. Bhattacharya then amended his complaint, and named the Board of Visitors and several UVA employees as official-capacity defendants to the First Amendment retaliation claim in Count I. After UVA moved to dismiss on the merits, Judge Moon concluded that Count I stated an official-capacity claim for relief against UVA under § 1983 insofar as it plausibly alleged that Defendants used UVA Medical School's professionalism standards as a pretext for violating Bhattacharya's right to free speech. *See generally Bhattacharya*, 515 F. Supp. 3d at 444, 452–59. Bhattacharya's proposal to name Dean Canterbury and Dean Thomas as additional official-capacity defendants to Count I will not alter the fundamental nature of his cause of action against UVA, which remains the "real party in

interest" under § 1983. *Graham*, 473 U.S. at 166. Accordingly, the amendment should be allowed.

Finally, Defendants argue that allowing Bhattacharya "to add a host of new allegations to support" his First Amendment retaliation claim "would serve no apparent purpose" because Judge Moon already held that the facts alleged in the operative complaint were sufficient to survive under Rule 12(b)(6). Defs.' Br. in Opp'n 1–2; *see id.* at 2 ("The new allegations, which span approximately thirty additional pages . . . primarily discuss Plaintiff's three involuntary hospitalizations for psychiatric care in January 2017 and November 2018 and Plaintiff's former relationship with Dr. Hsu from 2016 to 2018."). I agree, but only to the extent that the new factual allegations concern Dr. Hsu. *See* Fed. R. Civ. P. 12(f)(1). Defendants do not specifically argue that they will be prejudiced by responding to the allegations concerning Dean Canterbury and Dean Thomas, *see* Defs.' Br. in Opp'n 1–3, 10–11, some of which are in the Amended Complaint, *compare* Am. Compl. ¶¶ 82, 99–100, 160, *with* Prop. Second Am. Compl. ¶¶ 7, 94, 133. Bhattacharya's new allegations concerning Densmore are relevant to his proposed § 1983 claim against Densmore in his individual capacity, and Defendants would not be prejudiced in responding to those allegations at this stage of the case. *See Wilkins*, 320 F.R.D. at 128.

## B.    *Proposed Count II: Common Law Civil Conspiracy*

Bhattacharya seeks leave to add a new claim for common law civil conspiracy against Dr. Hsu and Defendants Densmore, Kern, Peterson, and Rasmussen. *See* Pl.'s Mot. to Amend 2, 4–5; Prop. Second Am. Compl. ¶¶ 28–42, 205–08. "Under Virginia law, the elements of a common law civil conspiracy are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) result[ed] in damage to plaintiff through an overt [tortious] action done pursuant to the agreement."

13

*Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 634 (W.D. Va. 2015) (internal quotation marks omitted) ("There must also be an underlying tort committed."); *see Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017) ("The object of a civil conspiracy claim is to spread liability to persons other than the primary tortfeasor. Consequently, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."). Additionally, because "the essence" of a conspiracy is that two or more persons agreed to a "common design . . . with a view to the attainment of th[e] same object," *Ratcliffe*, 85 S.E. at 579, the complaint must plead facts showing that each member of the alleged conspiracy shared "the *same unlawful* objective," *Cabbagestalk*, 2013 WL 5409204, at *4 (emphasis added) (citing *Hinkle*, 81 F.3d at 421). *Cf. Hinkle*, 81 F.3d at 421 (explaining at the summary judgment stage that plaintiff's "evidence must, at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."). Factual allegations showing that a member of the purported conspiracy intended to achieve a lawful objective, or the absence of factual allegations showing that this person agreed with someone else to accomplish her lawful objective through unlawful means, would defeat a conspiracy claim as to that person. *Cf. Ratcliffe*, 85 S.E. at 579 (explaining that a jury would be justified in finding a conspiracy between two defendants who "maliciously sought to deprive the plaintiff of the society of his wife," then a tort under Virginia law, if the evidence showed "that the defendants pursued by their acts the same [unlawful] object . . . with a view to the attainment of that same object"); *Dunlap v. Cottman Transmission Sys., Inc.*, 754 S.E.2d 313, 317 (Va. 2015) ("Because there can be no conspiracy to do an act that the law allows, . . . actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." (cleaned up)).

14

The factual allegations supporting Bhattacharya's proposed Count II describe two groups of persons who, through their alleged efforts to get Bhattacharya suspended or expelled from UVA Medical School in the fall of 2018, were pursuing two independent and fundamentally different objectives. *See* Pl.'s Reply Br. 8 (asserting that Dr. Hsu and the UVA faculty members all intended to harm Bhattacharya, but that each person "had different motives for entering the conspiracy" and pursued distinct objectives consistent with those motivations). On one hand, Dr. Hsu wanted revenge against Bhattacharya after he ended their romantic relationship on October 24. *See, e.g.*, Prop. Second Am. Compl. ¶ 42 (alleging that Bhattacharya told Dr. Hsu "he wished to end their relationship," that Dr. Hsu "did not take this news well," and that Deans Peterson and Densmore "were active participants in [Dr.] Hsu's subsequent efforts to obtain retribution"); *id.* ¶ 95 (alleging that Dr. Hsu wanted to "obtain vengeance for his breaking off their relationship"); *id.* ¶ 157 (alleging that Bhattacharya's formal suspension from UVA Medical School on November 29, 2018, "followed more than two weeks of efforts" by Dr. Hsu "to retaliate against [him] for ending [their] personal relationship" on October 24, 2018); *id.* ¶ 172 (referencing "the efforts of [Dr.] Hsu to retaliate against him for ending their relationship"); *see also id.* ¶ 207 (asserting that Dr. Hsu "conspired with" four UVA faculty members, including Densmore and Peterson, "for the purpose of obtaining retribution for personal reasons"); Pl.'s Mot. to Amend 4 (seeking to add allegations showing "that the former girlfriend collaborated with Dean Densmore and Dean Peterson to obtain revenge for [his] decision to break up with her the night before the AMWA Microaggression Seminar"). On the other hand, UVA faculty members Densmore, Peterson, Kern, and Rasmussen collectively sought to punish Bhattacharya for his unpopular—but constitutionally protected—speech at the AMWA microaggression panel on October 25. *See, e.g.*, Prop. Second Am. Compl. ¶¶ 5, 13, 38, 94–95, 103, 157, 172; *see also*

*id.* ¶ 206 (asserting that the UVA faculty members, including Densmore and Peterson, "conspired with [Dr. Hsu] for the purpose of depriving Mr. Bhattacharya of his First Amendment right of free speech"); Pl.'s Mot. to Amend 4 (seeking leave to add allegations "show[ing] that Defendants—particularly Dean Densmore and Dean Peterson—collaborated with the former girlfriend to punish Mr. Bhattacharya for his exercise of his free speech rights"); Pl.'s Reply Br. 7 (citing Prop. Second Am. Compl. ¶ 95). These facts do not support a reasonable inference that Dr. Hsu "shared the same unlawful objective," *Cabbagestalk*, 2013 WL 5409204, at *4 (citing *Hinkle*, 81 F.3d at 421), as Densmore, Peterson, Kern and/or Rasmussen.[4] The different objectives of the two groups—Dr. Hsu and the UVA faculty members—defeats Bhattacharya's conspiracy claim. Moreover, his allegations that Dr. Hsu collaborated with the UVA faculty defendants to punish Bhattacharya for exercising his free speech rights is wholly conclusory. To the extent Bhattacharya's proposed Count II asserts a common-law conspiracy claim against the UVA faculty members, *see* Pl.'s Reply Br. 7–9, that claim still fails under Virginia's

---

[4] Moreover, Bhattacharya does not adequately describe the nature of Dr. Hsu's allegedly "retaliatory conduct," Prop. Second Am. Compl. ¶ 68, or her involvement in the purported conspiracy between herself and the UVA faculty members, *see id.* ¶¶ 42, 95–96, 157. According to the proposed Second Amended Complaint, Dr. Hsu discussed Bhattacharya's mental-health condition with someone within the UVA Medical School community after the couple argued on October 24, 2018, *see id.* ¶¶ 158–64, and that on November 14, Densmore asked Bhattacharya to meet with him "after hearing of concerns that his girlfriend had about his condition worsening." *Id.* ¶ 164. Around November 19, Dr. Hsu sent Peterson a text message suggesting that Bhattacharya made her feel unsafe, which Peterson then forwarded to Densmore and another UVA official. *See id.* ¶¶ 168, 172–74. On November 28, Peterson sent Dr. Hsu a text message indicating that Bhattacharya would be suspended, but not expelled, from UVA Medical School. *Id.* ¶ 176. *See generally* Pl.'s Reply Br. 3–5 (discussing the same allegations). These allegations cannot support Bhattacharya's claim for common-law civil conspiracy against Dr. Hsu because such conduct is not "*itself* wrongful or tortious" under Virginia law, *Dunlap*, 754 S.E.2d at 317 (emphasis added) ("Because there can be no conspiracy to do an act that the law allows, we have held that an allegation of conspiracy . . . must at least allege an unlawful act or an unlawful purpose to survive demurrer." (cleaned up)). *Cf. Jackson v. Liberty University*, No. 6:17cv41, 2017 WL 3326972, at *12–13 (W.D. Va. Aug. 3, 2017) (Moon, J.) (male student's allegations that female student, who told various university officials that male student sexually assaulted her, "improperly used the Title IX proceedings to carry out her ulterior motives of getting revenge for her expulsion and harming the Liberty football team" failed to state a claim for "malicious abuse of legal process" against female student because university's internal Title IX investigation was not "legal process" under Virginia law).

intracorporate conspiracy doctrine, *see Bhattacharya*, 515 F. Supp. 3d at 466; *Tomlin*, 2012 WL 7850902, at *14.[5] Accordingly, allowing the amendment would be futile.

C.    *Proposed Count III: Defamation*

Finally, Bhattacharya proposes to sue Dr. Hsu for defamation. *See* Pl.'s Mot. to Amend 5; Prop. Second Am. Compl. ¶¶ 209–16. "Under Virginia law, the elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019) (Moon, J.) (quoting *Choi v. Kyu Chul Lee*, 312 F. App'x 551, 552 (4th Cir. 2009). "[P]ublication . . . requires that [the statement] be communicated to a third party 'so as to be heard and understood by such person.'" *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) (quoting *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 90 (Va. 1931)). "An actionable statement must be both false and 'defamatory,' meaning that the statement 'tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Rosenthal v. R.W. Smith Co.*, 260 F. Supp. 3d 588, 594 (W.D. Va. 2017) (Moon, J.) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015)). Subjective opinions, statements that "do[] not contain a provably false factual connotation, [and] statements which cannot reasonably be interpreted as stating actual facts about a person," *Fuste v. Riverside Healthcare Assoc., Inc.*,

---

[5] At oral argument, Bhattacharya's counsel asserted that even if the allegations linking Dr. Hsu to the alleged conspiracy failed to state a claim, the conspiracy claim could nonetheless proceed against the UVA faculty defendants and the four "Non-Party Speech Suppressors," Prop. Second Am. Compl. ¶¶ 43–46, some of whom are anonymous, because the intracorporate immunity doctrine would not bar such claim. I need not decide whether the intracorporate immunity doctrine would bar such a recast claim because it is plainly inadequate for other reasons. Bhattacharya has not alleged that any of the four "Non-Party Speech Suppressors" were a part of the alleged conspiracy. Rather, he merely asserts that they filed complaints. *See* Prop. Second Am. Compl. ¶¶ 89–94, 205–08. Moreover, none of his allegations raise an inference that any of the "Non-Party Speech Suppressors" were part of an agreement or had an unlawful purpose (or lawful purpose obtained through unlawful means) that they shared with the UVA faculty defendants.

575 S.E.2d 858, 861 (Va. 2003), generally are "not actionable because such statements cannot be objectively characterized as true or false," *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).[6] Finally, the requisite-intent element "depends upon the plaintiff's status as a public or private figure and the damages sought." *Jordan*, 612 S.E.2d at 207. A private-figure plaintiff need only allege facts "showing that the defendant published the statement knowing it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Steele v. Goodman*, 382 F. Supp. 3d 403, 420 (E.D. Va. 2019) (quoting *Gazette Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985) (other quotation marks omitted)).

Bhattacharya's complaint must "plead the *exact* defamatory words allegedly spoken by" Dr. Hsu. *Tomlin*, 2012 WL 7850902, at *9 (citing *Fuste*, 575 S.E.2d at 862 (explaining that Virginia law requires the complaint to plead "the exact words spoken or written," but "does not require that a [complaint] alleging defamation identify to whom the statements were made and under what circumstances")); *see also Fed. Land Bank of Balt. v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939) (explaining that a complaint alleging defamation "must purport to give the exact words" spoken or written, and that "[w]ords equivalent or of similar import are not sufficient"). The only words that Bhattacharya attributes to Dr. Hsu appear in paragraph 174 of the proposed Second Amended Complaint, which discusses a text message that Dr. Hsu allegedly sent to Peterson around November 19, 2018. *See* Prop. Am. Compl. ¶ 174. In the text message, Dr. Hsu asked Peterson "'to write a letter documenting all the distress Kieran has caused me and how I perceived him as a danger to me when I spoke to you.'" *Id.* Bhattacharya also alleges that Dr.

---

[6] "Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." *Jordan*, 612 S.E.2d at 206–07.

Hsu told Peterson that Bhattacharya had "'a giant shovel in his room'" and that her friend's key was missing. According to the proposed complaint, Dr. Hsu wrote, "'it's gone and I can't find it anywhere and I'm an organized person and don't misplace keys especially my friends key.'" *Id.*

Dr. Hsu's statement that Bhattacharya caused her "distress" and that she "perceived him as a danger when [she] spoke to" Peterson, *id.,* is not actionable because it "plainly expresses [her] subjective view" of how she perceived Bhattacharya, and it does not "claim to be in possession of any objectively verifiable false facts" about him or his conduct. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (cleaned up). Dr. Hsu's comment about the shovel is true. Bhattacharya admits that he did, in fact, have a shovel in his room at the time—"a shovel that [he] had been using both to clean up after their dog and to jam his bedroom door shut so that she could not come in." Prop. Second Am. Compl. ¶ 174. Accordingly, that statement also cannot support his proposed defamation claim. *Jordan*, 612 S.E.2d at 206. Finally, Bhattacharya alleges that Dr. Hsu's comment about the missing key reflected Dr. Hsu's "stated belief that [he] had taken a spare key to her friend's house," and that this belief was false because Bhattacharya "did not take and knew nothing about" the key. Prop. Second Am. Compl. ¶ 174. Even assuming that Dr. Hsu's exact words—"it's gone and I can't find it anywhere and I'm an organized person and don't misplace keys especially my friends key," *id.*—falsely imply that Bhattacharya took her friend's house key, that statement cannot reasonably be interpreted as tending to "'so harm [his] reputation . . . as to lower him in the estimation of the community or to deter [others] from associating or dealing with him,'" *Rosenthal*, 260 F. Supp. 3d at 594 (quoting *Schaecher*, 772 S.E.2d at 596–97. *Cf. Schaecher*, 772 S.E.2d at 599 (public official's comment that plaintiff was "not totally truthful" in submitting a permit application did "not meet the threshold for defamatory 'sting' to engender disgrace, shame, scorn, or contempt, or to render

[plaintiff] odious, infamous, or ridiculous"). Accordingly, granting Bhattacharya leave to add that claim would be futile.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that Bhattacharya's motion to file a second amended complaint, ECF No. 149, be **GRANTED in part** to the extent that it seeks to (1) delete Counts II, III, and IV from the Amended Complaint; (2) add Dr. John Densmore, in his individual capacity, as a Defendant to the § 1983 claim in Count I; and (3) name Lesley Thomas and Dr. Randolph Canterbury, in their official capacities only, to the § 1983 claim in Count I. The motion should be **DENIED** in all other respects. If this recommendation is accepted, Bhattacharya should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D., *see, e.g.*, Prop. Second Am. Compl. ¶¶ 40–42, 59–68, 95, 156–64, 167–74, 176, and file a Second Amended Complaint containing only Count I, as amended, and the factual allegations relevant thereto. *See* Fed. R. Civ. P. 12(f)(1).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: November 12, 2021

Joel C. Hoppe
United States Magistrate Judge