IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KIERAN RAVI BHATTACHARYA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Civil Action No.: 3:19-CV-00054 |
| JAMES B. MURRAY, JR., et. al., | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE'S REPORT AND RECOMMENDATIONS**

Plaintiff Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully states as follows for his objections to the November 12, 2021 Report & Recommendation (Dkt. #230) (the "R&R") of the Honorable Joel C. Hoppe, United States Magistrate Judge (the "Magistrate"), who recommended that the pending Motion for Leave to File Second Amended Complaint (Dkt. #149)[1] be granted in part and denied in part.

With all due respect to the Magistrate, Plaintiff objects to the recommendation that leave to amend "be granted only to the extent that [Plaintiff] proposes to delete the three Counts that have been dismissed with prejudice and to add one new individual-capacity defendant and two new official-capacity defendants to the existing § 1983 claim in Count I." (Dkt. #230-1, p. 1 of 21.) The facts and law set forth herein establish that the other proposed amendments would not be "futile" and would be supported by the evidence at trial for purposes of Fed. R. Civ. P. 15(b).

---

[1] The proposed Second Amended Complaint ("SAC") is on file with the Court as Dkt. #149-1.

1

Even if no other defendants or causes of action are added, Plaintiff also objects to the Magistrate's recommendation that Plaintiff "should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D." (Dkt. #230-1, p. 1 of 21.) Accepting this recommendation would be extremely prejudicial to Mr. Bhattacharya. Defendants' Answer to ¶ 7 of the First Amended Complaint—which refers to Angel Hsu as "[Plaintiff's] girlfriend, who was also a Medical School student" (Dkt. #135, p. 4 of 21)—claims that alleged interactions between Mr. Bhattacharya and Angel Hsu warranted Mr. Bhattacharya's suspension. Angel Hsu has also been identified by Defendants as one of their key witnesses on all the bases for suspension that they have since contrived. Defendants' May 19, 2021 Initial Disclosures and September 20, 2021 Amended and Supplemental Initial Disclosures state that Angel Hsu "has knowledge of the Plaintiff's aggressive, abusive, unprofessional, and inappropriate behavior in 2017, 2018, and 2019."[2] Defendants' May 19, 2021 Initial Disclosures state that Dean Peterson—who is named in both her official and her individual capacity—has knowledge of "the negative impact that the Plaintiff's inappropriate and aggressive behavior had on a fellow student."[3] Defendants' September 20, 2021 Amended and Supplemental Initial Disclosures state that Dean Peterson has knowledge of "interactions between the Plaintiff and Angel Hsu including their relationship history, the Plaintiff's mental health issues, and the Plaintiff's aggressive, threatening, and intimidating

---

[2] Defendants' Initial Disclosures—like their September 20, 2021 "Final Supplemental Disclosures"—refused to provide Plaintiff's counsel with Angel Hsu's contact information until the Court entered a protective order in this case. The Court entered the parties' stipulated protective order on June 16, 2021 (Dkt. #150), but Defendants still refuse to provide contact information for Angel Hsu. Instead, Defendants obtained from Angel Hsu certain documents that *they want to use* and produced them as Bates Nos. HSU00003373-3430 along with only some of Defendants' text message exchanges with Angel Hsu, produced as Bates Nos. UVA00002246-2333. Meanwhile, Plaintiff's counsel has sought to subpoena documents from Angel Hsu for more than three months but has been unable to serve her at any of the publicly available addresses for her.

[3] On its face, Dean Peterson's purported "knowledge" is not personal knowledge. Consistent with the allegations of the proposed Second Amended Complaint, it all came from Angel Hsu.

behavior toward Dr. Hsu and Dr. Hsu's efforts to protect herself from the Plaintiff, the Plaintiff's difficulties managing his medication in the fall of 2018…."[4] In view of Defendants' pleadings and discovery responses alleging that testimony from and about Angel Hsu is necessary for their defense, there is no basis for preventing Mr. Bhattacharya from pleadings facts showing what actually transpired. These facts *are* relevant regardless of whether Angel Hsu is a named defendant.

Angel Hsu need not be a named defendant for Plaintiff's conspiracy claim to be viable. The conduct of the existing defendants related to Angel Hsu establishes that at least one of them, Dean Peterson, acted beyond the scope of her corporate duties as part of the conspiracy alleged in Count II. This *ultra vires* conduct on the part of Dean Peterson creates an exception to the intra-enterprise conspiracy doctrine even without the joinder of Angel Hsu or any other non-parties. The evidence of this unauthorized activity beyond the scope of Dean Peterson's employment includes the November 23, 2018 correspondence from Dean Peterson (Bates Nos. UVA00003371-72) attached as **Exhibit A** which expressed her personal opinions based on "information" obtained from Angel Hsu was sent on UVA Med School letterhead in violation of UVA policies.

## I.     PRELIMINARY STATEMENT

These two causes of action that the R&R recommends denying leave to assert are Count II (Civil Conspiracy Against the UVA Medical School Co-Conspirators and the Third Party Co-Conspirator, Angel Hsu) and Count III (Defamation Against Angel Hsu). With or without these additional causes of action, factual allegations pertaining to Angel Hsu are relevant to Count I (Deprivation of First Amendment Right of Free Speech in Violation of 42 U.S.C. § 1983). Defendants themselves made Angel Hsu's active role in the First Amendment retaliation at issue in

---

[4] On its face, Dean Peterson's purported "knowledge" is not personal knowledge. Consistent with the allegations of the proposed Second Amended Complaint, it all came from Angel Hsu.

4873-3590-7332.4

this case "front and center" in ¶ 7 of their Answer to the First Amended Complaint. Once the Court found Mr. Bhattacharya's First Amendment claims sufficient to withstand a Rule 12(b)(6) motion to dismiss, what Defendants previously told the Court was an "academic suspension"[5] suddenly had a new rationale. The November 29, 2018 Suspension Letter from UVA Med School's Academic Standards and Achievement Committee ("ASAC") (Dkt. #33-53) claimed that Mr. Bhattacharya had violated ASAC's "Technical Standards."  The Suspension Letter made vague references to "aggressive and inappropriate interactions" that allegedly occurred in "public settings." But the only specific "interactions" referenced in ASAC's Suspension Letter and November 15, 2018 correspondence (Dkt. #33-36)—which admonished Mr. Bhattacharya to "show mutual respect to all" and "express [his opinions] in appropriate ways" and advised him to "consider getting counseling" to improve his communication skills—were Mr. Bhattacharya's questions and comments during the October 25, 2018 AWMA Microaggression Panel Discussion. Defendants' Answer to ¶ 7 of the First Amended Complaint serves up an entirely different rationale.

In response to ¶ 7 of Defendants' Answer, the Second Amended Complaint reveals other acts of retaliation for Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion that predated ASAC's November 15, 2018 correspondence and November 29, 2018 Suspension Letter. These include what the Second Amended Complaint refers to as the "November 14, 2018 Forced Psychiatric Evaluation" and the "November 19, 2018 Forced Psychiatric Evaluation."  The stated rationale for this "medical treatment" included Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion.[6] Unlike the dissidents

---

[5] *See* Dkt. #113 (pp. 23, 30, 31, and 32 of 33); Dkt. #116 (pp. 2, 8, 11, 12, and 14 of 21).

[6] Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion are specifically referenced in various documents that have already been filed with Court under seal related to the November 14, 2018 ECO (Dkt. ##242-1, 242-2), November 14, 2018 TDO (Dkt.

in psychiatric hospitals in the former Soviet Union to which ¶ 13 of the Second Amended Complaint refers, Mr. Bhattacharya was soon released from captivity.  Two sets of doctors at two different hospitals—including Defendants' own employees at UVA Medical Center—found no basis for the suggestion that Mr. Bhattachraya presented a threat to himself or anyone else.[7]  The current and prospective defendants—including physicians who never had doctor-patient relationships with Mr. Bhattacharya,[8] physicians who are not psychiatrists,[9] and individuals with no medical training whatsoever[10]—had their own diagnosis.[11]

Having been unsuccessful in their Rule 12(b)(6) attack on Mr. Bhattacharya's claim of First Amendment retaliation, Defendants now deny that their insistence that Mr. Bhattacharya undergo a ***third*** psychiatric evaluation in November 2018 before returning to class "was related to or triggered by Plaintiff's speech at the panel discussion." (Dkt. #135) (p. 4 of 21).  Instead, ¶ 7 of Defendants' Answer cites five "triggering" events.  The fifth one expressly references Angel Hsu, and Defendants' own document production shows her active involvement in all five of them:

---

##242-3, 242-4), November 19, 2018 ECO (Dkt. #242-6), and November 19, 2018 TDO (Dkt. #242-7).

[7] With respect to the November 14, 2018 Forced Psychiatric Evaluation, documents establishing this undisputed fact are on file with the Court under seal as Dkt. #242-5.  With respect to the November 19, 2018 Forced Psychiatric Evaluation, the medical records establishing this undisputed fact are on not on file with the Court, but Defendants' acknowledgement of this fact has been filed under seal as Dkt. #236-12.

[8] These include Dr. Tucker, Dean Densmore, Dean Peterson, and Dean Canterbury.

[9] For example, Dean Densmore's specialty is hematology and oncology (Dkt. #149-3), and Dean Peterson's specialty is obstetrics and gynecology (Dkt. #33-33).

[10] For example, Dean Thomas is a lawyer by training who is "available to hear reports of mistreatment," including "reports involv[ing] sexism, racism, harassment, discrimination, verbal abuse, and other types of unprofessional behavior directed at students." (Dkt. #33-28.)

[11] In fact, a subsequent email exchange among Dr. Tucker, Dean Canterbury, and Dean Thomas relied upon Defendants' alternative "diagnosis" as the basis for convening the "Emergency ASAC meeting" that resulted in Mr. Bhattacharya's suspension.  This email exchange is on file with the Court under seal as Dkt. #236-12.

| # | **Triggering Event (Answer ¶ 7)** | **Evidence of Angel Hsu's Involvement** |
|---|---|---|
| 1 | "November 14, 2018 meeting between Plaintiff and John Densmore at which Plaintiff's behavior was erratic and troubling, to the point that Dean Densmore was sufficiently concerned about Plaintiff's health and welfare that he accompanied him to the University's counseling center" | By his own written admission, Dean Densmore required that Plaintiff be evaluated by CAPS on November 14, 2018 because of (1) Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion; (2) information transmitted to Dean Densmore from Dean Peterson concerning Mr. Bhattacharya following a meeting between Dean Peterson and Mr. Bhattacharya on October 31, 2018; (3) information transmitted to Dean Densmore from Dean Peterson from Angel Hsu concerning Mr. Bhattacharya following a meeting between Dean Peterson and Angel Hsu on November 1, 2018; and (4) information transmitted to Dean Densmore from Dean Peterson from Angel Hsu concerning Mr. Bhattacharya during a meeting between Dean Peterson and Angel Hsu on November 13, 2018.[12] |
| 2 | "Plaintiff's involuntary admission to the hospital thereafter" | The ECO and TDO by which Mr. Bhattacharya was subjected to the November 14, 2018 Forced Psychiatric Evaluation referenced, in addition to Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion. information provided by Angel Hsu.[13] |
| 3 | "a later [November 19, 2018] meeting between Dean Densmore and Plaintiff during which Plaintiff's behavior was extremely erratic, aggressive, and concerning, to the point that Dean Densmore had to call the police" | Before, during and after the November 19, 2018 meeting cited in ¶ 7, Dean Peterson, Dean Densmore, and Angel Hsu were in communication with one another and with the Region Ten Community Services Board to have *someone* call the police for the purpose of subjecting Mr. Bhattacharya to the November 19, 2018 Forced Psychiatric Evaluation after Angel Hsu was unable to convince the police that Mr. Bhattacharya should be taken in on November 18, 2018.[14] |

---

[12] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #1 being submitted for filing under seal as **Exhibit B**.

[13] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #2 being submitted for filing under seal as **Exhibit C**.

[14] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #3 being submitted for filing under seal as **Exhibit D**.

6

| 4 | "another involuntary hospitalization of Plaintiff" | The ECO and attempted TDO that resulted in the November 19, 2018 Forced Psychiatric Evaluation referenced—in addition to Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion—information provided by Angel Hsu.[15] |
|---|---|---|
| 5 | "the issuance of a restraining order against Plaintiff with respect to his girlfriend, who was also a Medical School student" | In exchange for Angel Hsu's help in procuring the November 19, 2018 Forced Psychiatric Evaluation, Dean Peterson submitted the November 23, 2018 correspondence attached as **Exhibit A** to a court in Charlottesville in support of an emergency protective order that Angel Hsu sought to obtain on an *ex parte* basis. That effort was unsuccessful, but shortly before Mr. Bhattacharya was released on November 26, 2018, Angel Hsu succeeded in obtaining an *ex parte* preliminary protective order. Defendants' internal communications at the time establish that Defendants' representations about this and related events—as set forth in its Answer to the First Amended Complaint—were demonstrably false.[16] |

In short, Defendants themselves have made Angel Hsu relevant to Mr. Bhattacharya's First Amendment claims. Because of Dean Peterson's actions beyond the scope of her corporate duties pursuant to the alleged conspiracy, Angel Hsu is not a necessary party for the civil conspiracy claim alleged in Count II to proceed, and the facts alleged are otherwise sufficient to establish that it would not be futile for the Court to permit an amendment allowing a cause of action for civil conspiracy to proceed. Although Angel Hsu is not a necessary party for the proposed Count II, she is a proper party in Counts II and III for the reasons set forth herein.

---

[15] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #4 being submitted for filing under seal as **Exhibit E**.

[16] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #5 being submitted for filing under seal as **Exhibit F**.

4873-3590-7332.4

## II. ARGUMENT

### A. Granting Mr. Bhattacharya Leave to Amend to Assert a Claim for Civil Conspiracy (Count II) Would Not Be "Futile" As a Matter of Law.

#### 1. Dean Peterson's actions outside the scope of her duties at UVA make the intra-enterprise conspiracy doctrine inapplicable.

The context in which Dean Peterson sent the November 23, 2018 correspondence attached as **Exhibit A** is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #5 being submitted for filing under seal as **Exhibit F**. This correspondence alone establishes action without authorization beyond "the normal course of their corporate duties"[17] sufficient to establish "an independent personal stake in achieving the corporation's illegal objective." *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). As these and other authorities cited in the R&R establish, plausible allegations that an employee and someone outside the defendant-corporation conspired to achieve "the same unlawful objective"[18] would defeat the UVA Med School Co-Conspirators' claim of intra-corporate immunity.[19]

Dean Peterson sent the November 23, 2018 correspondence to a judge on the letterhead of the University of Virginia School of Medicine's Office of Student Affairs to communicate with a judge without first obtaining permission from the University's president to represent her personal

---

[17] *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985).

[18] *Cabbagestalk v. Cartledge*, No. 3:12cv3182, 2013 WL 5409204, at *4 (D.S.C. Sept. 25, 2013) (citing *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("While [civil-rights plaintiffs] need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.")); *see also Ratcliffe v. Walker*, 85 S.E. 575, 580 (Va. 1915) (explaining that "the essence" of a conspiracy claim under Virginia law is that two or more persons shared a "common design" and "pursued by their acts the same object . . . with a view to the attainment of that same object")

[19] *Balt.-Wash. Tele. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 744 (D. Md. 2008).

opinions as required by the University's policy, *EXT-003: Communicating with Government Officials*:

> It is the affirmative responsibility of faculty and staff members not to represent their personal opinions as positions or policies of the University, unless the president has specifically authorized them to do so. University employees should use neither University letterhead nor electronic mail sent through University mail servers to communicate their personal opinions or positions.

Dean Peterson sent the foregoing correspondence in response to the November 19, 2018 request from Angel Hsu quoted in ¶ 174 of the Second Amended Complaint, one of the allegations addressed by the R&R.  Dean Peterson had no personal knowledge of the various statements about Mr. Bhattacharya contained in the November 23, 2018 letter *except* what Dean Peterson characterized as "inappropriate and aggressive questioning of a guest speaker on a panel for an extracurricular program."  Otherwise Dean Peterson simply repeated false, defamatory statements by Angel Hsu alleging, *inter alia*, that Mr. Bhattacharya "thought neighbors, the FBI and the CIA were pursuing him," drug use, and mistreatment of a pet.  This was obviously beyond the scope of her duties and responsibilities as Assistant Dean of Medical Education—as were her demonstrably incorrect representations about the legal implications of the *ex parte* emergency protective order that she sought to help Angel Hsu obtain against Mr. Bhattacharya.

### 2. The possibility that Angel Hsu had different motives than existing Defendants does not defeat the conspiracy claim.

The evidence is uncontroverted that Angel Hsu knew that her collaboration with Dean Densmore, Dean Densmore, and others would help get Mr. Bhattacharya suspended if not expelled from UVA Med School.  The evening of November 28, 2018—after ASAC had voted to suspend Mr. Bhattacharya, but before Mr. Bhattacharya himself received notice of the suspension—Dean Peterson sent text messages to Angel Hsu from November 28-29, 2018 suggesting that Mr. Bhattacharya would receive only a suspension rather than an expulsion from UVA Med School.

9

4873-3590-7332.4

(SAC ¶ 176.) On November 29, 2018, when ASAC sent the Suspension Letter, Dean Peterson sent an email (Bates No. UVA00002735) reporting on a call to the UVA Med School "dean on call" from Angel Hsu and a call to Dean Peterson which Dean Peterson characterized as follows: Angel Hsu was "sobbing uncontrollably because (in her words) she got [Mr. Bhattacharya] kicked out of school." Whatever "buyer's remorse" Angel Hsu may have later demonstrated, she and Dean Peterson—among others—acted in concert to accomplish the illegal objective of having Mr. Bhattacharya "kicked out of school" for engaging in speech protected by the First Amendment. This illegal objective, whatever the co-conspirators' motives, is sufficient to establish an unlawful civil conspiracy as a matter of law.

The Fourth Circuit, analogizing to the context of criminal actions, has held that a conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a "tacit understanding" to accomplish the object of the alleged conspiracy. *Wallace v. United States*, 281 F.2d 656, 663 (4th Cir. 1960). "In fact, the Fourth Circuit has held that in assessing the deliberateness of an individual's conduct, the individual 'must necessarily be held to intend the reasonably foreseeable consequences of its actions.'" *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 907 (E.D. Va. 2000) (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1355 (4th Cir.1995)).

Consistent with these Fourth Circuit precedents, this Court has previously found an actionable civil conspiracy based on analogous allegations. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Hoskins*, Civil Action No. 5:10–cv–00087, 2011 WL 1897683, at *3 (W.D. Va. May 18, 2011) ("St. Paul's pleadings show a civil conspiracy among defendants that *specifically targeted* American and that purposefully directed fraudulent conduct to American's home office in Virginia."); *Id.* at *3 (emphasis added); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 634 (W.D. Va. 2015)

10

(adequately pleading of a civil conspiracy involving a hazing incident where "as alleged, Defendants worked together to send the Mr. Mean emails, knew their content and plan, and orchestrated and directly participated in the Swim House ritual.").

Consistent with the foregoing precedents, the Court's November 19, 2021 Final Jury Instructions & Verdict Form in *Sines v. Kessler* (Dkt. #1461) also support the conclusion that Mr. Bhattacharya should be granted leave to assert a civil conspiracy:

> "Final Jury Instructions #23" for "Civil Conspiracy – Under Virginia Law":

> "Plaintiffs must provide by a preponderance of evidence that an agreement to commit any one of these objects of the alleged conspiracy existed. It would be sufficient if Plaintiffs proved by a preponderance of the evidence that the alleged conspiracy existed to commit of those offenses. I previously instructed you as to the law governing the existence of a conspiracy and membership therein including Instructions 13-15, and those principles are applicable here."

> "Final Jury Instructions #14" for "Membership in a Conspiracy":

> "Because there are multiple defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. One may be a member of the conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators. If a person understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that scheme on one occasion, that is sufficient to prove him as being a member of the conspiracy even though the person had not participated before and even though he only played a minor part."

> "The extent of a Defendant's participation, if any, has no bearing on the issue of a Defendant's membership, if any. A conspirator's membership is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others plat minor parts in the scheme. As equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of a conspiracy."

> "Moreover, one a conspiracy is established, even a slight connection between the defendant and the conspiracy could be sufficient to include him in the plan. To be clear, that does not mean that Plaintiffs' burden of proof is "slight." Before a jury may find that a defendant, *or any other person*, became a member of the conspiracy, the evidence that the defendant knew the purpose or goal of the agreement or understanding of that conspiracy and then deliberately entered into the agreement,

11

intending in some way to accomplish the goal or purpose by this ***common plan or joint action***."

"In attempting to prove a Defendant's membership in alleged conspiracy, Plaintiffs may rely on all direct and circumstantial evidence, including the nature of the alleged conspiracy, the Defendant's association to other members of the alleged conspiracy, if any, the Defendant's conduct before, during, and after the relevant events, and the Defendant's presence at the scene of events, if applicable."

(emphasis added).

### 3. **Plaintiff has alleged or can allege sufficient facts to establish an unlawful civil conspiracy involving certain Defendants**

With respect to the November 29, 2018 Suspension Letter—not to mention the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations—there is more than sufficient evidence from which a jury could find an actionable civil conspiracy among various UVA Med School Co-Conspirators (including Dean Peterson and Dean Densmore) and Angel Hsu. Examples of such evidence include, in addition to Dean Peterson's November 23, 2018 correspondence attached as **Exhibit A**, the Rule 1006 summaries attached as **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**.

### B. **Granting Mr. Bhattacharya Leave to Amend to Assert a Defamation Claim Against Angel Hsu (Count III) Would Not Be "Futile" As a Matter of Law.**

If joined as a defendant, Angel Hsu could and presumably would seek dismissal of the conspiracy and defamation claims against her pursuant to Rule 12(b)(6). Such a motion would require the Court to accept the truth not only of the allegations of the Second Amended Complaint itself but also the documents attached as exhibits to the Second Amended Complaint and the other documents referenced and quoted in the Second Amended Complaint (along with the other documentary evidence attached as or summarized in the accompanying **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**. These documents establish numerous false, defamatory statements that Angel Hsu published to Defendants, including Dean Peterson, and those

12

responsible for the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations, the November 26, 2018 *ex parte* preliminary protective order, the November 29, 2018 Suspension Letter, and the No Trespass Order. These false statements are sufficient to establish liability for defamation under the authorities cited in the R&R.

### III.   CONCLUSION

It is unfortunate, to say the least, that faculty and administrators conspired with Angel Hsu—whose motives are laid out in excruciating detail in the Second Amended Complaint—to accomplish their mutual objective of kicking Mr. Bhattacharya out of UVA Med School. By way of its Answer and Initial Disclosures, Defendants themselves have made the allegations about Angel Hsu relevant. Regardless of whether Angel Hsu is joined as a defendant, although she should be, Dean Peterson in particular has established that the intra-enterprise conspiracy doctrine is inapplicable here. Mr. Bhattacharya therefore should be granted leave to assert Count II. Angel Hsu's demonstrably false statements about Mr. Bhattacharya are sufficient to allege a claim for defamation, so Mr. Bhattacharya should be granted leave to assert that claim as well.

Date:  November 26, 2021

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By:  *s/ Michael J. Lockerby*
    Counsel

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  (202) 672-5300
Facsimile:  (202) 672-5399
Email:  mlockerby@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

4873-3590-7332.4