IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, ) | | Civil Action No. 3:19-cv-00054 |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | | MEMORANDUM OPINION & ORDER |
| ) | | |
| JAMES B. MURRAY et al., ) | | |
|     Defendants. ) | | By:   Joel C. Hoppe |
| ) | |           United States Magistrate Judge |

This matter is before the Court on Plaintiff's "Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order." ECF No. 275. The Court previously denied the motion with respect to Plaintiff's proposed pretrial deadlines, *see* ECF No. 320-1, and took under advisement his specific requests for ESI preservation-related discovery, *see* ECF No. 320-2, at 2–4. *See* Order of Mar. 17, 2022, ECF No. 330. On March 15, 2022, the Court held a hearing at which counsel for both parties addressed the Motion at length. This Memorandum Opinion & Order further explains the Court's findings relevant to the potential spoliation issue and requires Defendants to produce, *ex parte* and under seal, fully unredacted copies of two preservation notices for the Court's *in camera* review.

Plaintiff alleges that the University of Virginia ("UVA") Defendants failed to preserve certain ESI—namely Plaintiff's UVA email accounts, some emails sent by Defendant John Densmore, and video recordings of Plaintiff's interactions with UVA staff from November 14, 2018, through December 4, 2018—after Plaintiff made repeated "implicit and explicit threats of litigation" during this same timeframe. Pl.'s Br. in Supp. 19 (arguing that the UVA Defendants "had a duty to preserve . . . evidence based on numerous incidents and communications between November 19, 2018 and December 31, 2018"), ECF No. 276. The UVA Defendants concede that, pursuant to UVA's "email retention policy," Plaintiff's email accounts were "permanently

1

deleted" on December 31, 2018, thirty days after he was suspended from the Medical School on November 29, 2018. *See* UVA Defs.' Br. in Opp'n 6, ECF No. 290-15. Likewise, the cited video recordings, *see* Pl.'s Br. in Supp. 23, were automatically deleted after seven days, in accordance with UVA policy on retention of security camera footage, *see* UVA Defs.' Br. in Opp'n 6. The UVA Defendants argue that they did not have a duty to preserve this ESI in the fall of 2018, however, because they could not have reasonably anticipated this litigation until Plaintiff filed his pro se complaint on September 16, 2019. *See generally* UVA Defs.' Br. in Opp'n 5–21.

Rule 37(e) of the Federal Rules of Civil Procedure provides the legal framework for evaluating claims that a party failed to preserve electronically stored information ("ESI") for another's use in litigation. *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1208924, at *4 (W.D. Va. Mar. 30, 2021) (citing *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017)). Under this subsection,

> a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); Fed. R. Civ. P. 37(e). While "Rule 37(e) displaces reliance" on the traditional spoliation framework where the lost information was stored electronically, "it is grounded in the common law 'duty to preserve relevant information when litigation is reasonably foreseeable.'" *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020) (Moon, J.) (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *accord Steves & Sons*, 327 F.R.D. at 104 ("This [traditional spoliation] analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve."). "Thus, whether ESI should have been preserved . . . under Rule 37(e) turns chiefly on two questions

underlying the duty to preserve: 1) whether the party should have reasonably anticipated litigation, and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation." *Johns*, 503 F. Supp. 3d at 462 (citing *Steves & Sons*, 327 F.R.D. at 105); *accord Charter Oak Fires Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 678 (D. Md. 2012) ("The duty to preserve evidence includes an obligation to identify, locate, and maintain, information that is relevant to *specific, predictable, and identifiable litigation*.") (emphasis added).

"Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). The duty "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.2d 583, 591 (4th Cir. 2001). "The broad contours of the duty to preserve [before litigation] are relatively clear," *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), "and flow logically from a civil litigant's obligation to disclose and produce discoverable [materials] relevant to any party's claim or defense after a complaint is filed," *Ackerson v. Rector & Visitors of Univ. of Va.*, No. 3:17cv11, 2018 WL 3097346, at *6 (W.D. Va. Apr. 11, 2018), *adopted*, 2018 WL 3097334 (W.D. Va. June 22, 2018) (Moon, J). *See, e.g.*, *Broccoli v. Echostar Commc'ns Corp.*, 299 F.R.D. 506, 510 (D. Md. 2005) ("The duty to preserve encompasses any documents or tangible items authored or made by individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses."); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (noting that a party who reasonably should "anticipate[] litigation" over a dispute must "preserve what it knows, or reasonably should know, is . . . reasonably likely to be requested during discovery" in the case). Thus, once it is "reasonably

foreseeable" that a dispute will result in litigation, *Johns*, 503 F. Supp. 3d at 465, the parties to that dispute must take reasonable steps to preserve ESI that they "reasonably should have known . . . might be relevant to such litigation," *id*. See Fed. R. Civ. P. 37(e)

The point when "litigation becomes reasonably foreseeable 'is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.'" *Johns*, 503 F. Supp. 3d at 465 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). "This is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Id.* (quoting *Micron Tech.*, 645 F.3d at 1320).

In the Fourth Circuit, "the duty seems to begin 'somewhere between knowledge of the dispute and direct, specific threats of litigation'" to resolve the same dispute. *Steves & Sons*, 327 F.R.D. at 106 (quoting *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 560 (D. Md. 2010)); *see, e.g.*, *Eller v. Prince George's Cty. Pub. Schs.*, No. TDC-18-3649, 2020 WL 7336730, at *4 (D. Md. Dec. 2020) (defendant's receipt of teacher's EEOC Charge describing "very specific" incidents of assistant principal's misconduct and gender discrimination, and not teacher's filing of "formal internal complaint" referencing "an 'environment' where she was 'routinely' misgendered," triggered defendant's duty to preserve materials potentially relevant to Title VII sex-discrimination claim); *see also Steves & Sons*, 327 F.R.D. at 106–07 (noting that a court determining whether litigation was "reasonably foreseeable" should evaluate statements and conduct in the factual context in which they occurred, including the party's experience litigating similar disputes) (citing *Jenkins*, 2017 WL 362475, at * 15). Thus, district courts "have found that the receipt of a demand letter, a request for evidence preservation, a threat of

4

litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Steves & Sons*, 327 F.R.D. at 106 (citing *In re Ethicon, Inc. v. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D. W. Va. 2014)). "Vague" and "ambiguous statements" alluding to possible or "hypothetical" litigation, on the other hand, are "insufficient to trigger the duty to preserve" information, *Steves & Sons*, 327 F.R.D. at 106, that could be relevant to issues that might arise in such litigation. *Cf. Blue Sky Travel & Tours v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015) (district court's finding that "once litigation began, [defendant] had a duty to stop its document retention policies 'and to preserve *all* documents because you don't know what may or may not be relevant'" was abuse of discretion "because a party is not required to preserve all its documents but rather only documents that the party knew or should have known were, or could be, relevant to the parties' dispute" (citing *Turner*, 736 F.3d at 282)). Additionally, statements that "identif[y] a dispute but express[] an invitation to discuss it or otherwise negotiate," without "openly theaten[ing] litigation," generally do not trigger "the duty to preserve evidence relevant to that dispute" because they do not provide objective "notice that [such] litigation is reasonably foreseeable." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009) (citing *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621–24 (D. Colo. 2007)).

In his opening brief, Plaintiff cites seven "incidents and communications" occurring between November 19, 2018, and December 4, 2018, where he purportedly made "implicit and explicit threats of litigation" sufficient to trigger the UVA Defendants' duty to preserve ESI that has been lost. *See generally* Pl.'s Br. in Supp. 20–27. Having reviewed the exhibits documenting each cited occurrence, I conclude that Plaintiff's "threats of litigation," if any, were too vague or ambiguous to expect that "a reasonable party in the same factual circumstances would have reasonably foreseen litigation," *Johns*, 503 F. Supp. 3d at 465, over Plaintiff's suspension and

5

eventual expulsion from UVA Medical School, Compl. ¶¶ 146–68. *See* UVA Defs.' Br. in Opp'n Exs. 7–9, 18–24, ECF Nos. 290-1 to 290-3, 290-8 to 290-14. First, most of his statements and actions did not even hint at the possibility that he might someday take this dispute to court. *See, e.g.*, Ex. 8 (Nov. 15, 2018), ECF No. 290-2; Ex. 18 (Nov. 27, 2018), ECF No. 290-8; Ex. 19 (Nov. 29, 2018), ECF No. 290-9; Ex. 20 (Nov. 30, 2018), ECF No. 290-10. "The undeniable reality is that litigation 'is an ever-present possibility' in our society." *Cache La Poudre Feeds*, 244 F.R.D. at 621 (quoting *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992)). Thus, while a party should take steps to find and safeguard potentially relevant materials "after receiving unequivocal notice of impending litigation," the duty to preserve those materials also "should require more than a mere possibility of litigation." *Id.*

Second, Plaintiff's isolated statements about "hiring lawyers" and various UVA officials "violating his rights," *see, e.g.*, Pl.'s Br. in Supp. 18 (Nov. 19, 2018); Ex. 18 (Nov. 27, 2018), ECF No. 290-9; Ex. 23 (Nov. 27, 2018), ECF No. 290-13, were too ambiguous to trigger the UVA Defendants' duty to preserve potentially relevant information. *Cf. Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145, 2020 WL 969762, at *5 (D. Kan. 2020) (plaintiff's "vague description of its CEO's talks" with defendant "about ways to mitigate [plaintiff's] damages" did not trigger duty to preserve potentially relevant materials). Moreover, Plaintiff was "angry" and in crisis when he made those statements in response to his suspension, *see* Pl.'s Br. in Supp. 3, 18, 20, 22, and, considered in context, they would not have put a reasonable person on notice that Plaintiff thought the UVA Defendants had retaliated against him for engaging in protected speech at a school-sponsored event in October 2018. Rather, Plaintiff described what he believed to be medical "'malpractice' at the hospital" and broadly "accuse[d] Dean Densmore and other UVA employees of abusing and violating [his] rights to bodily autonomy, to private conscience,

6

to freedom of speech, and against unreasonable searches and seizures," Pl.'s Br. in Supp. 20, by requiring him to submit to psychiatric evaluations and counseling before he would be allowed to return to classes. *See, e.g.*, *id.* at 24 (Nov. 27, 2018); Ex. 8 (Nov. 15, 2018); Ex. 18 (Nov. 27, 2018); Ex. 23 (Nov. 27, 2018).

Third, Plaintiff cites an email that he sent to Dean Peterson on November 27, 2018, but that he "had intended to send to a different email address in an attempt to preserve ESI." Pl.'s Br. in Supp. 24 (citing Ex. 19). When Dean Peterson replied, Plaintiff responded that he "'was just archiving a bunch of emails'" from his UVA email account "'in case it got deleted in the near future,'" *id.* at 24 (quoting Ex. 19). Dean Peterson forwarded that response to Dean Densmore. *Id.* at 25. Plaintiff asserts that his email to Dean Peterson was a "written admonishment . . . about preserving his [UVA] email account," *id.* at 24, and that both Deans "should have interpreted this communication as an additional written warning to preserve ESI in anticipation of litigation," *id.* at 25. I disagree. Plaintiff's email does not remotely resemble a preservation request. The message contains no facts to explain why Plaintiff was saving "a bunch" of his own emails, let alone to put a reasonable person on notice that UVA should have anticipated future civil litigation where those emails might be relevant. *See Goodman*, 632 F. Supp. 2d at 510 ("The mere existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation or that the duty to preserve arises.").

Finally, the statements that Plaintiff (and his then-attorney) made about appealing Plaintiff's one-year suspension from UVA Medical School clearly expressed a willingness to resolve or "otherwise negotiate" that dispute, *Goodman*, 632 F. Supp. 2d at 510, specifically through UVA's internal procedures and did not even "hint[] at" the possibility Plaintiff might later take the dispute to court, *Cache La Poudre Feeds*, 244 F.R.D. at 623 (defendant's duty to

7

preserve was not triggered by prefiling letters from plaintiff's attorney that "did not threaten litigation," but instead expressed plaintiff's willingness to discuss "non-litigious resolution" of alleged trademark infringement). *Cf. Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. Civ. 96-1041, 1997 WL 33768546, at *3–4 (D.N.J. Aug. 12, 1997) (plaintiff's letter to defendant that did "not threaten litigation, but instead appear[ed] to seek a business remedy to a perceived unfairness in a business matter," was not sufficient to trigger work-product protection for "materials prepared or obtained by an attorney in anticipation of litigation").

Plaintiff's filing of his pro se complaint **on September 16, 2019**, was the first act that triggered the UVA Defendants' obligation to take reasonable steps to preserve ESI that UVA "knew or should have known were, or could be, relevant to the parties' dispute," *Blue Sky Travel & Tours*, 606 F. App'x at 698 (citing *Turner*, 736 F.3d at 282), at issue in this litigation. *See Johns*, 503 F. Supp. 3d at 462–65; Fed. R. Civ. P. 37(e). Accordingly, they were under no obligation to preserve the emails and video footage that were deleted in November and December 2018.

Plaintiff's requests for discovery into the UVA Defendants' ESI-preservation efforts **on and after September 16, 2019,** remain under advisement. To resolve those matters, the Court finds it necessary to review *in camera* the contents of preservation notices that UVA's Office of General Counsel sent to certain UVA employees in November 2019 and May 2021, which are mentioned in both parties' briefs for this motion. Accordingly, counsel for the UVA Defendants shall file a fully unredacted copy of each preservation notice by 5:00 p.m. on Thursday, March 24, 2022. The documents may be filed *ex parte* and under seal and will be reviewed *in camera*. W.D. Va. Gen. R. 9 cmt. ¶ 6.

    **IT IS SO ORDERED.**

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTER: March 23, 2022

*Joel C. Hoppe*

Joel C. Hoppe
U.S. Magistrate Judge