**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

|  |  |  |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JAMES B. MURRAY, JR., et. al.,** | ) | **Civil Action No.: 3:19-CV-00054** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S APPEAL OF MARCH 23, 2022 RULING THAT**
**DEFENDANTS HAD NO PRE-LITIGATION DUTY TO PRESERVE EVIDENCE**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ....................................................................................... 1

II.    PROCEDURAL HISTORY.............................................................................................. 9

III.   PROCEDURAL STANDARD .......................................................................................... 9

IV.   ARGUMENT .................................................................................................................. 11

       A.     Individually and Collectively, Twelve Pre-Litigation "Triggering Events" Obligated Defendants to Preserve Rather Than Destroy Relevant Evidence.................................................................................................................... 11

              1.      November 19, 2018 Meeting With Dean Densmore (SUMF ¶¶ 1-2) ....... 11

              2.      November 19, 2018 Forced Psychiatric Evaluation (SUMF ¶¶ 3-5) ........ 13

              3.      November 26, 2018 Legal Dispute re: CAPS Evaluation (SUMF ¶ 6) ...................................................................................................... 14

              4.      November 27, 2018 Telephone Call to Dean Canterbury (SUMF ¶ 7) ............................................................................................................. 15

              5.      November 27, 2018 Telephone Call to Dean Densmore (SUMF ¶ 8) .................................................................................................................. 15

              6.      November 28, 2018 ASAC Suspension Hearing (SUMF ¶ 9)................. 15

              7.      November 29, 2018 Email Exchange With Dean Peterson (SUMF ¶ 10) ............................................................................................................ 16

              8.      November 30, 2018 Visits to CAPS and UVA Police (SUMF ¶ 11) ....... 16

              9.      December 2018 Emails re: Health Systems Account (SUMF ¶ 12)......... 17

              10.    Unsuccessful Efforts to Initiate Appeal Process (SUMF ¶ 13)................. 18

              11.    February 3, 2019 FOIA Requests to UVA (SUMF ¶¶ 14-16) .................. 18

              12.    August 2019 Correspondence to UVA Defendants (SUMF ¶¶ 17-20) ............................................................................................................ 19

       B.     Both in Fact and as a Matter of Law, the Spoliated Evidence Was Relevant, and the UVA Defendants' Destruction Was Willful Rather Than Merely Negligent. ...................................................................................... 20

V.     CONCLUSION................................................................................................................ 22

4878-5672-6810.1

Plaintiff, Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, hereby appeals from the March 23, 2022 Memorandum Opinion & Order (Dkt. #333) (the "March 23, 2022 Ruling That Defendants Had No Pre-Litigation Duty to Preserve Evidence" or the "Ruling") issued by United States Magistrate Judge Joel C. Hoppe (the "Magistrate").

## I.   PRELIMINARY STATEMENT

The Magistrate's Ruling represented a final resolution of some of the issues raised by Plaintiff's Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order (Dkt. #275) (the "Spoliation Remediation Motion"). The Spoliation Remediation Motion results from the fact—which Defendants have finally been forced to admit—that both before and after the filing of this litigation, Defendants took affirmative steps to destroy (and failed to take affirmative steps to preserve) evidence that is critical to proof of Plaintiff's First Amendment retaliation claims. The evidence that Defendants deliberately destroyed, with the knowledge and active participation of Former University Counsel Lynne Fleming,[1] includes every single email sent to and from Mr. Bhattacharya's UVA email accounts while he was a student there. In addition, at least three key witnesses selectively deleted emails while retaining others that they thought might be helpful in the inevitable litigation. These witnesses are John Densmore (named as a defendant in both his official and individual capacity), Melissa Fielding (the UVA Police officer who issued the No Trespass Order, named as a defendant in her official capacity), and Tabitha Enoch (whose role in this matter was not disclosed until after the deadline to amend had passed).[2] Finally, the

---

[1] See, e.g., Dkt. # 286 at 3, 4, 6, 7, 8, 20, 21, 22, and 26.

[2] Ms. Enoch—whose involvement was unknown to Mr. Bhattacharya at the time—was the ringleader of the UVA Defendants' use of the Office of the Dean of Students to retaliate against Mr. Bhattacharya for his questions and comments at the AMWA Microaggression Panel Discussion, culminating in the January 2, 2019 No Trespass Order. On November 18, 2018, Ms. Enoch was the UVA Med School "Dean on Call" who received Mr. Bhattacharya's telephonic report that Angel Hsu had been stalking and harassing him that day and the day before. Ms. Enoch

evidence that was destroyed includes critical video footage of the events in question that Mr. Bhattacharya specifically admonished UVA to preserve at the time.  Meanwhile, Defendants went to great lengths to preserve some of the evidence that they thought might be helpful to their case if and when Mr. Bhattacharya made good on this prior threats of litigation.  For example, Defendants retained only highly edited versions of certain critical videos, and Dean Densmore substituted "notes" to the file for emails that he deleted).

Rather than seek adverse inference jury instructions at this time, Plaintiff has sought relief intended to try to remedy as much of the spoliation at issue as possible.  As a proxy for Mr. Bhattacharya's deleted emails, the Spoliation Remediation Motion seeks emails on the UVA server that Mr. Bhattacharya sent to others and emails that others sent to him during the period October 24, 2018 through February 20, 2019, along with emails picked up by designated search terms and custodians.  (Dkt. #320-2 at 2.)   It seeks to have a forensic expert verify that the deleted emails are not recoverable, further efforts to recover the missing video and audio recordings, and a ruling that certain spoliation-related discovery will not count against the limits on the length and number of depositions ((Dkt. #320-2).

The extent of ESI-preservation discovery to which Plaintiff may be entitled is an issue that has been taken "under advisement."  (Dkt. #333, citing Dkt. #330).  The Magistrate has made a final determination, however, that Defendants had no duty to preserve evidence before Plaintiff made good on repeated threats of litigation.  If allowed to stand, this ruling will mean that—as a

---

made sure to keep notes of her November 28, 2018 telephone conversation with Angel Hsu, produced in discovery as Bates Nos. UVA UVA00002759-60.  Yet Ms. Enoch's notes and electronic communications regarding the prior telephone conversation that she had with Mr. Bhattacharya, including an email to Laurie Casteen in the UVA Office of the Dean of Students, are nowhere to be found in the UVA Defendants' production.  Also missing is her email communication to Mr. Bhattacharya after their telephone conversation, which the UVA Defendants also destroyed when they deleted Mr. Bhattacharya's health system email account.

practical matter—only the actual filing of litigation will trigger an obligation to preserve evidence. Both in fact and as a matter of law, it is clearly erroneous.

Individually and in combination, the more than twelve pre-litigation "triggering events" [3] upon which the Spoliation Remediation Motion is based obligated Defendants to preserve evidence. The Magistrate's Ruling simply ignores three of the "triggering events" that occurred in November and December 2018 and at least two more such events that occurred in 2019 before the filing of the Complaint. Of the various authorities that warrant reversal of the Magistrate's Ruling, one that is perhaps most analogous to this case is *Johns v. Gwinn*, 503 F. Supp. 2d 452, 465 (W.D. Va. 2020). In that case, the Court reversed the Magistrate's finding of no duty to

---

[3] In opposition to the Spoliation Remediation Motion, the UVA Defendants claimed that there were only seven such pre-litigation events. (Dkt. #285 at 7.) The Magistrate's Ruling repeats this assertion, stating that Plaintiff's opening brief "cites seven incidents and communications occurring between November 19, 2018, and December 4, 2018, where he purportedly made 'implicit and explicit threats of litigation' sufficient to trigger the UVA Defendants' duty to preserve evidence that has been lost." (Dkt. #333 at 5.) The Magistrate Judge repeated this claim even though Plaintiff's Reply pointed out that it is demonstrably incorrect: "The Memorandum in Support of the Spoliation Remediation Motion (Dkt. #286) documents ***at least ten occasions*** in November and December 2018 when Mr. Bhattacharya threatened litigation against UVA and certain individuals, including Dean Densmore." (Dkt. #296 at 4 n.1 (emphasis added).) In this regard, Plaintiff's Reply goes on to state:

> Curiously, the UVA Defendants' Opposition claims that there were only seven such "communications or incidents" (Dkt. #285 at 7) rather than the ten events in November and December 2018 catalogued in the Spoliation Remediation Motion that triggered an obligation to preserve evidence: two on November 19, 2018 and others on November 26, 2018, November 27, 2018, November 28, 2018, November 29, 2018, November 30, 2018, December 4, 2018, and in the days and weeks thereafter in which Mr. Bhattacharya sought to appeal his suspension until the UVA Defendants made his suspension permanent by issuance of the No Trespass Order. (Dkt. #276 at 19-27.) So that there can be no dispute as to which events these are, the ten such events from 2018 are listed in chronological order in the Statement of Undisputed Material Facts ("SUMF"), along with other such "triggering events" that preceded the filing of the Complaint.

(Dkt. #296 at 7-8, n. 5.)

3

preserve even though the pre-litigation threats were less numerous and not nearly as well-documented as they are here.

Like the plaintiff in *Johns v. Gwinn*, Mr. Bhattacharya has asserted Section 1983 claims. Like the plaintiff in *Johns v. Gwinn*, Mr. Bhattacharya's spoliation claim is based on failure to preserve video evidence—except that the spoliation at issue here was much more widespread and included the deletion of all of his emails. Like the defendants in *Johns v. Gwinn*, UVA had much more than mere "knowledge of the dispute," (and arguably had received "direct, specific threats of litigation"). And unlike the defendants in *Johns v. Gwinn*, UVA did not merely permit the automatic destruction of evidence. Rather, UVA took affirmative steps to make this happen. Within 24 hours after Mr. Bhattacharya received notice of his suspension, UVA—with the knowledge and participation of University Counsel Lynne Fleming[4]—saw to it that, thirty days hence, the contents of the UVA Med School email accounts that Mr. Bhattacharya needed to appeal his suspension and pursue his First Amendment claims if his appeal was not successful would be erased, permanently.[5]

In this case, Mr. Bhattacharya threatened Defendants with litigation ***at least twelve times*** before the filing of the September 16, 2019 of Mr. Bhattacharya's *pro se* Complaint. At least ten of these events occurred before the deletion of Mr. Bhattacharya's email accounts in early 2019.

---

[4] *See* November 29, 2018 and November 30, 2018 emails (Bates Nos. UVA00005158, UVA00005327, and UVA00009301).

[5] Because Mr. Bhattacharya had followed UVA Med School's advice to link his academic email account with his health system email account (Spoliation Dep. Tr. 45:10-47:7; Ex. 11), emails addressed to his academic account email address (KRB6YG@virginia.edu) were automatically forwarded to his health system email account (KRB6YG@hscmail.mcc.virginia.edu). As a result, when UVA Med School deleted the contents of Mr. Bhattacharya's health system email account on December 31, 2018, his academic email account was deleted as well. Seven days later, on January 7, 2019, even the backup tapes were permanently erased. (Spoliation Dep. Tr. 25:16-47:7, Exs. 1-11.)

If these "triggering events" were insufficient to trigger a duty to preserve evidence, the Fourth Circuit precedents standing for the proposition that a duty to preserve can arise before the filing of litigation will have been effectively overturned. Individually and in combination, these "triggering events" show not merely that "a reasonable party in the same circumstances **would have reasonably foreseen litigation**." *Johns v. Gwinn*, 503 F.Supp.2d at 565 (emphasis added). Rather, the evidence shows that the UVA Defendants "in fact reasonably foresaw litigation." *Id.* To so hold, the Court need not take Plaintiff's word for it. Rather, Defendants' own words prove this point. For example:

- Triggering Event Nos. 3, 4, and 5 all relate to Dean Densmore's November 26, 2018 email to Mr. Bhattacharya stating: "You will need to be seen by CAPS before you can return to classes," to which Mr. Bhattacharya responded on November 27, 2018:

> How can it be legal to mandate psychiatric evaluations to continue my education? "Public colleges responding to clearly protected expressions by prescribing mandatory counseling or psychological evaluation violates both students' rights to free speech and private conscience." – Kelly Sarabyn, FIRE (Foundation for Individual Rights in Education).[6]

(SUMF ¶ 6.) The following day, November 27, 2018, Dean Canterbury reported to UVA Dean of Students Allen W. Groves, Dean Densmore, and University Counsel Lynne Fleming that Mr. Bhattacharya had called him and said that UVA was "violating his rights to free speech," "threatened to hire lawyers to 'fight the battle for me,'" and "ended the conversation politely but with the thret [sic] of hiring lawyers." (SUMF ¶ 7.) Dean Densmore responded, with a copy to University Counsel Lynne Fleming: "[v]ery similar to the message he left me." (SUMF ¶ 8.)

---

[6] FIRE is well known to UVA as seeking to vindicate the free speech and due process rights of students and faculty—through litigation if necessary. In fact, FIRE referred Mr. Bhattacharya to his current counsel.

- Triggering Event No. 6—Mr. Bhattacharya's statements at the November 28, 2018 ASAC suspension hearing at which University Counsel Lynne Fleming was present (SUMF ¶ 9)— were characterized as follows in ***Defendants'*** submissions to the Court: "Plaintiff accused the committee of violating his free speech rights and mentioned consulting with several lawyers whom he might hire" and "implicitly threatened the committee with a lawsuit." (Dkt. #113 at 15, 23.)   The foregoing statements that ***Defendants*** attributed to Mr. Bhattacharya were captured by recordings filed with the Court by Plaintiff (Dkt. #33-48) and produced by the UVA Defendants.[7]

In response to this and other overwhelming evidence, Defendants served up explanations that do not even pass the proverbial "straight-face test."   For example, the UVA Defendants insisted that they did not reasonably anticipate litigation and therefore had no obligation to preserve evidence because "Plaintiff's attendance at [the November 28, 2018] ASAC meeting without counsel demonstrates that he wished to resolve his dispute with the school via a nonjudicial route."  (Dkt. #285 [SEALED] at 20-21.)   The Magistrate's Ruling swallowed this narrative hook, line, and sinker even though the factual record is undisputed that:

---

[7] *See* Bates No. UVA00008144.  Right before the beginning of the November 28, 2018 ASAC Suspension hearing: Mr. Bhattacharya stated: "Also, uh, I wanted to record this entire thing on my phone for my own protection, legally so."  [0:53-1:03.]  Dr. Tucker responded,  "Ok, that would be fine," and nodded his head. [0:56-1:00.]  Simultaneously, at the request of Dean Thomas, UVA police officer Earl Schoen was recording the entire ASAC hearing in video and audio format. ***The UVA Defendants preserved Earl Schoen's bodycam video precisely because they anticipated that it would be used in litigation.***  (Ironically, after the hearing, Officer Schoen suggested that Mr. Bhattacharya retain a lawyer.)  The UVA Defendants did not produce the bodycam video until December 27, 2021—after stating on October 1, 2021, in response to Mr. Bhattacharya's discovery requests, that "Defendants have already produced all other responsive, relevant, and non-privileged documents, ***including recordings***." (Dkt. #236-32 at 9-10 (emphasis added).)

6

- Mr. Bhattacharya received only a few hours advance notice of the November 28, 2018 ASAC Meeting.[8]

- Upon receiving such notice, Mr. Bhattacharya asked whether he could have counsel present.[9]

- The UVA Med School Registrar responded by forwarding ASAC Operating Procedures stating that "[w]hen a student addresses the Committee, the student will act as his or her own advocate."[10]

- In response to Mr. Bhattacharya's written inquiries as to what the meeting was about (other than "to discuss your current enrollment status"), ASAC did not—as required by its Operating Procedures—notify him "in writing as to what the major concerns of the Committee are likely to be during the coming meeting," or notify him of the existence or contents of the "Professionalism Concern Card."[11]

- The afternoon of November 28, 2018, Mr. Bhattacharya made nine telephone calls between 1:23 p.m. and 2:06 p.m. "to various members of the UVA Med School faculty and administration attempting to obtain more information about what to expect and the potential consequences of the upcoming ASAC disciplinary hearing, during which time Mr. Bhattacharya also attempted to contact an attorney in Charlottesville with whom he had previously spoken but was unable to obtain any advice before the ASAC disciplinary hearing or arrange for her presence on such short notice."[12]

---

[8] SAC ¶ 135; Ex. 42.

[9] SAC ¶ 136; Ex. 43.

[10] SAC ¶¶ 137, 138, 139, 140, and 141.

[11] SAC ¶¶ 139, 140, and 141; Exs. 44, 45, and 9.

[12] SAC ¶¶ 142 and 143; Exs. 46 and 47.

7

Defendants' own words simply cannot be squared with the Magistrate's Ruling that "most of [Mr. Bhattacharya's] statements and actions did not even hint at the possibility that he might someday take this dispute to court."  (Dkt. #333.)  UVA itself cited Mr. Bhattacharya's threats of litigation as grounds for suspending him and involved University Counsel immediately about the first "triggering event" on November 19, 2018, according to Defendants' privilege log.  The following day, November 20, 2018—after Mr. Bhattacharya had been whisked away to Petersburg where a different Special Justice other than Raymond Clarke in Charlottesville would decide his fate—Poplar Springs Hospital, where Mr. Bhattacharya was being detained, received a telephone call from Nicole Ruzek, the Director of CAPS at UVA.  According to Poplar Springs' account of the call (Bates No. PSH00003661, attached as **Exhibit A**), Dr. Ruzek said that Mr. Bhattacharya "has not made physical threats but threatens litigation against his Dean."  According to Poplar Springs' report of this call from the CAPS Director:

> Dr. Ruzek is concerned with Kieran "talking himself out of a hospitalization".  States he has extensive medical knowledge and is very intelligent.  Last hospitalization at UVA was for 3 days.  Kieran is a second year medical student.  He DOES NOT know this, but UVA is discussing possibly suspending him and presenting him with the discharge paperwork while he is in the hospital.

The threats of litigation that Dr. Ruzek reported to Poplar Springs on November 20, 2018 were followed by ten more pre-litigation threats after the November 19, 2018 Forced Psychiatric Evaluation ended.  There is not a Fourth Circuit or Western District of Virginia case finding a duty to preserve evidence in which the quantity and quality of litigation threats was any greater.

At least five other "triggering events" were simply ignored altogether in the March 23, 2022 Ruling That Defendants Had No Pre-Litigation Duty to Preserve Evidence.  In short, the Magistrate's Ruling was clearly erroneous because it was contrary to both the evidence and the law.

4878-5672-6810.1

## II.   **PROCEDURAL HISTORY**

On February 3, 2022, Plaintiff filed his Motion to Remediate Spoliation of Evidence and Amend Scheduling Order (Dkt. #275) and Memorandum in Support (Dkt. #276).

Defendant Dr. Sara K. Rasmussen filed her opposition on February 11, 2002 (Dkt. #281). The remaining Defendants (the "UVA Defendants") waited until February 17, 2022, however, to file their opposition (Dkt. #285).

On February 18, 2022, Plaintiff filed his Reply to Dr. Rasmussen's Opposition to Plaintiff's Spoliation Remediation Motion (Dkt. #287).  On February 24, 2022, Plaintiff filed his Reply to the UVA Defendants' Opposition to Plaintiff's Spoliation Remediation Motion (Dkt. #296).

On March 11, 2022, Plaintiff filed an Amended Proposed Spoliation Remediation Order (Dkt. #320-2).

On March 15, 2022, Magistrate Hoppe heard oral argument on several pending motions—including the Spoliation Remediation Motion.

On March 23, 2022, Magistrate Hoppe issued the Ruling from which Plaintiff appeals (Dkt. #333).

## III.   **PROCEDURAL STANDARD**

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  Sanctions for spoliation require a showing that spoliation occurred and that the requested sanctions, if any, are warranted under governing law. *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015) (distinguishing between spoliation and the resulting sanction); *see also Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (adverse inference instruction requires showing that the responsible party "acted either willfully or in bad faith in failing to preserve relevant

4878-5672-6810.1

evidence" because an adverse inference "is not an appropriate sanction" where the "spoliator's conduct was merely negligent" (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004)). To establish spoliation, the moving party must establish the following three elements: (1) "an obligation to preserve," (2) a "culpable state of mind" when the evidence was lost or destroyed, and (3) relevancy "to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Walker v. Owens*, No. 7:13cv00425, 2016 WL 320998, at *2 n.3 (W.D. Va. Jan. 26, 2016) (Moon, J.) (alteration in original) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. "The broad contours of the duty to preserve are relatively clear." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). A party that "anticipates litigation" must "preserve what it knows, or reasonably should know . . . is reasonably likely to be requested during discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011). Once this duty is triggered, the party must "suspend its routine document retention/destruction policy and implement a 'litigation hold' to ensure the preservation" (*Goodman*, 632 F. Supp. 2d at 511) of those documents that the party knows or should know are, "or could be, relevant to the parties' dispute." *Blue Sky Travel*, 606 F. App'x at 698 (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)).

The second element—a culpable state of mind—is satisfied by "any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence." *E.I. du Pont.*, 803 F. Supp.

2d at 497.  "[T]he nuanced, fact-specific differences among these states of mind become significant in determining" any appropriate remedy or sanction for spoliation.  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010). See *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (distinguishing between the proof of fault necessary to establish spoliation and the role a spoliator's state of mind plays in crafting an appropriate remedy or sanction).

The determination of the third element of spoliation—the relevance of the lost materials— can be affected by evidence of culpability.  "[R]elevance is presumed" if the responsible party acted willfully or in bad faith because such conduct permits a logical inference that the party acted out of "fear that the evidence [would] expose relevant, unfavorable facts," but the same adverse inference is not permitted where the evidence was lost "through either gross or ordinary negligence. . . ."  *Sampson*, 251 F.R.D. at 179–80 (citing *Vodusek*, 71 F.3d at 156).

## IV.   ARGUMENT

### A.   Individually and Collectively, Twelve Pre-Litigation "Triggering Events" Obligated Defendants to Preserve Rather Than Destroy Relevant Evidence.

#### 1.   November 19, 2018 Meeting With Dean Densmore (SUMF ¶¶ 1-2)

Triggering Event No. 1 is Mr. Bhattacharya's November 19, 2018 meeting with Dean Densmore as part of Mr. Bhattacharya's preliminary investigation into the circumstances surrounding the November 14, 2018 Forced Psychiatric Evaluation that Dean Densmore required Mr. Bhattacharya to undergo.  Dean Densmore's "notes" to Mr. Bhattacharya's Student File entitled "11/19/18," which appear to have been written after the fact in anticipation of a dispute, reflect Mr. Bhattacharya's explicit and implicit threats of litigation during the course of their November 19, 2018 meeting.   (Dkt. #261). For example, Dean Densmore wrote that Mr. Bhattacharya "[d]escribed what [Mr. Bhattacharya] considered 'malpractice' at the hospital" and had shown him the November 15, 2018 plea to Special Justice Raymond L. Clarke that Mr.

Bhattacharya dictated from the psychiatric ward of UVA Medical Center while under a temporary detention order ("TDO") awaiting a commitment hearing.[13]  It refers to the upcoming "judicial hearing," uses legal terminology such as "burden of proof," and accuses Dean Densmore and other UVA employees of abusing and violating Mr. Bhattacharya's rights to bodily autonomy, to private conscience, to freedom of speech, and against unreasonable searches and seizures.   Dean Densmore himself, in his "notes" entitled "11/19/18," wrote that Mr. Bhattacharya "suggested that [Dean Densmore] get a lawyer"—at the very least an implicit threat of litigation.

Within 45 minutes after the meeting ended, Dean Densmore and his colleague Dr. Gabrielle Marzani launched a preemptive strike by setting in motion a series of events that led to the November 19, 2018 "Forced Psychiatric Evaluation."   (Bates No. RegTen00007919.)   Dean Densmore and Dr. Marzani did so at the behest of Dean Canterbury, who—after a series of communications in which he characterized Mr. Bhattacharya's expression of views with which he disagreed as "unprofessional"—quickly changed the UVA Med School "party line" to be that Mr. Bhattacharya was "psychotic" and "manic" (notwithstanding evaluations to the contrary by the physicians of whom Mr. Bhattacharya was actually a patient).   All of this took place with the knowledge and involvement of University Counsel Lynne Fleming and Dean Thomas, a graduate of UVA Law School.[14]

---

[13]  This November 15, 2018 document (Bates Nos. UVA HS00004002-03) resulted in Mr. Bhattacharya's prompt release on November 16, 2018 rather than the long-term hospitalization sought by Dean Canterbury, Dr. Tucker, Dean Densmore, Dean Peterson, and Angel Hsu.

[14]  Like the November 14, 2018 Forced Psychiatric Evaluation, the November 19, 2018 Forced Psychiatric Evaluation found no legitimate basis for keeping Mr. Bhattacharya hospitalized as Defendants sought.  On November 26, 2018, upon learning of Mr. Bhattacharya's imminent release, Dean Thomas alerted University Counsel Lynne Fleming that "Randy [Canterbury] is calling you now…"  (Bates No. UVA00002571.)  On November 27, 2018, the day of Mr. Bhattacharya's release, Dr. Tucker, Dean Canterbury, and Dean Thomas exchanged emails about convening an "Emergency ASAC meeting" the next day because, according to Dean Canterbury, "he's still quite manic and likely psychotic."  (Bates No. UVA00002635.)  On January 2, 2019,

The fact that University Counsel was involved in this matter the very next day, according to the UVA Defendants' privilege log,[15] shows not only that "a reasonable party in the same circumstances **would have reasonably foreseen litigation**." *Johns v. Gwinn*, 503 F.Supp.2d at 565 (emphasis added).   Rather, it shows that the UVA Defendants "in fact reasonably foresaw litigation." *Id.* Mr. Bhattacharya's November 19, 2018 threats of litigation detailed in the Spoliation Remediation Motion (Dkt. #276 at 20-22) included the suggestion that Dean Densmore "get a lawyer" and warned Dean Densmore that retaliation against Mr. Bhattacharya would be used against Dean Densmore in future judicial proceedings.   (The UVA Defendants mischaracterize these warnings as reading Dean Densmore his *Miranda* rights.)   Regardless of whether these were explicit "threats of litigation," they were sufficient to satisfy the "'highly case specific and fact dependent inquiry'" under authorities such as *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Lia. Litig.*, 299 F.R.D. 502, 507, 512, 517 (S.D.W. Va. 2014) and *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 106-07 (E.D. Va. 2018).

### 2.   November 19, 2018 Forced Psychiatric Evaluation (SUMF ¶¶ 3-5)

Triggering Event No. 2 consists of various statements and threats of litigation that Mr. Bhattacharya made during the course of the November 19, 2018 Forced Psychiatric Evaluation. The afternoon of November 19, 2018, UVA Policy Officers and Charlottesville Police Department Officer Jeffrey Jaeger escorted Mr. Bhattacharya from the Claude Moore Health Sciences Library to UVA Medical Center for the November 19, 2018 Forced Psychiatric Evaluation.   Charlottesville police officer Jeffrey Jaeger wore a bodycam that captured the ***entirety*** of the November 19, 2018 ECO.   The UVA Defendants, through the OAG and otherwise, have had access to this bodycam

---

University Counsel Lynne Fleming reported to Dean Canterbury and Dean Thomas about the NTO, stating that it would likely not be overturned (Bates No. UVA00003311.)

[15] *See* the UVA Defendants' Privilege Log (**Exhibit 2** to the Spoliation Remediation Motion).

footage both then and now.  Mr. Bhattacharya's videotape of this incident with Jeffrey Jaeger contains a specific plea by Mr. Bhattacharya to preserve this evidence.  (Bates Nos. KB006010, UVA00006530, UVA00007791-93.)  After he was taken to UVA Medical Center on November 19, 2018, Mr. Bhattacharya admonished UVA employees to preserve video evidence while repeatedly referencing and threatening litigation.  (UVA00006523-42.)

The involvement of law enforcement officers—who are specifically trained to preserve bodycam footage in anticipation of litigation, especially when litigation has been threatened—buttresses the conclusion that the UVA Defendants should have retained footage.  The footage that Mr. Bhattacharya took en route to UVA Medical Center shows specific admonishments to preserve evidence—as does the footage of a portion of what transpired at UVA Medical Center on November 19, 2018 showing threats of litigation, admonishments to preserve evidence, and inquiries about access to video footage.  Even the UVA Defendants' selectively produced footage reflects threats of litigation.  The fact that the UVA Defendants produced only the portion that they wanted to use in case of litigation suggests that the UVA Defendants acted "willfully or in bad faith."  *Sampson v. City of Cambridge*, 251 F.R.D. at 181.  Like the defendant in *Johns v. Gwinn*, 503 F.Supp.2d at 461, 466-467, the UVA Defendants should not have deleted the video footage of numerous days' events that they undeniably deleted.  *See* Dkt. #276 at 23.

### 3.     November 26, 2018 Legal Dispute re: CAPS Evaluation (SUMF ¶ 6)

Triggering Event No. 3 is Mr. Bhattacharya's  response to Dean Densmore's November 26, 2018 email stating: "You will need to be seen by CAPS before you can return to classes."  Mr. Bhattacharya cited a FIRE publication about First Amendment violations and asked: "How can it be legal to mandate psychiatric evaluations to continue my education?"  (Dkt. #33-37.)   As previously discussed, the mention of FIRE—known for its litigation of First Amendment claims in academia—was at least an implicit threat of litigation.

14

4.      **November 27, 2018 Telephone Call to Dean Canterbury (SUMF ¶ 7)**

Triggering Event No. 4 is reflected in Dean Canterbury's November 27, 2018 report to UVA Dean of Students Allen W. Groves, Dean Densmore, and University Counsel Lynne Fleming that Mr. Bhattacharya had called him and said that UVA was "violating his rights to free speech," "threatened to hire lawyers to 'fight the battle for me,'" and "ended the conversation politely but with the thret [sic] of hiring lawyers." (Dkt. ##276-4, 280-1.)

5.      **November 27, 2018 Telephone Call to Dean Densmore (SUMF ¶ 8)**

Triggering Event No. 5 is reflected in Dean Densmore's November 27, 2018 response to Dean Canterbury's email—with a copy to University Counsel Lynne Fleming—stating that Mr. Bhattacharya's statements to Dean Canterbury were "[v]ery similar to the message he left me." (Dkt. ##276-4, 280-1.)

6.      **November 28, 2018 ASAC Suspension Hearing (SUMF ¶ 9)**

Triggering Event No. 6 is the November 28, 2018 Suspension Hearing during which Mr. Bhattacharya threatened litigation for violation of his First Amendment rights, mentioned that he had spoken with an attorney in Charlottesville, and explained that he—like UVA—was recording the meeting for use in litigation.[16]  The foregoing statements by Mr. Bhattacharya, made in the

---

[16] *See* Bates No. UVA00008144 (**Exhibit 1** to Spoliation Remediation Motion).  Right before the beginning of the November 28, 2018 ASAC Suspension hearing: Mr. Bhattacharya stated: "Also, uh, I wanted to record this entire thing on my phone for my own protection, legally so."  [0:53-1:03.]  Dr. Tucker responded,  "Ok, that would be fine," and nodded his head. [0:56-1:00.]  Simultaneously, at the request of Dean Thomas, UVA police officer Earl Schoen was recording the entire ASAC hearing in video and audio format.  ***The UVA Defendants preserved Earl Schoen's bodycam video precisely because they anticipated that it would be used in litigation.*** (Ironically, after the hearing, Officer Schoen suggested that Mr. Bhattacharya retain a lawyer.)  The UVA Defendants did not produce the bodycam video until December 27, 2021—after stating on October 1, 2021, in response to Mr. Bhattacharya's discovery requests, that "Defendants have already produced all other responsive, relevant, and non-privileged documents, ***including recordings***." (Dkt. #236-32 at 9-10 (emphasis added).)

15

presence of University Counsel Lynne Fleming, were captured by recordings filed with the Court by Plaintiff (Dkt. #33-48) and produced by the UVA Defendants.  These recordings, not the allegations contained in any pleading filed by Plaintiff, were the basis for the UVA Defendants' representations to the Court—from which they now seek to distance themselves—that, at the November 28, 2018 ASAC meeting, "Plaintiff accused the committee of violating his free speech rights and mentioned consulting with several lawyers whom he might hire" and "implicitly threatened the committee with a lawsuit."  (Dkt. #113 at 15, 23.)

### 7.    November 29, 2018 Email Exchange With Dean Peterson (SUMF ¶ 10)

Triggering Event No. 7 occurred on November 29, 2018, when  Mr. Bhattacharya expressed concern about the potential deletion of his health systems email account in an email exchange with Dean Peterson, which she forwarded to Dean Densmore.[17]

### 8.    November 30, 2018 Visits to CAPS and UVA Police (SUMF ¶ 11)

Triggering Event No. 8 occurred on November 30, 2018, when Mr. Bhattacharya visited CAPS and the UVA Police Department to try to collect or otherwise put UVA employees on notice to preserve documents and bodycam footage relevant to the litigation that he had previously threatened.[18]  Reports of these visits were shared with University Counsel Lynne Fleming at the time.[19]

---

[17] *See* Bates Nos. UVA00002748, UVA00002750, and UVA0002752 (**Exhibit 11** to Spoliation Remediation Motion).

[18] *See* Bates Nos. UVA00000445-46 ("Suspension letter delivered to [Mr. Bhattacharya] on 11/29" and report that Mr. Bhattacharya "[w]ent to CAPS on 11/30 and requested records" and "[w]ent to PD on 11/30 requesting records and body cam footage") (**Exhibit 12** to Spoliation Remediation Motion).

[19] *See* Bates Nos. UVA00000445-46 ("[Edward Markowski] continues to advise and communicate with Dr. Canterbury and the department") (**Exhibit 12** to Spoliation Remediation Motion).

4878-5672-6810.1

### 9.      December 2018 Emails re: Health Systems Account (SUMF ¶ 12)

Triggering Event No. 9 is the December 3, 2018 email that Mr. Bhattacharya sent from his gmail account to Deans Densmore, Dean Keeley, Dean Peterson, and Dean Reed stating that access to his "health system email was recently deleted," that he "would like to appeal my 1-year suspension," and that the process should be initiated within the time period contemplated by UVA Med School's policies and procedures.[20]   Four hours later, Dr. Marzani sent an email to Dean Canterbury, Dean Thomas, Dean Densmore, and UVA Counsel Lynne Fleming (with a copy to Jill A. Clarke, Manager of UVA Med School's Office of Student Affairs) with the subject line "Suspended student KB and father were just here in admissions" reporting that Mr. Bhattacharya had taped the discussion and that Mr. Bhattacharya "wanted to know about the appeals process," "had spoken to a lawyer (but not retained one because of the cost) and was told to come I person to find out what he needed to do," and "thought he had 14 days to start the appeals process."[21]   No appeal ever took place, however.

Authority for the proposition that "an internal appeals process for student suspensions is not litigation and does not create a legal duty to preserve evidence"[22] is unhelpful to Defendants' cause because the foreseeable use of the evidence that they admittedly destroyed was not limited to "an internal appeals process for student suspensions."   Mr. Bhattacharya's threats of First Amendment litigation started well before there was even a suspension that he could possibly appeal.  (SUMF ¶ 1-10).  Mr. Bhattacharya never withdrew those threats after he was suspended and tried to initiate the appeals process.  He never withdrew these threats.  (SUMF ¶ 11-13.).  The

---

[20] *See* Bates Nos. UVA00002846-47 (**Exhibit 13** to Spoliation Remediation Motion).

[21] *See* Bates Nos. UVA00002850-51 (**Exhibit 14** to Spoliation Remediation Motion).

[22] *Pro Massage Training Ctr., Inc. v. Accreditation All. Of Career Sch. & Colleges*, No. 1:12-CV-00911 LO/IDD, 2013 WL 3229911, at *1 (E.D. Va. Apr. 9, 2013).

fact that the UVA Defendants prevented the appeals process from ever getting underway—leaving Mr. Bhattacharya with no recourse but to assert his constitutional claims—made the likelihood of litigation even more foreseeable under the objective reasonable test of cases like *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001).

### 10.    <u>Unsuccessful Efforts to Initiate Appeal Process (SUMF ¶ 13)</u>

Triggering Event No. 10 reflects the fact that, during December 2018, Mr. Bhattacharya retained counsel with whom University Counsel Lynne Fleming had direct communications well before Mr. Bhattacharya's health system email account was deleted, including on December 11, 2018.  (Dkt. #178, ¶ 6.)  Defendants' privilege log reflects numerous communications regarding Mr. Bhattacharya in December 2018—including on December 10, 2018, December 14, 2018, and December 20, 2018—dates on which Mr. Bhattacharya's prior threats of litigation had not been withdrawn.  In January 2019, UVA notified Mr. Bhattacharya that he could not appeal his suspension from UVA Med School because the UVA Police Department had issued a "No Trespass Order" preventing him from stepping foot on the UVA Grounds until January 3, 2023— a date after which Mr. Bhattacharya would be unable to complete his medical education even if his appeal were granted.  Again the fact that Mr. Bhattacharya was foreclosed from appealing his suspension—a required exhaustion of remedies before he could commence litigation—made litigation more likely.

### 11.    <u>February 3, 2019 FOIA Requests to UVA (SUMF ¶¶ 14-16)</u>

Triggering Event No. 11 reflects the fact that, between February 2 and 6, 2019, Mr. Bhattacharya sent UVA seven FOIA requests for various documents—specifically including police reports and bodycam footage—related to the November 14, 2018 Forced Psychiatric Evaluation, the November 19, 2018 Forced Psychiatric Evaluation, the November 28, 2018 ASAC Suspension Hearing, and the January 2, 2019 No Trespass Order by emails dated February 4, 2019

18

and February 12, 2019.  UVA acknowledged receipt of Mr. Bhattacharya's seven FOIA requests. The UVA Threat Action Team notes acknowledged Mr. Bhattacharya's FOIA requests, which were broad enough to encompass the contents of the Threat Action Team file itself.[23]  The Office of University Counsel was copied on all communications with and involving Mr. Bhattacharya, again reflecting actual knowledge that litigation was likely.

### 12.    August 2019 Correspondence to UVA Defendants (SUMF ¶¶ 17-20)

Triggering Event No. 12 consists of August 7, 2019 emails that Mr. Bhattacharya sent asking "Would you be willing to voluntarily participate in any or all of the following components of the discovery process: Depositions, Interrogatories, Requests for production of documents, Requests for admissions?" to the following 22 individuals at UVA: Maura McLaughlin, Mary Worden, Nicholas Intagliata, Linda Duska, Katheryn Frazier, Sharon Diamond-Myrsten, Donna Chen, Roger Abounader, Margaret Sande, Winifred Wolfe, Sean Reed, Gabrielle Marzani, Wilson Miller, Nora Kern, Pamilla Herrington, Randolph Canterbury, Jim Tucker, John Densmore, Karen Painter, and Gloria Graham.  Mr. Bhattacharya also texted Melissa Fielding a similar message.  He also sent two similar emails that day to each of UVA Police Officers Smoot, Easton, and Fielding.

Several of the foregoing recipients acknowledged receipt of the foregoing requests, one way or another.  On August 7, 2019, Dr. Kern, Dean Canterbury, and several others at UVA exchanged emails about the discovery requests, which prompted Dr. Kern to observe: "I figured it wouldn't be over." (Bates No. UVA00005976).  On August 7, 2019, Dean Peterson exchanged text messages with Angel Hsu about the discovery requests (Bates Nos. UVA00002263-64).

---

[23] *See* Bates No. UVA00000437: On "2019-02-07," the "TAT" (threat action team) reported "7 FOIA requests received from Kieran" (**Exhibit 12** to Spoliation Remediation Motion).  FOIA Request No. 4 sought "any and all information related to Support Services Captain Melissa Fielding's decision to issue a No Trespass Order (NTO) against Kieran Bhattacharya (myself) on 2 January 2019."

19

On August 8, 2019, Mr. Bhattacharya also called Catherine Richard at CAPS and made a similar request about discovery.  Ms. Richard, who is not a physician, responded by "diagnosing" Mr. Bhattacharya's document production request as "Bipolar [disorder], [current] episode manic severe [with] [psychotic] features."

On August 7, 2019, University Counsel sent Mr. Bhattacharya correspondence acknowledging receipt of the foregoing emails and requesting that Mr. Bhattacharya "direct any future correspondence regarding pending or future claims, or litigation of any kind to my attention" and "not correspond with employees, faculty, or administrators of the University directly on these matters."

**B.    Both in Fact and as a Matter of Law, the Spoliated Evidence Was Relevant, and the UVA Defendants' Destruction Was Willful Rather Than Merely Negligent.**

By failing to stop the "automatic deletion" of email accounts—starting with Mr. Bhattacharya's, continuing with Dr. Rasmussen's and others' (including Angel Hsu's following her recent graduation from UVA Med School)—the UVA Defendants' conduct was ***not*** "merely negligent."  *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004)).  The first element of spoliation—"an obligation to preserve"[24]—is established by the cumulative effect of each of the twelve pre-litigation "triggering events."

Before the evidence was lost or destroyed, and even before there was a suspension that Mr. Bhattacharya could have possibly appealed or otherwise challenged, Mr. Bhattacharya repeatedly made clear that he intended to assert First Amendment claims.  (SUMF ¶¶ 1-10.)  Mr. Bhattacharya never withdrew those threats after his suspension.  (SUMF ¶¶ 11-13.)  Once the UVA Defendants

---

[24] *Walker v. Owens*, No. 7:13cv00425, 2016 WL 320998, at *2 n.3 (W.D. Va. Jan. 26, 2016) (Moon, J.) (alteration in original) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

made it impossible for him to appeal, the litigation that Mr. Bhattacharya had previously threatened became his only recourse. The UVA Defendants proceeded to destroy evidence anyway. Even after Mr. Bhattacharya made good on his threats of litigation, the spoliation continued with—for example—the deletion of Dr. Rasmussen's and Angel Hsu's emails. These facts alone establish the second element of spoliation, a "culpable state of mind." *Walker v. Owens*, 2016 WL 320998, at *2 n.3. The fact that other evidence was selectively "curated"—for example, with respect to Dean Densmore's emails, Tabitha Enoch's documents, Angel Hsu's documents, and the video evidence—further supports a "culpable state of mind."

Last but not least, the spoliated evidence is clearly relevant "to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.* The evidence that the UVA Defendants deleted altogether—including the email accounts of the plaintiff, a defendant (Dr. Rasmussen), and a critical witness regardless of the fact that she has not been joined as a defendant (Angel Hsu)—could not be more relevant to Mr. Bhattacharya's claims. The same is true with respect to the other witnesses whose email accounts appear to have met a similar fate: the eleven UVA employees and eleven UVA Med School students identified in the UVA Defendants' disclosures who have left since the filing of the Complaint, and the additional three UVA employees and one UVA Med School students identified only in Plaintiff's disclosures who have left during this same time period. Moreover, "relevance is presumed" because the UVA Defendants' willful, bad faith conduct permits a logical inference that they acted out of "fear that the evidence [would] expose relevant, unfavorable facts." *Sampson v. City of Cambridge*, 251 F.R.D. 172, 179-80 (D. Md. 2008) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

21

## V.   <u>CONCLUSION</u>

The UVA Defendants' Privilege Log reflects the withholding of documents that had been prepared before this litigation was filed on grounds of work product because they reflected "in-house counsel's legal opinion prepared in anticipation of litigation."[25]   This privilege log entry alone reflects the clearly erroneous nature of the Magistrate's Ruling that Defendants had no duty to preserve evidence before the litigation was actually filed.   Plaintiff therefore respectfully requests that the Court reverse the March 23, 2022 Ruling That Defendants Had No Pre-Litigation Duty to Preserve Evidence.

---

[25] *See* **<u>Exhibit 2</u>** to the Spoliation Remediation Motion.

Date:  April 6, 2022                          Respectfully submitted,


KIERAN RAVI BHATTACHARYA

By:   *s/ Michael J. Lockerby*
                    Counsel

     Michael J. Lockerby (VSB No. 24003)
     FOLEY & LARDNER LLP
     Washington Harbour
     3000 K Street, N.W., Suite 600
     Washington, D.C. 20007-5109
     Telephone:  (202) 672-5300
     Facsimile:  (202) 672-5399
     Email:  mlockerby@foley.com


     Steven C. Lockhart (admitted *pro hac vice*)
     Robert T. Slovak (admitted *pro hac vice*)
     Brandon C. Marx (admitted *pro hac vice*)
     FOLEY & LARDNER LLP
     2021 McKinney Avenue, Suite 1600
     Dallas, Texas 75201
     Telephone: (214) 999-3000
     Facsimile: (214) 999-4667
     E-mail:  slockhart@foley.com
     E-mail:  rslovak@foley.com
     E-mail:  bmarx@foley.com


     John P. Melko (admitted *pro hac vice*)
     James G. Munisteri (admitted *pro hac vice*)
     FOLEY & LARDNER LLP
     1000 Louisiana Street, Suite 2000
     Houston, Texas 77002
     Telephone: (713) 276-5500
     Facsimile: (713) 276-5555
     Email:  jmelko@foley.com
     E-mail:  jmunisteri@foley.com


     *Counsel for Plaintiff, Kieran Ravi Bhattacharya*

23