**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

|  |  |  |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JAMES B. MURRAY, JR., et. al.,** | ) | **Civil Action No.: 3:19-CV-00054** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO**
**THE UVA DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ....................................................................... 1

II.    PROCEDURAL HISTORY............................................................................. 6

III.   ARGUMENT ................................................................................................. 7

    A.    Limited Information About Other Similarly Situated UVA Med Students Who Were (and Were Not) Disciplined on Professionalism and Grounds Is Relevant. ..................................................................................... 7

        1.   Interrogatory No. 6 and RFP No. 78:........................................ 7

        2.   RFP Nos. 76, 77, 79, 80, and 88 ............................................. 10

    B.    Plaintiff Has Made Arrangements With Angel Hsu's Counsel to Address the UVA Defendants' Claimed Concerns About Her Confidentiality.................. 10

        1.   Discovery regarding Angel Hsu is relevant to the parties' claims and defenses according to the UVA Defendants' own pleadings and discovery responses. ................................................................. 10

        2.   To address confidentiality concerns, Plaintiff has agreed to treat responses to various third-party subpoenas as being subject to the protective order. ............................................................................ 10

        3.   The UVA Defendants themselves disclosed the information about Angel Hsu for which Plaintiff seeks additional details and documentation............................................................................. 10

    C.    Discovery About the November 14 and 19, 2018 Forced Psychiatric Evaluations Is Relevant to Both Plaintiff's Claims and the UVA Defendants' Defenses. ..................................................................... 12

    D.    RFP No. 105 Seeks Information Relevant to the UVA Defendants' "Forum Shopping" for Purposes of the November 19, 2018 Forced Psychiatric Evaluation ................................................................... 12

    E.    The UVA Defendants' Objections to the Number and Contents of Plaintiff's Requests for Admission Are Contrary to Western District Precedent............................................................................................ 13

    F.    Interrogatory Nos. 9 and 11 and RFP Nos. 109 and 110 Seek Relevant Information and Are Necessary Because the UVA Defendants Destroyed Numerous Emails......................................................................... 14

        1.   Interrogatory No. 9........................................................................ 14

        2.   Interrogatory No. 11...................................................................... 15

    G.    Plaintiff's Fifth and Seventh Discovery Requests Are Necessary and Relevant to Comply With the Discovery Deadline and Address Prior Discovery Deficiencies. ...................................................................... 16

        1.   Interrogatory No. 20...................................................................... 16

        2.   Interrogatory No. 21...................................................................... 16

        3.   RFP No. 114 and RFA Nos. 199-205 and 214 ........................... 16

        4.   RFP Nos. 115-18 and 125-28....................................................... 17

        5.   RFP No. 119................................................................................... 17

        6.   RFP No. 161................................................................................... 17

4873-3702-6076.3

7.   RFA Nos. 217, 218, and 219 ........................................................... 17

8.   RFA Nos. 307 and 308 .................................................................... 18

9.   RFA Nos. 341 and 344 .................................................................... 18

10.  RFA Nos. 346, 359, and 367 ........................................................... 19

11.  RFA Nos. 431, 432, 433, 434, 435, 436-39 .................................... 19

IV.   CONCLUSION ............................................................................................... 19

4873-3702-6076.3

Plaintiff, Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully states as follows in opposition to Defendants' Motion for Protective Order Regarding Plaintiff's Fourth Set of Discovery Requests and to Resolve Issues Related to Plaintiff's Fifth and Seventh Set of Discovery Requests (Dkt. #344) (the "UVA Defendants' Motion for Protective Order").[1]

## I.   PRELIMINARY STATEMENT

Notwithstanding its $14.5 billion endowment[2] and use of taxpayer funds to pay a growing army of private lawyers to represent the UVA Defendants and various witnesses, the UVA Defendants plead poverty while trivializing the stakes for Mr. Bhattacharya—whose promising academic career[3] was cut short at the age of 22 in retaliation for his questions and comments at the October 25, 2018 AMWA Microaggression Panel Discussion.  And the UVA Defendants have only themselves to blame for the compressed time period for responding to the discovery requests. Plaintiff's original written discovery was served near the outset of the discovery period and called for production to be complete by July 1, 2021.  As a professional courtesy, Plaintiff granted an extension until July 19, 2021.  Plaintiff gave more than a proverbial inch and University Counsel took more than a proverbial mile.  The bulk of the documents produced by the extended deadline

---

[1] For ease of reference, the defendants who filed this motion—all but Dr. Rasmussen—are referred to herein as the "UVA Defendants," and their counsel of record (including the Office of the Attorney General, McGuireWoods LLP, and the UVA Office of Counsel) are referred to collectively as "University Counsel."

[2] U.Va endowment reaches record high of $14.5 billion in 2020-2021 fiscal year - The Cavalier Daily - University of Virginia's Student Newspaper and https://archive.ph/TeRN3

[3] *See, e.g.*, SAC ¶ 46 ("Mr. Bhattacharya enrolled in UVA Med School and began the fall 2016 semester as a member of the Class of 2020 on August 4, 2016.  At the time he began his medical school education, Mr. Bhattacharya was 20 years old.  Mr. Bhattacharya had skipped kindergarten and graduated from high school in May 2013 at age 16 as valedictorian at HP Baldwin High School.  He received a full tuition merit scholarship, with an additional merit stipend, from the University of Alabama in Tuscaloosa.  In May 2016, at age 19, Mr. Bhattacharya graduated *summa cum laude* with a degree in chemistry.").

4873-3702-6076.3

were materials to which Plaintiff already had access.  Conveniently (for Defendants), little of substance was produced until *after* the briefing and argument of Plaintiff's motion for leave to file the Second Amended Complaint.  Even then, some of the most critical documents were still slowly rolling in just a few months ago, as briefing of the Spoliation Remediation Motion commenced. The latest written discovery requests (to which the UVA Defendants have objected) were necessary because:

1.   University Counsel previously refused, and continues to refuse, to search the documents of numerous custodians whom both sides have identified as witnesses having knowledge of relevant facts

2.   Many of Plaintiff's prior written discovery requests were never answered by the UVA Defendants and Dr. Rasmussen, thus necessitating new requests.

3.   During the litigation, numerous custodians' email accounts have continued to be deleted.

4.   Counsel for the UVA Defendants and Dr. Rasmussen alike objected to Plaintiff's serving additional discovery on them (or third parties, for that matter) until the Court ordered it just last month.

Rather than make a good faith effort to comply with the letter and spirit of the Court's Amended Scheduling Order, the Defendants continued their obstructionist tactics.  They ignored Plaintiff's proposed compromises to narrow certain discovery requests.  In the hope of avoiding further motions practice, Plaintiff offered to withdraw a substantial number of requests for admission, many more than the UVA Defendants had requested—on the condition that the UVA Defendants' Motion for Protective Order be withdrawn insofar as Defendants claimed objections on the basis of burden, disproportionality, and/or harassment.  The UVA Defendants would not

2

agree to that condition, instead insisting that their Motion for Protective order be "expedited." Meanwhile, they simply refused to answer any of the discovery requests that Plaintiff had expressed a willingness to withdraw as part of a compromise despite never entering into a stipulation with Plaintiff or providing prior notice that they were doing so.

Just last night, the UVA Defendants served their objections and responses to Plaintiff's Fourth Set of Discovery Requests, a copy of which is attached as **Exhibit A**.  The UVA Defendants did not produce a single document.  Nor did they object to a single interrogatory or request for production.  Instead, their April 18, 2022 transmittal email, a copy of which is attached as **Exhibit B**, simply announced:  "Defendants will supplement with their objections and responses to the relevant Requests for Production and Interrogatories by the end of this week."  Under these circumstances, the UVA Defendants' stated desire to "complete discovery without further delay" rings hollow.

Even during the brief period in which the UVA Defendants' Motion for Protective Order has been on the docket, additional documents subpoenaed from third parties—but never produced by the UVA Defendants—have come to light.  These documents establish that University Counsel has failed to preserve or simply failed to produce documents that should have been produced in July of last year.  These documents also show that University Counsel's claims of undue burden have no credibility.

For example, the Second Amended Complaint references two anonymous complaints to the "Listening Post" maintained by Dean Thomas regarding Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion submitted by two students.  (SAC ¶¶ 7.a., 7.b., 40, 41, 74.c, and 74.d.)  In response to one of the anonymous complaints, Dean Canterbury wrote to Dean Densmore—with a copy to Dean Thomas—"I think this is the

3

equivalent of a [professionalism] concern card." (SAC ¶ 7.)  During the "meet and confer" process, Plaintiff's counsel asked whether it was possible to determine the identity of the individual(s) who submitted the complaints.  University Counsel, both orally and in writing, represented that it was not possible.[4] That statement was false.  Documents subpoenaed from third parties include an October 27, 2020 email from Dean Canterbury (attached as **Exhibit C**, being submitted for filing under seal)—on which Dean Thomas, Dean Densmore, Meg Keeley, Dean Peterson, Sean Reed, and Megan J. Bray were copied—stating, with respect to recent reports of "unprofessional behavior, that it was in fact possible to "crack the code" and determine the identity of the complaining party.  Rather than tell the truth and let the Court decide whether the identity of these witnesses should be disclosed, the UVA Defendants said otherwise and either destroyed or withheld from production Dean Canterbury's email showing their representation to be false.

And as it turned out, the UVA Defendants already knew the identity of at least one of the sources of the anonymous "Listening Post" complaints because the submission was solicited by Sean W. Reed, M.D.  Dr. Reed is an Associate Professor at UVA Med School who (1) was a "guest" at the November 14, 2018 meeting at which ASAC voted to reprimand Mr. Bhattacharya for his questions and comments at the October 25, 2018 AMWA Microaggression Panel Discussion (SAC ¶ 103), (2) called Mr. Bhattacharya shortly before the November 28, 2018 ASAC Suspension Hearing and informed Mr. Bhattacharya—for the first time—of the Professionalism Concern Card that had been lodged based on Mr. Bhattacharya's questions and comments at the October 25, 2018 AMWA Microaggression Panel Discussion (SAC ¶ 128), and (3) was—

---

[4] *See* Dkt #285-1 at 11 (In response to Mr. Bhattacharya's repeated requests for "Identities of who anonymously submitted information to the 'Listening Post,'" Defendants' counsel stated on December 23, 2021: "We have confirmed that it is not possible to identify the individuals who submitted the reports to the Listening Post in the fall of 2018.").

according to the November 29, 2018 email transmitting the ASAC Suspension Letter—"available for support" to Mr. Bhattacharya (SAC ¶ 136).  Documents subpoenaed from third parties include an October 28, 2020 text message (attached as **<u>Exhibit D</u>**, being submitted for filing under seal) referencing an October 28, 2018 email from Dr. Reed suggesting that a student at UVA Med School submit an anonymous complaint to the Listening Post about Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion.  The text message stated that the student had followed Dr. Reed's advice and also reflected knowledge that Dean Peterson was "going to reach out" to Mr. Bhattacharya about his questions and comments at the AMWA Microaggression Panel Discussion.  Such communications involving Dr. Reed, Dean Peterson, and others are nowhere to be found in the UVA Defendants' document production, however.

And as for the alleged "burden" of providing Mr. Bhattacharya with other means of contacting the former employees and students whose email accounts were deleted after commencement of this litigation, University Counsel has found it very easy to communicate with them when doing so would suit their purposes.   Such communications include emails and texts (examples of which are attached as **<u>Exhibit E</u>**, being submitted for filing under seal) identifying the sender as "Associate University Counsel at UVA," naming the attorneys from the Office of the Attorney General (the "OAG") who were then representing the UVA Defendants, and stating that "our attorneys believe that you may have information relevant to the allegations of the lawsuit and would like to speak with you" and that "UVA would be most appreciative if you would consider taking a few minutes of your time to do this."    One of the students who spoke with Madeline Gibson at the OAG repeated that "they reached to everyone that emailed someone at UVA after the event cuz their case is that Kieran was disruptive to the learning environment."  This student reported that Ms. Gibson said "they're looking for students that were there that day and can attest

to his behavior being disruptive." With no sense of irony, another student responded: "To work to build your whole career and then have to have this kid grab so much of your energy?"  In short, University Counsel has long had much of the information that it claims would be "burdensome," but information from the UVA Med School Community is only relevant if it comports with the UVA Defendants' "party line."[5]

## II.   PROCEDURAL HISTORY

The account of the UVA Defendants' prior discovery responses—and lack thereof—cannot be squared with the actual history of discovery in this matter.  Much of this procedural history is detailed in the Memorandum in Support of Plaintiff's Motion to Remediate Spoliation of Evidence and Amend Scheduling Order.  *See* Dkt. #276 (pp. 9-13).  And that motion did not even address deficiencies in the UVA Defendants' discovery responses documented in the November 8, 2021 correspondence from Plaintiff's counsel that, although filed with the Court, have never been the subject of a motion to compel.  Rather than expend scarce resources on that exercise, Plaintiff secured the right to propound additional discovery and promptly did so in compliance with the deadline imposed by the Court.  Before and after filing their pending motion, the UVA Defendants never met and conferred in accordance with the letter and spirit of the Local Rules.  They refused all reasonable offers of compromise.  Although their motion sought to limit the number of new

---

[5] As far as Plaintiff's counsel is aware, the UVA Defendants failed to preserve the health system email accounts of all of the above referenced individuals, whose accounts were likely permanently deleted around July 2021, about 22 months after discovery was opened.

requests for admission to 255 from 306,[6] Plaintiff offered to withdraw 151[7] requests for admission to bring down the total from 306 to 165 in the hope of avoiding unnecessary motions practice. Furthermore, the UVA Defendants' Proposed Order asks the Court to require that Plaintiff withdraw 19 of the 92 additional RFPs, reducing the total number to 73.  Plaintiff offered to remove 27 of the 92 RFPs bring the total down to 65, whereas the UVA sought Defendants only a reduction of 19.

## III.   ARGUMENT

**A.**   **Limited Information About Other Similarly Situated UVA Med Students Who Were (and Were Not) Disciplined on Professionalism and Grounds Is Relevant.**

**1.**   **Interrogatory No. 6 and RFP No. 78:**

Defendants' own document production shows that Christine Peterson, Tabitha Enoch, and Nicole Ruzek, among others, sought to use Title IX as a pretext for expelling Mr. Bhattacharya. In fact, Tabitha Enoch even reporting "probing" Angel Hsu with leading questions in the hope that Hsu would fabricate rape and domestic violence allegations against Mr. Bhattacarya.[8]  Tellingly,

---

[6] Defendants' Proposed Order requests that this Court require Plaintiff to withdraw 51 RFAs (148, 151-155, 171-173, 175-178, 185-93, 199-205, 214, 217-19, 307-308, 341-44, 346, 359, 367, 431-39) from the total of 306 RFAs in the Fourth, Fifth, and Seventh Discovery Requests. Nonetheless, the UVA Defendants and Dr. Rasmussen each filed responses under oath yesterday to all 18 RFAs that they now ask this Court to Order that they need not respond to from the Fourth Set of Discovery Requests (RFAs No. 148, 151-155, 171-173, 175-178, 185-189). (*See* **Exhibit A** and **Exhibit F** for responses to the RFAs by the UVA Defendants and Dr. Rasmussen, respectively) It is unclear as to why the UVA Defendants spent the time and resources petitioning this Court to determine that they should not have to respond to these RFAs when both they and Dr. Rasmussen were already able and planning to do so anyway.

[7] On April 11, 2022, Mr. Bhattacharya offered the UVA Defendants revised sets of the Fourth (**Exhibit G**), Fifth (**Exhibit H**) and Seventh (**Exhibit I**) Discovery Requests that removed 151 RFAs (RFA Nos. 134, 136-138, 141-143, 158, 174, 183-184, 196-198, 206-211, 215-216, 220, 224, 226-231, 237-252, 254-261, 264-268, 272-284, 286-293, 295-297, 201-306, 309, 316, 319-321 331-332, 334, 345-348, 350-351, 353-354, 356-357, 361-363, 366, 368, 374, 377, 383, 385, 387, 391-392, 395, 397-398, 409, 411-412, 424-439)

[8] At 8:49:43 on November 28, 2018, Tabitha Enoch emailed Susan Davis and Edward Markowski that when speaking to Angel Hsu by phone, Enoch "[p]robed a bit about any other Title IX

after this litigation was commenced, University Counsel Lynne Fleming—to the extent that she sent any document preservation requests at all—made it a priority to send them to those responsible for Title IX enforcement at UVA (including Catherine Spear and Emily Babb) while not sending them to many individuals specifically named in the Complaint.  By her own admission, Tabitha Enoch received a report on November 2018 from Mr. Bhattacharya of Title IX prohibited stalking against him by Angel Hsu. Rather than preserve her recordation of that report and her subsequent email to Mr. Bhattacharya, Tabitha Enoch destroyed the relevant documentation.[9]  If Title IX had been a valid basis for suspending and expelling Mr. Bhattacharya—rather than yet another pretext for prohibited First Amendment retaliation—surely there were other medical students who actually violated Title IX who would have been the subject of disciplinary action.  How these were dealt with by ASAC and the "Threat Assessment Team" is relevant to testing the credibility of the

---

behaviors [Mr. Bhattacharya] may have exhibited of which we should be aware and [Angel Hsu] said [Angel Hsu] has experienced a Title IX case at another school and didn't feel as if anything was done so [Angel Hsu would] prefer not to initiate anything here. For [Angel Hsu's] case in December [Angel Hsu] mentioned that [Angel Hsu's] lawyer's angle will be probable threat (the shovel in the room) and potentially stalking…" Thirteen minutes later, Enoch emailed Davis and Markowski again stating "[Angel Hsu has] texted [Tabitha Enoch] twice now to say that [Mr. Bhattacharya is] really not bothering [Angel Hsu] anymore and [Angel Hsu] really doesn't want [Mr. Bhattacharya] expelled. It feels to [Tabitha Enoch] like [Angel Hsu] knows something as [Angel Hsu has] never mentioned that before." Bates No. UVA00006569-71 (**Exhibit J**) (being submitted for filing under seal), which was deliberately withheld by Defendants until September 9, 2021, three days after the written discovery deadline expired on September 6, 2021 and one day after the OAG informed Mr. Bhattacharya's counsel by teleconference that Mr. Bhattacharya's health system email account was both deleted and unrecoverable.

[9] Interestingly, Dr. Rasmussen admitted in response to RFA No. 135 that "Tabitha Enoch sent an email to Mr. Bhattacharya after they spoke with each other by phone on November 18, 2018."  But the UVA Defendants for some reason claim in response to RFA No. 135 that "[a]fter making a reasonable inquiry, the information that Defendants know or can readily obtain is insufficient to enable them to admit or deny this request."  The UVA Defendants have yet to produce this document or explain if, when, and why they deleted this email along with other emails and documents to and from Tabitha Enoch concerning her actual knowledge as early as 6:00 p.m. on November 18, 2018 of Mr. Bhattacharya's Title IX report.

explanation that Defendants have since fabricated for violating Mr. Bhattacharya's constitutional rights.

To the extent that the discovery raises privacy issues, the protective order is the obvious remedy. *See Kovari v. Brevard Extraditions, LLC*, No. 5:18cv0070 (W.D. Va. May. 18, 2020) ("Magistrate Judge Hoppe also found Brevard's privacy concerns unpersuasive, given the two protective orders governing disclosures in this case."). To the extent that the corresponding request for production (RFP No. 78) would otherwise require the production of any such students' entire student file, Plaintiff understands that the largest volume of responsive documents in the file would be the student's medical school application and has agreed that the application itself need not be produced. Most importantly, the UVA Defendants exercised extreme selectivity in collecting documents to place in Mr. Bhattacharya's medical student file. Indeed, the nature of this litigation and the timeline of 2019 for Mr. Bhattacharya would have been very different in both procedure and substance had Defendants included, for example, Bates No. UVA00006569-71 in Mr. Bhattacharya's medical student file in December 2018 rather than after nearly three years later in September 2021. Because the UVA Defendants have a track record of concealing documents involving Mr. Bhattacharya, this Court should require full disclosure of other medical student files for complete comparison with Mr. Bhattacharya's medical student file. Furthermore, these student files will also shed light as to how individuals such as Peterson, Densmore, and Canterbury—all of whom were "responsible employees" at UVA Med School from November 14, 2008 to November 14, 2018[10]—handled Title IX cases.

---

[10] Dean Densmore "joined the faculty in 2001" John J. Densmore, MD | Oncology | UVA (uvahealth.com); Dean Canterbury was the Senior Associate Dean for Education at UVA Med School from "June 2008 to July 2021" (1) Randolph Canterbury | LinkedIn; and Dean Peterson began employment at UVA in approximately 1987 Interview with Christine Peterson, MD - YouTube at 0:40-2:56.

###### 2.     RFP Nos. 76, 77, 79, 80, and 88

Before the UVA Defendants filed their motion, Plaintiff had agreed that other students' "full medical student files" that would be responsive to these requests need not include medical school applications.  Plaintiff also asked the UVA Defendants to identify any other information in these files that they contend is irrelevant so that Plaintiff could hopefully agree that it need not be produced.  Again, privacy issues can and should be addressed via the protective order, as the Court has repeatedly done with respect to documents about which Plaintiff himself has similar concerns.

### B.     Plaintiff Has Made Arrangements With Angel Hsu's Counsel to Address the UVA Defendants' Claimed Concerns About Her Confidentiality.

###### 1.     Discovery regarding Angel Hsu is relevant to the parties' claims and defenses according to the UVA Defendants' own pleadings and discovery responses.

The UVA Defendants' Answer, initial disclosures, and discovery responses cited alleged concerns about Angel Hsu as justification for their discipline of Mr. Bhattacharya.  They made Angel Hsu's statements and conduct relevant to the claims and defenses in this action.

###### 2.     To address confidentiality concerns, Plaintiff has agreed to treat responses to various third-party subpoenas as being subject to the protective order.

The UVA Defendants are well aware of the fact that Plaintiff has subpoenaed confidential information from third parties such as CVS and CAPS (for which no subpoena should even be necessary).  Rather than litigate motions to quash, Plaintiff's counsel and Angel Hsu's counsel agreed to treat discovery responses as subject to the protective order.  Mr. Bhattacharya and his counsel even signed declarations to that effect.  Under the circumstances, the UVA Defendants' citation of privacy concerns is misplaced.

###### 3.     The UVA Defendants themselves disclosed the information about Angel Hsu for which Plaintiff seeks additional details and documentation.

Documents previously filed with this Court—including Plaintiff's proposed Second Amended Complaint (Dkt. #149-1)—describe the role of Angel Hsu in procuring the November

14, 2018 and November 19, 2018 Forced Psychiatric Evaluations that the UVA Defendants have used in their pleadings and other filings to try to justify their banishment of Mr. Bhattacharya from UVA Med School.  This same filing also discloses the fact that Mr. Bhattacharya sought voluntary treatment from UVA Medical Center in January 2017 after taking prescription psychiatric medication that Angel Hsu had given him.  The fact of Mr. Bhattacharya's January 2017 hospitalization was later used by Dean Densmore, UVA CAPS,[11] and others to justify the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations—along with additional false information supplied by Angel Hsu, some of which is described in Dkt. #149-1.

The UVA Defendants' concern about private health information seems to vary depending upon whose private information it is.  For example, Dean Peterson barged into CAPS employee Sarah Cooper's office on 10:19 a.m. on November 19, 2018 demanding (and receiving) what the UVA Defendants now allege to be "sensitive health information" about Mr. Bhattacharya that Dean Peterson used for retaliatory purposes.  And in response to Paragraph 13.a. of the Second Amended Complaint, the UVA Defendants had no problem "admit[ting] that [UVA CAPS employee] Catherine L. Richard treated Plaintiff on November 14, 2018."

Notwithstanding this double standard, Plaintiff is submitting for filing under seal as **Exhibit K** quotations from documents produced by the UVA Defendants in discovery showing why the UVA Defendants' reliance on "evidence" obtained from Angel Hsu was an unreliable basis for disciplining Mr. Bhattacharya—and that they knew it at the time.

---

[11] *See, e.g.,* UVA CAPS00003482 ("she has recently felt threatened by [Mr. Bhattacharya]").

**C.     Discovery About the November 14 and 19, 2018 Forced Psychiatric Evaluations**
<u>**Is Relevant to Both Plaintiff's Claims and the UVA Defendants' Defenses.**</u>

After the Court denied their Rule 12(b)(6) motion, the UVA Defendants changed the

grounds for Mr. Bhattacharya's suspension to claim grounds different from what they claimed at

the time.  As a result of this change in the UVA Defendants' strategy, the November 14 and 19,

2018 Forced Psychiatric Evaluations became a matter of public record for the very first time.

Interrogatory No. 13 relates to the allegations of the Second Amended Complaint describing how

the unlawful tranquilization of Mr. Bhattacharya had the purpose and effect of preventing him

from participating in hearings to decide whether he should be locked up as the UVA Defendants

sought.  *See* SAC ¶¶ 13.d., 13.g., 13., h., and 151.  The UVA Defendants' characterization of these

events as Mr. Bhattacharya's "prior healthcare" would make Soviet propagandists proud.

Defendants' claim to have no access to the requested information ignores precedents of the

Western District of Virginia holding the University of Virginia School of Medicine, UVA Health,

and UVA Physicians to be a single entity.  According to Defendants' amended disclosures served

just last month, the "medical professionals" who committed these acts are represented by

University Counsel.  That is among the reasons that this interrogatory is properly directed to the

UVA Defendants.  Moreover, University Counsel represented to the Court in Dkt. #285 on page

13 that Mr. Bhattacharya "had to be tranquilized."  This interrogatory simply asks why.

**D.     RFP No. 105 Seeks Information Relevant to the UVA Defendants' "Forum**
<u>**Shopping" for Purposes of the November 19, 2018 Forced Psychiatric Evaluation**</u>

The Second Amended Complaint alleges, and Defendants' own document production

confirms, that—in connection with the November 19, 2018 Forced Psychiatric Evaluation—

Defendants had Mr. Bhattacharya transferred to Poplar Springs Hospital in Petersburg as a means

of forum shopping because Special Justice Clarke in Charlottesville had just ordered Mr.

Bhattacharya's release in connection with the November 14, 2018 Forced Psychiatric Evaluation.

The excuse was that the psychiatric ward at UVA Medical Center was supposedly "full."  RFP No. 105 thus requests "[a]ll Documents and Communications reflecting the total number of individual patients who were admitted, discharged, or on the ward of 5 East each day between November 13, 2018 and November 27, 2018.  (Dkt. #285-1 at 19.)" The unit in question had only twenty beds.[12]  Providing this information for a two-week period would not be unduly burdensome as the UVA Defendants claim, especially since patient census information is maintained routinely.

E.     **The UVA Defendants' Objections to the Number and Contents of Plaintiff's Requests for Admission Are Contrary to Western District Precedent.**

If the UVA Defendants have no basis for responding to an RFA, they should say simply say so.  Moreover, this Court has previously rejected similar arguments that a comparable number of requests for admission would be unduly burdensome:

> Defendant also argues that responding to ***Plaintiffs' 245 RAs*** would take about fifty hours, thereby imposing an undue burden. Requests for admission may be "so voluminous" that responding creates an undue burden. Fed. R. Civ. P. 36 advisory committee note (1970 Amendment). In such an instance, a court may grant a protective order, relieving the party from responding. *Id.* On the other hand, it is permissible for requests for admission to impose a reasonable burden requiring the responding party to conduct a "reasonable inquiry" of "the information it knows or can readily obtain." Fed. R. Civ. P. 36; *see id.* advisory committee note (1970 Amendment). Plaintiffs' RAs concern disciplinary methods allegedly applied to UACs at SVJC. The information underlying these RAs was provided by Defendant in discovery; thus, the information is known or knowable by Defendant and in its possession. ***Moreover, if the Court were to relieve Defendant of responding to the RAs, Defendant would nonetheless have to prepare to respond to questioning at trial concerning the information sought in the RAs, and that questioning and testimony at trial would be cumbersome and time consuming. See Fed. R. Civ. P. 36 advisory committee note (1970 Amendment) (noting that these considerations favor requiring a response). Thus, Plaintiffs' RAs present an efficient means of offering evidence at trial.*** Although responding to Plaintiffs' RAs will require Defendant to devote a significant amount of time, weighing the considerations discussed above, the Court finds that the burden placed on Defendant in responding is reasonable.

---

[12] [Inpatient Psychiatry - Department of Psychiatry and Neurobehavioral Sciences (virginia.edu)](https://virginia.edu)

13

*Doe v. Shenandoah Valley Juv. Ctr. Comm'n*, No. 517CV97, 2018 WL 10593356, at 1 (W.D. Va. Nov. 30, 2018) (emphasis added).

**F.      Interrogatory Nos. 9 and 11 and RFP Nos. 109 and 110 Seek Relevant Information and Are Necessary Because the UVA Defendants Destroyed Numerous Emails.**

      **1.      Interrogatory No. 9**

The information about various individuals' cell phone numbers and related information is intended to make it possible to subpoena information from cell phone carriers comparable to the information that the UVA Defendants themselves subpoenaed from Plaintiff's cell phone carrier. The need to try to reconstruct telephone and text message communications is all the more necessary in view of the fact that—in addition to those witnesses who deliberately deleted emails (such as John Densmore and Melissa Fielding)—many other critical witnesses had their email messages deleted altogether.  Everyone for whom Plaintiff seeks this information is or was an employee at the time and made communications relevant to this litigation during the time period in question.  Plaintiff has previously offered to narrow the scope of this interrogatory in view of the fact that UVA has a cell phone number for everyone with a UVA email address.  Accordingly, Plaintiff modified the interrogatory as follows to request only "each individual's cell phone number(s), ~~cell phone type(s), cell phone make(s), and service provider~~ for the periods from October 20, 2018 through February 3, 2020~~, and identify any cell phones that were lost or destroyed~~."  Moreover, the UVA Defendants' Amended and Supplemental Initial Disclosures served on March 24, 2022 identified a number of witnesses who "may be contacted through the undersigned counsel for Defendants" or for whom the address and telephone number provided is that of the "UVA Office of University Counsel."  With respect to such individuals, Plaintiff's

14

counsel has no way of obtaining this information otherwise. Mr. Bhattacharya further offered to narrow the number of individuals from 52 to 25.[13]

### 2.   Interrogatory No. 11

The social media account information that Interrogatory No. 11 seeks is far narrower than that which the UVA Defendants have sought and obtained from Plaintiff.  More importantly, it is far more relevant than Plaintiff's postings (and postings about Plaintiff by others) that the UVA Defendants have obtained in discovery to try to provide some *ex post facto* justification for the No Trespass Order that—according to Edward Markowski himself—was simply not warranted at the time.  The Second Amended Complaint quotes Dean Canterbury's Twitter post about the "professionalism" discipline that would be meted out to medical students at UVA who disagreed with his political views.  And the Twitter account of Dr. Rasmussen is replete with commentary reflecting the type of disdain for and intolerance of those with different views that she displayed at the October 25, 2018 AMWA Microaggression Panel Discussion.  Again, Plaintiff's counsel has no way of obtaining this information otherwise.  Nevertheless, Plaintiff has previously offered to limit the scope of Interrogatory No. 11 by limiting the individuals for whom the information is to be provided to those for whom the contact information provided was Defendants' counsel, either counsel of record or University Counsel. Mr. Bhattacharya further offered to narrow the number of individuals from 52 to 25.

---

[13] On April 11, 2022, Mr. Bhattacharya offered to reduce Interrogatory 9 from 52 individuals from 25. (Removed 27 persons: 1. Patrick Stafford, 2. Lindsey Nicole Carlson, 3. Ashima Saripalli 4. Thomas Ball 5. Katherine Murray 6. Brian Behm 7. Sharon Diamond-Myrsten 8. Nicholas Intagliata 9. Catherine Shaffrey 10. Roger Abounader 11. Stephen Culp 12. Barnett Nathan 13. Donna Chen 14. Winifred Wolfe 15. Andy Thomson 16. James Moak 17. Karen Painter 18. Christopher Easton 19. Donald Harold McGee 20. Brandon Michael Smoot 21. Dreshawn Burton 22. Anthony Clarence Frazier 23. Courtney Schempp 24. Emily Babb 25. Lauren Miller 26. Scott Syverud 27. Daniel Stanley).

**G.     Plaintiff's Fifth and Seventh Discovery Requests Are Necessary and Relevant to <u>Comply With the Discovery Deadline and Address Prior Discovery Deficiencies.</u>**

**1.     Interrogatory No. 20**

In view of the UVA Defendants' deletion of the UVA email accounts of various critical witnesses identified in the parties' respective disclosures, they ought not be heard to complain about the burden of identifying alternative email accounts from which the spoliated evidence may be available.

**2.     Interrogatory No. 21**

The quoted verbiage comes straight out of the UVA Defendants' own witness disclosures.[14] It is entirely relevant to probe the basis—if any—for the UVA Defendants' characterization of the critical knowledge supposedly possessed by one of their own star witnesses.  If Defendants now claim that their description of Angel Hsu in their Third Amended Disclosures has no basis in fact, they can and should admit as such under oath.

**3.     RFP No. 114 and RFA Nos. 199-205 and 214**

The UVA Defendants' document production showed that Dean Canterbury got whatever he wanted from ASAC—discipline of Mr. Bhattacharya on professionalism grounds, discipline of Mr. Bhattacharya because he was allegedly "manic and psychotic," and the convening of the "emergency" ASAC meeting that led to Mr. Bhattacharya's suspension.  Dean Canterbury's grip over ASAC appointments and its prior actions in response to Dean Canterbury's directives are relevant to the legitimacy of Mr. Bhattacharya's suspension.

---

[14] Defendants' Third Amended Initial Disclosures (sent March 24, 2022) (**<u>Exhibit L</u>** at 8), states: "Dr. Hsu has knowledge of the Plaintiff's aggressive, abusive, unprofessional, and inappropriate behavior in 2017, 2018, and 2019." Mr. Bhattacharya's Interrogatory No. 11 was sent 6 days later on March 30, 2022.

4.      **RFP Nos. 115-18 and 125-28**

The supposedly "routine" changes to ASAC procedures made significant changes to the procedures cited and quoted in Mr. Bhattacharya's pleadings as part of an *ex post facto* effort to justify the retaliatory treatment of Mr. Bhattacharya.  How can producing the procedures that govern discipline of students at UVA Med School possibly be unduly burdensome?  When Mr. Bhattacharya was hauled before ASAC on a few hours' notice to address his continued enrollment status, it took the Registrar little time to send the then current policies and procedures by email.

5.      **RFP No. 119**

The fact that Mr. Bhattacharya recorded the November 28, 2018 ASAC Suspension Hearing, even though he had been authorized to do so by the Chair, was cited as yet another reason to banish him from UVA Med School.  How similar requests have been handled is relevant to Mr. Bhattacharya's claims of discriminatory treatment.

6.      **RFP No. 161**

If the UVA Defendants have any documents supporting their characterization of Angel Hsu's anticipated testimony that have not already been produced, they should produce them.  If these were among the documents destroyed when the UVA Defendants deleted her UVA email accounts, they should say so.  If these are responsive to other requests and therefore "cumulative," the UVA Defendants can and should simply incorporate their responses to these other requests by reference.

7.      **RFA Nos. 217, 218, and 219**

The Objective Structured Clinical Examination (OSCE) is an examination that all medical students must pass to graduate from the second year of medical school, Mr. Bhattacharya passed his FCM 1-C OSCE in November 2018. Angel Hsu reported to Mr. Bhattacharya in November 2017 that she had failed her OSCE on her first try and that she had to retake the exam later. While

17

it may not be apparent as to why this would be relevant to the AMWA Microaggression panel, Mr.

Bhattacharya's FCM mentor, Joanne Mendoza, who was an active member of the AMWA[15]

suggested to Dean Densmore that Mr. Bhattacharya's subpar but passing subsection on one of the

four scoring components of the exam should result in additional reprimand in light of Mr.

Bhattacharya's speech at the AMWA Microaggression Panel Discussion over one month prior.[16]

### 8.  RFA Nos. 307 and 308

These relate to circumstances surrounding the November 19, 2018 ECO Petition that the

UVA Defendants and Angel Hsu persuaded Roxanne Bhattacharya to sign.  *See* SAC ¶¶ 150 and

151.  Defendants have repeatedly cited this petition as justification for what they did to Mr.

Bhattacharya.  If they have no basis for sponsoring this document, they should simply say so.

### 9.  RFA Nos. 341 and 344

Again, the UVA Defendants cite these "involuntary commitment" proceedings as

justification for their suspension of Mr. Bhattacharya.  The UVA Defendants are the ones that have

---

[15] "As part of the summer pre-med workshop series, we will be hosting a Women in Medicine panel, highlighting women in medicine and their adversities in medicine on [July 23, 2020]. The panel will feature a majority of **women of color (!!!!)** including… Dr. Joanne Mendoza." The event was "[co-moderated]" by medical student of the "AMWA." (**Exhibit M**) (emphasis in original) (being submitted for filing under seal).

[16] At 10:30 a.m. on November 27, 2018, Professor Mendoza emailed Dean Densmore again inquiring as to what consequences Mr. Bhattacharya had faced and would continue to face in retaliation for Mr. Bhattacharya's constitutionally protected speech at the Microaggression Panel Discussion.  *See* Bates No UVA00004944: "[Professor Mendoza] was wondering what the outcome of [Dean Densmore's] discussion with [Mr. Bhattacharya] about the incident about microaggressions?"  Dean Densmore responded to Professor Mendoza at 10:45 a.m. on November 27, 2018: "Regarding [Mr. Bhattacharya], [Mr. Bhattacharya] was recently out of school for a week, not exactly sure where we're headed.  [Dean Densmore] will keep [Professor Mendoza] informed." Approximately one hour and eight minutes later, Dean Densmore sent the following to Professor Mendoza: "Hi [Professor Mendoza], [Mr. Bhattacharya] has been told that [Mr. Bhattacharya] should not attend the group today.  [Mr. Bhattacharya] needs medical clearance before [Mr. Bhattacharya] can return.  [Dean Densmore] can fill [Professor Mendoza] in as [Dean Densmore] learns more.  Best, Dean Densmore."  (Bates Nos. UVA00004944-46.) (**Exhibit N**) (being submitted for filing under seal).

made these proceedings allegedly relevant and ought not be heard to complain about the alleged "burden" of backing up their allegations.

### 10.    RFA Nos. 346, 359, and 367

These statements come directly out of "Threat Assessment Team" and other documents produced by the UVA Defendants that supposedly justified Mr. Bhattacharya's suspension and the No Trespass Order against him.  Whatever knowledge the UVA Defendants had—or did not have—of these statements is relevant to their reliance on them to justify retaliation against Mr. Bhattacharya that was in fact based on the exercise of his First Amendment rights.

### 11.    RFA Nos. 431, 432, 433, 434, 435, 436-39

The stated basis for Mr. Bhattacharya's suspension was that he had violated ASAC's "technical standards."  From their Answer and discovery responses, however, the UVA Defendants seem to have transformed ASAC—with the active participation of medical school deans like Dean Peterson—into a kangaroo court for the resolution of lovers' quarrels, domestic disputes, and the like.  The proper purpose of ASAC is a legitimate area of inquiry as to whether the UVA Defendants' discipline of Mr. Bhattacharya was retaliatory.  If the UVA Defendants contend that these are proper functions of ASAC, they should simply say so.  If they have no basis for admitting and denying certain requests, they can and should say so.

## IV.   <u>CONCLUSION</u>

The UVA Defendants' Motion for Protective Order has already consumed far more resources of the Court and the parties alike than it would have taken to simply serve timely responses to the discovery requests at issue.  Their unwillingness to compromise on any aspect of discovery suggests that they perceived some tactical advantage to bringing this dispute before the Court at this time.  In any event, the UVA Defendants' Motion for Protective Order has already afforded them "cover" to delay serving objections and responsive documents yesterday.

Accordingly, Plaintiff respectfully requests that the UVA Defendants be ordered to respond to the outstanding discovery requests without any further delay as depositions are scheduled to begin this week.  If Plaintiff identifies any deficiencies, such disputes can and will be brought to the attention of the Court promptly.  At this juncture, however, there is simply no basis for the relief that the UVA Defendants seek.

4873-3702-6076.3

Date:  April 19, 2022                    Respectfully submitted,


                                         KIERAN RAVI BHATTACHARYA

                                         By:    *s/ Michael J. Lockerby*
                                                        Counsel

                                              Michael J. Lockerby (VSB No. 24003)
                                              FOLEY & LARDNER LLP
                                              Washington Harbour
                                              3000 K Street, N.W., Suite 600
                                              Washington, D.C. 20007-5109
                                              Telephone:  (202) 672-5300
                                              Facsimile:  (202) 672-5399
                                              Email:  mlockerby@foley.com

                                              Steven C. Lockhart (admitted *pro hac vice*)
                                              Robert T. Slovak (admitted *pro hac vice*)
                                              Brandon C. Marx (admitted *pro hac vice*)
                                              FOLEY & LARDNER LLP
                                              2021 McKinney Avenue, Suite 1600
                                              Dallas, Texas 75201
                                              Telephone: (214) 999-3000
                                              Facsimile: (214) 999-4667
                                              E-mail:  slockhart@foley.com
                                              E-mail:  rslovak@foley.com
                                              E-mail:  bmarx@foley.com

                                              John P. Melko (admitted *pro hac vice*)
                                              James G. Munisteri (admitted *pro hac vice*)
                                              FOLEY & LARDNER LLP
                                              1000 Louisiana Street, Suite 2000
                                              Houston, Texas 77002
                                              Telephone: (713) 276-5500
                                              Facsimile: (713) 276-5555
                                              Email:  jmelko@foley.com
                                              E-mail:  jmunisteri@foley.com


                                              *Counsel for Plaintiff, Kieran Ravi Bhattacharya*

21