# EXHIBIT H

to

PLAINTIFF'S OPPOSITION TO

THE UVA DEFENDANTS' MOTION FOR PROTECTIVE ORDER

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.** |
| | ) | **3:19-CV-00054-NRM-JCH** |
| **JAMES B. MURRAY JR.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MR. BHATTACHARYA'S FIFTH DISCOVERY REQUESTS

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, Plaintiff Kieran Ravi Bhattacharya hereby requests that Defendants, within thirty (30) days of service or such other time period as ordered by the Court and in accordance with the definitions and instructions below:

1.      respond to the following requests for documents ("Mr. Bhattacharya's Fifth Document Requests") by producing and permitting Mr. Bhattacharya, including his attorneys and agents, to inspect and copy responsive documents at the offices of Foley & Lardner LLP, Washington Harbour, 3000 K Street, N.W., Suite 600, Washington, D.C. 20007;

2.      admit the truth of the following requests for admission ("Mr. Bhattacharya's Fourth RFAs");

3.      answer fully and separately, in writing and under oath, Mr. Bhattacharya's Third Interrogatories with respect to documents responsive to Mr. Bhattacharya's Fifth Document Requests; and

4.      answer fully and separately, in writing and under oath, the following interrogatories ("Mr. Bhattacharya's Third Interrogatories").

## **DEFINITIONS**

For the purposes of Defendants' answers to Mr. Bhattacharya's Fifth Discovery Requests, the following definitions shall apply:

1.     "Document(s)" means any and all documents, tangible things, and writings of any kind as defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and includes, without limitation, agreements, purchase orders, invoices, receipts, accounting records, contracts, bills of lading, shipping records, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telex, faxes, minutes, contracts, reports, studies, statements, summaries, interoffice and intra-office Communications, notations of any sort of conversations, telephone calls, meetings or other Communications, computer printouts, tape recordings, audiotapes, videotapes, charts, graphs, and electronic, mechanical or electronic records, compact discs, computer discs, computer tapes, computer software, electronically stored media, and any other form of stored information.

2.     "Communication(s)" means any contact or exchange of information between two or more Persons, including, without limitation, by such means as electronic mail, letters, memoranda, reports, computer transmissions, text messages, instant messages, telegrams, telexes, and fax messages including all attachments to or enclosures therewith, and including transcriptions or summaries of conversations, voicemail messages or interviews.

3.     "Relating to" or "relate(s) to" are used in their broadest sense and means referring to, describing, evidencing, containing, supporting, rebutting, reflecting, refuting, negating, pertaining to, comprising, memorializing, identifying, verifying, and/or in any way involving or having a logical connection to the subject matter of the request, in whole or in part.

4.      "Identify" (with respect to Communications).  When referring to Communications, "identify" means to state, to the extent known, the (i) name(s), address(es), and last known place(s) of employment of the parties to the Communication; (ii) the subject matter of the Communication; (iii) the location(s) of the Communication; (iv) the mode of Communication, (e.g., written, by telephone, meeting, etc.); and (v) the date of the Communication.

5.      "Identify" (with respect to Documents). When referring to Documents, "identify" means to state, to the extent known or reasonably ascertainable, the (i) type of Document; (ii) its general subject matter; (iii) the date of the Document; and (iv) its author(s), addressee(s), and recipient(s).  If the foregoing information is not available, state whether it is (i) missing or lost, (ii) destroyed, (iii) transferred, voluntarily or involuntarily, to others, or (iv) otherwise disposed of and, in each instance, explain the circumstances surrounding the authorization for such disposition thereof and state the date or approximate date thereof.

6.      "Identify" (with respect to Persons). When referring to a person, "identify" means to state, to the extent known or reasonably ascertainable, the person's full name and current or last known address.  When referring to a natural person, "identify" means, additionally, to provide the individual's present or last known place of employment. Once a person has been identified in accordance with the foregoing definition, only the name of that person need be listed in response to subsequent discovery requests calling for the identification of such person.

7.      "Person(s)" means any natural person, firm, association, organization, partnership, business, trust, corporation, or entity.

8.      "You" or "Your" refers to each of Defendants—the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators—as those terms are defined herein.

9.      "Mr. Bhattacharya" refers to Plaintiff Kieran Ravi Bhattacharya.

10.     "Rector" refers to Whittington W. Clement, Rector of the Board of Visitors of the University of Virginia.

11.     "Vice Rector" refers to Robert D. Hardie, Vice Rector of the Board of Visitors of the University of Virginia.

12.     "UVA Med School" refers to the University of Virginia School of Medicine.

13.     "Members of the Board of Visitors of the University of Virginia" refers to Robert M. Blue; Mark T. Bowles; L.D. Britt, M.D., M.P.H.; Carlos M. Brown; Frank M. Conner III; Elizabeth M. Cranwell; Thomas A. Depasquale; Barbara J. Fried; Louis S. Haddad; Babur B. Lateef, M.D.; Angela Hucles Mangano; James B. Murray Jr.; Lewis Franklin (L.F.) Payne; C. Evans Poston Jr.; and James V. Reyes.

14.     "Ms. Fielding" refers to Melissa Fielding, Deputy Chief of Police of the University of Virginia.

15.     "Mr. Longo" refers to Timothy Longo, Sr., Interim Chief of Police of the University of Virginia.

16.     "Ms. Graham" means Gloria Graham, Esq., Former Associate Vice President, Safety and Security, of the University of Virginia.

17.     "University Defendants" refers to the Rector, Vice Rector, Members of the Board of Visitors of the University of Virginia, Mr. Longo, and Ms. Fielding.

18.     "Dean Densmore" refers to John J. Densmore, M.D., Ph.D., Associate Dean for Admissions and Student Affairs, University of Virginia School of Medicine.

19.     "Dr. Tucker" refers to Jim B. Tucker, M.D., Chair of the Academic Standards and Achievement Committee, University of Virginia School of Medicine.

20.     "UVA Med School Defendants" refers to Dr. Tucker and the UVA Med School Individual Defendants.

21.     "Dean Peterson" refers to Christine Peterson, M.D., Former Assistant Dean for Medical Education, University of Virginia School of Medicine.

22.     "Professor Kern" refers to Nora Kern, M.D., Assistant Professor of Urology, University of Virginia School of Medicine.

23.     "Professor Rasmussen" refers to Sara K. Rasmussen, M.D., Ph.D., Associate Professor, University of Virginia School of Medicine.

24.     "UVA Med School Individual Defendants" refers to Dean Dennsmore, Dean Peterson, Professor Kern, and Professor Rasmussen collectively.

25.     "Sean Reed" means Sean W. Reed, M.D., Associate Professor of the University of Virginia School of Medicine.

26.     "Dean Canterbury" means Randolph J. Canterbury, M.D., Senior Associate Dean for Education at UVA Med School.

27.     "AMWA Microaggression Panel Discussion" refers to the October 25, 2018 panel discussion on "microaggression" sponsored by the newly formed UVA Med School chapter of the American Medical Women's Association.

28.     "Defendants" refer to the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators collectively.

29.     "ASAC" or the "Committee" refers to UVA Med School's Academic Standards and Achievement Committee.

30.     "Policy" means UVA Med School's Policy on Academic and Professional Enhancement.

31.     "Professionalism Concern Card" has the meaning set forth in the Policy.

32.     The "First Professionalism Concern Card" means the May 4, 2018 10:52 a.m. Professionalism Concern Card against Mr. Bhattacharya attached as **Exhibit 10** to the First Amended Complaint.

33.     The "Second Professionalism Concern Card" means the October 25, 2018 9:04 p.m. Professionalism Concern Card against Mr. Bhattacharya attached as **Exhibit 13** to the First Amended Complaint.

34.     "Dr. Hsu" means Angel Hsu, M.D., formerly a student at UVA Med School.

35.      "Person(s)" means any natural person, firm, association, organization, partnership, business, trust, corporation, or entity.

36.     "You" or "Your" refers to each of Defendants—the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators—as those terms are defined herein.

## <u>INSTRUCTIONS</u>

1.     Mr. Bhattacharya's Fifth Discovery Requests shall be deemed to seek responses as of the date hereof and shall also be deemed to be continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require further and supplemental responses such that if additional information relating in any way to Mr. Bhattacharya's Fifth Discovery Requests becomes known to You that in any way modifies Your responses to Mr. Bhattacharya's Fifth Discovery Requests up to and including the time of trial, You shall immediately furnish to Bhattacharya Your revised responses incorporating all such modification(s).

2.     If Defendants claim that any one of Mr. Bhattacharya's Fifth Discovery Requests is overly broad, unduly burdensome, irrelevant, or otherwise objectionable, You must specifically state the nature of Your objection and all grounds therefor. You must respond to that portion of the discovery request which is unobjectionable and specifically identify the respect in which the discovery request is allegedly overly broad, unduly burdensome, irrelevant, or otherwise objectionable.

3.     When any copy of any Document responsive to Mr. Bhattacharya's Fifth Discovery Requests is not identical to the original or any copy thereof by reason of any notes, comments, markings, alterations, or material contained thereon, deleted therefrom, or attached thereto, or otherwise, all such non-identical copies shall also be produced.

4.     Documents shall be produced in all respects as they are maintained in the ordinary course of business, including file folders or other identifying information, and identified or segregated to correspond to the particular numbered request to which they are considered responsive.

5.      If any Document or information is withheld on the basis of a claim of privilege or immunity, within the time required by Rule 26(C), with respect to each such Document, communication, or other information, state (i) the date of the Document or Communication for which privilege or immunity is claimed, (ii) the author(s) and recipient(s) of the Document or the parties to the Communication for which privilege or immunity is claimed, (iii) the nature of the claimed privilege or immunity, (iv) the nature of the information for which privilege or immunity is claimed, and (v) the specific number(s) of Mr. Bhattacharya's Fourth Discovery Requests to which the document is responsive.

6.      If any Document the production or identification of which is required by Bhattacharya's Fifth Discovery Requests has been destroyed, discarded, or lost, or is no longer in existence or within Your possession, custody, or control, provide the following information: (i) the date of the Document (or if the precise date is not known or ascertainable, the best approximation thereof); (ii) its title; (iii) the name and position of each Person who prepared or assisted in preparing the Document; (iv) the name and position of each Person to whom the Document was addressed or who has seen, has had possession or custody of, or has received disclosure of the contents of the Document or any copy thereof; (v) the subject matter of the Document; the (vi) specific number(s) of Mr. Bhattacharya's Fifth Discovery Requests to which the Document would have been responsive; (vii) the date it was destroyed, discarded, or lost or when it otherwise left Your possession, custody, or control; (viii) the method of and reason for its destruction, discard, or loss, if any; (ix) the identity of the Document's last custodian and of each person responsible for the Document's destruction, discard, or loss, if any; and (x) the identity of any person whom you reasonably believe has, had, or may have present possession, custody, or control of the Document.

7.     Unless otherwise specified, the "Relevant Time Period" for Mr. Bhattacharya's Fifth Discovery Requests is August 4, 2016 through February 3, 2020.

## REQUESTS FOR PRODUCTION

**Document Request No. 111:**

All Documents and Communications to or from Laurie R. Archbald-Pannone concerning or involving Mr. Bhattacharya or Angel Hsu between October 1, 2018 and February 3, 2020.

**Document Request No. 112:**

All Documents and Communications responsive to Request for Production No. 2 from any email accounts identified in response to Interrogatory No. 21.

~~**Document Request No. 113:**~~

~~The contents of the file Bhattacharya.docx uploaded on November 12, 2018 to ASAC's meeting agenda.~~

**Document Request No. 114:**

All Communications to and from Randolph Canterbury regarding recommendations to ASAC members from August 1, 2008 to July 1, 2021.

**Document Request No. 115:**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.B. after November 2018. This previously stated: "All members are required to sign a confidentiality agreement at the beginning of each academic year." It was changed to an updated General Policy III.B. between July 31, 2020 and March 29, 2022: "All members are required to sign *and abide* by a confidentiality agreement at the beginning of each academic year. ***All members are required to sign and abide by the Conflicts of Interest Policy at***

*the beginning of each academic year*." (emphasis added) (Compare Dkt. #1-14 at 2 with Bates No. UVA00000025).

**<u>Document Request No. 116:</u>**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.A. after November 2018. This previously stated: "Official votes may be taken when a quorum (greater than 50% of voting members) is present. All motions, except for a motion for dismissal, shall pass by majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members. Voting members will be recused from participating and shall not be counted in the quorum if they have (or have had) a personal, mentoring or advising relationship with the student beyond that of usual student-faculty contact in class or clinical environment. This restriction includes faculty mentors on research projects, family members, anyone with a physician-patient relationship with the student or other personal relationship." It was changed to an updated General Policy III.A. between July 31, 2020 and March 29, 2022 to state as follows: "Official votes may be taken when a quorum (greater than 50% of voting members) is present. All motions, except for a motion for dismissal, *are passed* by majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members *present. ASAC members with a conflict of interest regarding a particular student shall recuse themselves from voting or participating in discussions or deliberations pertaining to the student, and shall absent themselves during any such discussions or deliberations. Conflicts of interest include, but are not limited to, a family relationship; a coaching, mentorship or advisory relationship; a doctor-patient relationship; a business associate; a close personal or working relationship with a student's family member; or any other relationship that might be construed as compromising the committee member's objectivity in any manner. Any ASAC members who have assigned failing grades to a student shall recuse*

*and absent themselves from votes surrounding that failure, and further shall recuse and absent themselves from any discussions and votes about future system, course or clerkship failures for that student, irrespective of whether those ASAC members are involved in the future assessment/grading.*" (emphasis added).

## Document Request No. 117:

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.C. after November 2018. This previously stated: "The Registrar shall take minutes of each meeting with special emphasis being applied to recording every official motion, and the numerical vote taken on that motion. Official letters sent to students also will constitute part of the minutes of each meeting, as they summarize the decisions of the Committee. Minutes of all meetings will be kept in the Office of Student Affairs and will be made available to the Dean. Letters from the chair to individual students shall be kept in the students' academic file in the Office of Student Affairs. A notice is sent to the Dean after each meeting indicating that a meeting was held and that the confidential minutes are available for review in the Office of Student Affairs." It was changed to an updated General Policies III.C. between July 31, 2020 and March 29, 2022 to state as follows: "The registrar takes minutes of each meeting and records members present and absent, the existence of a quorum, and every official motion and its numerical vote. *Neither committee members nor attendees, including students appearing in front of the committee, may record meeting proceedings by any electronic medium.* Official letters sent to students also will constitute part of the minutes of each meeting. Minutes of all meetings are kept in the Office of Student Affairs and are made available to the dean. Letters from the chair to individual students are kept in the student's academic files in the Office of Student Affairs."

**Document Request No. 118:**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.D. after November 2018. This previously stated: "When there are severe professional transgressions or the Committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the Committee only after the student has been offered an opportunity to address the Committee in person, and to respond to questions from members of the Committee.  Also, the student should be notified by the Committee in writing before the meeting as to what the major concerns of the Committee are likely to be during the coming meeting. Assistant Deans for Student Affairs (College Deans) as well as relevant teaching faculty may also be invited to attend committee meetings to provide information."  It was changed to an updated General Policies III.D. between July 31, 2020 and March 29, 2022 to state as follows: "When there are severe professional transgressions or the committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the committee only after the student has been offered an opportunity to address the committee in person, and to respond to questions from members of the committee.  The student should be notified by the committee in writing before the meeting as to what the major concerns of the committee are likely to be during the coming meeting. Assistant deans for student affairs (college deans) as well as relevant teaching faculty may be invited to attend committee meetings to provide information *but otherwise may not influence the committee's decisions, nor recommend committee actions*." (emphasis added)

**Document Request No. 119:**

All Documents and Communications from July 2020 until trial regarding any medical student appearing before ASAC who recorded or attempted to record an ASAC hearing when appearing before ASAC.

**Document Request No. 120:**

All Documents and Communications relating to any police presence at an ASAC hearing from November 14, 2008 to present.

**Document Request No. 121:**

Copies of the "confidentiality agreement" signed by each ASAC member present during the November 14, 2018 and November 28, 2018 ASAC hearings.

**Document Request No. 122:**

A blank copy of the ASAC "confidentiality agreement" used at the time in November 2018.

**Document Request No. 123:**

A blank copy of the ASAC "confidentiality agreement" used in August 2020.

**Document Request No. 124:**

A blank copy of the ASAC "conflict of interest agreement" used in August 2020.

**Document Request No. 125:**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.J. after November 2018. This previously stated: "Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the Committee should be guided by several important general principles, including: fairness to students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to ***the Faculty***, patients and to society to train graduates who demonstrate the highest standards of academic performance and conduct." (emphasis added). It was changed to an updated ASAC General Policies III.J. between July 30, 2020 and March 29, 2022 to state as follows: "Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the committee should be guided by several important general principles, including: fairness to students; following due process; promptness of

action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to **the SOM and University community**, patients and society to train graduates who demonstrate the highest standards of academic performance and conduct." (emphasis added)

**Document Request No. 126:**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.N. at bullet point 2 after November 2018. This previously stated: "The three-person ad hoc Appeals Committee is drawn from a pool of 10 faculty members named by the Associate Dean for Admissions and Student Affairs, none of whom is a current member of the ASAC. The student selects one member, the Senior Associate Dean for Education selects one member, nd [sic] the Dean selects the third member (who chairs the ad hoc Appeals Committee). **The Associate Dean for Admissions and Student Affairs** serves as staff liaison, ex officio, without vote." (emphasis added). It was changed to an updated ASAC General Policies III.N. between July 30, 2020 and March 29, 2022 to state as follows: "The three-person ad hoc Appeals Committee is drawn from a pool of ten faculty members named by the Associate Dean for Student Affairs, none of whom are current members of ASAC. The student selects one member, the Senior Associate Dean for Education selects one member, and the Dean selects the third member (who chairs the ad hoc Appeals Committee). **The Assistant Dean for Medical Education** serves as staff liaison, ex officio, without vote."

**Document Request No. 127:**

All Documents and Communications related to UME Management Team's modification of ASAC General Policies III.N. at bullet point 5 and 6 after November 2018. This previously stated: "The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) **and will uphold, modify or reverse the decision(s) of the ASAC**." and "The Appeals

Committee will provide the student with all the evidence against him/her, including the academic grades and written evaluations, and will base its recommendations upon the evidence presented at the hearing." (emphasis added). It was changed to an updated General Policies III.N. between July 30, 2020 and March 29, 2022 to state as follows: "The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days). The Appeals Committee will provide the student with all the evidence against him or her, including the academic grades and written evaluations, ***and will base its decision upon the evidence presented at the hearing. In its deliberations, the Appeals Committee must accord deference to the decision of ASAC. The Appeals Committee's review shall be limited to: (a) compliance with the Policy on Academic and Professional Advancement and other applicable Undergraduate Medical Education (UME) policies and procedures, and (b) whether there is sufficient evidence to support the decision of ASAC. The Appeals Committee may uphold or reject the adverse action. However, before rejecting the adverse action, the Appeals Committee must conclude that: (a) there was a failure to follow the Policy on Academic and Professional Advancement and/or other applicable UME policies and procedures and that failure negatively affected ASAC's decision, and/or (b) that there is not substantial evidence to support the decision.***" (emphasis added)

**Document Request No. 128:**

All Documents and Communications sufficient to identify individual members of the Undergraduate Medical Education ("UME") Management Team who "updated" UVA ASAC Operating Procedures in "July 2020" and included an "Administrative Update" in "June 2021."

~~**Document Request No. 129:**~~

~~All Communications from Wendy Aneish Burtner regarding the first Professionalism~~

~~Concern Card that she submitted against Mr. Bhattacharya on May 4, 2018.~~

68-0780-5211.2
4894-3071-2346.5

**Document Request No. 130:**

~~All Documents and ESI demonstrating when the screenshot in UVA00000419 was taken as well as Documents and Communications about the content of UVA00000419.~~

**Document Request No. 131:**

All Documents and Communications related to Donald Harold McGee's response to Mr. Bhattacharya's FOIA requests as well as communications with the TAT regarding the FOIA requests.

**Document Request No. 132:**

All Documents and Communications that Donald Harold McGee made regarding Mr. Bhattacharya's request for police bodycam footage.

**Document Request No. 133:**

All Documents and Communications from any employee of CAPS or UVA Medical Center's communications related for Mr. Bhattacharya's requests from UVA CAPS and UVA Medical Center for paper records and provide documents evidencing the individuals who made the communications to the TAT.

**Document Request No. 134:**

All Communications regarding any Title IX investigation into Mr. Bhattacharya at any point during or after his enrollment at UVA SOM.

**Document Request No. 135:**

All Documents and Communications to and from Barry Meek concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 136:**

All Documents and Communications to and from Susan Davis concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 137:**

All Documents and Communications to and from Laurie Casteen concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

~~**Document Request No. 138:**~~

~~All Documents and Communications to and from Matthew McBee concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)~~

**Document Request No. 139:**

All Documents and Communications to and from Melissa Fielding concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

~~**Document Request No. 140:**~~

~~All Documents and Communications to and from Bryant Hall concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)~~

~~**Document Request No. 141:**~~

~~All Documents and Communications to and from Beth Davis concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)~~

**Document Request No. 142:**

All Documents and Communications to and from Nicole Ruzek concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 143:**

All Documents and Communications to and from Deepti Athaye concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 144:**

All Documents and Communications to and from Rebecca Hill concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

68-0780-5211.2
4894-3071-2346.5

**Document Request No. 145:**

All Documents and Communications to and from Tim Eckert concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 146:**

All Documents and Communications to and from Dewey Cornell concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 147:**

All Documents and Communications to and from Kim McDonald concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 148:**

All Documents and Communications to and from Althea Howell concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 149:**

All Documents and Communications to and from Edward Markowski concerning or involving Mr. Bhattacharya. (Bates No. UVA00000428)

**Document Request No. 150:**

All Documents and Communications regarding a January 29, 2019 phone call from Lesley Thomas to Edward Markowski in which Lesley Thomas indicated that "[Angel Hsu] stated that [Angel Hsu's] 'ex tried to kill her' during the context of a conversation with SOM faculty Pamela [sic] Harrington [sic] regarding [Angel Hsu's] psych rotation and stressors. No additional context provided. The conversation occurred around January 7th." (Bates No. UVA00000438)

**Document Request No. 151:**

All Documents and Communications between Angel Hsu, Pamila Herrington, Lesley Thomas, Edward Markowski, or anyone else related to Angel Hsu's allegation of attempted murder on or around January 7, 2019.

**Document Request No. 152:**

All Documents and Communications between Edward Markowski and Melissa Fielding regarding the FBI "providing assistance regarding Alt-R." (Bates No. UVA00000349)

**Document Request No. 153:**

All Documents and Communications related to "[a]ll exec level informed of [Mr. Bhattacharya's] outreach to media groups."

~~**Document Request No. 154:**~~

~~All Documents and Communications related to "[Edward Markowski], [Susan Davis], and [Melissa Fielding] held conference [sic] with Randy Canterbury on the morning of 1/3."~~

**Document Request No. 155:**

All Documents and Communications to or from Michael J. Citro and the Office of the President concerning or involving Mr. Bhattacharya.

**Document Request No. 156:**

All Documents and Communications by Brian Coy concerning or involving Mr. Bhattacharya.

**Document Request No. 157:**

All Documents and Communications by Wesley P. Hester concerning or involving Mr. Bhattacharya.

**Document Request No. 158:**

All Documents and Communications relating to Laurie Casteen's creation of 8:53:00 p.m., November 19, 2018 "SafeGrounds" report Case #18-2277, including communications between Casteen and Nicole Ruzek, Tabitha Enoch, and John Densmore.

**Document Request No. 159:**

All documents any individual other than Mr. Bhattacharya present at the November 28, 2018 ASAC meeting relied upon and/or created in preparation for his or her appearance at the meeting.

**Document Request No. 160:**

All documents containing appointments, meetings, or other temporal obligations, including but not limited to all calendars, date books, or appointment reminders, physical or electronic, for each Individual Defendant and/or Hybrid Witness from January 1, 2016 to September 30, 2019.

**Document Request No. 161:**

All documents evidencing Angel Hsu's "knowledge of [Mr. Bhattacharya's] aggressive, abusive, unprofessional, and inappropriate behavior in 2017, 2018, and 2019.

### INTERROGATORIES

**Interrogatory No. 17:**

Describe with detail who spoke during the November 28, 2018 ASAC hearing before and after Mr. Bhattacharya was present, what each speaker said, and why Mr. Bhattacharya was never provided any information before or after the meeting as to the contents of the discussion.

**Interrogatory No. 18:**

Describe with detail Angel Hsu's in person conversations with Laurie Archibald-Panone and Christine Peterson on November 13, 2018, and explain why Angel Hsu's allegations were never disclosed or specified to Mr. Bhattacharya at any time thus far.

**Interrogatory No. 19:**

Explain when John Densmore, Jim Tucker, Christine Peterson, and Pamila Herrington first had knowledge of Mr. Bhattacharya's involuntary hospitalization on November 14, 2018, how each received communications, and if any such communications in writing were since destroyed, identify the communication and state when and why such communication was destroyed.

**Interrogatory No. 20:**

With respect to each custodian identified in Interrogatory No. 9, identify all email addresses that each individual has created or used since October 24, 2018.

**Interrogatory No. 21:**

Describe in detail Angel Hsu's "knowledge of [Mr. Bhattacharya's] aggressive, abusive, unprofessional, and inappropriate behavior in 2017, 2018, and 2019." *See* Defendants' Third Amended Initial Disclosures from March 24, 2022.

**Interrogatory No. 22:**

Describe in detail Christine Peterson's "knowledge" of "interactions between [Mr. Bhattacharya and Angel Hsu including their relationship history, [Mr. Bhattacharya's] mental health issues, and [Mr. Bhattacharya's] aggressive, threatening, and intimidating behavior toward [Angel Hsu] and [Angel Hsu's] efforts to protect [Angel Hsu] from [Mr. Bhattacharya], [Mr. Bhattacharya's] difficulties managing his medication in the fall of 2018." *See* Defendants' Third Amended Initial Disclosures from March 24, 2022

<div align="center">

**REQUESTS FOR ADMISSION**

</div>

**RFA No. 197:**

~~The documents produced as Bates Nos. UVA00000022-30 were not the ASAC Operating Procedures in effect as of November 2018.~~

**RFA No. 198:**

~~The ASAC Operating Procedures in effect during November 2018 were filed with Mr. Bhattacharya's initial complaint as Exhibit 14. (Dkt. #1-14)~~

**RFA No. 199:**

During the period August 1, 2008 through July 1, 2021, all nominations to ASAC required the recommendation of Randolph Canterbury.

**RFA No. 200:**

Randolph Canterbury "solicit[ed] nominations from department chairs and self-nominations from the faculty at large" and "recommend[ed] voting members" of ASAC to David S. Wilkes for appointment of all members of ASAC appointed to the committee between September 15, 2015[1] to September 15, 2021.[2] (Dkt #1-14 at 2)

**RFA No. 201:**

Randolph Canterbury "solicit[ed] nominations from department chairs and self-nominations from the faculty at large" and "recommend[ed] voting members" of ASAC to Randolph Canterbury from November 30, 2014 to September 15, 2015. (Dkt #1-14 at 2)

---

[1] Dr. David S. Wilkes appointed dean of UVA School of Medicine (archive.org) and Dr. David S. Wilkes appointed dean of UVA School of Medicine (uvahealth.com)
[2] Melina R. Kibbe Named Dean of UVA's School of Medicine (uvahealth.com) and Melina R. Kibbe Named Dean of UVA's School of Medicine (archive.org)

**RFA No. 202:**

Randolph Canterbury "solicit[ed] nominations from department chairs and self-nominations from the faculty at large" and "recommend[ed] voting members" of ASAC to Nancy Dunlap from May 31, 2013 to November 1, 2014.[3] (Dkt #1-14 at 2)

**RFA No. 203:**

Randolph Canterbury "solicit[ed] nominations from department chairs and self-nominations from the faculty at large" and "recommend[ed] voting members" of ASAC to Steven T. DeKosky from August 1, 2008[4] to May 1, 2013.[5] (Dkt #1-14 at 2)

**RFA No. 204:**

Between August 1, 2008 and July 1, 2021, any absence of an ASAC member required "consultation" with Randolph Canterbury, and Randolph Canterbury would recommend a substitute to the then Dean of UVA SOM. (Dkt. #1-14 at 2)

**RFA No. 205:**

All voting members of ASAC present at the November 14, 2018 ASAC meeting other than Brielle Ochoa were "recommended" to David S. Wilkes by Randolph Canterbury for either first time appointment, consecutive reappointment, new appointment after a two-year hiatus from ASAC, or as a substitute. (Dkt. #1-14 at 2)

---

[3] School of Medicine Dean Nancy Dunlap to step down in November (uvahealth.com) and School of Medicine Dean Nancy Dunlap to step down in November (archive.org)
[4] DeKosky Appointed Dean of University of Virginia School of Medicine | UVA Today and DeKosky Appointed Dean of University of Virginia School of Medicine | UVA Today (archive.org)
[5] Medical School Dean Announces He Will Step Down | UVA Today (virginia.edu) and Medical School Dean Announces He Will Step Down | UVA Today (archive.org)

**RFA No. 206:**

Brielle Ochoa was present at the October 25, 2018 AMWA Microaggression Panel Discussion. *See* Defendants' Third Amended Initial Disclosures, received Thursday March 24, 2022.

**RFA No. 207:**

Nora Kern was present at the October 25, 2018 AMWA Microaggression Panel Discussion Panel.

**RFA No. 208:**

Brielle Ochoa was present at the November 14, 2018 ASAC meeting.

**RFA No. 209:**

Nora Kern was present at the November 14, 2018 ASAC meeting.

**RFA No. 210:**

Mr. Bhattacharya did not speak at the October 25, 2018 AMWA Microaggression Panel Discussion until after being called on by Nora Kern.

**RFA No. 211:**

Mr. Bhattacharya walked out of the October 25, 2018 AMWA Microaggression Panel Discussion shortly after he finished speaking.

**RFA No. 212:**

Bart Nathan was not present at the October 25, 2018 AMWA Microaggression Panel Discussion.

**RFA No. 213:**

Bart Nathan did not listen to an audio recording of the October 25, 2018 AMWA Microaggression Panel Discussion before 5:00 p.m. on November 28, 2018.

**RFA No. 214:**

All voting members of ASAC present at the November 28, 2018 ASAC hearing other than Mackenzie Sullivan were "recommended" to David S. Wilkes by Randolph Canterbury for either first time appointment or reappointment, or new appointment after a two-year hiatus from ASAC.

**RFA No. 215:**

UVA SOM's "Policy on Academic and Professional Advancement" in November 2018 was filed by Mr. Bhattacharya with his original Complaint as Exhibit 7. (Dkt. #1-7)

**RFA No. 216:**

"Clinical Performance Development" ("CPD") was changed to "Foundations in Clinical Medicine" ("FCM") in the Fall of 2018.

**RFA No. 217:**

Angel Hsu failed her CPD 1-C OSCE on her first try in November 2017.

**RFA No. 218:**

Angel Hsu's failure of her CPD 1-C OSCE in November 2017 was not referred to ASAC for review and action. (Dkt. #1-7 at 4)

**RFA No. 219:**

Mr. Bhattacharya passed his FCM 1-C OSCE on his first try in November 2018.

**RFA No. 220:**

Mr. Bhattacharya had a passing total course score in his hematology course in November 2018.

**RFA No. 221:**

Mr. Bhattacharya's failing score on his hematology summative exam would not show up on his official transcript so as long as he passed the summative exam on a second try.

**RFA No. 222:**

During the November 19, 2018 meeting between Mr. Bhattacharya and Dean Densmore, Mr. Bhattacharya assured Dean Densmore that Mr. Bhattacharya would pass the hematology summative exam on a second try.

**RFA No. 223:**

The hematology summative exam is the only examination or assessment of any kind that Mr. Bhattacharya has ever been required to retake because of a "failing" score while enrolled at UVA SOM.

~~**RFA No. 224:**~~

~~The hematology summative exam score is the first communication that Mr. Bhattacharya had ever received from ASAC.~~

**RFA No. 225:**

Nora Kern did not "recuse [herself] from voting or participating in discussion or deliberations pertaining to [Mr. Bhattacharya]" during the November 14, 2018 ASAC hearing. (Bates No. UVA00000024)

~~**RFA No. 226:**~~

~~In November 2018, ASAC General Policies III.B. stated as follows: "All members are required to sign a confidentiality agreement at the beginning of each academic year."~~

**RFA No. 227:**

From July 31, 2020[6] to March 29, 2022[7], ASAC General Policies III.B. stated as follows: "All members are required to sign *and abide* by a confidentiality agreement at the beginning of each academic year. *All members are required to sign and abide by the Conflicts of Interest Policy at the beginning of each academic year.*" (emphasis added)

**RFA No. 228:**

In November 2018, ASAC General Policies III.A. stated as follows: "Official votes may be taken when a quorum (greater than 50% of voting members) is present. All motions, except for a motion for dismissal, *shall pass* by majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members. Voting members will be recused from participating and shall not be counted in the quorum if they have (or have had) a personal, mentoring or advising relationship with the student beyond that of usual student-faculty contact in class or clinical environment. This restriction includes faculty mentors on research projects, family members, anyone with a physician-patient relationship with the student or other personal relationship." (Dkt. #1-14 at 2) (emphasis added)

**RFA No. 229:**

From July 31, 2020 to March 29, 2022, ASAC General Policies III.A. stated as follows: "Official votes may be taken when a quorum (greater than 50% of voting members) is present. All motions, except for a motion for dismissal, *are passed* by majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members *present*. *ASAC members*

---

[6] Bates No. UVA00000025.

[7] Academic Standards & Achievement Committee (ASAC) Operating Procedures – Policies and Guidelines (virginia.edu) and Academic Standards & Achievement Committee (ASAC) Operating Procedures – Policies and Guidelines (archive.org)

*with a conflict of interest regarding a particular student shall recuse themselves from voting or participating in discussions or deliberations pertaining to the student, and shall absent themselves during any such discussions or deliberations. Conflicts of interest include, but are not limited to, a family relationship; a coaching, mentorship or advisory relationship; a doctor-patient relationship; a business associate; a close personal or working relationship with a student's family member; or any other relationship that might be construed as compromising the committee member's objectivity in any manner. Any ASAC members who have assigned failing grades to a student shall recuse and absent themselves from votes surrounding that failure, and further shall recuse and absent themselves from any discussions and votes about future system, course or clerkship failures for that student, irrespective of whether those ASAC members are involved in the future assessment/grading.*" (emphasis added)

**RFA No. 230:**

In November 2018, ASAC General Policies III.C. stated as follows: "The Registrar shall take minutes of each meeting with special emphasis being applied to recording every official motion, and the numerical vote taken on that motion. Official letters sent to students also will constitute part of the minutes of each meeting, as they summarize the decisions of the Committee. Minutes of all meetings will be kept in the Office of Student Affairs and will be made available to the Dean. Letters from the chair to individual students shall be kept in the students' academic file in the Office of Student Affairs. *A notice is sent to the Dean after each meeting indicating that a meeting was held and that the confidential minutes are available for review in the Office of Student Affairs.*" (emphasis added)

**RFA No. 231:**

~~From July 31, 2020 to March 29, 2022, ASAC General Policies III.C. stated as follows: "The registrar *takes minutes of each meeting and records members present and absent, the existence of a quorum, and every official motion and its numerical vote. Neither committee members nor attendees, including students appearing in front of the committee, may record meeting proceedings by any electronic medium.* Official letters sent to students also will constitute part of the minutes of each meeting. Minutes of all meetings are kept in the Office of Student Affairs and are made available to the dean. Letters from the chair to individual students are kept in the student's academic files in the Office of Student Affairs." (emphasis added)~~

**RFA No. 232:**

Between November 14, 2008 to November 28, 2018, Mr. Bhattacharya was the only medical student to have appeared before ASAC who informed ASAC that he would audio record the meeting and made an audio recording of the meeting of which ASAC was aware of at the time.

**RFA No. 233:**

Between November 14, 2008 to November 28, 2018, Mr. Bhattacharya was the only medical student to have appeared before ASAC with a uniformed police officer present.

**RFA No. 234:**

Between November 14, 2008 to November 28, 2018, Mr. Bhattacharya was the only medical student to have appeared before ASAC with uniformed police officer present and recording the medical student and ASAC members.

**RFA No. 235:**

The police officer's presence at the November 28, 2018 ASAC meeting affected ASAC's decision to suspend Mr. Bhattacharya.

**RFA No. 236:**

There was no valid reason whatsoever for police presence at the November 28, 2018 ASAC meeting.

**RFA No. 237:**

In November 2018, ASAC General Policies III.D. stated as follows: "When there are severe professional transgressions or the Committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the Committee only after the student has been offered an opportunity to address the Committee in person, and to respond to questions from members of the Committee. Also, the student should be notified by the Committee in writing before the meeting as to what the major concerns of the Committee are likely to be during the coming meeting. Assistant Deans for Student Affairs (College Deans) as well as relevant teaching faculty may also be invited to attend committee meetings to provide information."

**RFA No. 238:**

From July 31, 2020 to March 29, 2022, ASAC General Policies III.C. stated as follows: "When there are severe professional transgressions or the committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the committee only after the student has been offered an opportunity to address the committee in person, and to respond to questions from members of the committee. The student should be notified by the committee in writing before the meeting as to what the major concerns of the committee are likely to be during the coming meeting. Assistant deans for student affairs (college deans) as well as relevant teaching faculty may be invited to attend committee meetings to provide information *but otherwise may not influence the committee's decisions, nor recommend committee actions*." (emphasis added)

**RFA No. 239:**

From November 2018 to March 29, 2022, ASAC General Policies III.E. stated as follows: "Consistent with the requirements of law, decisions made by the Committee may be revealed to authorized university personnel, to the student, and in appropriate circumstances, to the student's parents or guardians (especially when the personal safety of the student is a concern). Other individuals may be notified as appropriate."

**RFA No. 240:**

From November 2018 to March 29, 2022, ASAC General Policies III.E. stated as follows: "Official notification of committee actions shall be made by the registrar as soon as possible after the action is taken by the ASAC (and after the student has been notified of the action, as in III.C above, III.I below). All individuals and departments with a need to know will be so notified."

**RFA No. 241:**

In November 2018, ASAC General Policies III.J. stated as follows: "Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the Committee should be guided by several important general principles, including: fairness to students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to *the Faculty*, patients and to society to train graduates who demonstrate the highest standards of academic performance and conduct." (emphasis added)

RFA No. 242:

From July 31, 2020 to March 29, 2022, ASAC General Policies III.J. stated as follows: "Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the committee should be guided by several important general principles, including: fairness to

students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to *the SOM and University community*, patients and society to train graduates who demonstrate the highest standards of academic performance and conduct." (emphasis added)

RFA No. 243:

From November 2018 to March 29, 2022, ASAC General Policies III.L. stated as follows: "These policies concerning the ASAC, and various types of student status changes, must be updated as needed. The updated version must be posted in the online Student Handbook. The incoming first year class must receive a URL link to the latest version at the time of matriculation."

**RFA No. 244:**

From November 2018 to March 29, 2022, ASAC General Policies III.M. stated as follows: "No student will be *formally dismissed or suspended* prior to an appropriate *hearing* by the *ASAC*, as outlined in other sections. However, on rare occasions an emergency may arise in which the health of a student, faculty member, patient, or other member of the community is placed at risk by the presence of a student. In such an unusual situation, *the Chair of the ASAC may recommend* to the *Dean or Senior Associate Dean for Education* that a student be suspended provisionally, pending formal consideration of the relevant issues by the full Committee at the earliest possible opportunity. It is anticipated that this action will be required only under very rare circumstances." (emphasis added)

RFA No. 245:

From November 2018 to March 29, 2022, ASAC General Policies III.N. at bullet point 3 stated as follows: "The student is permitted to inspect his/her entire medical school file including any material upon which the decision of the ASAC was based."

RFA No. 246:

During November 2018, ASAC General Policies III.N. at bullet points 5 and 6 state: "The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) *and will uphold, modify or reverse the decision(s) of the ASAC.*" and "The Appeals Committee will provide the student with all the evidence against him/her, including the academic grades and written evaluations, and will base its recommendations upon the evidence presented at the hearing." (emphasis added)

RFA No. 247:

From July 31, 2020 to March 29, 2022, ASAC General Policies III.N at bullet point 5 stated as follows: "The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days). The Appeals Committee will provide the student with all the evidence against him or her, including the academic grades and written evaluations, *and will base its decision upon the evidence presented at the hearing. In its deliberations, the Appeals Committee must accord deference to the decision of ASAC. The Appeals Committee's review shall be limited to: (a) compliance with the Policy on Academic and Professional Advancement and other applicable Undergraduate Medical Education (UME) policies and procedures, and (b) whether there is sufficient evidence to support the decision of ASAC. The Appeals Committee may uphold or reject the adverse action. However, before rejecting the adverse action, the Appeals Committee must conclude that: (a) there was a failure to follow the Policy on Academic and Professional Advancement and/or other applicable UME policies and procedures and that failure negatively affected ASAC's decision, and/or (b) that there is not substantial evidence to support the decision.*" (emphasis added)

RFA No. 248:

During November 2018, ASAC General Policies III.N. at bullet point 7 stated as follows: "*The Appeals Committee will send its decision, along with a written record of its proceedings, to the Dean of the School of Medicine*." (emphasis added)

RFA No. 249:

From July 31, 2020 to March 29, 2022, ASAC General Policies III.N at bullet point 6 stated as follows: "The Appeals Committee's decision must be submitted to the student, the chair of ASAC, and to the Dean and/or the Dean's designated chief academic officer within ten (10) calendar days of the close of the hearing and copied to the Office of Educational Affairs and the registrar. A written record of the proceedings will be sent to the Dean and/or the Dean's designated chief academic officer."

RFA No. 250:

Defendants have denied under oath in their Answers to RFA No. 110 that the November 28, 2018 ASAC hearing "was a hearing."

RFA No. 251:

"The Undergraduate Medical Education Management Team has oversight and approval for" the UVA Med School's "Academic Standards and Achievement Committee Operating Procedures."

RFA No. 252:

Angel Hsu did not "need to know" from Christine Peterson that Mr. Bhattacharya was receiving only a suspension instead of a dismissal from UVA SOM.

**RFA No. 253:**

Angel Hsu did not "need to know" from Christine Peterson that Mr. Bhattacharya was

receiving only a suspension instead of a dismissal from UVA SOM before Mr. Bhattacharya was even made aware.

**RFA No. 254:**

The November 14, 2018 ASAC hearing was held at room "MR 5 3005." (Dkt. #1-13)

**RFA No. 255:**

The November 14, 2018 ASAC hearing was held between 4:03 p.m. and 5:18 p.m. (Dkt. #1-13)

**RFA No. 256:**

UVA Med School's "Policy on Academic and Professional Advancement" was revised in "June 2017; July 2018 and June 2019." (Bates No. UVA00000021)

**RFA No. 257:**

Bates Nos. UVA00000001-10 reflects UVA Med School's "Policy on Academic and Professional Advancement" in effect during May 2018.

**RFA No. 258:**

Mr. Bhattacharya received a professionalism concern card on "May 4, 20018 [sic]" for allegedly "not attend[ing] the required Patient Presentation on May 2, 2018."

**RFA No. 259:**

During May 2018, UVA Med School's then "Policy on Academic and Professional Advancement" (Bates No. UVA00000001-10) stated: "Any breach of professionalism resulting in a recorded observation, e.g., *Professionalism Concern Card*, letter, written report, etc., must be

~~addressed with the student by their [sic] college dean and documentation [sic] of the discussion must be recorded." (Bates No. UVA00000002)~~

**~~RFA No. 260:~~**

~~Exhibit 7 to the original Complaint (Dkt. #1-7) reflects UVA Med School's "Policy on Academic and Professional Advancement" in effect from August 1, 2018 to May 31, 2019.~~

**~~RFA No. 261:~~**

~~Between August 1, 2018 and May 31, 2019, pursuant to UVA Med School's then "Policy on Academic and Professional Advancement" (Dkt. #1-7): "All academic deficiencies, patterns of unprofessional behavior, and egregious violations of professionalism will be presented to the Academic Standards and Achievement Committee (ASAC) that acts on behalf of the faculty at the School of Medicine."~~

**RFA No. 262:**

Nora Kern presented her Professionalism Concern Card against Mr. Bhattacharya to ASAC on November 14, 2018 because she believed his speech at the AMWA Microaggression Panel Discussion to constitute an "egregious violatio[n] of professionalism." *See* Dkts. ##1-7, 248-Ex. B at 4, and Bates Nos. UVA00002459-60.

**RFA No. 263:**

John Densmore presented Nora Kern's Professionalism Concern Card against Mr. Bhattacharya to Jim Tucker on November 1, 2018 because John Densmore believed Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion to constitute an "egregious violation[n] of professionalism." *See* Dkts. ##1-7, 248-Ex. B at 22, and Bates No. UVA00002508-09.

~~**RFA No. 264:**~~

~~John Densmore was not present at the October 25, 2018 AMWA Microaggression Panel Discussion.~~

~~**RFA No. 265:**~~

~~John Densmore did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before 11:19 a.m. on November 1, 2018.~~

~~**RFA No. 266:**~~

~~John Densmore did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before meeting with Mr. Bhattacharya on November 1, 2018.~~

~~**RFA No. 267:**~~

~~John Densmore did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before meeting with Mr. Bhattacharya on November 14, 2018.~~

~~**RFA No. 268:**~~

~~John Densmore did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before 5:30 p.m. on November 29, 2018.~~

**RFA No. 269:**

John Densmore presented Nora Kern's Professionalism Concern Card against Mr. Bhattacharya to Jim Tucker on November 1, 2018 because John Densmore believed Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion to constitute a "patter[n] of unprofessional behavior." *See* Dkts. ##1-7; 248-Ex. B at 21-22, and Bates Nos. UVA00002503-06.

**RFA No. 270:**

Randolph Canterbury suggested to John Densmore that Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion be addressed with ASAC because Randolph Canterbury believed Mr. Bhattacharya's speech at the October 25, 2018 panel to constitute a "patter[n] of unprofessional behavior." *See* Dkts. ##1-7, 248-Ex. B at 21-22, and Bates Nos. UVA00002503-06.

**RFA No. 271:**

Randolph Canterbury suggested to John Densmore that Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion be addressed with ASAC because Randolph Canterbury believed Mr. Bhattacharya's speech at the October 25, 2018 panel to constitute an "egregious violation[n] of professionalism." *See* Dkts. ##1-7, 248-Ex. B at 21-22, and Bates Nos. UVA00002503-06.

~~**RFA No. 272:**~~

~~Randolph Canterbury was not present at the October 25, 2018 AMWA Microaggression Panel Discussion.~~

~~**RFA No. 273:**~~

~~Randolph Canterbury did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before 11:19 a.m. on November 1, 2018.~~

~~**RFA No. 274:**~~

~~Randolph Canterbury did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before John Densmore's meeting with Mr. Bhattacharya on November 1, 2018.~~

**RFA No. 275:**

Randolph Canterbury did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before 5:45 p.m. on November 14, 2018.

**RFA No. 276:**

Randolph Canterbury did not listen to any audio portion of the October 25, 2018 AMWA Microaggression Panel Discussion before 5:30 p.m. on November 29, 2018.

**RFA No. 277:**

Shelby Savage Gibson's publication that Mr. Bhattacharya exhibited "suicidal ideations" on November 14, 2018 is false. (Bates No. UVA00000409)

**RFA No. 278:**

Shelby Savage Gibson's publication that Mr. Bhattacharya had committed a "Clery Crime" on November 14, 2018 was false. (Bates No. UVA00000409)

**RFA No. 279:**

Shelby Savage Gibson's publication that Mr. Bhattacharya was "ECO'd by a physician" on November 14, 2018 is false. (Bates No. UVA00000410)

**RFA No. 280:**

Shelby Savage Gibson's publication that Dead Dotts served Mr. Bhattacharya with any documentation whatsoever as to the ECO petition by Catherine Richard or even a copy of the ECO itself was false. (Bates No. UVA00000410)

**RFA No. 281:**

Shelby Savage Gibson's publication that Mr. Bhattacharya exhibited "suicidal ideation" on November 14, 2018 was false (Bates No. UVA00000411)

**RFA No. 282:**

UVA did not provide Mr. Bhattacharya with access to Shelly Savage Gibson's publications (Bates No. UVA00000409-412) until more than 31 months after she published them to third parties at UVA on July 1, 2022.

**RFA No. 283:**

Shaka Jabari Sydnor publication regarding Mr. Bhattacharya contradicted Shelly Savage Gibson's publication on November 14, 2018 in asserting that the "incident" was "no[t]" a "Clery Crime."

**RFA No. 284:**

Mr. Bhattacharya did not post the 4chan post identified with a red oval on Bates No. UVA00000416.

**RFA No. 285:**

After receiving FOIA requests in February 2019, members of the Threat Assessment Team, in anticipation of litigation, recalled that Mr. Bhattacharya had reached out to various legal aid organizations and saved Mr. Bhattacharya's mentions of litigation in the TAT file.

**RFA No. 286:**

Bates No. UVA00000419 indicates that the screenshot was taken at least one month after Mr. Bhattacharya made the post.

**RFA No. 287:**

Tabitha Enoch deliberately and falsely represented to four police officers—Benjamin Rexrode, Gloria Graham, Donald Harold McGee, and Melissa Fielding—that Angel Hsu's *preliminary* **protective order** on January 16, 2019 against Mr. Bhattacharya as a "protective

order" so as to conceal that the entire basis of the order itself was *ex parte* testimony. (Bates No. UVA00000427)

**RFA No. 288:**

Tabitha Enoch's statement that Angel Hsu decided "not to move forward with *extending* the protective order" is false. (Bates No. UVA00000427) (emphasis added)

**RFA No. 289:**

Angel Hsu was not scheduled to *extend* the preliminary protective order on February 1, 2019.

**RFA No. 290:**

Angel Hsu would not have been allowed to *extend* the preliminary protective order on February 1, 2019 without Mr. Bhattacharya's consent.

**RFA No. 291:**

Angel Hsu was scheduled to *petition* the court for a *final protective order* on February 1, 2019 that would have allowed Mr. Bhattacharya to cross-examine her and in which Court would not only rely on her *ex parte* testimony.

**RFA No. 292:**

Angel Hsu mentions that the prospect of cross-examination was a motivating factor for her not *petitioning* for a *final protective order* on February 1, 2019. (Bates No. UVA00000427)

**RFA No. 293:**

Melissa Fielding deleted documents and communications concerning or involving Mr. Bhattacharya after January 1, 2019.

**RFA No. 294:**

Melissa Fielding deleted documents and communications concerning or involving Mr. Bhattacharya after September 16, 2019.

~~**RFA No. 295:**~~

~~Edward Markowski's assertion that Angel Hsu "obtained a protection order on 12/3/18" is false.~~

~~**RFA No. 296:**~~

~~Mr. Bhattacharya requested a two-month continuance for the *ex parte* preliminary protective order in the Charlottesville Juvenile and Domestic Relations Court on December 3, 2018 before Judge David Barredo, Angel Hsu, and Geri Greenspan.~~

~~**RFA No. 297:**~~

~~When Judge Barredo asked Mr. Bhattacharya as to why he was requesting a two-month continuance, Mr. Bhattacharya replied, "to properly construct a defense."~~

**RFA No. 298:**

On January 3, 2019, the TAT found Mr. Bhattacharya's online speech to be "[n]othing overtly threatening." (Bates No. UVA00000349)

**RFA No. 299:**

Ed Markowski's statement on December 12, 2018 that "[Mr. Bhattacharya] [was] seeking a voluntary withdrawal in lieu of a suspension within the same timeline for return in fall of 2019" is false. (Bates No. UVA00000445)

**RFA No. 300:**

Mr. Bhattacharya had never said implicitly or explicitly to anyone at UVA by any one or any means that Mr. Bhattacharya willing to accept a withdrawal or any other type of "conditional enrollment" whatsoever in lieu of a suspension. (Bates No. UVA00000445)

**RFA No. 301:**

Without litigation, Mr. Bhattacharya would not have been able to appeal Nora Kern's professionalism concern card memorialized by Defendants even if he had successfully appealed his suspension by Defendants.

**RFA No. 302:**

Without litigation, Mr. Bhattacharya would not have been able to appeal the November 14, 2018 ASAC letter even if he had successfully appealed his suspension by Defendants.

**RFA No. 303:**

Without litigation, Mr. Bhattacharya would not have been able to expunge or otherwise dissolve records of any of the TDOs, ECOs, or involuntary commitments coordinated by Defendants.

**RFA No. 304:**

Without litigation, Mr. Bhattacharya would not have been able to expunge or otherwise dissolve past EPOs, PPOs, or any past dissolved final protective order coordinated by Defendants.

**RFA No. 305**

Without litigation, Mr. Bhattacharya would have not been able to expunge or otherwise dissolve records of the Defendants' NTO, whether or not it is dissolved in the future.

**RFA No. 306:**

~~Without litigation, Mr. Bhattacharya would never be able to restore his right to lawfully possess, own, or transport firearms.~~

**RFA No. 307:**

Roxanne Bhattacharya never had "badge access" and "[she] was not permitted to be on University of Medical Center grounds without specific permissions." (Bates No. UVA00000447)

**RFA No. 308:**

Roxanne Bhattacharya never had lawful "access" to Mr. Bhattacharya's residence and "[she] was not permitted to be in [Mr. Bhattacharya's residence] without specific permission" from Mr. Bhattacharya. (Bates No. UVA00000447)

**RFA No. 309:**

~~Tabitha Enoch's assertion to the TAT that "[Roxanne Bhattacharya] was in Hawaii" on November 27, 2018 was false. (Bates No. UVA00000447).~~

**RFA No. 310:**

"John Densmore (SOM) met with [Mr. Bhattacharya] on Wednesday 11/14" for no other reason than "an exam [Mr. Bhattacharya] failed and [Mr. Bhattacharya's] behavior during microaggression panel." (Bates No. UVA00000447)

**RFA No. 311:**

"[John Densmore] had [Mr. Bhattacharya] walk to CAPS." (Bates No. UVA00000449)

**RFA No. 312:**

"[Mr. Bhattacharya] indicated that [Mr. Bhattacharya] was [at CAPS] 'involuntarily'" and was "resistant" on November 14, 2018. (Bates No. UVA00000449)

**RFA No. 313:**

Mr. Bhattacharya did not and has never "withdrawn" from UVA Med School. (Bates No. UVA00000449)

**RFA No. 314:**

Mr. Bhattacharya's voluntary leave of absence on February 7, 2017 was not a "result" of a hospitalization in January 2017.

**RFA No. 315:**

Mr. Bhattacharya did not report to Catherine Richard that he was "recording the interaction" with Catherine Richard.

**RFA No. 316:**

Mr. Bhattacharya requested to record the meeting with Catherine Richard because he felt very uncomfortable with her threats of retaliation and lack of consideration for UVA's anti-harassment policies, her fraudulent concealment of information, and her insistence on having Mr. Bhattacharya waste several hours being threatened and coerced to discuss traumatic violence that was inflicted on him by UVA employees nearly two years prior. (Bates No. UVA00000449)

**RFA No. 317:**

Catherine Richard "denied" Mr. Bhattacharya's request to record the meeting. (Bates No. UVA00000449)

**RFA No. 318:**

John Densmore did not send any email to Mr. Bhattacharya on November 16, 2018. (Bates No. UVA00000449)

**RFA No. 319:**

~~Mr. Bhattacharya did not request to meet with John Densmore on November 19, 2018. (Bates No. UVA00000449)~~

**RFA No. 320:**

~~Mr. Bhattacharya sent an email to John Densmore on November 18, 2018 to meet sometime later that week. (Bates No. UVA00000449)~~

**RFA No. 321:**

~~John Densmore suggested in response via a November 18, 2018 email to Mr. Bhattacharya to meet on November 19, 2018. (Bates No. UVA00000449)~~

**RFA No. 322:**

John Densmore did not call the police on November 19, 2018 but instead received a call from the police. (Bates No. UVA00000449)

**RFA No. 323:**

Nicole Ruzek's assertion to the TAT on November 20, 2018 that "[Mr. Bhattacharya] was no [sic] eating" was false. (Bates No. UVA00000449)

**RFA No. 324:**

Nicole Ruzek's assertion to the TAT on November 20, 2018 that "[Mr. Bhattacharya] was no… [sic] sleeping" was false. (Bates No. UVA00000449)

**RFA No. 325:**

Nicole Ruzek's assertion to the TAT on November 20, 2018 that Mr. Bhattacharya had been "leaving items unattended on the stove" was false. (Bates No. UVA00000449)

**RFA No. 326:**

Nicole Ruzek explained to the TAT that Mr. Bhattacharya was given intramuscular injections of haloperidol, diphenhydramine, and lorazepam on November 14, 2018 and November 19, 2018 "to calm [Mr. Bhattacharya] down." (Bates No. UVA00000449)

**RFA No. 327:**

Defendants' statement that Mr. Bhattacharya "hear[d] a female" auditory hallucination or hallucinations was false. (Bates No. UVA00000449)]

**RFA No. 328:**

Defendants' statement that Mr. Bhattacharya "hear[d] a female" auditory hallucination "speaking about guns" was false. (Bates No. UVA00000449)]

**RFA No. 329:**

Defendants' statement that Mr. Bhattacharya had "required treatment" at the University of Alabama was false. (Bates No. UVA00000449)

**RFA No. 330:**

Laurie Casteen's SafeGrounds Case #18-2277 report that "no UVA beds were available on UVA 5E" at 8:53:00 p.m. on November 19, 2018 was false. (Bates No. UVA0000475)

Dated:  March 30, 2022

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: /s/ *Michael J. Lockerby*
      Counsel


Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone:  (202) 672-5300
Facsimile:  (202) 672-5399
Email:  mlockerby@foley.com

Steven C. Lockhart (admitted *pro hac vice*)
Robert T. Slovak (admitted *pro hac vice*)
Brandon C. Marx (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
E-mail:  slockhart@foley.com
E-mail:  rslovak@foley.com
E-mail:  bmarx@foley.com

John P. Melko (admitted *pro hac vice*)
James G. Munisteri (admitted *pro hac vice*)
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
Email:  jmelko@foley.com
E-mail:  jmunisteri@foley.com

*Counsel for Plaintiff,*
*Kieran Ravi Bhattacharya*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of **MR. BHATTACHARYA'S FIFTH DISCOVERY REQUESTS** was served on the following counsel of record, on this 30th day of March, 2022, via electronic mail:

Farnaz F. Thompson, Esq.
Brandi G. Howard, Esq.
McGuireWoods LLP
888 16th Street, N.W.,
Suite 500
Black Lives Matter Plaza
Washington, D.C, 20006
fthompson@mcguirewoods.com
bhoward@mcguirewoods.com

Jonathan T. Blank, Esq.
Micah B. Schwartz, Esq.
Eric Fleming, Esq.
McGuireWoods LLP
323 Second Street S.E.,
Suite 700
Charlottesville, Virginia  22902
mschwartz@mcguirewoods.com
jblank@mcguirewoods.com

Evan X. Tucker, Esq.
Alicia M. Penn, Esq.
McGuireWoods  LLP
800 East Canal Street
Richmond, Virginia  23219
etucker@mcguirewoods.com
apenn@mcguirewoods.com

*Counsel for UVA Defendants*

H. Robert Yates, III, Esq.
C. Quinn Adams, Esq.
O'Hagan Meyer, PLLC
411 East Franklin Street,
Suite 500
Richmond, Virginia  23219
ryates@ohaganmeyer.com
cadams@ohaganmeyer.com

*Counsel for Sara K. Rasmussen, M.D., Ph.D.*

/s/ Michael J. Lockerby
Michael J. Lockerby