IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, | ) | Civil Action No. 3:19-cv-00054 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JAMES B. MURRAY, et al., | ) | |
| Defendants. | ) | By:   Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before the Court on the University of Virginia ("UVA") Defendants'

motion for protective order under Rule 26(c) of the Federal Rules of Civil Procedure. ECF No.

385 ("UVA Defs.' Mot. for Prot. Order"); *see* ECF No. 344. These Defendants ask the Court to

strike or narrow the scope of numerous interrogatories, requests for production of documents,

and requests for admission in Plaintiff Kieran Bhattacharya's Fourth, Fifth, and Seventh sets of

discovery requests. *See generally* UVA Defs.' Br. in Supp. Mot. for Prot. Order 7–22, ECF No.

366; *id.* Ex. B, Pl.'s 4th Set of Disc. Reqs., ECF No. 366-2; *id.* Ex. E, Pl.'s 5th Set of Disc.

Reqs., ECF No. 366-5; *id.* Ex. J, Pl.'s 7th Set of Disc. Reqs., ECF No. 366-10. The motion has

been fully briefed. ECF Nos. 366, 368, 375, 376, 387, 388. On April 25, 2022, I held a hearing at

which counsel for all parties addressed the challenged requests at length. This Memorandum

Opinion & Order memorializes my rulings from the bench and further explains my rationale for

granting the UVA Defendants' motion for protective order, Fed. R. Civ. P. 26(c)(1), and limiting

the number of outstanding requests to which Defendant Sara Rasmussen must respond, Fed. R.

Civ. P. 26(b)(2)(C).

I. Background

This case relates to Bhattacharya's suspension and dismissal from the UVA School of

Medicine in the fall of 2018. *See generally Bhattacharya v. Murray*, 515 F. Supp. 3d 436, 444–

52 (W.D. Va. 2021) (Moon, J.) ("*Bhattacharya I*"); *Bhattacharya v. Murray*, No. 3:19cv54, 2022

WL 808500, at *1, *3–5 (W.D. Va. Mar. 16, 2022) (Moon, J.) ("*Bhattacharya II*"). On October

25, 2018, Bhattacharya attended a panel discussion on "microaggressions" sponsored by the

American Medical Women's Association ("AMWA") at UVA Medical School. "During the

event, UVA Professor Beverly Colwell Adams, Ph.D., gave a roughly seventeen-minute

presentation about her research on microaggressions, and Bhattacharya asked Adams some

questions" during the question-and-answer session. *Bhattacharya I*, 515 F. Supp. 3d at 444

(citing Am. Compl. ¶ 3, ECF No. 33); *accord* Second Am. Compl. ¶ 4, ECF No. 335. After an

initial exchange about Adams's "'definition of microaggressions,'" and whether someone must

be "'a member of a marginalized group'" to be "a victim of microaggression," Bhattacharya

asked "an additional series of questions" challenging Adams's research and "'the basis for which

[she's] going to tell someone that they've committed a microaggression.'" *Bhattacharya I*, 515

F. Supp. 3d at 445 (citing Am. Compl. Ex. 2) (audio recording of panel discussion); *accord*

Second Am. Compl. ¶ 69.

   "At that point, Assistant Professor Sara Rasmussen, a fellow panelist who helped

organize the event, responded, 'OK, I'll take that. And I think that we need to make sure to open

up the floor to lots of people for questions.'" *Bhattacharya I*, 515 F. Supp. 3d at 445 (quoting

Am. Compl. ¶ 4); *accord* Second Am. Compl. ¶¶ 70–71. "Rasmussen then told a story about how

her former peers and colleagues had subjected her to 'harmless jokes' and microaggressions"

perpetuating stereotypes about people who grew up in rural states, like Rasmussen did, noting

that her colleagues likely did not intend to offend her. *Bhattacharya I*, 515 F. Supp. 3d at 444

(citing Am. Compl. ¶ 58). "She concluded: 'You have to learn to uncouple the intent of what

you're saying and the impact it has on the audience. And you have a responsibility for the impact

of your actions. . . . But don't get frustrated with [a] person for bringing it to your attention.'"

*Bhattacharya I*, 515 F. Supp. 3d at 445 (citing Am. Compl. ¶ 58); *accord* Second Am. Compl. ¶

71. Bhattacharya responded,

> I have to respond to that because I never talked about getting frustrated at a person
> for making a statement. I never condoned any statement that you are making like
> that. But what I'm saying is that you're providing anecdotal evidence. That's what
> you provided. That's what [Adams] provided --

*Bhattacharya I*, 515 F. Supp. 3d at 445 (citing Am. Compl. ¶¶ 59–60); *accord* Second Am.

Compl. ¶ 72. Rasmussen replied that Adams had "provided a lot of citations in the literature" and

noted she was "just reading [Bhattacharya's] body language." *Bhattacharya I*, 515 F. Supp. 3d at

445; *accord* Second Am. Compl. ¶ 73. "Bhattacharya then began to speak over Rasmussen, who

called on someone else to ask a question. [His] dialogue with Adams and Rasmussen lasted

approximately five minutes and fifteen seconds." *Bhattacharya I*, 515 F. Supp. 3d at 445–46

(internal citation omitted).

Later that evening, Professor Nora Kern, another panelist at the AMWA discussion, filed

a "Professionalism Concern Card" against Bhattacharya identifying "'Respect for Others' and

'Respect for Differences' as areas of concern." *Bhattacharya I*, 515 F. Supp. 3d at 446 (citing

Am. Compl. Ex. 13, ECF No. 33-13). She explained that Bhattacharya "asked a series of

questions that were quite antagonistic toward the panel" and that "[h]is level of frustration/anger

seemed to escalate until another faculty member defused the situation by calling on another

student for questions." Am. Compl. Ex. 13. Kern concluded, "I am shocked that a med student

would show so little respect toward faculty. It worries me how he will do on wards." *Id.* Kern

told Rasmussen and Christine Peterson, Assistant Dean for Medical Education, about the card

she filed, but she did not mention her concerns to Bhattacharya. *See Bhattacharya I*, 515 F.

Supp. 3d at 446. Over the next few days, at least four more people filed written complaints about

3

Bhattacharya's "questions and comments" during the AMWA panel. Second Am. Compl. ¶ 74. They described his behavior as "aggressive and confrontational," *id.* ¶ 75; "combative and aggressive against the panelists," *id.* ¶ 76; and "extremely disrespectful, unprofessional, and condescending," *id.* ¶ 78. Two complainants reported that Bhattacharya repeatedly "interrupted" the panelists. *Id.* ¶¶ 77, 78. One also took issue with the content his comments, noting that "Bhattacharya had 'called the legitimacy of one panelist's research into question.'" *Id.* ¶ 77. On October 27, Dean Randolph Canterbury forwarded one of the complaints to Dean John Densmore, Bhattacharya's advisor, noting, "'I think this is the equivalent of a concern card.'" *Id.* ¶ 79. Bhattacharya met with Peterson and Densmore on October 31 and November 1, respectively. Neither administrator told Bhattacharya about the professionalism complaints or expressed concern about his behavior at the AMWA panel. *See id.* ¶¶ 90–95.

On the afternoon of November 14, 2018, the Academic Standards and Achievement Committee ("ASAC") met to review Kern's professionalism concern card. *See Bhattacharya I*, 515 F. Supp. 3d at 447. "UVA Medical School's Policy on Academic and Professional Advancement vests the ASAC with the power to act on behalf of the School of Medicine's faculty 'patterns of unprofessional behavior and egregious violations of professionalism.'" *Id.* The policy in effect at the relevant time contained the following language:

> If a student receives three or more written observations of concern . . . , or is cited for a single egregious breach of professionalism, notice will be sent to ASAC for review. A student identified as having a pattern of unprofessional behavior may be directed to further counseling and/or to supportive remediation and/or placed on academic warning or academic probation . . . , or if the professional violations are severe, a student may be dismissed from school even if they have passing grades in all courses. . . . .

*Id.* (quoting Am. Compl. Ex. 9, ECF No. 33-9) (emphasis omitted). Kern, a voting member of the ASAC, was the only voting member who also witnessed the events at the AMWA panel three weeks earlier. Peterson also attended the ASAC meeting as a guest. The meeting minutes

memorialized the text of Kern's concern card and noted under "Professionalism Issues" that the "committee voted unanimously to send Kieran Bhattacharya (Densmore) a letter reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and their families." *Id.* (quoting Am. Compl. ¶¶ 77, 88). Committee Chair Jim B. Tucker, M.D., emailed the ASAC's letter to Bhattacharya on November 15, 2018. The letter read in its entirety:

> Dear Mr. Bhattacharya:
>
> The Academic Standards and Achievement Committee has received notice of a concern about your behavior at a recent AMWA panel. It was thought to be unnecessarily antagonistic and disrespectful. Certainly, people may have different opinions on various issues, but they need to express them in appropriate ways.
>
> It is always important in medicine to show mutual respect to all: colleagues, other staff, and patients and their families. We would suggest that you consider getting counseling in order to work on your skills of being able to express yourself appropriately.

*Id.* at 448 (quoting Am. Compl. ¶ 91). Bhattacharya did not immediately receive a copy of this letter because he was in the hospital. Second Am. Compl. ¶¶ 13(a)–(f), 139, 148–49; *see Bhattacharya I*, 515 F. Supp. 3d at 449 & n.4 (noting "Bhattacharya repeatedly denied receiving the letter" at a second ASAC hearing on November 28, 2018, but now "admits that he had in fact received the letter" before that date).

Earlier on November 14, 2018, Bhattacharya met with Densmore to discuss his failing score on a recent Hematology exam. *See* Second Am. Compl. ¶¶ 143–47. "Bhattacharya assured Dean Densmore that he has passed the course and was confident that [he] would score well when he re-took the exam." *Id.* ¶ 147. At that point, allegedly "without explanation or justification," Densmore insisted that Bhattacharya be evaluated by Counseling and Psychological Services ("CAPS") at UVA's student health center. *Id.* When Bhattacharya resisted, Densmore allegedly demanded that Bhattacharya give him "access to medical records from a treating psychiatrist or [provide] further proof that he was receiving treatment from a psychiatrist at th[at] time." *Id.*

Bhattacharya refused, and Densmore again "demanded" Bhattacharya be evaluated by CAPS. *Id.*
Bhattacharya alleges that he acquiesced "out of fear of retaliation," including being suspended
from medical school, "if he did not comply" with Densmore's order. *Id.*

Densmore walked with Bhattacharya to the CAPS office, where he met with Catherine
Richard, LPC. *See id.* ¶ 148. Richard asked Bhattacharya about "his questions and comments at
the AMWA Microaggression Panel" as well as his "political views generally." *Id.* Her notes
indicate that Densmore brought Bhattacharya to CAPS "because there ha[d] been concern
expressed about a number of recent events," including "many" reports that Bhattacharya was
"confrontational" at the AMWA panel; he "failed 2 of his last 3 exams"; "his girlfriend recently
broke up with him because of his behavior, describing him as paranoid (she was adamant that
there were no safety concerns)"; and he had not been sleeping. *Id.* "After three hours of
interrogation," Richard reported "Bhattacharya made 'sexist, demeaning remarks' and signed an
Emergency Custody Order ('ECO')" that resulted in Bhattacharya being "handcuffed and
transported in the back of police car to the Emergency Department at UVA Medical Center" to
determine whether a Temporary Detention Order ("TDO") should issue. *Id.* ¶ 13(b).

"A TDO requires immediate hospitalization of an individual for further evaluation and
stabilization, on an involuntary basis, until a commitment hearing can be arranged to determine
the patient's future treatment needs." *Id.* The TDO did issue, and Bhattacharya was involuntarily
admitted to UVA Medical Center's psychiatric ward later in the day on November 14, 2018. *Id.* ¶
13(c). Pamila Herrington, M.D., evaluated Bhattacharya while he was hospitalized. *Id.* ¶ 13(d).
She was also a voting member of the ASAC, and she participated in the ASAC meeting on
November 14, 2018, that resulted in the "reprimand" letter urging Bhattacharya to seek
counseling to work on "being able to express [him]self appropriately." *Id.* On November 15,

Herrington noted in Bhattacharya's medical records that his "questions and comments" at the AMWA Microaggression Panel were "manic." *Id.* The same day, a nurse transcribed Bhattacharya's "side of the story and submitted it in writing to the Special Justice" responsible for involuntary commitment hearings at UVA Medical Center. *See id.* ¶ 13(c), (e). On November 16, Bhattacharya was released from UVA Medical Center "based on findings that he was no threat to himself or others and was able to care for himself[.]" *Id.* ¶ 148. His mother had arrived in Charlottesville by this time. *Id.* ¶ 150. Her signature "was procured on an Emergency Custody Order" at 11:41 a.m. on November 19, 2018. *Id.* ¶ 151.

Bhattacharya met with Densmore shortly before noon on November 19, and he recorded the meeting on video. *Id.* Peterson later noted that Bhattacharya allegedly was "'behaving in the same way as when he was TDO'd'" on November 14, "and the police were called." *Id.* ¶ 151 ("The video footage of Mr. Bhattacharya's November 19, 2018 meeting with Dean Densmore shows that there was nothing that warranted calling the police."). Bhattacharya alleges that, less than an hour later, he "was picked up from the Claude Moore Health Sciences Library by the City of Charlottesville Police, University of Virginia Police, and University of Virginia Health System security officers and forcibly transported to the Emergency Department at UVA Medical Center[.]" *Id.* ¶ 13(g). Rather than being readmitted to UVA Medical Center in Charlottesville, however, Bhattacharya was transported to "a private psychiatric hospital nearly 100 miles away in Petersburg, Virginia[.]" *See id.* On November 21, a Special Justice in Petersburg—citing the fact that Bhattacharya had been subject to two TDOs in just one week—ordered that he be involuntarily committed. *Id.* He was released from the private hospital on November 26, 2018, "without any court order to undergo outpatient psychiatric treatment." *See id.* ¶ 154. Bhattacharya planned to "return to UVA Med School after the Thanksgiving break." *Id.* ¶ 13(k).

Also on November 26, 2018, Densmore sent Bhattacharya an email stating: "Hi Kieran, I hope you're doing well. We were notified by the Dean of Students Office that you were heading back to Charlottesville. You will need to be seen by CAPS before you can return to classes. Let me know if you have questions." *Id.* ¶ 115. At 5:00 a.m. on November 27, Bhattacharya responded by asking, "How can it be legal to mandate psychiatric evaluations to continue my education?" *Id.* ¶ 117. The same day, Canterbury "emailed Bhattacharya telling him that he was not permitted to return to class until he had 'been evaluated by CAPS at the Student Health Service.'" *Bhattacharya I*, 515 F. Supp. 3d at 448.

At 1:00 p.m. on November 28, the Registrar at UVA Medical School notified Bhattacharya by email that the ASAC would meet at 5:00 p.m. that day "to discuss [his] current enrollment status," and invited him "to attend to share [his] insights with the committee." Second Am. Compl. ¶ 120. Bhattacharya interpreted the Registrar's email as an "indirect[] threat[] to kick [him] from medical school" and replied to ask why his "enrollment status [was] up for discussion[.]" *Id.* ¶ 121. He still did not know that Kern had filed the Professionalism Concern Card citing his behavior at the AMWA panel on October 25, 2018. *See id.* ¶ 88. Around 2:00 p.m. on November 28, Sean Reed, M.D., called Bhattacharya and told him about a concern card "resulting from" Bhattacharya's participation in that event, but he did not describe the Card's content.

Bhattacharya attended the ASAC meeting on November 28, 2018. He photographed the attendees and recorded audio of the entire hearing, which lasted just under thirty minutes. *See* Second Am. Compl. ¶ 129. Kern, Tucker, and Reed attended as voting ASAC members, but Kern left the meeting before the ASAC voted to suspend Bhattacharya. *See id.* ¶ 135(d). Densmore and Peterson were there as "guests." *Id.* ¶ 134. "Bhattacharya first asked Tucker to

explain why the ASAC was meeting to discuss his enrollment status." *Bhattacharya I*, 515 F. Supp. 3d at 449. Tucker referenced the ASAC's November 15, 2018, letter "'talking about some interactions Bhattacharya had at a forum on microaggression'" and explained that the ASAC was concerned about more recent "interactions" Bhattacharya had in the weeks following the AWMA panel, including those "with Densmore as well as 'students' and 'other administrators.'" *Id.* (quoting Am. Compl. Ex. 48, audio recording). Tucker said he "suspected" Bhattacharya's conduct during those interactions "was similar to" the behaviors he was showing at this hearing. *Id.* (cleaned up). ASAC voting member Bart Nathan, M.D., described Bhattacharya's conduct as "'aggressive,'" "'threatening,'" "'unusual,'" and "not 'typical' of 'a medical student.'" *Id*. (quoting Am. Compl. Ex. 48, audio recording). "Another doctor stated that the 'entire episode was a very good example of inappropriate behavior and aggressive behavior.'" *Id.* at 449–50 (cleaned up). The meeting minutes indicate that the ASAC "reviewed the list of technical standards that are acknowledged annually by the students[,] especially the Emotional, Attitudinal and Behavior Skills." Second Am. Compl. ¶ 135(c). Finding that Bhattacharya's "behavior demonstrated his inability to meet several of those standards," the ASAC voted unanimously to suspend him from the School of Medicine, "effective immediately, with the option to petition to return in August of 2019." *Id.* ¶ 135(d).

On November 29, 2018, Dr. Tucker sent Bhattacharya a letter notifying him of the ASAC's determination "that [his] aggressive and inappropriate interactions in multiple situations, including . . . during a speaker's lecture, with [his] Dean, and during the committee meeting yesterday, constitute[d] a violation of the School of Medicine's Technical Standards[.]" *Id.* ¶ 137(b). The letter cited the Standards "that each student is responsible for: Demonstrating self-awareness and self-analysis of one's emotional state and reactions; Modulating affect under

adverse and stressful conditions and fatigue; Establishing effective working relationships with faculty . . . and students in a variety of environments; and Communicating in a non-judgmental way with persons whose beliefs and understandings differ from one's own." *Id.* ¶ 137(c). "Five days later, on December 4, Bhattacharya emailed Densmore to initiate an appeal of the ASAC's decision to suspend him. Densmore replied later that day and acknowledged that the appeal process had started." *Bhattacharya I*, 515 F. Supp. 3d at 450 (internal citation omitted).

On December 30, 2018, someone claiming to be from the UVA Police Department called Bhattacharya's father and "demanded" to know the younger Bhattacharya's "whereabouts," suggesting that he "may need further mental health evaluation" and might be "involved with some type of 'alt-right, storm front' extremist group." Second Am. Compl. ¶ 161. Later that day, Deputy Chief of UVA Police Melissa Fielding called Bhattacharya to inform him that the UVA Police Department was issuing a "'no trespass' warning" against him. She did not provide any explanation for the warning. On January 2, 2019, Fielding sent Bhattacharya a No Trespass Order ("NTO") stating that, for the next four years, he was "not to come on any property or facility on the Grounds of the University of Virginia except as a patient at the University of Virginia Medical Center." Second Am. Compl. ¶ 163 (emphasis omitted); *see id.* ¶ 168. The next day, Densmore emailed Bhattacharya to tell him that UVA Medical School was not "able to proceed with an appeal to [his] suspension at this time" because of the NTO. *Id.* ¶ 164. That July, Fielding informed Bhattacharya that the NTO issued "after concerns were raised about comments on a chat room that were perceived as threats," which "raised safety concerns for the community," and that the NTO "was not a result of [his] suspension" in November 2018. Second Am. Compl. Ex. 63, ECF No. 335-63. On August 7, 2019, UVA upheld the NTO because Bhattacharya "engag[ed] in conduct that threatened the well-being of members of the community

through various social media platforms" and the conduct he "directed at members of the university community compromised safety and caused fear." Second Am. Compl. Ex. 66, ECF No. 335-66. Bhattacharya is not permitted on UVA property until January 2, 2023. *Id.*

\*

Bhattacharya's Second Amended Complaint, ECF No. 335, asserts one claim for violating his First Amendment right to free speech, *see* 42 U.S.C. § 1983, against the following individuals and entities: UVA, the University's Rector, Vice Rector & Members of the Board of Visitors, Chief of University Police & Assistant Vice President for Safety and Security Timothy Longo Sr., and Deputy Chief of University Police Melissa Fielding[1]; The UVA School of Medicine and Dr. Jim Tucker[2]; and Dr. John Densmore, Dr. Christine Peterson, Dr. Nora Kern, and Dr. Sara Rasmussen.[3] *See generally* Second Am. Compl. ¶¶ 17–37 (Defendants), 175–83 (Count I); *Bhattacharya I*, 515 F. Supp. 3d at 444, 452–60 & nn. 1–2 (denying Defendants' joint motion to dismiss Count I); *Bhattacharya II*, 2022 WL 808500, at \*3–5 (granting Bhattacharya leave to file second amended complaint adding Dr. Densmore as an individual-capacity defendant to Count I, but denying leave to add new claims and additional defendants, including Bhattacharya's former girlfriend).

Presiding District Judge Norman K. Moon previously denied Defendants' motion to dismiss Bhattacharya's claim because the facts alleged in his Amended Complaint, ECF No. 33, supported a reasonable inference that: (1) Bhattacharya's statements at the AMWA

---

[1] Bhattacharya refers to these entities and individuals collectively as "The University Defendants." They are sued in their official capacities only. Second Am. Compl. ¶¶ 17–21, ECF No. 335.

[2] Bhattacharya refers to these entities and individuals collectively as "The UVA Med School Defendants." They are sued in their official capacities only. *Id.* ¶¶ 22–25.

[3] These "UVA Med School Individual Defendants" are sued in their individual and official capacities. *Id.* ¶¶ 26–37.

microaggression panel, as well as his online comments that prompted UVA Police to issue the no-trespass order, were constitutionally protected speech; (2) the named Defendants retaliated against Bhattacharya by suspending him from UVA Medical School, requiring him to undergo counseling and obtain "medical clearance" in order to stay enrolled, and preventing him from appealing his suspension or applying for readmission by issuing and refusing to revoke a no-trespass order after Bhattacharya made those comments; and (3) there was a causal relationship between Bhattacharya's constitutionally protected speech and Defendants' adverse actions. *Bhattacharya I*, 515 F. Supp. 3d at 452–60. Bhattacharya's operative complaint seeks damages and injunctive relief under 42 U.S.C. § 1983. Second Am. Compl. 71–72.

**

Discovery in this case started in the spring of 2021. ECF No. 139. Between June and September 2021, Bhattacharya's attorney served on defense counsel three sets of discovery containing one interrogatory, 75 requests for production of documents ("RFP"), and 133 requests for admission ("RFA"). Defendants responded to the RFAs and produced over 2,000 documents in response to the RFPs. *See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order 3; UVA Defs.' Reply in Supp. of Mot. for Prot. Order 2 n.2, ECF No. 387. On March 17, 2022, I issued an order directing the parties to finish written discovery by May 2, 2022, and to complete depositions by May 16, 2022. ECF No. 330. Over the next two weeks, Bhattacharya's attorney served all Defendants' counsel with "four new sets of discovery" requests containing "24 new interrogatories, 92 new requests for production, and 306 new requests for admission." UVA Defs.' Br. in Supp. of Mot. for Prot. Order 1. On April 5, the UVA Defendants moved to strike or narrow dozens of those requests, *see* ECF Nos. 344, 385, explaining in detail why each challenged request seeks information not relevant to the remaining claim and defenses in this

12

case, is cumulative or duplicative of information or materials already produced, is "overly broad and unduly burdensome," or is "aimed at annoying or harassing Defendants while unnecessarily increasing their litigation costs," UVA Defs.' Br. in Supp. of Mot. for Prot. Order 4. *See generally id.* at 7–22 (citing *id.* Ex. B, Pl.'s 4th Set of Disc. Reqs., Interrog. Nos. 6, 9, 11 & 13, Req. for Prod. Nos. 76–80, 88, 101, 105 & 109–10, Req. for Admission Nos. 148, 151–55, 171–73, 175–78, 185, 189 & 190–93, ECF No. 366-2; *id.* Ex. E, Pl.'s 5th Set of Disc. Reqs., Interrog. Nos. 20 & 21, Req. for Prod. Nos. 114–19, 125–28 & 161, Req. for Admission Nos. 199–205, 214, 217–19 & 307–08, ECF No. 366-5; *id.* Ex. J, Pl.'s 7th Set of Disc. Reqs., Req. for Admission Nos. 341–44, 346, 359, 367 & 431–39, ECF No. 366-10).[4] The parties briefed the motion on an expedited schedule, and on April 25, 2022, I held a hearing at which counsel for all parties addressed these requests and objections at length.

## II. The Legal Framework

Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar[,]" as a matter need only be "relevant in some way to the parties' dispute" to be discoverable. *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019); *see United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("[R]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Rule 26 therefore requires that "discovery must also be 'proportional to the needs of the case,'" *Jordan*, 921 F.3d

---

[4] The UVA Defendants later responded to the substance of RFP No. 76, *see* Pl.'s Notice of Supp'l Auth., Ex. A, ECF No. 388-1, at 4, and Bhattacharya agreed to withdraw RFA Nos. 431–39, *see* Pl.'s Br. in Opp'n to UVA Defs.' Mot. for Prot. Order, Ex. I, ECF No. 368-9, at 27–20. Accordingly, the UVA Defendants' objections to those requests are moot.

at 188 (quoting Fed. R. Civ. P. 26(b)(1)), "considering the importance of the issues at stake in the action . . . the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). "On motion or on its own, the court must limit" the extent of discovery "if it determines that[] the discovery sought is unreasonably cumulative or duplicative[] or can be obtained from some other source that is more convenient," Fed. R. Civ. P. 26(b)(2)(C)(i), or that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii). *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 364 (D. Md. 2008) (noting that "Rule 26(b)(2)(C) imposes an obligation on the Court, *sua sponte*, to[] 'limit the frequency or text of discovery otherwise allowed by the rules if it determines that'" certain criteria are met (quoting Fed. R. Civ. P. 26(b)(2)(C) (cleaned up)).

Separately, "[a] party or person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including" by forbidding or limiting inquiry into certain matters. *See id.* The "undue burden" category "encompasses situations where the [request] seeks information irrelevant to the case," *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (2012), because irrelevant information is not discoverable under Rule 26(b)(1), *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000). The party seeking a protective order under Rule 26(c) bears the burden to show that the requested information "is not relevant" to a party's claims or defenses, *Kidwiler*, 192 F.R.D. at 199 (citing *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984)), or "is of such marginal relevance" to those matters that the burden of producing the information outweighs its potential benefit, *see Eramo v. Rolling Stone*

*LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). Rule 26(c)'s "good cause" element further requires the movant to "present a particular and specific demonstration of fact as to why a protective order should issue." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (internal quotation marks omitted). Within these parameters, the district court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999).

### III. Discussion

*A.     Plaintiff's Fourth Set of Discovery Requests*

For the reasons explained on the record at the hearing and discussed below, the Court hereby **SUSTAINS** the UVA Defendants' objections to the following interrogatories and RFPs in Bhattacharya's Fourth Set of Discovery Requests, ECF No 366-2, because the information sought is not relevant to the remaining First Amendment claim or the defenses thereto. *See* Fed. R. Civ. P. 26(c)(1). For good cause shown, the UVA Defendants' motion for protective order is **GRANTED** insofar as they need not respond, or respond further, to the following requests:

- **Interrogatory No. 5** asks Defendants to identify all UVA medical students who pleaded guilty/no contest or were convicted of a felony or misdemeanor offense while enrolled at UVA Medical School within the past five years. **RFP No. 77** asks Defendants to produce the "complete medical student file," except applications for admission, for each student identified in Interrogatory No. 5.
- **Interrogatory No. 6** asks Defendants to identify all UVA medical school students who were found responsible for conduct prohibited under Title IX (e.g., sexual harassment, stalking) within the past five years and who received a no-contact order, probation, suspension, and/or expulsion from UVA Medical School. **RFP No. 78** asks Defendants to produce the "complete medical student file," except applications for admission, for each student identified in response to Interrogatory No. 6.

- **Interrogatory No. 7** asks Defendants to identify all UVA medical students who, within the past five years, were subject to an emergency protective order, preliminary protective order, or final protective order obtained by another medical student while both were enrolled at UVA Medical School and of which UVA Medical School had knowledge at the time of enrollment. **RFP No. 79** asks Defendants to produce the "complete medical student file," except applications for admission, for each student identified in response to Interrogatory No. 7.

- **Interrogatory No. 8.** asks Defendants to identify all UVA medical students who, within the past five years, were placed under an emergency custody order, temporary detention order, or involuntary commitment order at UVA Medical Center or recommended by an employee of UVA Medical Center and received a mandatory outpatient treatment order while enrolled at UVA Medical School and of which UVA Medical School had knowledge at the time of enrollment. **RFP No. 80** asks Defendants to produce the "complete medical student file," except applications for admission, for each student identified in response to Interrogatory No. 8.

- **Interrogatory No. 11** asks Defendants to identify all social media websites or applications on which each of roughly 50 individuals discussed the subject matter of this case since October 24, 2018. **RFP No. 110** asks Defendants to produce all social media messages or posts related to this case or its subject matter from each of individuals in Interrogatory No. 11.

- **Interrogatory No. 13** asks Defendants to explain why Bhattacharya "was tranquilized with an intramuscular injection . . . at UVA Medical Center on November 14, 2018, and November 19, 2018," and to identify "who ordered each tranquilization."

- **RFP No. 88** asks Defendants to produce the "complete medical student file," except applications for admission, of "the two other medical students appealing ASAC decisions."

*See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order Ex. B, Pl.'s 4th Set of Disc. Reqs., ECF No. 366-2, at 10, 12, 16–17, 19.

Bhattacharya's sole remaining claim alleges that he was suspended from UVA Medical School and banned from Grounds because Defendants wanted to "punish" the content of statements that he made at the AMWA panel in October 2018. *See, e.g.*, Second Am. Compl. ¶¶ 5, 13(g), 79–80, 88, 142, 152, 173. The UVA Defendants, on the other hand, allege that Bhattacharya was suspended because his "erratic" and "aggressive" behavior at the AMWA panel and in later interactions with faculty and other medical students violated UVA Medical School's technical standards on professionalism. *See, e.g.*, UVA Defs.' Answer ¶¶ 3, 11, 77–78, 106, 139, ECF No. 357. Neither party's pleading places at issue the conduct of any other medical student who was suspended from the medical school for allegations of criminal conduct, Title IX violations, or involuntary psychiatric treatment. Conversely, the UVA Defendants concede that information related to other students who were suspended for "professionalism" concerns is relevant, and they have agreed to produce nonprivileged materials from those students' records. *See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order 7–8. At the hearing, counsel for the UVA Defendants represented that the "two other students" referenced in RFP No. 88 were appealing ASAC decisions related to their grades, as opposed to "professionalism," and Bhattacharya's counsel acknowledged information from those students' records was not relevant to this case. Counsel for Rasmussen and the UVA Defendants further represented that they have not uncovered any information suggesting that their clients or any relevant non-party discussed this case's subject matter on social media during the relevant time. Rasmussen and Dean Canterbury posted some political or social commentary around this timeframe, and Plaintiff has copies of those documents. Requiring any Defendant's further to response to Interrogatory No. 11 and RFP No. 110 is unlikely to uncover relevant information and is not proportional to the needs of the case at this point in the litigation. *See generally* Fed. R. Civ. P. 26(b)–(c), (g)(1).

The Court also **SUSTAINS** Defendants' objections to the following **RFAs** in Plaintiff's Fourth Set of Discovery Requests, ECF No. 366-2, because Plaintiff's counsel cannot reasonably expect any Defendant to have knowledge of the proposed facts. Fed. R. Civ. P. 26(g)(1)(B)(i). Moreover, the proposed facts are of such marginal relevance to Bhattacharya's remaining First Amendment retaliation claim or Defendants' defenses thereto that the burden imposed by requiring Defendants to obtain the information from a nonparty who does have firsthand knowledge of a proposed fact far outweighs its likely benefit. Fed. R. Civ. P. 26(g)(1)(B)(iii); Fed. R. Civ. P. 36(a)(4). Accordingly, Defendants are not required to respond, or respond further, to: **RFA Nos. 148, 151, 152, 153, 154, 155, 171, 172, 175, 176, 177, 178, 185, 185, 187, 188, 189, 190, 191, 192, and 193**. *See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order Ex. B, Pl.'s 4th Set of Disc. Reqs., ECF No. 366-2, at 22–29.

These RFAs ask Defendants to admit the truth of matters that they could not possibly know and should not reasonably be expected to ascertain from nonparties outside their control, Fed. R. Civ. P. 36(a)(4), including whether Bhattacharya's ex-girlfriend moved out of their apartment on November 19, 2018; whether he "shared equal ownership" of a dog or "[]ever agreed to waive his property stake" in the dog; and whether his mother or ex-girlfriend "had any personal knowledge" as to whether he was "eating" or "sleeping" between November 16–19, 2018. *See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order Ex. B, Pl.'s 4th Set of Disc. Reqs., Req. for Admission Nos. 148, 171–72, 189, 191, ECF No. 366-2, at 22, 25–26, 29. The "frivolous nature of many of these [RFAs] indicates they were designed to annoy and burden" Defendants shortly before discovery closes, *cf. Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015), not to "expedite" the litigation by "establishing certain *material facts* as true . . .

18

thus narrowing the range of issues for trial," *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981) (emphasis added).

 Finally, the Court **SUSTAINS** the UVA Defendants' objections to and **LIMITS** the scope of the following interrogatories and RFPs in Plaintiff's Fourth Set of Discovery Requests:

- **RFP No. 101** asks Defendants to produce all documents and communications regarding Angel Hsu's counseling, psychological, or psychiatric care. To the extent they have not already done so, the UVA Defendants shall produce such documents or communications that: (a) were in existence between October 2018 and January 2019; and (b) any UVA Defendant was aware of during that time.

- **RFP No. 105** is limited to hourly census data reflecting the number of open or available beds in UVA Medical Center's psychiatric ward (5 East) from 12:00 a.m. on November 18, 2018, through 11:00 p.m. on November 20, 2018.

- **Interrogatory No. 9** is limited to cell phone numbers belonging to any named Defendant, as well as to Sean Reed, during the relevant time. **RFP No. 109** is limited to "text messages related to this case or its subject matter from" any named Defendant or Sean Reed.

*See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order Ex. B, Pl.'s 4th Set of Disc. Reqs., ECF No. 366-2, at 14, 17–18. As modified, these requests seek information that is both relevant to the parties' claims and defenses and proportional to the needs of the case considering the parties' relative access to relevant information, the parties' resources, and the importance of this discovery in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1), (c)(1).

B. *Plaintiff's Fifth & Seventh Sets of Discovery Requests*

 For the reasons explained on the record at the hearing and discussed in more detail below, the Court hereby **SUSTAINS** the UVA Defendants' objections to **Interrogatory Nos. 20 & 21** and **RFP Nos. 114–19, 125–28,** and **161** in Plaintiff's Fifth Set of Discovery Requests, ECF No 366-5, and **LIMITS** the scope of those requests as follows:

- **Interrogatory No. 20** is limited to the named Defendants' work, or "official" university, email accounts. At the hearing, counsel for the UVA Defendants represented that they already produced relevant emails from each Defendant's "official" email account(s) and, to the best of her knowledge, no Defendant forwarded any relevant emails to a personal account. Accordingly, the UVA Defendants are not required to respond further to this Interrogatory.

- **Interrogatory No. 21** and **RFP No. 161** are limited to information and documents about which a named UVA Defendant was aware in 2017, 2018, or 2019.

- **RFP No. 114** is limited to Dr. Canterbury's relevant communications that the UVA Defendants have already produced.

- **RFP Nos. 115, 116, 117, 118, 125, 126, 127 & 128** are limited to ASAC policies that were in effect between November 1, 2018, and January 3, 2019. Documents and communications regarding changes to ASAC policies made after those dates are not relevant to Plaintiff's First Amendment retaliation claim or Defendants' defenses thereto.

- **RFP No. 119** does not require further response. At the hearing, counsel for the UVA Defendants agreed on the record to stipulate that Bhattacharya was allowed to record the ASAC meeting on November 28, 2018. Accordingly, no further response is required.

*See* UVA Defs.' Br. in Supp. of Mot. for Prot. Order Ex. E, Pl.'s 5th Set of Disc. Reqs., ECF No. 366-5, at 10–16, 22.

Finally, at the hearing, the parties agreed in principal that Bhattacharya should limit the number of RFAs propounded to Defendants in his Fifth Set of Discovery Requests, ECF No. 366-5, and Seventh Set of Discovery Requests, ECF No. 366-10. Defendant Sara Rasmussen shall be required to respond to **at most 30 RFAs**, and the UVA Defendants shall be required to respond to **at most 60 RFAs**, selected by Plaintiff from his combined Fifth and Seventh Sets of Discovery Requests, ECF Nos. 366-5 and 366-10. *See* Fed. R. Civ. P. 26(b)(2)(C), (c)(1)(D). Rasmussen is alleged to have played a relatively minor role in the underlying events—and no role at all in Bhattacharya's actual suspension or dismissal from UVA medical school—and has already responded to 63 RFAs. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii)–(iii). Plaintiff's counsel is

directed to serve his selected RFAs on counsel for Defendant Rasmussen and counsel for the UVA Defendants on or before **Tuesday, May 3, 2022**. Defendants shall answer or object to these RFAs within **fourteen (14) days** of service. Fed. R. Civ. P. 36(a)(3). Additionally, no later than May 17, 2022, Defendants shall respond to the discovery requests in Plaintiff's Fourth, Fifth, and Seventh sets that are modified by this Memorandum Opinion and Order as well as all other outstanding discovery requests in Plaintiff's Fifth and Seventh sets.

For good cause shown, Fed. R. Civ. P. 16(b)(4), the Court further amends the following pretrial deadlines, ECF No. 330, to allow the parties to comply with this Order and complete discovery before filing any dispositive motions:

| | |
|---|---|
| Deadline to Complete Written Discovery: | May 17, 2022 |
| Deadline to Complete Third-Party Discovery: | May 31, 2022 |
| Deadline to Complete Depositions: | May 31, 2022 |
| Deadline to File Dispositive Motions: | June 14, 2022 |

All other provisions in the Amended Pretrial Order, ECF No. 139, and deadlines in the Order of March 17, 2022, ECF No. 330, shall remain in effect.

IV. Conclusion

The UVA Defendants' motion for protective order, ECF Nos. 344, 385, is hereby **GRANTED** for the reasons explained above and at the hearing on April 25, 2022.

**IT IS SO ORDERED.**

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTER: May 2, 2022

*Joel C. Hoppe*

Joel C. Hoppe
U.S. Magistrate Judge