IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, Plaintiff, | ) | Civil Action No. 3:19-cv-00054 |
| v. | ) | MEMORANDUM OPINION & ORDER |
| JAMES B. MURRAY, et al., Defendants. | ) | By: Joel C. Hoppe, United States Magistrate Judge |

This matter is before the Court on Plaintiff's "Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order." ECF No. 275. I previously denied the motion with respect to Plaintiff's proposed pretrial deadlines, *see* Pl.'s Am. Prop. Pretrial Order, ECF No. 320-1, at 2–9, and took under advisement his specific requests for ESI preservation-related discovery, *see* Pl.'s Am. Prop. Disc. Order, ECF No. 320-2, at 2–4 (Mar. 11, 2022).[1] Mem. Op. & Order of Mar. 23, 2022, ECF No. 333; Order of Mar. 17, 2022, ECF No. 330. In his discovery motion, Plaintiff asserts that the University of Virginia ("UVA") Defendants[2] failed to preserve certain ESI—namely Plaintiff's UVA email accounts, some emails sent by Defendant John Densmore, and video recordings of Plaintiff's interactions with various UVA personnel from November 14, 2018, through December 4, 2018—after Plaintiff allegedly made "implicit and explicit threats of litigation" during this same timeframe.[3] *See* Pl.'s Br. in Supp. 19 (arguing

[1] Pinpoint citations to documents filed on the electronic docket use the header page number generated by CM/ECF.

[2] "The UVA Defendants" refers to each named Defendant except Dr. Sara Rasmussen.

[3] In his reply brief, Plaintiff argued for the first time that the FOIA requests and emails that he sent to certain UVA employees in February 2019 and August 2019, respectively, were additional "triggering events" that should have put the UVA Defendants on notice that this litigation was imminent. *See* Pl.'s Reply Br. 2, 8, 17–20, ECF No. 296. Plaintiff did not explain why he failed to identify those additional communications in his opening brief. *See generally* Pl.'s Br. in Supp. 2, 19–20 (listing seven "triggering" events or communications between November 19, 2018, and December 4, 2018), ECF No. 276. Accordingly, I declined to consider them in determining the date on which the UVA Defendants' duty to preserve potentially relevant evidence arose. *See Clawson v. FedEx Ground Package Sys.*, 451 F. Supp.

that the UVA "Defendants had a duty to preserve . . . evidence based on numerous incidents and communications between November 19, 2018 and December 31, 2018"). He also asserts that Defendants "produced no emails from the account[s]" belonging to former UVA employees Defendant Sara Rasmussen and non-party Catherine Richard and that each person's "emails would have been deleted upon her departure" from the University. *Id.* at 4–5 (emphasis omitted).

Plaintiff's motion seeks a court order directing the UVA Defendants to produce several categories of ESI and to allow certain Defendants and non-party individuals to be deposed in depositions that would "not count against the limit on depositions." *See generally* Pl.'s Am. Prop. Disc. Order 2–4. More specifically, his amended proposed discovery order would require the UVA Defendants to:

1. Generate and produce a "User Lookup" report for each person listed in Exhibit A, ECF No. 320-3, at 2–6, "showing whether the [person's UVA] email account was deleted and—if so—when" it was deleted, Pl.'s Br. in Supp. 6. *See* Pl.'s Am. Prop. Disc. Order ¶ 1. Exhibit A lists 183 individuals currently or formerly associated with UVA and/or the UVA Health System. *See* Pl.'s Am. Prop. Disc. Order Ex. A, ECF No. 320-3, at 2–6.
2. Produce "copies of all emails sent to and from" Plaintiff's UVA academic account ("virginia.edu") and/or UVA medical center account ("mcc.virginia.edu") between October 24, 2018, and February 20, 2019. Pl.'s Am. Prop. Disc. Order ¶ 2.
3. Produce "copies of all emails on the 'virginia.edu' and 'mcc.virginia.edu' servers" between October 24, 2018, and February 20, 2019, "picked up by the search terms" listed in Exhibit B, ECF No. 320-4, at 2. Pl.'s Am. Prop. Disc. Order ¶ 3. Exhibit B lists search terms that would return documents specific to Plaintiff, such as his name and initials, as well as search terms that could return myriad irrelevant documents relating to other individuals, such as "evaluation," "girlfriend," and "panel discussion." *Id.* Ex. B, ECF No. 320-4, at 2.

---

3d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

4. Produce unredacted versions of "any preservation notices or email preservation requests sent by or on behalf of counsel for UVA and/or Defendants with respect to" Plaintiff. Pl.'s Am. Prop. Disc. Order ¶ 4.
5. Produce "video camera footage" depicting Plaintiff's interactions with UVA personnel on: (i) November 14, 2018; (ii) November 14–16, 2018; (iii) November 18, 2018; (iv) November 19, 2018; (v) November 28, 2018; (vi) November 30, 2018; and (vii) December 4, 2018. *Id.* ¶ 5. Further "provide a sworn statement describing the timing and circumstances" under which any such video footage was "delet[ed] and produce video footage for the most recent seven-day period for which they were [*sic*] available." *Id.* ¶ 6.
6. Produce "the documents, recordings, and other tangible thing[s] sought" in Plaintiff's February 2019 FOIA requests to UVA. *Id.* ¶ 7 (citing ECF No. 296-15).[4] Further "provide a sworn statement describing the timing and circumstances" under which any such documents, recordings, or tangible things were "delet[ed]." *Id.* ¶ 8.
7. Produce "audio recordings generated in connection with" Plaintiff's psychiatric evaluations on November 14, 2018, and November 19, 2018, "including the audio recording(s) that the Charlottesville General District Court ordered the University of Virginia Medical Center to preserve." *Id.* ¶ 9. Further "provide a sworn statement describing the timing and circumstances" under which any such audio recordings were "delet[ed]." *Id.* ¶ 10.

*See also* Pl.'s Br. in Supp. 9; Pl.'s Reply Br. 5, 28. Plaintiff also seeks to depose Defendant Densmore, Defendant Rasmussen, Defendant Melissa Fielding, "former University Counsel Lynne Fleming," and non-party Tabitha Enoch about "spoliation and preservation issues." Pl.'s Am. Prop. Disc. Order 4. He asks that those five dispositions, as well as the "January 26, 2022 Rule 30(b)(6) Deposition" of Erin Trost, the Information Security Manager at UVA Health

[4] The cited FOIA requests were directed to the UVA Police Department. *See* Pl.'s Reply Br. Ex. 15, ECF No. 296-15, at 2–5. Plaintiff requested "an opportunity to inspect or obtain copies of public records" showing "complete details" of certain police reports, bodycam footage, and/or 911 calls created on November 14, November 19, and November 28, 2018, *see id.* at 3, 5, 7, 13, 15, as well as information related to the No Trespass Order issued against Plaintiff on January 2, 2019, *id.* at 9, 11.

System, and the depositions of three more non-party individuals "shall not count against the limit on depositions," *id.*; *see also* Pl.'s Br. in Supp. 9 (noting that his proposed order would "exempt certain spoliation-related discovery from the limits on the length and number of depositions otherwise applicable"). *See* Fed. R. Civ. P. 30(a)(2)(A)(i), (d)(1) (providing that a "party must obtain leave of court" to depose a person if "the deposition would result in more than 10 depositions being taken under this rule" and the "parties have not stipulated to the deposition" and that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours"); Joint Disc. Plan ¶ 1(C) ("Unless otherwise agreed by the Parties or upon Order of the Court, each deposition shall be limited to a maximum of one (1) day of seven (7) hours of actual testimony. . . . Unless otherwise agreed by the parties or upon Order of the Court, Plaintiff and Defendants collectively may not take more than ten (10) depositions."), ECF No. 145.

The UVA Defendants concede that, pursuant to UVA's "email retention policy," Plaintiff's academic and medical center email accounts were "permanently deleted" on or around December 31, 2018, thirty days after the UVA Medical School Registrar's Office sent notice of Plaintiff's suspension on November 29, 2018. *See* UVA Defs.' Br. in Opp'n 6, ECF No. 290-15; *see also* Pl.'s Br. in Supp. Ex. C, Rough Draft of UVA Defs.' Rule 30(b)(6) Dep. Tr. 28–29, 32–36, 38, 40–43 (Jan. 26, 2022) ("UVA Defs.' Rule 30(b)(6) Dep. Tr."), ECF No. 280.[5] The cited

[5] UVA's Rule 30(b)(6) designee testified that there were separate procedures initiated by the "HR system" for deleting and/or transferring an employee's email account(s) after he or she separated from the University or the UVA Health System. *See* UVA Defs.' Rule 30(b)(6) Dep. Tr. 40–42, 66–67. She also testified that it was possible to generate a report showing the timestamps of when a former employee's email account was "created and then disabled and then ultimately deleted," *id.* at 42, but only "if they ha[d] a UVA Health System account," *id.* at 43. *See generally id.* at 17–18, 35–36, 48–56, 67–69, 83–84 (distinguishing between "academic" email accounts and "health system" email accounts). Plaintiff's counsel did not ask the designee any specific questions about the status of Rasmussen's or Richard's email accounts. *See id.* at 41–42 (Q. "If an employee of CAPS such as [C]atherine Richard left UVA's employ, from whom would the notice to deactivate her account come?" A. "If that employee was listed in our Workday system, it would have come from HR. . . . Workday is the HR system for all employees within the [U]niversity, and that includes . . . UVA Health.").

video recordings, *see* Pl.'s Br. in Supp. 23, were deleted after seven days in accordance with UVA's policy on retention of security camera footage, *see* UVA Defs.' Br. in Opp'n 6. The UVA Defendants argue that they did not have a duty to preserve any of this ESI in the fall of 2018, however, because they could not reasonably have anticipated this litigation until Plaintiff filed his pro se complaint on September 16, 2019. *See generally* UVA Defs.' Br. in Opp'n 5–21.

*

Rule 37(e) of the Federal Rules of Civil Procedure provides the legal framework for evaluating claims that a party failed to preserve electronically stored information ("ESI") for another's use in litigation. *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1208924, at *4 (W.D. Va. Mar. 30, 2021) (citing *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017)). Under this subsection,

> a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); *see* Fed. R. Civ. P. 37(e). While "Rule 37(e) displaces reliance" on the traditional spoliation framework where the lost information was stored electronically, "it is grounded in the common law 'duty to preserve relevant information when litigation is reasonably foreseeable.'" *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020) (Moon, J.) (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *accord Steves & Sons*, 327 F.R.D. at 104 ("This [traditional spoliation] analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve."). "Thus, whether ESI should have been preserved . . . under Rule 37(e) turns chiefly on two questions underlying the [common law] duty to preserve: 1) whether the party should have reasonably

anticipated litigation, and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation." *Johns*, 503 F. Supp. 3d at 462 (citing *Steves & Sons*, 327 F.R.D. at 105); *accord Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) ("The duty to preserve evidence includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." (internal quotation marks omitted)).

"Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). This duty "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.2d 583, 591 (4th Cir. 2001). The point when "litigation becomes reasonably foreseeable 'is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.'" *Johns*, 503 F. Supp. 3d at 465 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). "This is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Id.* (quoting *Micron Tech.*, 645 F.3d at 1320). A court determining whether litigation was "reasonably foreseeable" to a party should evaluate pre-litigation statements and conduct in the factual context in which they occurred, *see Steves & Sons*, 327 F.R.D. at 106–07, keeping in mind that "litigation is an 'ever-present possibility' in our society," *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007) (quoting *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992)). Thus, while a party should take steps to find and safeguard potentially relevant materials "after receiving unequivocal notice of impending

litigation," the duty to preserve those materials also "should require more than a mere possibility of litigation." *Cache La Poudre Feeds*, 244 F.R.D. at 621.

In the Fourth Circuit, "the duty seems to begin 'somewhere between knowledge of the dispute and direct, specific threats of litigation'" to resolve the same dispute. *Steves & Sons*, 327 F.R.D. at 106 (quoting *Huggins v. Prince George's Cnty.*, 750 F. Supp. 2d 549, 560 (D. Md. 2010)). For example, district courts "have found that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Steves & Sons*, 327 F.R.D. at 106 (citing *In re Ethicon, Inc. v. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D. W. Va. 2014)). "Vague" and "ambiguous statements" alluding to possible or "hypothetical" litigation, on the other hand, are "insufficient to trigger the duty to preserve" information, *Steves & Sons*, 327 F.R.D. at 106, that could be relevant to issues that might arise in such litigation. *Cf. Blue Sky Travel & Tours v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015) (district court's finding that "once litigation began, [defendant] had a duty to stop its document retention policies 'and to preserve *all* documents because you don't know what may or may not be relevant'" was abuse of discretion "because a party is not required to preserve all its documents but rather only documents that the party knew or should have known were, or could be, relevant to the parties' dispute" (citing *Turner*, 736 F.3d at 282)). Additionally, statements that "identif[y] a dispute but express[] an invitation to discuss it or otherwise negotiate," without "openly threaten[ing] litigation," generally do not trigger "the duty to preserve evidence relevant to that dispute" because they do not provide objective "notice that [such] litigation is reasonably foreseeable." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009) (citing *Cache La Poudre Feeds*, 244 F.R.D. at 621–24).

**

On March 23, 2022, I issued a Memorandum Opinion & Order holding that "Plaintiff's filing of his pro se complaint on September 16, 2019, was the first act that triggered the UVA Defendants' obligation to take reasonable steps to preserve ESI that UVA 'knew or should have known were, or could be, relevant to the parties' dispute[]' at issue in this litigation." Mem. Op. & Order of Mar. 23, 2022, at 8 (emphasis omitted) (quoting *Blue Sky Travel & Tours*, 606 F. App'x at 698) (citing *Johns*, 503 F. Supp. 3d at 462–65; Fed. R. Civ. P. 37(e)); *see generally id.* at 5–6 ("In his opening brief, Plaintiff cites seven [prelitigation] incidents and communications . . . where he purportedly made 'implicit and explicit threats of litigation' sufficient to trigger the UVA Defendants' duty to preserve ESI that has been lost. Having reviewed the exhibits documenting each cited occurrence, I conclude that Plaintiff's threats of litigation, if any, were too vague or ambiguous to expect that a reasonable party in the same factual circumstances would have reasonably foreseen litigation over Plaintiff's suspension and eventual expulsion from UVA Medical School." (cleaned up)). Plaintiff has appealed my ruling to the presiding District Judge. ECF No. 347.

As the case stands, however, the UVA Defendants were not obligated to preserve Plaintiff's UVA email accounts or the cited video footage when that ESI was deleted consistent with UVA's standard retention polices in November and December 2018. Mem. Op. & Order of Mar. 23, 2022, at 8. Accordingly, Plaintiff's requests that the UVA Defendants be directed to produce the ESI described in **paragraphs 2, 3, 5, 7, and 9** of his proposed discovery order, Pl.'s Am. Prop. Disc. Order ¶¶ 2, 3, 5, 7, 9, are **DENIED without prejudice** because he has not shown this ESI "should have been preserved in anticipation of litigation,"[6] Fed. R. Civ. P. 37(e).

---

[6] Paragraph 9 seeks "the audio recordings generated in connection with" Plaintiff's psychiatric evaluations on Nonmember 14, 2018, and November 19, 2018, "including the audio recording(s) that the

*See Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.*, No. 6:20cv54, 2022 WL 518910, at *3 (W.D. Va. Feb. 18, 2022) (Moon, J.) ("The movant has the burden of proving all four of the predicate elements of Rule 37(e).") (quoting *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17cv1019, 2020 WL 7133806, at *3 (M.D.N.C. Dec. 4, 2020) (cleaned up)). His related proposal that the UVA Defendants submit sworn statements describing the circumstances under which any such ESI was lost *before* September 16, 2019, *see* Pl.'s Am. Prop. Disc. Order ¶¶ 6, 8, 10, is "outside the scope [of discovery] permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii), because that information is of no "importance . . . in resolving the issues" before this Court and "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). *See In re Verizon Wireless*, 2019 WL 4415538, at *6 (D. Md. Sept. 16, 2019) (relying on Rule 26(b)(2)(C)(iii) to quash a subpoena that did "not satisfy the [Rule's] proportionality concerns as the 'proposed discovery outweigh[ed] its likely benefit'"). Accordingly, the requests in **paragraphs 6, 8, and 10** of Plaintiff's proposed discovery order, Pl.'s Am. Prop. Disc. Order ¶¶ 6, 8, 10, are **DENIED without prejudice**.

Separately, Plaintiff has failed to show that any potentially relevant emails sent from Densmore's UVA account that might have been deleted *after* Plaintiff filed his pro se complaint

---

Charlottesville General District Court ordered the University of Virginia Medical Center to preserve." *Id.* ¶ 9. Plaintiff does not say whether these unidentified "audio recordings" capture something different than, or in addition to, the video footage of the November 14 and November 19 psychiatric evaluations that the UVA Defendants have already produced. *See* Pl.'s Reply Br. 9 n.12. Nor does he indicate when the Charlottesville General District Court ordered UVA Medical Center to preserve the audio recordings. In November 2021, I issued an Order granting Defendants' emergency motion to compel and giving *Plaintiff* three days to "file requests, pursuant Va. Code § 37.2-818, with the Charlottesville General District Court and the Petersburg General District Court for those courts' complete files, including all . . . recordings, omitting nothing, relating to involuntary commitment proceedings for Plaintiff in November 2018," and directing *Plaintiff*, "[w]ithin three days of receiving the above information," to produce that information *to Defendants* under the protective order. Order of Nov. 19, 2021, at ¶¶ 1–2, ECF No. 245. Plaintiff does not explain why, at least under my prior discovery order, it is now Defendants' responsibility to produce any such audio recordings. *See* Pl.'s Br. in Supp. 12 n.14; Pl.'s Am. Prop. Disc. Order ¶¶ 9–10.

on September 16, 2019, but *before* Densmore received University counsel's preservation notice on or around November 7, 2019, *see* Pl.'s Br. in Supp. 7–8; UVA Defs.' Rule 30(b)(6) Dep. Tr. 19–20, 50–53, are "lost" within the meaning of Rule 37(e).[7] "Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons*, 327 F.R.D. at 107. For example, emails would not be "lost" under Rule 37(e) "when one custodian deletes them from his mailbox but [copies] remain available in the records of another custodian." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (citing Fed. R. Civ. P. 37(e)). Plaintiff has copies of his own email exchanges with Densmore "dated November 13–14, 2018 and November 18, 2018." Pl.'s Br. in Supp. 7 n.9, which he produced in discovery. Thus, those emails "are not 'lost' in any sense of the word." *Steves & Sons*, 327 F.R.D.at 107.

The fact that Plaintiff purportedly "has no way of knowing . . . what other emails Dean Densmore exchanged *with others* during the time period in question were also deleted," Pl.'s Br. in Supp. 7 n.9 (emphasis added), does not necessarily mean those emails are "lost," Fed. R. Civ. P. 37(e). Plaintiff's own exhibits document that the UVA Defendants have produced dozens of relevant emails in response to his discovery requests. The emails exchanged among UVA Medical School personnel tend to show that multiple key players in this litigation, including Densmore, Randolph Canterbury, Christine Peterson, and Sean Reed, were copied on correspondence related to Plaintiff. *See, e.g.*, Pl.'s Br. in Supp. 6 n.11 (citing *id.* Ex. F, ECF No. 280-3); Pl.'s Br. in Supp. Ex. F, Email from C. Peterson to J. Densmore & S. Reed (Oct. 28,

[7] In January 2022, UVA's Rule 30(b)(6) designee testified that Densmore routinely "cleaned out" his inbox by deleting old emails, "[b]ut once he received the preservation notice from [UVA's] legal counsel, any emails related to this case, he did not clean out." UVA Defs.' Rule 30(b)(6) Dep. Tr. 19–20; *see* UVA Defs.' Br. in Opp'n 6–7. UVA's Office of General Counsel sent a comprehensive and detailed litigation hold notice to Densmore and other UVA Medical School personnel on November 7, 2019. ECF No. 334-4, at 1–5 (*ex parte* sealed); *see* ECF No. 280-4, at 6 (redacted).

2018), ECF No. 280-3, at 10; *id.*, Email from S. Reed to J. Densmore & C. Peterson (Oct. 28, 2018), ECF No. 280-3, at 4; *id.*, Email from C. Peterson to R. Canterbury, J. Densmore, L. Thomas & T. Enoch (Dec. 13, 2019), ECF No. 280-3, at 8; *id.*, Emails from C. Peterson & J. Tucker to R. Canterbury & J. Densmore (Dec. 3, 2019), ECF No. 280-3, at 8–9; Pl.'s Br. in Supp. Ex. D, Email from J. Densmore to R. Canterbury, A. Groves, & L. Fleming (Nov. 27, 2018), ECF No. 280-1, at 2; Pl.'s Reply Br. Ex. 13, Email from R. Canterbury to J. Densmore & L. Thomas (Dec. 4, 2018), ECF No. 301-4. Plaintiff does not suggest that Densmore's "other" deleted emails, if any, would be "irretrievable" from another recipient's account, *Steves & Sons*, 327 F.R.D. at 107. *See generally* Pl.'s Br. in Supp. 7 & n.9, 16; Pl.'s Reply Br. 10; *cf.* UVA Defs.' Rule 30(b)(6) Dep. Tr. 55–56 (Q. "[I]f individuals still had Health System email accounts or Academic System accounts, you could search emails sent from [Plaintiff's deleted] accounts to these individuals, correct?" A. "That is correct."). His proposal that the UVA Defendants conduct additional "forensic examination and searches of other custodians' accounts," Pl.'s Reply Br. 24, solely to determine if Densmore even deleted "other emails," Pl.'s Br. in Supp. 7 n.9; *see also id.* at 16; Pl.'s Reply Br. 28, is not proportional to the needs of the case because that information is of little, if any, "importance . . . in resolving the issues" before this Court and "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1)(C)(iii). Accordingly, those requests are **DENIED with prejudice**. Plaintiff's counsel may question Densmore about this topic at his fact-witness deposition to the extent consistent with Rule 26(b)(1) and Rule 30(a), (c), and (d). *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that[] the discovery sought . . .

can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

This leaves Plaintiff's other requests for discovery into the UVA Defendants' ESI-preservation efforts on and after September 16, 2019, including his request for unredacted copies of University counsel's preservation notices, Pl.'s Am. Prop. Disc. Order ¶ 4. *See also id.* ¶ 1 ("Generate and produce to Plaintiff's counsel a 'User Lookup' report for each of the [183] custodians identified in Exhibit A"); *id.* at 4 (requests related to depositions). To resolve those matters, I found it necessary to review the contents of preservation notices that UVA's OGC sent to certain UVA employees in November 2019 and May 2021, which were mentioned in both parties' briefs for this Motion. Mem. Op. & Order of Mar. 23, 2022, at 8–9. The UVA Defendants also identified the November 2019 notices in their privilege log and produced "heavily redacted" copies of the notices to Plaintiff's counsel. Pl.'s Br. in Supp. 7–8; *see* Fed. R. Civ. P. 26(b)(5). As directed, the UVA Defendants' counsel filed *ex parte* and under seal six preservation notices sent in early November 2019, as well as related internal emails sent in May 2021. ECF Nos. 334 to 334-7. Each notice is labeled "Confidential Attorney-Client Privileged Communication Attorney Work Product Protection." ECF Nos. 334-3, 334-4, 334-5, 334-5, 334-6, 334-7; *see* Fed. R. Civ. P. 26(b)(5). The Court finds those designations are proper given that the documents "were created and sent from in house counsel . . . to convey specific legal advice on document preservation" in this litigation. *Proa v. NRT Mid-Atl., Inc.*, Civ. No. AMD-05-2157, 2008 WL 11363286, at *27 (D. Md. June 20, 2008). Accordingly, Plaintiff's request that the UVA Defendants give his attorney "unredacted versions" of those notices or related internal communications, Pl.'s Am. Prop. Disc. Order ¶ 4; *see* Pl.'s Br. in Supp. 9 (citing *Thomas v. Cricket Wireless, LLC*, No. 19cv7270, 2021 WL 1017114, at *2 (N.D. Cal. Mar. 16, 2021)), is

**DENIED with prejudice**. *See Proa*, 2008 WL 11363286, at *27 (concluding that "litigation hold" notices prepared by defendant's in-house counsel and sent to defendant's employees "convey[ing] specific legal advice on document preservation" in underlying litigation were protected by both attorney-client privilege and attorney work-product doctrine); *cf. Thomas*, 2021 WL 1017114, at *4–5 (granting plaintiff's motion to compel production of defendant's litigation hold notices only after defendant's Rule 30(b)(6) designee violated prior court order directing her to testify to the "basic details surrounding" the notices, including "when and to whom [they] were given," "what kinds and categories of information and data [defendant's] employees were instructed to preserve and collect," and "what specific actions they were instructed to take to that end").

Next, Plaintiff asks that the UVA Defendants be required to "[g]enerate and produce . . . a 'User Lookup' report" for each of 183 individuals listed in Exhibit A to his proposed discovery order, Pl.'s Am. Prop. Disc. Order ¶ 1, and to make certain Defendants and non-parties available for depositions that "shall not count against the limit on depositions," *id.* at 4. Plaintiff explains that his proposed "User Lookup" report would show "whether the [person's UVA] email account was deleted and—if so—when" it was deleted. Pl.'s Br. in Supp. 6. *But see* UVA Defs.' Rule 30(b)(6) Dep. Tr. 43 (Q. "Would it be possible to generate a similar report for . . . UVA employees who are no longer employed there?" A. "It would, if they have a UVA Health System account."). In his opening brief, however, Plaintiff identified only two former UVA employees—Defendant Sara Rasmussen and non-party Catherine Richard—whose work email accounts (1) might have stored relevant communications, and (2) "would have been deleted upon her departure" unless UVA's OGC sent an "email preservation request" before her separation date. Pl.'s Br. in Supp. 6–7. *But see* UVA Defs.' Rule 30(b)(6) Dep. Tr. 65–66 (discussing relevant

UVA policy providing that, "No later than 30 days following the termination date, separated employee's supervisors/manager may request that the content of the [email] folders be transferred to such supervisor/manager's account"). Plaintiff asserts that Rasmussen left UVA Medical School "around May 2020," Pl.'s Reply Br. Ex. 8 (summary chart), ECF No. 296-8, at 2 ln. 5, and he implies that her email account was permanently deleted when she left, Pl.'s Br. in Supp. 6–7. He does not provide any information about when Richard left UVA, although he suggests that it was sometime after he filed suit on September 16, 2019. Pl.'s Br. in Supp. 6–7; *see* Pl.'s Reply Br. 19 ("On August 8, 2019, [Plaintiff] called Catherine Richard at CAPS . . . ."); Pl.'s Reply Br. Ex. 8, ECF No. 296-8, at 4 ln. 21; *id.* Ex. 21 (Richard's note in Plaintiff's CAPS file (edited Sept. 6, 2019)), ECF No. 296-21, at 2.

The UVA Defendants do not dispute that they "produced no emails from," Pl.'s Br. in Supp. 6 (emphasis omitted), these two former employees' accounts. *See generally* Defs.' Br. in Opp'n 5–7. Even so, Plaintiff does not suggest that Rasmussen's or Richard's relevant emails, if any ever existed, are "irretrievable from another source," *Steves & Sons*, 327 F.R.D. at 107, such as a current UVA employee who received those emails, *see CAT3*, 164 F. Supp. 3d at 497; *cf. Okezie v. Prince George's Cnty., Md.*, Civ. No. DKC-13-168, 2014 WL 1429183, at *2 (D. Md. Apr. 11, 2014) ("The threshold issue in any motion for spoliation is that the items purportedly destroyed or lost actually existed. . . . A party must prove, not simply believe, that evidence was destroyed or suppressed."). *See, e.g.*, UVA Defs.' Rule 30(b)(6) Dep. Tr. 55–56 (Q. "[I]f individuals still had Health System email accounts or Academic System accounts, you could search emails sent from [permanently deleted] accounts to these individuals, correct?" A. "That is correct."). On April 25, 2022, counsel for the UVA Defendants represented in open court that they have produced all relevant emails from each named Defendant's "official" UVA account.

*See* Mem. Op. & Order of May 2, 2022, at 20, ECF No. 397. Certainly, if Rasmussen or Richard had sent, received, or been copied on an email concerning information in this case, that email would exist in another person's account, likely someone who played a more central role in the events underlying Plaintiff's First Amendment retaliation claim. Email messages do not exist in a vacuum, and Plaintiff has not shown that any email involving Rasmussen or Richard that has not already been produced ever existed. *See Okezie*, 2014 WL 1429183, at *2–3.

Moreover, Plaintiff's proposal that the UVA Defendants run additional "User Lookup" reports solely to determine whether and, if so, when Rasmussen's and Richard's UVA accounts were deleted, *see* Pl.'s Br. in Supp. 6–7, is not proportional to the needs of the case because that information is of little, if any, "importance . . . in resolving the issues" before this Court, Fed. R. Civ. P. 26(b)(1), and Plaintiff "had ample opportunity to obtain th[is] information by discovery in the action," Fed. R. Civ. P. 26(b)(2)(C)(ii), including at the UVA Defendants' Rule 30(b)(6) deposition in January 2022. His counsel did not ask the designee any specific questions about the status of Rasmussen's or Richard's email accounts. *See* UVA Defs.' Rule 30(b)(6) Dep. Tr. 40–43. Plaintiff's proposal that the UVA Defendants run "User Lookup" reports for the 180+ other individuals listed in Exhibit A—many of whom his attorney knows are still associated with the University and therefore have active UVA email accounts—is unduly burdensome and not likely to produce any useful information at this point in the litigation. Fed. R. Civ. P. 26(g)(1)(B)(ii)–(iii). Accordingly, those requests, Pl.'s Am. Prop. Disc. Order ¶ 1, are **DENIED with prejudice**. Fed. R. Civ. P. 26(b)(2)(C)(ii)–(iii); *cf.* Mem. Op. & Order of May 2, 2022, at 19–20 (modifying similarly broad discovery requests propounded by Plaintiff to include only "named Defendants" and a few nonparty individuals). Plaintiff's counsel may question Rasmussen and Richard about

this topic at their fact-witness depositions to the extent consistent with Rule 26(b)(1) and Rule 30(a), (c), and (d). *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Finally, Plaintiff proposes that he be allowed to take ten extra depositions that "shall not count against the limit on depositions," Pl.'s Am. Prop. Disc. Order 4, including the parties' agreed-upon "limits on the length and number of depositions otherwise applicable," Pl.'s Br. in Supp. 9; *see* Joint Disc. Plan ¶ 1(C) (stipulating that unless the parties agree or the court orders otherwise, "Plaintiffs and Defendants collectively may not take more than ten (10) depositions," and that "each deposition shall be limited to a maximum of one (1) day of seven (7) hours of actual testimony"). He contends that these depositions are "necessary to determine the extent of the [alleged] spoliation," Pl.'s Br. in Supp. 27, as well as "to try to reduce the [alleged] prejudice to Plaintiff and to determine the extent to which it would be appropriate to afford less drastic relief than adverse inference jury instructions against Defendants at trial," *id.* at 9; *see also* Pl.'s Reply Br. 5. *See generally* Fed. R. Civ. P. 37(e)(1), (2)(B) (providing that, if Rule 37(e)'s threshold requirements are met, "the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . (B) instruct the jury that it may or must presume the information was unfavorable to the party"); *Sines v. Kessler*, No. 3:17cv72, 2021 WL 4943742, at *3 (W.D. Va. Oct. 22, 2021) ("If the movant makes the [four-part] threshold showing under Rule 37(e), the court must then consider whether the movant has established one of two options that would permit imposing" either a remedy under Rule 37(e)(1), or a harsher sanction under Rule 37(e)(2)).

I disagree. First, while Plaintiff did not satisfy Rule 37(e)'s threshold requirements with respect to the ESI at issue in this motion, I have allowed his attorney to raise the topic at fact-witness depositions, which will count against the parties' stipulated limit on depositions, to the extent consistent with the discovery rules. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff provides no reason at all to "exempt," Pl.'s Br. in Supp. 9, any deposition from the parties' agreement that *ten* depositions *total* will be taken in this action, and that each will be "limited to a maximum of one (1) day of seven (7) hours of actual testimony," Joint Disc. Plan ¶ 1(C); *see* Fed. R. Civ. P. 30(a)(2)(A), (d)(1). *Cf. Galgano v. Cnty. of Putnam*, No. 16cv3572, 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021) ("The purpose of Rule 30(a)(2)(A) is to enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery." (cleaned up)); Fed. R. Civ. P. 30(a)(2)(A) advisory committee's note to 1993 amendment ("A second objective [of Rule 30(a)(2)(A)] is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case.").

Second, the essence of Plaintiff's request—that his attorney should get free rein to depose UVA's former in-house counsel, three Defendants, and one person who is not a party to this litigation about suspected "spoliation and preservation issues," *see* Pl.'s Am. Prop. Disc. Order 4—raises serious concern that this proposed discovery falls outside the scope permitted by Rule 26(b). *See Topline Sols., Inc. v. Sandler Sys., Inc.*, No. ELH-09-3102, 2017 WL 1230817, at *5 (D. Md. Apr. 3, 2017) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)); *Riddick v. United States*, No. 2:04cv278, 2005 WL 1667757, at *7 (E.D. Va. July 6, 2005) ("The discovery process is not a fishing expedition, and a [party] is not entitled to discovery simply in hope that something will

turn up." (internal quotation marks omitted)); *Sines v. Kessler*, No. 3:17cv72, 2019 WL 3767475, at *13 (W.D. Va. Aug. 9, 2019) (allowing plaintiffs' counsel to question three defendants in depositions "devoted exclusively to [their] conduct in pretrial discovery, including [their] efforts to preserve any documents, information, or materials that are potentially relevant to this litigation" was "necessary to address the significant deficiencies" in each defendant's written discovery responses, including defendants' own admissions that they did not do anything to locate or preserve potentially relevant information after being served with the complaint). Accordingly, Plaintiff's requests related to the depositions, Pl.'s Am. Prop. Disc. Order 4, are **DENIED with prejudice**.

***

For the foregoing reasons, Plaintiff's "Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order," ECF No. 275, is hereby **DENIED in its entirety**. The specific requests in Plaintiff's amended proposed discovery order, ECF No. 320-2, are resolved as follows:

1. Paragraph 1 is denied **with prejudice**;
2. Paragraphs 2, 3, 5, 6, 7, 8, 9, and 10, are denied **without prejudice**;
3. Paragraph 4 is denied **with prejudice**; and
4. All requests related to depositions are denied **with prejudice**.

**IT IS SO ORDERED.**

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTER: May 12, 2022

Joel C. Hoppe
U.S. Magistrate Judge