# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KIERAN RAVI BHATTACHARYA,  *Plaintiff,*  v.  JAMES B. MURRAY, JR., *et al.*,  *Defendants.* | Case No. 3:19-cv-54  MEMORANDUM OPINION  Judge Norman K. Moon |

## I. Introduction

This memorandum opinion provides the Court's reasoning on four pretrial motions argued by the parties at a hearing on June 15, 2022—two appeals of Magistrate Judge Hoppe's decisions on Plaintiff's motions alleging that Defendants spoliated evidence (both of which Judge Hoppe denied) (Dkt. 347, 418), one motion to dismiss under Rule 12(b)(6) filed by Defendant Sara K. Rasmussen (Dkt. 345), and one motion for judgment on the pleadings filed by the UVA Defendants under Rule 12(c) (Dkt. 350).

## II. Appeals of Judge Hoppe's Decisions on Plaintiff's Spoliation Motions

Plaintiff has filed two appeals of Judge Hoppe's decisions on Plaintiff's motions for spoliation sanctions, one (Dkt. 347) relating to alleged spoliation occurring primarily before Plaintiff filed his *pro se* complaint, and one (Dkt. 418) relating to alleged spoliation occurring after Plaintiff filed his complaint.

The standard for a district judge reviewing a magistrate judge's order in a non-dispositive matter, as here, is whether the magistrate judge's decision was "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Spoliation of electronically stored information (ESI) is governed by Federal Rule of Civil Procedure 37(e) and the inherent authority of the federal courts. The basic questions in deciding whether spoliation has occurred are (1) whether there was a duty to preserve and (2) whether evidence was destroyed. *Steves & Sons*, 327 F.R.D. at 105. In determining whether a party had a duty to preserve ESI, "a court must consider two questions: (1) whether the defendants should have reasonably anticipated litigation; and (2) whether the defendants reasonably should have known that the lost ESI . . . might be relevant to that litigation." *Id.*

### A.  Alleged Pre-Filing Spoliation

Plaintiff's first spoliation motion (Dkt. 275) relates to certain ESI that Plaintiff alleges Defendants failed to preserve prior to the time Plaintiff filed his *pro se* complaint. Namely, Plaintiff alleges that Defendants failed to preserve Plaintiff's UVA email accounts, some emails sent by Defendant John Densmore, and video recordings of Plaintiff's interactions with UVA staff from November 14, 2018, through December 4, 2018. (Dkt. 276). Plaintiff argues that Defendants had a duty to preserve that evidence because they reasonably should have anticipated litigation after he made "implicit and explicit threats of litigation" around the time he was dismissed from UVA's medical school. (Dkt. 276 at 18)

Defendants concede that they deleted the evidence in question pursuant to UVA's policies on email retention and retention of video recordings but argue that they had no duty to preserve the evidence because they could not have reasonably anticipated this litigation until Plaintiff filed his *pro se* complaint on September 16, 2019. (Dkt. 383 at 6–7).

In his motion before Judge Hoppe, Plaintiff alleged that there were seven "incidents and communications" between November 19, 2018, and December 4, 2018, where Plaintiff purportedly made "implicit and explicit threats of litigation" sufficient to trigger Defendants' duty to preserve ESI. (Dkt. 276 at 17–18). He has since expanded that number to twelve in his appeal. (Dkt. 347 at 4). These alleged triggering events included Plainitff's disciplinary meetings with UVA medical school administrators, his psychiatric evaluations, various telephone calls and email exchanges with UVA administrators and faculty, his contact with the UVA police department, and his FOIA requests relating to his disciplinary proceedings. (*Id.* at 4–7).

In a thorough and well-reasoned opinion, Judge Hoppe held that none of these events triggered Defendants' duty to preserve evidence. (Dkt. 333). Judge Hoppe's opinion was neither clearly erroneous nor contrary to law. Indeed, the duty to preserve evidence only arises when there have been "direct, specific threats of litigation." *Steves & Sons*, 327 F.R.D. at 106 (quoting *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 560 (D. Md. 2010)). "Vague" and "ambiguous statements" alluding to possible or "hypothetical" litigation, on the other hand, are "insufficient to trigger the duty to preserve" information. *Id.* There were no such direct, specific threats of litigation here, much less reasonable ones, given that Plaintiff widely and vaguely threatened to sue many individuals during the period in question. (*See* Dkt. 347 at 4–7). Although Plaintiff might have made isolated comments about "hiring lawyers" and that UVA was "violating his rights" (Dkt. 276 at 3), those statements were too ambiguous to trigger Defendants' duty to preserve when considering the totality of the circumstances.

B.  Alleged Post-Filing Spoliation

Plaintiff also alleges that Defendants failed to preserve ESI after he filed his *pro se* complaint, which triggered Defendants' duty to preserve. (Dkt. 418). Plaintiff alleges that

3

Defendants deleted certain emails relevant to this case after that triggering event. In another thorough opinion, Judge Hoppe rejected Plaintiff's arguments and found that Plaintiff failed to make a threshold showing that Defendants failed to preserve ESI under Rule 37(e) because the ESI was not "lost." (Dkt. 410). The gist of Judge Hoppe's opinion was that it was unclear in the record whether Defendants had deleted certain email accounts as part of UVA's routine retention policy for departing employees, but even if they had (1) the emails in question were still retrievable from other email accounts, and (2) it was not clear whether any other emails unretrievable from other email accounts even existed. (Dkt. 333 at 8–18). Judge Hoppe naturally concluded, then, that Plaintiff had not met his burden to show that ESI was "lost" within the meaning of Rule 37(e). (*Id.*). Judge Hoppe granted Plaintiff a limited remedy by permitting Plaintiff to question certain fact witnesses about the alleged spoliation in their depositions. (*Id.* at 15, 17). But Judge Hoppe declined to allow Plaintiff to depose extra fact witnesses, holding that the request would exceed the bounds of permissible discovery under Rule 26(b). (*Id.* at 17).

There is no clear error in Judge Hoppe's decision.

Plaintiff also requests discovery on certain materials that Judge Hoppe as ruled covered by attorney-client privilege as part of the motion (*see* Dkt. 333 at 12–13), including unredacted versions the preservation notices that UVA sent to the individual Defendants (*see* Dkt. 418 at 12), and there is no clear error with respect to that decision either.

### III. Defendant Rasmussen's Motion to Dismiss

The third motion at this hearing is a motion to dismiss under Rule 12(b)(6) by Defendant Sara K. Rasmussen (Dkt. 345) who is the only defendant represented by her own counsel, independent of the defendants represented collectively (the UVA Defendants). Rasmussen argues that the Court should dismiss the claims against her because the Second Amended

4

Complaint does not plausibly allege that she engaged in First Amendment retaliation against Plaintiff. (Dkt. 346).

The Court will indeed dismiss the claims against Rasmussen because the Second Amended Complaint alleges no facts that plausibly establish that Rasmussen was part of the alleged retaliation against Bhattacharya—specifically, the Complaint does not allege that Rasmussen was involved in any of the events leading to Bhattacharya's dismissal from UVA after the microaggression panel itself.

After the Court's previous order granting Defendants' motion to dismiss, one claim remains in this case—a First Amendment retaliation claim. (*See* Dkt. 129). A plaintiff claiming First Amendment retaliation must demonstrate that: "(1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Davison v. Rose*, 19 F.4th 626, 636 (4th Cir. 2021) (cleaned up).

First, Rasmussen's alleged actions during the microaggression panel itself could not form the basis of a First Amendment retaliation claim. The microaggression panel was a limited public forum, i.e., one "which the government has opened for expressive activity to the public, or some segment of the public" through "purposeful public action" that is "intend[ed] to make the property generally available." *Goulart v. Meadows*, 345 F.3d 239, 249 (4th Cir. 2003) (noting that "[u]niversity meeting facilities" which are "open for use for student groups" qualify as limited public fora) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998)). The Second Amended Complaint alleges that Bhattacharya asked four questions over about three minutes to the panel before Rasmussen attempted to allow another attendee to ask a question. (Dkt. 335 at ¶¶ 67–73). An official overseeing a limited public forum "is justified in limiting its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve civility and

5

decorum necessary to further the forum's purpose of conducting public business." *Steinburg v. Chesterfield City Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008). The official "may 'cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner. . . .'" *Liggins v. Clarke Cnty. School Bd.*, No. 5:09-cv--77, 2010 WL 3664054 at *7 (W.D. Va. Sept. 17, 2010) (Conrad, J.) (quoting *Steinburg*, 527 F.3d at 385) (other citations omitted). Rasmussen's actions alleged in the Second Amended Complaint easily satisfy that standard; as alleged, she did not cut Bhattacharya off until he had asked four questions over three minutes, at which point she asked if another student wanted to ask a question.

Further, the Second Amended Complaint alleges no identifiable "retaliation" at the microaggression panel. In the Fourth Circuit, the test for whether there has been actionable retaliation under the First Amendment is whether "a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006). Only certain actions are actionable retaliation because "[n]ot every . . . restriction . . . is sufficient to chill the exercise of First Amendment rights." *The Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (citation omitted). Rasmussen allowing Bhattacharya to speak for several minutes before moving on to another attendee's question could not possibly constitute retaliatory action under that standard.

Therefore, Bhattacharya cannot make out a First Amendment retaliation claim against Rasmussen for her actions taken at the microaggression panel itself.

Nor can he make out a retaliation claim against Rasmussen for any events that occurred after the microaggression panel, because the Second Amended Complaint contains no factual allegations relating to Rasmussen following the panel. The Second Amended Complaint fails to allege any non-speculative facts suggesting that Rasmussen had any role in the proceedings that led to Bhattacharya's dismissal from UVA. The fact that Rasmussen played some role in the event in which

Bhattacharya claims protected speech does not make her liable for the later allegedly retaliatory conduct of other defendants. A plaintiff alleging First Amendment retaliation under § 1983 cannot simply make general allegations that a group of defendants violated his constitutional rights. Rather, he must "affirmatively show[ ] that the [defendant] acted personally in the deprivation of plaintiff's rights." *Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480, 500 (E.D. Va. 2020) (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). He has not done that with Rasmussen.

Therefore, the Court will grant Rasmussen's motion to dismiss.

### IV.  UVA Defendants' Motion for Judgment on the Pleadings

The fourth and final motion the Court heard argument on at this hearing was the UVA Defendants (i.e., all Defendants other than Rasmussen's) motion for judgment on the pleadings under Rule 12(c). (Dkt. 350). The motion argues that three issues can be settled on the pleadings. (Dkt. 351). First, the UVA Defendants argue that Plaintiff improperly seeks money damages from state officials and that any such claims are barred by the Eleventh Amendment. Second, they argue that the Plaintiff has failed to make any allegations relating to Defendant Timothy Longo. Third, they argue that the Second Amended Complaint fails to plead that Defendant Nora Kern engaged in an adverse action against Plaintiff in her individual capacity.

"Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6)." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Thus, Plaintiff's claims should be dismissed if "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In other words, "the complaint will survive only if it 'states a plausible claim for relief.'" *Massey*, 759 F.3d at 353

7

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### A. Money Damages and Sovereign Immunity Issue

Defendants correctly note that Plaintiff's improperly seeks money damages from state Defendants sued in their official capacity. (Dkt. 351 at 2). The Second Amended Complaint notes that the state employee Defendants in this case are each "sued in his or her official capacity for injunctive and declaratory relief and for damages resulting from the acts and omissions alleged in this Complaint." (Dkt. 335 at ¶¶ 21, 36). This claim for money damages against the official capacity Defendants is repeated in Plaintiff's recitation of his claim and in his prayer for relief. (*Id.* at p. 71).

The Eleventh Amendment grants sovereign immunity to states against suits for money damages. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). That immunity is shared with state officials who, when "sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014). Official capacity defendants may therefore only be sued for money damages if Congress has explicitly abrogated Eleventh Amendment immunity, or the state has voluntarily waived it. *See McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987). Neither has happened here.

The Second Amended Complaint requests that the Court award Plaintiff compensatory damages against defendants sued only in their official capacities. The Complaint identifies two categories of defendants: the "University Defendants," and the "UVA Med School Defendants." (Dkt. 335 at pp. 1, 14–17). It employs these designations to identify the parties against whom claims are brought and from whom relief is sought. (*Id.* at 68, 70–71). The category of "University Defendants" is made up exclusively of state employees sued only in their official capacities. (*Id.* at 1, 14). Namely, it is composed of the Rector, Board of Visitors, Timothy Longo, and Melissa Fielding. (*Id.*). Plaintiff's complaint expressly seeks compensatory

damages from these "University Defendants." (*Id.* at 70). The complaint therefore seeks monetary damages from state officials sued only in their official capacity. Additionally, the Second Amended Complaint seeks compensatory damages from the "UVA Med School Defendants," a category that includes Dr. Jim Tucker, who is sued only in his official capacity. (*Id.* at 1, 15, 70).

The Court will therefore grant the UVA Defendants' motion on this issue and dismiss all claims for money damages against the official capacity Defendants in this case.

### B. Claims Against Defendant Longo

The UVA Defendants argue that the Second Amended Complaint alleges no facts whatsoever relating to Defendant Longo, the Chief of Police and Associate Vice President for Safety and Security at UVA, and therefore argue that the Court should dismiss the claim as against him. (Dkt. 351 at 3–5). Plaintiff argues in response that the Court should not dismiss Longo because of the UVA Police Department's involvement in issuing the No Trespass Order against Plaintiff, and because "Longo would appear to be the proper party against whom [] an injunction [lifting the No Trespass Order] would properly issue." (Dkt. 384 at 5).

The Court will dismiss the claims against Longo because the Second Amended Complaint alleges no facts relating to him and because he is not a necessary party. The fact that there are no facts in the Complaint against him speaks for itself. He is not a necessary party because the party that would be enjoined were Plaintiff successful in obtaining an injunction would be the UVA Rector and Board of Visitors, not its chief law enforcement officer. *See* Federal Rule of Civil Procedure 65(d) (noting that an order granting an injunction binds "the parties' officers, agents, servants, employees, and attorneys"); Va. Code § 23.1-809 (establishing that the Chief of UVA Police is an employee of UVA and is bound by the instructions of the Rector and Board).

### C. Alleged Retaliation by Defendant Kern

The final argument in the UVA Defendants' motion for judgment on the pleadings is that Plaintiff fails to allege sufficient facts that Defendant Kern engaged in retaliation against Plaintiff. (Dkt. 351 at 6–12). The issue is essentially the same as with the above-discussed issue with Defendant Rasmussen. As noted above, in the Fourth Circuit, the test for whether there has been actionable retaliation under the First Amendment is whether "a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Blankenship*, 471 F.3d at 530.

Dr. Kern was, at the time of the events underlying this suit, an Associate Professor of Urology at the UVA School of Medicine. (Dkt. 335 at ¶ 28). She was also a member of the School of Medicine's Academic Standards and Achievement Committee ("ASAC"). (*Id.*). She attended the microaggression panel at the heart of this suit as a panelist. (*Id.* at ¶¶ 4). The only adverse action that Plaintiff alleges that Kern undertook was to file a "professionalism concern card" relating to Plaintiff's actions at the microaggression panel, in which she stated that she believed Plaintiff was "quite antagonistic toward the panel," that she was "shocked that a med student would show so little respect toward faculty members," and concluded that his conduct "worrie[d] [her] how he will do on wards." (*Id.* at ¶¶ 8, 86; Ex. 13 to Dkt. 335 at 2). The Second Amended Complaint alleges that ASAC addressed the concern card at a meeting on November 14, 2018, where ASAC voted to send Plaintiff a letter "reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and families." (Dkt. 335 at ¶ 107). The Second Amended Complaint alleges no further facts relating to Defendant Kern.

The question for the Court, then, is the same as in the motion to dismiss for Defendant Rasmussen: whether Kern took some action that adversely affected Plaintiff's First Amendment rights. *Davison v. Rose*, 19 F.4th 626, 636 (4th Cir. 2021) (cleaned up). Again, the government

only undertakes an adverse action under this doctrine where "a similarly situated person of ordinary firmness [relative to the plaintiff] reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Blankenship*, 471 F.3d at 530. The nature of the retaliatory act must be "more than *de minimis* or trivial." *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

      The Court holds that Kern filing the "professionalism concern card" was not an adverse action as a matter of law under facts alleged in the Second Amended Complaint, so the Court will dismiss Kern from the case. First, the Court notes that the Second Amended Complaint states that Bhattacharya did not know about the card until after he had been terminated from the medical school. (Dkt. 335 at ¶¶ 88, 92). It is not clear that an alleged adverse action could reasonably chill a person's speech if the person does not know about it and if it has no direct consequences. *See Icenhour v. Town of Abingdon*, No. 1:19-cv-33, 2021 WL 4099618, at *12 (W.D. Va. Sept. 8, 2021) (Jones, J.) (denying ADA retaliation claim in part because the plaintiff "was not aware of the negative evaluations written by [employers] until after she resigned, when she requested her personnel file."). Second, and especially critically, the Court notes that the professionalism concern card had no punitive effect in itself; it was simply a referral to a committee to consider further punitive action, so there was an attenuated connection between Kern's action (filing the card) and any actual harm suffered by Plaintiff (e.g., being dismissed from UVA). If an action carries no concrete consequences in itself, but merely represents "criticism" or a "verbal reprimand," then it is not an adverse action for First Amendment retaliation purposes. *Suarez Corp.*, 202 F.3d at 687. The professionalism concern card was a "verbal reprimand" at most—it was an internal document that raised concerns with Plaintiff's behavior but did not carry adverse consequences in itself.

11

There is no question that Plaintiff has sufficiently alleged that some Defendants undertook some adverse action—most obviously, his dismissal from the medical school. But he has not sufficiently alleged that Kern undertook an adverse action, so the Court will dismiss the claim against her.

The Court further holds that even if the professionalism concern card was an "adverse action" for First Amendment Retaliation purposes, Kern would be entitled to qualified immunity for the claim against her for money damages, because it was not clearly established that the filing of a professionalism concern card—what was in essence a referral for another party to consider discipline that the Plaintiff did not know about—was an adverse action for First Amendment Retaliation purposes. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

## V.  Conclusion

In an accompanying order, the Court will DENY Plaintiff's appeals of Judge Hoppe's discovery orders, Dkt. 347 and 418, GRANT Defendant Rasmussen's motion to dismiss, Dkt. 345, and GRANT in full the UVA Defendants' motion for judgment on the pleadings, Dkt. 350.

The Clerk of Court is directed to deliver a copy of this opinion to all counsel of record.

Entered this 21st day of July 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE