# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| **KIERAN RAVI BHATTACHARYA**, | ) |
| **Plaintiff,** | ) |
| v. | ) |
| **JAMES B. MURRAY, JR., et. al.,** | ) Civil Action No.: 3:19-CV-00054 |
| **Defendants.** | ) |

## PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS FROM CAPS WITHHELD BY UVA

Plaintiff, Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully moves to compel the production of documents from Counseling & Psychological Services ("CAPS") at the University of Virginia ("UVA")[1] pursuant to a March 22, 2022 subpoena to CAPS (**Exhibit A**) (the "UVA CAPS Subpoena"). The UVA CAPS Subpoena seeks "Documents" and "Communications" regarding visits to CAPS by Angel Hsu[2] "in January 2017, November 2018, or any other time during the Relevant Time Period," together with communications regarding such visits with certain individuals and entities identified in the document requests.

It should not have taken a subpoena to obtain these documents in the first place. Documents in the possession, custody, or control of CAPS are in the possession, custody, or control of UVA—both in fact and as a matter of law. By suing the Rector and Board of Visitors of UVA and others at UVA in their respective official capacities, Plaintiff has effectively sued the entity UVA.[3] As a matter of law, UVA and CAPS are a single entity, and CAPS is thus among the "UVA Defendants."[4] In fact, the document subpoena to CAPS was largely duplicative of Plaintiff's Document Request No. 101 ("RFP No. 101"), served on March 18, 2022, which called for "[a]ll Documents and Communications regarding Angel Hsu's counseling, psychological, or

---

[1] Because CAPS and UVA are a single entity, both in fact and as a matter of law, they are referred to collectively as "UVA" unless the context otherwise requires.

[2] Angel Hsu was a student at UVA Med School at the time of these visits but has since graduated and is therefore referred to herein as "Dr. Hsu."

[3] *See, e.g., Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004); *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (Table Opinion); *Lescs v. City of Winchester*, No. 5:19-CV-00061-EKD, 2020 WL 7024501, at *7 n.8 (W.D. Va. Nov. 30, 2020), *reconsideration denied*, No. 5:19-CV-00061, 2021 WL 966883 (W.D. Va. Mar. 15, 2021).

[4] *Nzabandora v. Univ. of Va. Health Sys.*, No. 3:17-cv-00003, 2017 U.S. Dist. LEXIS 9691, at *3 (W.D. Va. Jan. 24, 2017); *Johnson v. Univ. of Va. Med. Ctr.*, No. 3:06-cv-00061, 2007 U.S. Dist. LEXIS 3122, at *12 (W.D. Va. Jan. 17, 2007); *McCarthy v. Univ. of Va. Health Sys.*, No. 3:18CV00121, 2019 WL 2610118 (W.D. Va. June 25, 2019); *Faxon v. Univ. of Va. Health Sys.*, No. 3:10-cv-00049, 2011 WL 841279 (W.D. Va. Mar. 7, 2011).

psychiatric care." (Dkt. #344, Ex. B). The subsequent March 22, 2022 subpoena to CAPS—even though CAPS is not a third party—was issued at the insistence of UVA, for reasons that apparently make sense to its counsel. Rather than debate the issue, Plaintiff dutifully complied by issuing the UVA CAPS Subpoena.

Having insisted that obtaining documents from CAPS would require a subpoena, UVA later objected to RFP No. 101 on the grounds that it was duplicative of the subpoena.[5] In the interim, UVA directed the lawyer whom it had retained to represent CAPS to raise a series of less than meritorious objections. These included professing concern that producing the requested documents would violate Angel Hsu's confidentiality rights (an objection that UVA never asserted in response to a subpoena for Mr. Bhattacharya's CAPS records).[6] UVA continued to assert these

---

[5] UVA did not object to RFP No. 101 until April 20, 2022, stating as follows:

> OBJECTION TO DOCUMENT REQUEST NO. 101: Defendants object to this Request on the grounds that it seeks information not relevant to any party's claim or defense. The Court ruled on March 16, 2022 that Plaintiff was not permitted to add Dr. Hsu as a defendant. As such, Plaintiff's incessant effort to obtain more information about Dr. Hsu is inappropriate as such personal and private information has no bearing on his sole remaining claim of First Amendment Retaliation. Defendants further object to this Request on the grounds that it seeks information [to] be disclosed in violation of the law. Virginia law dictates that an authorization or release from Dr. Hsu is required before the Defendants disclose the information Plaintiff seeks. *See* Va. Code § 32.1-127.1:03(A)(3). Defendants do not possess any such authorization from Dr. Hsu, nor has Plaintiff provided such authorization. Additionally, ***this Request is duplicative of other discovery measures that Plaintiff has already availed himself of as he has issued subpoenas to third-party entities requesting the same or similar information***.
>
> RESPONSE TO DOCUMENT REQUEST NO. 101: For the foregoing reasons and for all the reasons stated in Defendants' Motion for Protective Order (ECF No. 344), Defendants will not be producing documents responsive to this Request.

(Dkt. #388-1 at 16) (emphasis added).

[6] Plaintiff's efforts to resolve the dispute are summarized in the Fed. R. Evid. 1006 of Prior Efforts to Resolve the UVA CAPS Subpoena Objections (the "Meet and Confer Summary") attached as **Exhibit B**. As the Meet and Confer Summary shows, such communications took place on April

concerns—and still does—even after being confronted with the fact that Dr. Hsu's counsel and Plaintiff's counsel had already agreed to provisions to safeguard her confidentiality that were satisfactory to Dr. Hsu. UVA also continues to assert that it has standing to assert confidentiality concerns on behalf of Dr. Hsu even though any such concerns that she once had have long since been addressed—as Dr. Hsu's counsel confirmed on the record during the July 14, 2022 telephonic hearing with the Court. (Dkt. #485).[7]

UVA persisted in its refusal to produce these documents notwithstanding this Court's May 2, 2022 Order directing UVA to complete its response to any outstanding discovery to which the Court had not sustained UVA's objections—including RFP No. 101[8]—and to do so by May 17, 2022, two weeks before the scheduled close of discovery on May 31, 2022. (Dkt. #397 at 21).

With respect to RFP No. 101, UVA simply failed to comply with the letter and spirit of the Court's May 2, 2022 Order, not to mention its deadline. On May 3, 2022, UVA said that it ***had*** complied, stating as follows in its supplemental answer to RFP No. 101:

> Subject to and without waiving the foregoing objections, and pursuant to the Court's Memorandum Opinion & Order granting Defendants' Motion for Protective Order (ECF No. 397), Defendants respond that all responsive documents and communications in their possession, custody, or control regarding Dr. Angel

---

15, 2022, April 16, 2022, April 17, 2022, May 1, 2022, and May 3, 2022 before resuming again after the filing of UVA's MSJ.

[7] Unlike UVA, Dr. Hsu would have standing to object if she "claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 Fed. App'x 740, 744 (4th Cir. 2005).

[8] *See* Dkt. #397 at 19: ("RFP No. 101 asks Defendants to produce all documents and communications regarding Angel Hsu's counseling, psychological, or psychiatric care. To the extent they have not already done so, the UVA Defendants shall produce such documents or communications that: (a) were in existence between October 2018 and January 2019; and (b) any UVA Defendant was aware of during that time.").

The Court's Order did not apply to such documents and communications from 2017. For the reasons set forth herein, there would be "good cause" to amend the May 2, 2022 Order, but no such amendment is necessary because the Court can and should simply order compliance with the outstanding UVA CAPS Subpoena.

3

> Hsu's counseling, psychological, or psychiatric care that were in existence between October 2018 and January 2019 and that any UVA Defendant was aware of during that time have been produced.

(Dkt. #445, DX89 at 7).  Notwithstanding UVA's withholding of documents reflecting visits to CAPS "between October 2018 and January 2019," UVA claimed at the July 14, 2022 telephonic hearing (Tr. 14:20-15:6) (Dkt. #485) that RFP No. 101 and the Court's May 2, 2022 Order applied only to "communications" but not "documents."  This distinction in any event did not make a difference because UVA's belated Memorial Day weekend production—consisting of 3,298 pages of documents (Bates Nos. UVA00012699-15997)—reflected communications that Dr. Peterson (named in her individual capacity) had regarding Dr. Hsu's psychiatric care not only with Dr. Hsu herself but also with CAPS and at least one other UVA psychiatric facility where Dr. Hsu received psychiatric care, Northridge.[9]

When asked about why UVA was producing these documents at the close of discovery, after Dean Peterson and others with knowledge of Dr. Hsu's psychiatric evaluations who had previously been deposed[10] demonstrably had knowledge—UVA's explanation was that it was merely fulfilling its duty to supplement.  That excuse did not explain why PDFs of some of these most critical documents had been generated nearly a year earlier, on July 9, 2021, but not produced in discovery until May 27, 2022.  UVA's "duty to supplement" explanation was a long time coming, as UVA used the fact that its entire defense team was busy with its forthcoming summary

---

[9] Dean Peterson's notes—Bates Nos. UVA00015986-93, 95-96 (submitted for filing under seal as **Exhibit C**)—contradict her sworn deposition testimony that she was unaware aware of Dr. Hsu's history of pursuing Title IX cases at Emory University, that she was unaware of Dr. Hsu's prior charges of rape against other men (either before or after coming to UVA Med School), that she was unaware of the psychological counseling that Dr. Hsu was receiving and the medication that Dr. Hsu was taking before October 2018.  (Peterson Dep. 80:9-25) (attached as **Exhibit D**).

[10] These include UVA's "hybrid" expert witnesses Drs. Pamila Herrington and Dr. Patrick Stafford.

4

judgment motion to discuss this issue as long as possible. The "meet and confer" on this issue did not take place until the evening of Friday, June 10, 2022,[11] two business days before UVA's motion for summary judgment ("UVA's MSJ") was due to be filed.

The June 14, 2022 filing of UVA's MSJ made the need for the documents at issue critical for three reasons.

## REASON # 1:

After two years of representing to the Court that Dr. Hsu had no relevance to the parties' claims and defenses, UVA's MSJ represented to the Court that—absent a grant of summary judgment—Dr. Hsu would be testifying at trial and submitted a declaration from Dr. Hsu in support of UVA's MSJ. UVA's MSJ also cited alleged concern for Dr. Hsu's safety as justification for many of the key events at issue in this case, including ASAC's November 28, 2018 vote to suspend Mr. Bhattacharya and the January 3, 2019 No Trespass Order (the original justification for which had been Mr. Bhattacharya's online postings that publicized his suspension from UVA).

## REASON # 2:

As justification for UVA's retaliatory conduct in October, November, and December 2018 and January 2019, UVA's MSJ cited the fact of Mr. Bhattacharya's January 2017 hospitalization (which was initially voluntary and had nothing to do with the "untreated mental illness" that UVA claims justified its actions). UVA's MSJ made this prior hospitalization and the November 14, 2018 and November 18, 2022 Forced Psychiatric Evaluations "front and center." In fact, the opening sentence of UVA's MSJ stated that this is "a case about mental illness." Plaintiff's Opposition to UVA's MSJ cited the evidence from which the jury could find that these

---

[11] The only thing productive that came out of the June 10, 2022 discussion was UVA's agreement that Plaintiff himself could see these documents. He saw them for the first time on June 12, 2022.

5

justifications were pretextual and noted the involvement of Dr. Hsu in each of these events.[12] Plaintiff's Opposition also noted that the existence of false statements by Dr. Hsu that resulted in Mr. Bhattacharya's January 2017 hospitalization being prolonged "is established by documents that UVA has produced, but their substance is contained in documents that UVA refuses to turn over notwithstanding a Court order and a subpoena requiring their production."[13]  *See* Dkt. #463- at 8:

> If this were truly "a case about mental illness" as it now claims, UVA would have taken action against Angel Hsu, an individual whom Christine Peterson—among others—knew, as early as January 10, 2017, had plotted to kill an ex-boyfriend before killing herself and used "anti-anxiety" prescription medications to "black out."[14] Instead, UVA relied upon her unverified statements to try to justify much of the retaliatory conduct at issue. At the time of the suspension, Peterson and Enoch knew that Hsu was cutting herself but never reported the information to TAT. Shortly after the NTO was issued, Peterson helped transfer Hsu from a psychiatric rotation at Western State Hospital due to what Peterson described as a "meltdown."[15] Around that same time, Hsu confessed to a fellow student that, while on clinical rotations, Hsu almost took one of her patient's prescription medicines so that she could overdose.[16] Angel Hsu was also involved in Plaintiff's January 2017 hospitalization, an event that UVA now cites as justification for retaliatory conduct nearly two years later. UVA's own records show that one of Plaintiff's former roommates said that this witness "slipped [Mr. Bhattacharya] a drug" (her own psychiatric medication), that this witness "gave [Mr. Bhattacharya] a pill and he took it without asking what it was," and that "[w]hen [this witness] is admitted to unit she should perhaps receive more intense scrutiny than normal." (KB-002801) (**PX21**) (Dkt. #464-21). It has since come to light that this same

---

[12] *See* Dkt. #463 at 11-13, 17-28.

[13] *See* Dkt. #463 at 9, n.21.

[14] At that point, Peterson raised the prospect that this witness herself take a leave of absence from UVA Med School. (*Id.*) UVA00015987 (**PX10**) (Dkt. #464-10).

[15] Enoch Dep. Tr. 299:16-301:1, 301:20-302:1, 303:6-12, 304:11-305:11 (**PX16**) (Dkt. #464-16); Peterson Dep. Tr. 202:12-203:13, 204:2-205:14 (**PX4**) (Dkt. #464-4); UVA00002777 (**PX17**) (Dkt. #464-17); UVA00005802 (**PX18**) (Dkt. #464-18); UVA00003310 (**PX19**) (Dkt. #464-19).

[16] CHANG-000022 (**PX20**) (Dkt. #464-20).

witness also made false statements to CAPS that resulted in his hospitalization being prolonged.[17]

REASON # 3:

UVA's MSJ relied heavily on the opinion testimony of UVA's "hybrid" expert witnesses. By designating these fact and party witnesses as non-reporting experts, UVA had waived the privilege with respect to these documents. Prior efforts to resolve the dispute had been unsuccessful. At one point, on the record of a deposition, UVA's counsel had invited Plaintiff's counsel to go ahead and file a motion to compel. A few hours later, however, UVA made the issue largely moot because UVA abruptly "de-designated" most of these witnesses. Notwithstanding this de-designation, UVA relied on these same "hybrid" expert opinions as support for its MSJ. Accordingly, Plaintiff moved to compel communications with these hybrid witnesses. *See* Dkt. #462.

RENEWED EFFORTS TO "MEET AND CONFER" ABOUT THE SUBPOENA

Unlike the hybrid expert issue, UVA's objections to the UVA CAPS Subpoena had not been fully resolved as of the June 14, 2022 filing of UVA's MSJ. To be sure, UVA's objections to the UVA CAPS Subpoena had been the subject of numerous emails and some live discussion before June 14, 2022.[18] Some of the objections and positions taken by UVA's newly hired outside counsel, however, reflected an admitted lack of knowledge of some critical procedural history. These included the fact that UVA had not raised any of these objections in response to a subpoena for CAPS' records of Mr. Bhattacharya's involuntary visits there. Plaintiff's counsel renewed

---

[17] The existence of these false statements is established by documents that UVA has produced, but their substance is contained in documents that UVA refuses to turn over notwithstanding a Court order and a subpoena requiring their production.

[18] As reflected in the Meet and Confer Summary, such communications had previously taken place on April 7, 2022, April 15, 2022, April 16, 2022, April 17, 2022, May 1, 2022, and May 3, 2022.

prior efforts to resolve UVA's objections to the UVA CAPS Subpoena after the filing of UVA's MSJ. These efforts renewed in earnest following a June 21, 2022 email stating: "We need these documents to respond to a pending summary judgment motion. Is it going to take a motion to compel to get them?" As set forth in the Meet and Confer Summary, these subsequent efforts took place on June 21, 2022, June 22, 2022, June 23, 2022, June 24, 2022, June 29, 2022, June 30, 2022, July 5, 2022, and July 6, 2022 before reaching an impasse on July 7, 2022. Plaintiff's counsel contacted the Court about scheduling a telephonic hearing on this issue the very next day.

At the subsequent telephonic hearing, UVA's counsel called the UVA CAPS Subpoena "oppressive" and characterized it as a "vendetta" on the part of Mr. Bhattacharya. It is UVA, not Mr. Bhattacharya, that made Dr. Hsu a key witness in this case. As set forth in Plaintiff's Opposition to UVA's MSJ: "Notwithstanding her knowledge of Angel Hsu's mental health issues dating back to early 2017, Peterson was—starting in November 2018 and continuing to the present—all too willing to simultaneously exploit and be exploited by this troubled individual to punish Mr. Bhattacharya and try to cover UVA's tracks about the reasons for doing so." (Dkt. #463 at 9). The fact that UVA now plans to call Dr. Hsu as a trial witness makes the need for the documents in question all the more important because they will help show that she is not a credible witness and that UVA had reason to know that during the time period in question. And the fact that UVA did so after repeatedly claiming that Dr. Hsu has no relevancy to this case is nothing short of reprehensible.

"Courts in the Fourth Circuit routinely deny motions to compel that are filed after the discovery deadline when no good cause is shown for their delay." *Gill v. TBG Food Acquisition Corp.,* No. 7:19-cv-00479, 2022 WL 896823 at *10 (W.D. Va. Feb. 28, 2022) (quoting *Reed v. Beverly Hills Porsche*, No. 617-cv-59, 2018 WL 10396251 at *2 (W.D. Va. Jan. 12, 2018)). In

8

this case, there is more than ample good cause. Plaintiff's counsel engaged in good faith efforts to resolve this dispute both before and after the close of discovery. The need for the documents at issue became critical once UVA made them critical based on the arguments in its summary judgment motion that were contrary to what it previously told the Court. It will be up to Judge Moon to decide whether Plaintiff can supplement his Opposition to UVA's MSJ with these previously withheld documents. Even if he does not permit this, the documents are appropriate for use at trial in cross-examination of Dr. Hsu and the numerous UVA officials—including Dean Peterson and Tabitha Enoch, among others—who relied on Dr. Hsu's assertions without verifying them notwithstanding numerous "red flags" about her credibility as a witness.

Compliance with the UVA CAPS Subpoena would impose minimal burden on UVA. Following service of the UVA CAPS Subpoena on March 24, 2022, CAPS produced documents within two weeks, on April 8, 2022. The problem was that these were Mr. Bhattacharya's records rather than Dr. Hsu's records. Separate outside counsel for UVA introduced himself to Plaintiff's counsel on April 13, 2022. Thereafter, UVA threw up a series of roadblocks that—at this point—only the Court can and should take down.

Date: July 27, 2022                    Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: *s/ Michael J. Lockerby*
        Counsel

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
Email: mlockerby@foley.com

Steven C. Lockhart (admitted *pro hac vice*)
Robert T. Slovak (admitted *pro hac vice*)
Brandon C. Marx (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
E-mail: slockhart@foley.com
E-mail: rslovak@foley.com
E-mail: bmarx@foley.com

John P. Melko (admitted *pro hac vice*)
James G. Munisteri (admitted *pro hac vice*)
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
Email: jmelko@foley.com
E-mail: jmunisteri@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*